## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DAVID TORREZ,

        Plaintiff,

vs.

CITY OF FARMINGTON, VINCENT MITCHELL, in his official and
individual capacities, GERALD MAESTAS, in his official and
individual capacities, DUSTY DOWNS, in his official and individual      Civ. No. 02-1381
capacities, JASON HENSLEY, in his official and individual capacities,      MV/RHS
JOHN AHLM, in his official and individual capacities, SAN JUAN
COUNTY for acts of its SHERIFF'S DEPARTMENT, a governmental
entity, JASON WAYBOURN, in his official and individual capacities,
SAN JUAN DISTRICT MAGISTRATE COURT, LINDA B. EATON,
in her official and individual capacities, AZTEC MUNICIPAL COURT,
BARBARA R. ALDAZ, in her official and individual capacities,
ELEVENTH JUDICIAL DISTRICT COURT, GREGORY T.
IRELAND, in his official and individual capacities, and OTHER JOHN
DOE DEFENDANTS, in their official and individual capacities,

        Defendants,

and

JULES LESLIE GODWIN,

        Plaintiff,

vs.

CITY OF FARMINGTON, VINCENT MITCHELL, in his official and
individual capacities, GERALD MAESTAS, in his official and
individual capacities, DUSTY DOWNS, in his official and individual
capacities, JASON HENSLEY, in his official and individual capacities,
JOHN AHLM, in his official and individual capacities, SAN JUAN
COUNTY for acts of its SHERIFF'S DEPARTMENT, a governmental
entity, JASON WAYBOURN, in his official and individual capacities,
SAN JUAN DISTRICT MAGISTRATE COURT, LINDA B. EATON,
in her official and individual capacities, AZTEC MUNICIPAL COURT,
BARBARA R. ALDAZ, in her official and individual capacities,
ELEVENTH JUDICIAL DISTRICT COURT, GREGORY T.
IRELAND, in his official and individual capacities, and OTHER JOHN
DOE DEFENDANTS, in their official and individual capacities,

        Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on Defendants San Juan County and Jason Waybourn's ("Waybourn") (collectively, "San Juan County Defendants") Motion to Dismiss Claims of Plaintiff Torrez, filed March 13, 2003 **[Doc. No. 15]**, and Defendant City of Farmington and Defendants Mitchell, Maestas, Downs, Hensley, and Ahlm's ("Farmington Officers") (collectively, "Farmington Defendants") Partial Motion to Dismiss David Torrez's Claims, filed June 5, 2003 **[Doc. No. 58]**.  The Court, having considered the motions, briefs, and relevant law and being otherwise fully informed, finds that the motions are well taken in part and will be granted in part.

**BACKGROUND**

On March 22, 2002, Plaintiff David Torrez ("Plaintiff") filed an action in New Mexico state court asserting state constitutional and tort causes of action arising out of a series of arrests and prosecutions, only some of which are relevant and discussed herein.  The complaint named various defendants, including municipal, state, and judicial actors, as well as law enforcement officers and other "John Doe" defendants in their individual and official capacities.  Plaintiff did not name Defendant Waybourn as a party to the lawsuit.  On October 8, 2002, Plaintiff filed a motion to amend his complaint and attached thereto a proposed amended complaint adding various federal constitutional claims under 42 U.S.C. Section 1983 and joining Defendant Waybourn as a party.  Thereafter, on November 1, 2002, the action was removed to this Court.[1]

---

[1] On March 22, 2002, plaintiff Jules Leslie Godwin filed an action in state court asserting state causes of action arising out of the same facts that form the basis of Plaintiff Torrez's lawsuit.

-2-

Plaintiff's amended complaint, which was filed February 25, 2003, contains Section 1983 claims for excessive police force, unlawful entry, and unlawful detainment and arrest.  The amended complaint also contains state tort claims for battery, trespass, defamation, interference with prospective business advantage, false light invasion of privacy, intentional infliction of emotional distress, and malicious abuse of process.[2]  Plaintiff alleges the following facts in support of the amended complaint.[3]

I.      Plaintiff and His Business.

In 1988, Plaintiff started a business called Torrez Bonds and began entering into contracts with persons to post bail bonds in exchange for compensation.  To assist this enterprise, Plaintiff cultivated relationships with various courts, entities, and persons throughout San Juan County, New Mexico.  Prior to February 25, 1998, the time the unlawful conduct alleged in the amended complaint began, Torrez Bonds handled and performed a substantial portion of the bonding business in San Juan County.

---

When Godwin filed a motion to add a federal claim, the action was removed to this Court and consolidated with Torrez's action.  Other defendants have filed separate motions to dismiss Torrez's and Godwin's complaints.  The Court only addresses, however, the motions by the San Juan County and Farmington Defendants to dismiss Torrez's amended complaint herein.  The remaining motions are addressed in two separate memorandum opinions and orders.

[2] In addition, the amended complaint contains federal and state constitutional tort claims for due process violations.  The amended complaint does not allege that the San Juan County Defendants or the Farmington Defendants are liable or responsible for these violations.  The San Juan County Defendants have moved to dismiss these claims, and the Court grants that motion.  The Farmington Defendants have not moved to dismiss the claims presumably because the amended complaint does not contain any due process allegations against them.

[3] The Court's review of the motions to dismiss is confined to the pleadings.  Therefore, the Court only shall describe the facts as alleged by Plaintiff in the amended complaint or attachments thereto.

II.     <u>October 4, 1999, Arrest</u>.

On October 3, 1999, Plaintiff attempted to collect a past due debt in excess of $15,000.00 from James Cooper ("Cooper").  On October 4, 1999, Cooper sought to avoid paying Plaintiff by falsely alleging to the Federal Bureau of Investigation (FBI) that Plaintiff had committed various drug and other offenses.  After a thorough investigation, the FBI determined that Plaintiff had not committed any such offenses and therefore took no action against Plaintiff.  The FBI reported its findings to the Farmington Police Department.

On October 4, 1999, Cooper also approached personnel from the Farmington Police Department and falsely alleged that Plaintiff was dealing controlled substances, including methamphetamines, that Plaintiff planned to meet other persons at Plaintiff's apartment to complete an illegal drug transaction, that Plaintiff had bought, sold, and used illegal drugs in Cooper's presence, and that Plaintiff had threatened and "pistol whipped" Cooper in an attempt to collect past due debts.  Cooper further alleged that Plaintiff was occupying a certain apartment ("apartment F") and that Plaintiff was storing illegal drugs in another apartment ("apartment E"). Although Plaintiff owned apartments E and F, he did not live in or occupy either unit.  Plaintiff's tenant was renting apartment F.

Defendant Waybourn and Defendant Farmington Officers ("Defendant Officers") failed to verify the reliability of the information given by Cooper, even though Defendant Officers knew that Cooper was an untrustworthy and unreliable source of information and the Farmington Officers knew that the FBI previously had investigated and dismissed Cooper's charges. Defendant Officers also failed to corroborate Cooper's allegations by conducting surveillance of Plaintiff, making a controlled purchase from Plaintiff, or confirming the existence of others

purportedly involved in the alleged drug transaction described by Cooper.

Pursuant to Farmington Officers Vincent Mitchell and Gerald Maestas's instruction and/or encouragement, Cooper entered and searched apartment F to determine where the illegal drugs he claimed Plaintiff was in possession of were stored. Cooper conducted the search unaccompanied by Defendant Officers and without the permission, consent, or knowledge of Plaintiff or Plaintiff's tenant. Prior to Cooper's unlawful entry, Farmington Officers Mitchell and Maestas did not search Cooper for illegal drugs or contraband to determine whether Cooper had access to any such items.

The same day Cooper searched the apartment, Plaintiff received notice that Cooper unlawfully had entered the apartment. Plaintiff proceeded to apartment F to ensure that Cooper had vacated the premises and that the apartment was secure. While inside the apartment, Plaintiff undressed and prepared to take a shower.

Thereafter, Defendant Officers "forcibly broke down the door" to apartment F, causing damage to the door, and "violently str[uck]" "and knock[ed Plaintiff] to the ground," in a "rude, insolent, or angry manner," "causing [him] to suffer severe . . . injuries." Plaintiff "was nude and was not wearing clothes" when the officers knocked Plaintiff down. Defendant Officers did not "give proper notice before violently entering apartment F."

Defendant Officers arrested Plaintiff and then seized property belonging to Plaintiff that was located in apartment F, including a firearm, a wallet, cash totaling approximately $8,820.00, casino receipts, and a receipt book. Although Plaintiff informed Defendant Officers that he lawfully possessed this property, the officers nonetheless seized the property. Defendant Officers also seized property that Plaintiff denies ownership or knowledge of, including a bag owned by

Plaintiff that contained controlled substances and drug paraphernalia.  Plaintiff alleges that the controlled substances and drug paraphernalia were planted in the apartment by Cooper.

Farmington Officer Mitchell filed a criminal complaint against Plaintiff charging him with "Possession with Intent to Distribute Methamphetamines, Possession/Receiving Stolen Property (Firearm), Possession of Drug Paraphernalia and Possession of a Controlled Substance (Marijuana less than 1 oz.)."  The criminal complaint also contains allegations regarding the essential elements of the crimes.  Plaintiff alleges that the publishing of the criminal complaint defamed him and injured his professional, business, and personal reputation.  Plaintiff attaches the criminal complaint containing the allegedly defamatory statements to his amended complaint.  After arresting Plaintiff, Defendant Officers booked and detained Plaintiff pending his arraignment.  Defendant Officers also denied Plaintiff access to his property.  Defendant Officers failed to return Plaintiff's property to him, including $8,820.00 in cash, until after May 4, 2000.

On April 20, 2000, prosecutors declined to prosecute Plaintiff with regard to all charges resulting from the October 4, 1999, arrest.  On May 4, 2000, however, Defendant Officers refiled the action against Plaintiff based on the same charges stemming from his October 4, 1999, arrest.  Plaintiff alleges that the officers refiled charges against him with improper motive and without probable cause.

III.   Other Allegedly Tortious Conduct.

From the time of his arrest on October 4, 1999, Plaintiff also alleges that Defendant Officers have subjected him to ongoing investigation, increased surveillance, scrutiny, harassment, and intimidation in an effort to harm him and his ability to conduct business.  Plaintiff alleges that beginning in February 1998 and continuing through the present time, Defendant Officers have

defamed Plaintiff and his business.  Specifically, Plaintiff contends that Defendant Officers published communications that Plaintiff was not fit or able to perform his work as a bail bondsman, that Plaintiff was involved with disreputable dealings and persons, that Plaintiff was guilty of dealing and using illegal drugs or controlled substances, and that Plaintiff possessed and/or received stolen property.  In addition, Plaintiff alleges generally, without specifying any time frame, that Defendant Officers unfavorably disparaged and defamed Plaintiff by publishing statements to the media, including false information obtained from Cooper.  Other than the criminal complaint filed against him, Plaintiff does not attach to his amended complaint copies of the remaining defamatory statements allegedly made by Defendant Officers.  Plaintiff also does not specify any precise defamatory language allegedly used by Defendant Officers.

## STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides in relevant part that "failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any pleading.  Fed. R. Civ. P. 12(b)(6).  A court may dismiss a cause of action under Rule 12(b)(6) for failure to state a claim only if it appears beyond a doubt that a plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief.  *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993) (citation omitted).  In considering a Rule 12(b)(6) motion, a court must assume all well-pleaded facts, but not conclusory allegations, to be true, and must draw all reasonable inferences in favor of a plaintiff.  *See Housing Auth. of the Kaw Tribe v. City of Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991), *cert. denied*, 504 U.S. 912 (1992); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998).  The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will prevail ultimately, but whether a plaintiff is

entitled to offer evidence to support his or her claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

These deferential rules, however, do not allow a court to assume that a plaintiff "can prove facts that [the plaintiff] has not alleged or that the defendants have violated the . . . laws in ways that [the plaintiff has not] alleged." *See Associated Gen. Contractors, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The rules also do not require a court to accept legal conclusions or unwarranted inferences. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citation omitted).

The standard for analyzing a motion to dismiss shifts slightly if a defendant raises qualified immunity as a defense to a suit under 42 U.S.C. Section 1983. Qualified immunity bars Section 1983 suits against defendants in their individual--but not official--capacities. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (citations omitted). The qualified immunity defense was created to shield public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). It provides defendants not only with immunity from liability but also with immunity from suit. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It grants defendants the "right . . . . to avoid standing trial . . . [and] to avoid the burdens of such pretrial matters as discovery." *Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (citation and internal quotations omitted), *cert. denied*, 535 U.S. 1056 (2002). As a result, the Tenth Circuit "'repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Id.* at 1185 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curium)); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).

-8-

Although "summary judgment provides the typical vehicle for asserting a qualified immunity defense," the defense can be raised on a motion to dismiss.  The Tenth Circuit has held, however, that "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment," because a "'motion to dismiss for failure to state a claim is viewed with disfavor, and is rarely granted.'"  *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (citation omitted).

Once a defendant raises the defense of qualified immunity on a motion to dismiss, a plaintiff must (1) assert facts which, if true, would constitute a violation of a constitutional right, and (2) demonstrate that the "right was clearly established so that [a] reasonable official[] in [the] defendant['s] situation would have understood [his or her] conduct violated that right."  *Leibson v. New Mexico Corrections Dep't*, 73 F.3d 274, 276 (10th Cir. 1996); *see also, e.g.*, *Saucier*, 533 U.S. at 201-02.  If a plaintiff fails to satisfy this two-part burden, a court must grant the defendant qualified immunity.  *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  A court's review of a qualified immunity defense raised in a motion to dismiss is limited to the pleadings.  *See Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994) (citation omitted), *cert. denied*, 513 U.S. 1183 (1995).

## DISCUSSION

The San Juan County Defendants and the Farmington Defendants ("Defendants") separately move to dismiss in part Plaintiff's amended complaint on the following grounds.  First, the San Juan County Defendants argue that the statute of limitations bars Plaintiff's federal 42 U.S.C. Section 1983 claims for use of excessive police force, unlawful entry, and unlawful

detainment and arrest.[4]  Second, Defendant Officers argue that they are entitled to qualified immunity from Plaintiff's Section 1983 claims.  Third, Defendants argue that the statute of limitations bars Plaintiff's state tort claims for battery, trespass, and defamation.  The San Juan County Defendants also argue that the statute of limitations bars Plaintiff's claims for interference with prospective business advantage, false light invasion of privacy, intentional infliction of emotional distress, and malicious abuse of process.  With respect to Plaintiff's defamation claims, Defendants also maintain that Plaintiff has failed to state a valid claim for relief.  Fourth, Defendants contend that they are immune from suit under the New Mexico Tort Claims Act for Plaintiff's interference with prospective business advantage, false light invasion of privacy, and intentional infliction of emotional distress claims.  The Court will address each of Defendants' arguments in turn.

I.    Are the Federal Constitutional Claims Pursuant to 42 U.S.C. Section 1983 Barred by the Statute of Limitations?

The limitations period for actions under 42 U.S.C. Section 1983 is governed by state law. *See Wilson v. Garcia*, 471 U.S. 261, 268 (1985).  The Supreme Court has mandated that under New Mexico law, the three-year statute of limitations for injuries to the person is the appropriate limitations period for actions arising under Section 1983.  *See id.* at 276.  The Section 1983 allegations against the San Juan County Defendants involve events that occurred on October 4, 1999.  Although Plaintiff's original complaint was filed within the three-year limitations period, the San Juan County Defendants argue that the amended complaint does not relate back to the original complaint and that the amended complaint therefore controls.  Under this theory, because

─────────────

[4] Plaintiff's Section 1983 claims are set forth in the Initial Pre-Trial Report, filed June 3, 2003 **[Doc. No. 57]**.

Plaintiff filed his Section 1983 claims against the San Juan County Defendants on February 25, 2003, the claims fall outside the limitations period and are time-barred.

In support of this argument, the San Juan County Defendants cite various cases holding that an "'amended complaint does not relate back to the filing of the original complaint if the original complaint, itself, was filed after the expiration of the statute of limitations.'" *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001) (quoting 51 Am. Jur. 2d Limitation of Actions § 263); *see also Papenthien v. Papenthien*, 16 F. Supp. 2d 1235, 1241 (S.D. Cal. 1998); *DeVargas v. State*, 97 N.M. 563, 564, 642 P.2d 166, 167 (N.M. 1982).

The rule cited by the San Juan County Defendants is not applicable here. As described herein in greater detail, Plaintiff's original complaint was not filed after the expiration of the statute of limitations. On the facts alleged by Plaintiff, the San Juan County Defendants engaged in continuing wrongful conduct that tolled the statute of limitations. *See infra* § III.C (holding that Plaintiff's allegations of continuing conduct are sufficient to state a claim for the tolling the statute of limitations). For purposes of a motion to dismiss, the Court must accept these factual allegations as true. Accordingly, Plaintiff's original complaint is not a nullity and Plaintiff's Section 1983 claims are not time barred.

II.     <u>Are Defendant Officers Entitled to Qualified Immunity for the Section 1983 Claims</u>?

Defendant Officers raise qualified immunity as a defense to Plaintiff's Section 1983 claims for excessive force, unlawful entry, and unlawful detainment and arrest. Qualified immunity from a Section 1983 suit is available only to officials in their individual--and not official--capacities. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (citations omitted). Accordingly, the Court will construe the motion as seeking dismissal of the Section 1983 claims against Defendant

Officers in their individual capacities.[5]

    A.    <u>Section 1983 Excessive Force</u>.

        1.    <u>Constitutional Violation</u>.

To determine whether Plaintiff has satisfied the first part of his qualified immunity burden by establishing a constitutional violation, the Court must look to the substantive law in effect at the time the conduct in question occurred. *See Saucier v. Katz*, 533 U.S. 194, 199 (2001). In *Graham v. Connor*, decided in 1989, the Supreme Court held that the use of excessive force during arrest violates a person's Fourth Amendment right against unreasonable search and seizure and that all excessive force claims should be analyzed under the reasonableness standard of the Fourth Amendment. *See* 490 U.S. 386, 395 (1989). The analysis set forth in *Graham* is still in effect today and therefore is the standard under which the Court must assess the officers' conduct. *See Saucier*, 533 U.S. at 202; *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001).

The Fourth Amendment reasonableness inquiry is objective and heavily fact dependent. *See, e.g.*, *Wilson v. Meeks*, 52 F.3d 1547, 1553 (10th Cir. 1995). It recognizes that the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, . . . [and it] must embody allowance for the fact that police officers are often forced to make split-second judgments . . . in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 396-97. "'[T]he reasonableness of [an officer's] actions depends both on whether [the officer was] in danger at the precise moment that . . . force [was used] and on whether [the officer's] own

---

[5] To the extent Defendant Officers in their official capacities intended to move to dismiss Plaintiff's Section 1983 claims based on qualified immunity, their motions to dismiss are denied.

reckless or deliberate conduct during the seizure unreasonably created the need to use such force.'" *Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997) (quoting *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995)), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998). A court must pay careful attention to the totality of the facts and circumstances of each particular case, including (i) the severity of the crime at issue, (ii) whether the subject poses an immediate threat to the safety of the officer, and (iii) whether the subject is resisting arrest by attempting to flee the scene. *See Graham*, 490 U.S. at 396 (citation omitted).

*First*, the Court will consider whether, under *Graham*, Plaintiff posed an immediate threat to the safety of Defendant Officers. *See Medina*, 252 F.3d at 1132 (the primary focus of the Court's reasonableness inquiry "must remain on whether the officer was in danger at the exact moment of the threat of force"). In this regard, the law is clear that the use of force to arrest, subdue, or control a defendant may be excessive where it is manifestly unnecessary or wholly gratuitous in light of the threat posed by the defendant. *See, e.g.*, *Martinez v. New Mexico Dep't of Public Safety*, No. 01-2156, 2002 WL 1753176, * 3 (10th Cir. July 29, 2002) (the use of mace by an officer against a plaintiff refusing to get into the officer's car constituted excessive force where the officer stopped the plaintiff on two traffic violations and took the plaintiff into custody on an outstanding bench warrant for failure to appear and the plaintiff was not actively resisting arrest) (unpublished decision); *Henry v. Albuquerque Police Dep't*, No. 01-2297, 2002 WL 31379859, at *2-3 (10th Cir. Oct. 23, 2002) (plaintiff stopped for a traffic violation and detained for driving on a suspended licence demonstrated an excessive force violation against officer who, in response to plaintiff's attempt to re-enter her vehicle, pulled her out of her vehicle by her legs and struck her in the face) (unpublished decision); *Gonzales v. Passino*, 222 F. Supp. 2d 1277,

1279-80 (D.N.M. 2002) (plaintiff can establish an excessive force violation when there is no need

for the application of force by an officer) (citations omitted).[6]  On the other hand, in arresting,

subduing, or controlling a defendant, "'[n]ot every push or shove, even if it may later seem

unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'"  *Martinez*,

2002 WL 1753176, at *2 (quoting *Graham*, 490 U.S. at 396).  In "making an arrest, officers may

'use some degree of physical coercion or threat thereof to effect it.'"  *Gross v. Pirtle*, 245 F.3d

1151, 1158 (10th Cir. 2001) (quoting *Graham*, 490 U.S. at 396).

Against this legal backdrop, Plaintiff alleges that Defendant Officers did not "give proper

notice before [they] violently enter[ed] apartment F," "forcibly broke down the door," "violently

str[uck]" "and knock[ed Plaintiff] to the ground" in a "rude, insolent, or angry manner," even

though Plaintiff "was nude and was not wearing clothes," and struck Plaintiff in a sufficiently

strong manner to cause him to  "suffer severe . . . injuries."  Plaintiff also alleges that Defendant

Officers made the decision to proceed in this manner even though the evidence against Plaintiff

was based solely upon uncorroborated[7] information obtained from a source (James Cooper) that

the officers knew, and the FBI had confirmed, was unreliable.  Although Plaintiff does not provide

---

[6] *See also Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) ("wholly gratuitous" shove by officer could state an excessive force violation where suspect presented a minimal threat) (quotations and citation omitted); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (forceful application of handcuffs on plaintiff charged with obstructing and insulting an officer when the situation does not call for such force can constitute excessive force); *Kostrzewa v. City of Troy*, 247 F.3d 633, 639-41 (6th Cir. 2001) (same); *Griffin v. Hickson*, No. 98-3805, 2002 U.S. Dist. LEXIS 8567, *18 (E.D. Pa. May 10, 2002) (force against "an individual who is standing still, naked, and unarmed with his hands placed either on a mattress or in the air" is excessive because the individual "poses no threat to anyone").

[7] Plaintiff alleges that Defendant Officers failed to verify the accuracy of Cooper's information by conducting surveillance, making a controlled purchase, or confirming the existence of others purportedly involved in the drug transaction alleged by Cooper.

a detailed description of exactly which officer(s) struck him and knocked him down, the manner in

which the officer(s) struck him and knocked him down, the location on Plaintiff's person where

the officer(s) struck him, the immediate context in which the officer(s) struck him and knocked

him down, the degree of force with which Plaintiff hit the ground as a result of the strike, or the

injuries Plaintiff allegedly suffered because of the strike, the Court is required, at this stage in the

proceedings, to make all reasonable inferences in Plaintiff's favor.  *See Housing Auth. of the Kaw*

*Tribe v. City of Ponca*, 952 F.2d 1183, 1187 (10th Cir. 1991), *cert. denied*, 504 U.S. 912 (1992);

*Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).  The Court therefore must assume that

Plaintiff was not resisting arrest, was naked, was visibly unarmed, and was essentially defenseless,

and that Defendant Officers nonetheless proceeded to strike and attack him in a manner violent

enough to cause him to suffer severe injuries.  The Court also must assume that Defendant

Officers proceeded in this manner even though they had no reliable evidence on which he could

base his arrest of Plaintiff.  On these facts, and in light of the precedents discussed above, the

Court must conclude that Plaintiff did not pose an immediate threat to the safety of the officers

sufficient to justify the severity of force allegedly used by Defendant Officers.

In addition, the Court may consider "'whether [the officer's] own reckless or deliberate

conduct during the seizure unreasonably created the need to use such force.'"  *Allen*, 119 F.3d at

840 (quoting *Sevier*, 60 F.3d at 699).  *But see Medina*, 252 F.3d at 1132 (the primary focus is

whether the officer was in danger).  In this regard, Plaintiff alleges that Defendant Officers failed

to announce their presence before breaking down his door, and that Defendant Officers made the

decision to break into Plaintiff's house to arrest him based solely upon uncorroborated

information obtained from a source known to be unreliable.  These allegations create a reasonable

inference that Defendant Officers could and should have taken measures that would have eliminated or reduced the need to use force against Plaintiff, and thus lend further support to the conclusion that Plaintiff did not pose an immediate threat to the safety of the officers sufficient to justify the severity of force allegedly used by Defendant Officers.

*Second,* the Court must consider the severity of the crime at issue.  *See Graham,* 490 U.S. at 396.  Although the Court does not minimize the seriousness of drug-related crimes, it bears mentioning that Plaintiff was not accused of a violent crime, and did not face a relatively severe sentence upon conviction.  Specifically, Defendant Officers charged Plaintiff with possession with intent to distribute methamphetamines (third degree felony), receiving or possessing a stolen firearm (fourth degree felony), possessing drug paraphernalia (a misdemeanor), and possession of one ounce or less of marijuana (a petty misdemeanor).  In New Mexico, the sentences for these crimes range from fifteen days for possession of marijuana to three years for possession with intent to distribute methamphetamines.  *See* N.M. Stat. Ann. § 31-18-15; *see also id.* §§ 30-31-22(A)(2)(a), 30-16-11(A) & (F), 30-31-25.1(A), and 30-31-23(B)(1).  Although these crimes are quite serious, they would not appear to justify the same use of force as would a violent crime, such as murder in the first degree, which is a capital crime subject to death or life imprisonment.[8] *See Leedy v. Pollock,* No. 98-1421-KHV, 1999 U.S. Dist. LEXIS 14783, *10 (D. Kan. 1999) (noting that driving under the influence is "not a violent offense" and is not "among the most

---

[8] Even if the Court were to determine that *Graham*'s severity of crime factor weighs in Defendant Officers' favor, this determination would not alter the Court's decision herein.  Courts repeatedly have stressed that the primary focus of the reasonableness inquiry "must remain on whether the officer was in danger at the exact moment of the threat of force," *Medina,* 252 F.3d at 1132, and the facts alleged by Plaintiff indicate that neither Defendant Waybourn nor the Farmington Officers were in danger when they allegedly used force against Plaintiff.

egregious in the annals of criminal law"). The Court also notes that, according to Plaintiff's allegations, the officers based their probable cause determination solely on uncorroborated information obtained from a source the officers knew, and the FBI had confirmed, was untrustworthy. The officers also knew or should have known that Cooper may have had access to illegal drugs that he could plant in the apartment. These allegations also undermine the severity of the crimes the officers allege that Plaintiff committed.

*Third,* the Court must consider whether Plaintiff was resisting arrest by attempting to flee the scene. *See Graham*, 490 U.S. at 396. Plaintiff alleges that at the time of arrest he was naked and preparing for a shower. His allegations do not establish, or even suggest, that he was attempting to evade arrest in any manner. *See, e.g.*, *Martinez v. New Mexico Dep't of Public Safety*, No. 01-2156, 2002 WL 1753176, at *3 (10th Cir. July 29, 2002) (factor weighed in plaintiff's favor where there was no indication plaintiff actively resisted arrest or attempted to evade arrest by flight). Accordingly, at this stage of the proceedings, the factor weighs clearly in Plaintiff's favor.

In sum, and after careful consideration of the three *Graham* factors, the Court concludes that Plaintiff has alleged facts sufficient to establish a Fourth Amendment violation. Specifically, the Court concludes that it constitutes excessive force for a police officer knowingly to act on unreliable information to arrest a person suspected of, at most, possession with intent to distribute methamphetamines, by breaking down his door without a prior announcement, violently striking him, and knocking him down in a manner violent enough to cause him to suffer severe injuries, when the defendant was completely naked, visibly unarmed, not engaging in any aggressive physical or verbal conduct, and not resisting arrest in any manner. *See supra* (discussing the first

-17-

*Graham* factor and citing cases); *Pineda v. City of Houston*, 124 F. Supp. 2d 1037, 1045 (S.D.

Tex. 1999) (plaintiff stated an excessive force claim where officers entered an apartment based

upon informant's statement that there were drugs inside and punched occupant of the apartment

in the face for no reason).[9]

### 2.    Clearly Established Right.

Because the Court has held that the facts alleged by Plaintiff establish a violation of a

constitutional right, the Court must consider next whether the right violated was clearly

established.  *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).  Although "there is no doubt that

*Graham v. Connor*, 490 U.S. 386 (1989), clearly establishes the general proposition that the use

of force is contrary to the Fourth Amendment if it is excessive under objective standards of

reasonableness," *id.* at 202, "'the right [Defendants are] alleged to have violated must have been

'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the

right must be sufficiently clear that a reasonable official would understand that what he [or she] is

doing violates that right,'" *id.* (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)).  Therefore,

"the relevant, dispositive inquiry in determining whether a right is clearly established is whether it

would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation . . .

confronted."  *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).  Under this test, even if a

---

[9] *See also Park v. Shiflett*, 250 F.3d 843, 853 (4th Cir. 2001) (it was objectively
unreasonable for an officer to use pepper spray twice on an unarmed individual who did not pose
a threat to the officers or the public); *Leedy v. Pollock*, No. 98-1421-KHV, 1999 U.S. Dist.
LEXIS 14783, at *4, 9, 11-12 (D. Kan. 1999) (it was objectively unreasonable for an officer to
use his knee to strike suspect not committing a relatively severe crime and not resisting arrest);
*Smith v. Delamaid*, 842 F. Supp. 453, 460 (D. Kan. 1994) (under due process clause, which is
"more onerous than the Fourth Amendment's 'objective reasonableness' standard," "a reasonable
police officer would know that to kick, punch, and throw a restrained, cooperative arrestee
constitutes excessive force").

defendant were mistaken in believing . . . probable cause to arrest a plaintiff [existed], the defendant may be entitled to immunity if the mistaken belief was reasonable.  *See Holland v. Harrington*, 268 F.3d 1179, 1196 (10th Cir. 2001).  "A mistake of law may be 'reasonable' where the circumstances 'disclose substantial grounds for the officer to have concluded he [or she] had legitimate justification under the law for acting as he [or she] did.'"  *Id.* at 1196 (quoting *Saucier*, 533 U.S. at 208).  The Tenth Circuit has held that for a right to be "particularized," there "ordinarily . . . must be a Supreme Court or Tenth Circuit opinion on point."  *Garramone v. Romo*, 94 F.3d 1446, 1451 (10th Cir. 1996).  That is not to say, however, that "the very action in question [must have] previously been held unlawful" for a plaintiff to defeat qualified immunity, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), but rather that in light of preexisting law, the unlawfulness was apparent.

In this case, Plaintiff has established the second part of his burden by demonstrating that the right to be free from excessive police force is "clearly established" in the "more particularized sense" required by Supreme Court precedent.  *See Saucier*, 533 U.S. at 202.  Specifically, the "contours of the right" to be free from excessive police force are "sufficiently clear that a reasonable off[icer]" in the position of Defendant Officers would have "underst[ood] that what he [or she was] doing"--*e.g.*, striking and knocking to the ground with enough force to cause serious injuries a naked, visibly unarmed and unthreatening individual who was not attempting to flee in order to effectuate an arrest--violates that right.  *See, e.g.*, *id.* (citation and internal quotations omitted); *Hung v. Watford*, No. 01-3580, 2002 U.S. Dist. LEXIS 23064, *18-19 (E.D. Pa. Dec. 3, 2002) ("an unprovoked grab, punch, kick and handcuffing of an individual who is not resisting arrest . . . , not fleeing . . . and not engaging in any threatening activity . . . was clearly established

as a violation of a constitutional right") (unpublished decision); *Delamaid*, 842 F. Supp. at 460

("reasonable police officer would know that to kick, punch, and throw a restrained, cooperative

arrestee constitutes excessive force").[10]   Although a mistake of law may be reasonable where the

"circumstances 'disclose substantial grounds for the officer to have concluded he had legitimate

justification under the law for acting has he did,'" *Holland*, 268 F.3d at 1196 (citation omitted), at

this stage in the litigation, Defendant Officers have not disclosed, and the Court cannot consider,

such grounds.  *See Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994) (qualified immunity

analysis on a motion to dismiss is confined only to the pleadings), *cert. denied*, 513 U.S. 1183

(1995); *Saucier*, 533 U.S. at 201-02 (court must consider facts as alleged by plaintiff); *see also*

*Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (a defendant asserting a qualified

immunity defense in response to a Rule 12(b)(6) motion must face a more challenging standard of

review than would apply on summary judgment because motions to dismiss for failure to state a

claim are viewed with disfavor and are rarely granted) (citation omitted).  Plaintiff therefore has

satisfied both the first and second parts of his burden to overcome Defendant Officers' assertion

of qualified immunity, and the Court must deny the motion to dismiss the excessive force claim on

this ground.

     B.     <u>Section 1983 Unlawful Entry</u>.

     To determine whether Plaintiff has established an unlawful entry constitutional violation

on the facts alleged, the Court again must look to the substantive law in effect at the time the

conduct in question occurred.  *See Saucier*, 533 U.S. at 199.  The Supreme Court squarely held in

---

[10] *Martinez*, 2002 WL 1753176, at * 3 (unpublished decision); *Henry v. Albuquerque Police Dep't*, No. 01-2297, 2002 WL 31379859, at *2-3 (10th Cir. Oct. 23, 2002) (unpublished decision).

1995 that "'an officer's unannounced entry into a home might be unreasonable under the Fourth

Amendment,' at least absent a sufficient showing of countervailing law enforcement interests."

*Holland*, 268 F.3d at 1193 (quoting *Wilson v. Arkansas*, 514 U.S. 927, 934, 936 (1995)); *see*

*also United States v. Mitchell*, 783 F.2d 971, 974 (10th Cir.), *cert denied.*, 479 U.S. 860 (1986).

The Court cautioned, however, that the "Fourth Amendment's flexible requirement of

reasonableness should not be read to mandate a rigid rule of announcement that ignores

countervailing law enforcement interests." *Wilson*, 514 U.S. at 934.  The Court delegated the

task of determining under what circumstances an unannounced entry might be reasonable to the

lower courts.  *See id.* at 936.

  The Tenth Circuit has explained, "[i]n reviewing that 'legal question[]' [of whether a

defendant's conduct as alleged by a plaintiff violates clearly established law,] the reasonableness

of the alleged failure to knock and announce cannot be considered in isolation."  *Holland*, 268

F.3d at 1193.  A court is "called upon to evaluate one event, a single occurrence, in light of the

applicable standards of conduct and the totality of the circumstances surrounding that single

event."  *Id.*  "Taking the facts alleged by plaintiffs[] as true, and considering the totality of the

circumstances thus alleged," a court must determine whether "those facts show a violation of

clearly established constitutional rights."  *Id.* (citing *Wilson*, 514 U.S. at 936).

  As part of its initial inquiry, the Court must consider whether Plaintiff has alleged a

violation of a constitutional right at all.  Under *Wilson*, an unannounced entry into a dwelling is

unreasonable under the Fourth Amendment absent a showing of countervailing law enforcement

interests.  *See* 514 U.S. at 934, 936.  Plaintiff has alleged that Defendant Officers did not properly

announce their presence prior to entering the apartment, and that any probable cause for their

entry, search, and seizure of Plaintiff was obtained from a source known to be untrustworthy.

Plaintiff has not alleged any countervailing circumstances, such as the officers' fear for their safety

or their fear that evidence would be destroyed by announcing their presence.[11]  The Court only

can consider the facts alleged by Plaintiff in the amended complaint in rendering its qualified

immunity decision.  *See Gagan*, 35 F.3d at 1475.  Under this deferential standard, Plaintiff has

satisfied his burden of demonstrating a constitutional violation on the facts alleged.  *See Holland*,

268 F.3d at 1193, 1196 (failure to announce identity prior to entering suspect's house constitutes

a violation of the Fourth Amendment).

The Court next must determine whether the right Defendant Officers violated was clearly

established.  "[C]ommon-law courts long have held that 'when the King is party, the sheriff (if the

doors be not open) may break the party's house, either to arrest him, or to do other execution of

the King's process, if otherwise he cannot enter.'"  *Wilson*, 514 U.S. at 931-32 (quoting

*Semayne's Case*, 77 Eng. Rep. 194, 195 (K.B. 1603)).  "To this rule, however, common-law

courts appended an important qualification:  'But before he breaks it, he ought to signify the

cause of his coming, and to make request to open doors, for the law without a default in the

owner abhors the destruction or breaking of any house . . . ; for perhaps he did not know of the

process, of which, if he had notice, it is to be presumed that he would obey it.'"  *Id.* (quoting

*Semayne's Case*, 77 Eng. Rep. at 195-96)).  This common law knock and announce principle

"was woven quickly into the fabric of early American law."  *Id.* at 933.  Several Supreme Court

cases have acknowledged that the "common law principle of announcement is 'embedded in

_____

[11] If at a later stage in this proceeding Defendant Officers identify evidence indicating the presence of countervailing law enforcement interests, such a showing may negate as a matter of law Plaintiff's unlawful entry claim.

Anglo-American law,'" and the Court has expressly held that the "principle is an element of the

reasonableness inquiry under the Fourth Amendment."  *Id.*; *see also Holland*, 268 F.3d at 1193

(recognizing the existence of the knock and announce requirement acknowledged by the Supreme

Court in *Wilson*).  Congress also has codified the knock and announce rule.  *See* 18 U.S.C. §

3109 ("officer may break open any outer or inner door or window of a house . . . to execute a

search warrant, if, after notice of his authority and purpose, he is refused admittance"); *see also*

*King v. Marmon*, 793 F. Supp. 1030 (D. Kan. 1992) (knock and announce rule embodied in

federal statute is merely expressive of common law rule, and thus is equally applicable to state

officers) (citation omitted).  The requirement of announcement absent exigent circumstances is

well established and long predates Defendant Officers' alleged failure to announce their presence

in this case.  The constitutional knock and announce rule is sufficiently clear that a reasonable

officer in the position of Defendant Officers would have understood that entering a house

unannounced without any countervailing law enforcement interests would violate the right to a

reasonable search and seizure under the Fourth Amendment.  At this stage in the litigation,

Defendant Officers have not disclosed, and the Court cannot consider, facts demonstrating that

Defendant Officers had substantial grounds to justify acting as they did.  *See Holland*, 268 F.3d at

1193, 1196; *Gagen*, 35 F.3d at 1475; *Saucier*, 533 U.S. at 201-02.  Accordingly, Plaintiff has

satisfied the second part of his qualified immunity burden by demonstrating that Defendant

Officers violated Plaintiff's clearly established Fourth Amendment right.  *See Holland*, 268 F.3d at

1195-96 (noting that "'knock and announce' requirement acknowledged by the Supreme Court in

*Wilson* predates the . . . raid by nearly a year," and affirming the district court's decision that

officer who failed to announce his presence violated a clearly established constitutional right).

-23-

C.      Section 1983 Unlawful Detainment and Arrest.

To state a cause of action under Section 1983 for an unlawful arrest in violation of the

Fourth Amendment, a plaintiff must allege that the arrest was made without a warrant and

without probable cause to believe that the plaintiff had committed or was committing a crime.

*See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (citing *Tennessee v.*

*Garner*, 471 U.S. 1, 7 (1985)).  "In the context of a warrantless arrest in a [Section] 1983 action,

the court must grant a police officer qualified immunity 'if a reasonable officer could have

believed that probable cause existed to arrest the plaintiff.'"  *Id.* (quoting *Romero v. Fay*, 45 F.3d

1472, 1476 (10th Cir. 1995)); *see also United States v. Wright*, 932 F.2d 868, 877 (10th Cir.

1991), *cert. denied*, 502 U.S. 962 (1991).  "'Probable cause exists if facts and circumstances

within the arresting officer's knowledge and of which he or she has reasonably trustworthy

information are sufficient to lead a prudent person to believe that the arrestee has committed or is

committing an offense.'"  *Fay*, 45 F.3d at 1476 (quoting *Jones v. City & County of Denver*, 854

F.2d 1206, 1210 (10th Cir. 1988)) (additional citations omitted); *United States v. Morgan*, 936

F.2d 1561, 1568 (10th Cir. 1991) (citation omitted), *cert. denied*, 501 U.S. 1102 (1992).

"Although the court may determine whether probable cause existed at the time of the arrest by

taking into account factors such as whether the officer reasonably interviewed witnesses readily

available at the scene, whether he investigated basic evidence or whether he inquired if a crime

had been committed at all before invoking the power of warrantless arrest and detention, none of

these factors is dispositive or indeed necessary to the inquiry."  *Olsen*, 312 F.3d at 1312.

To withstand a motion to dismiss, a plaintiff must allege facts sufficient to state a violation

of a constitutional right.  Here, Plaintiff has alleged that Defendant Officers did not have probable

cause to arrest him, and that all information relied upon by the officers came from a source that the officers knew was unreliable.  Plaintiff further has alleged that Defendant Officers did not conduct any independent investigation to corroborate Cooper's statements, and that the Farmington Officers knew the FBI had investigated and then dismissed Cooper's allegations.  *See id.* (court can consider whether officer interviewed witnesses and investigated basic evidence). Plaintiff also has alleged that even though Cooper informed the officers that Plaintiff was in possession of drugs and other illicit items, Cooper had opportunity and motive to plant the contraband.  These facts alleged by Plaintiff, if true, are sufficient to demonstrate that Defendant Officers arrested Plaintiff based on untrustworthy information and therefore without probable cause.  *See Smith v. Barber*, 195 F. Supp. 2d 1264, 1278 (D. Kan. 2002) (denying a motion to dismiss in part because plaintiffs established a constitutional violation for unlawful arrest without probable cause where the complaint alleged that defendant officers arrested plaintiffs based solely on information from an informant that had a history indicating he was unreliable); *compare Eubanks v. Gerwens*, 771 F. Supp. 1216, 1219 (S.D. Fla. 1991) (where informant was a known criminal under intense pressure to provide the police with a narcotics dealer, and police knew that the informant had unlimited access to the plaintiff's vehicle immediately preceding the search and discovery of cocaine, a jury could find that probable cause was lacking).  Plaintiff has established the first part of his qualified immunity burden.

Plaintiff also must satisfy the second part of his burden by demonstrating that the right violated was clearly established--*i.e.*, that it would be clear to a reasonable officer that his or her conduct was unlawful in the situation he or she confronted.  *See Saucier*, 533 U.S. at 202.  Under this test, even if Defendant Officers were mistaken in believing they had probable cause to arrest

Plaintiff, the officers may be entitled to immunity if their mistaken beliefs were reasonable--*i.e.*, if the circumstances "disclose substantial grounds for the officer[s] to have concluded [they] had legitimate justification under the law for acting as [they] did." *Holland*, 268 F.3d at 1196.  Here, the circumstances do not disclose grounds for Defendant Officers to have concluded that relying upon allegedly untrustworthy information was sufficient to demonstrate probable cause.  To the contrary, well-settled law indicates that probable cause must be based on reasonably trustworthy information. *See, e.g.*, *Olsen*, 312 F.3d at 1312; *Fay* 45 F.3d at 1476.  Accordingly, it would be clear to a reasonable officer that it would be unlawful to arrest Plaintiff based upon unreliable information. *See Barber*, 195 F. Supp. 2d at 1278 (plaintiffs demonstrated violation of a clearly established right where the complaint alleged that defendant officers arrested plaintiffs based solely on information from an unreliable informant).[12]

III.     Are Plaintiff's State Tort Claims Barred by the Statute of Limitations in the New Mexico Tort Claims Act?

The New Mexico Tort Claims Act provides the exclusive remedy for a tort action brought against a governmental entity or a public employee. *See* N.M. Stat. Ann. § 41-4-17 (the "Tort Claims Act . . . shall be the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived"); *see id.* § 41-4-2 ("it is declared to be the public

---

[12] The San Juan County Defendants cite *St. John v. Justman*, 771 F.2d 445, 448 (10th Cir. 1995), in support of their argument that there can be no Section 1983 unreasonable seizure claim where there is a finding of probable cause by a magistrate after an arrest. *St. John* is not controlling here.  In *St. John*, the finding of probable cause occurred in the form of a facially valid arrest warrant. *See id.*  Here, Plaintiff has alleged that the officers arrested him without probable cause and without an arrest warrant (the amended complaint does not contain an allegation indicating that the officers were in possession of an arrest warrant).  As described herein, a plaintiff alleging an arrest made without a warrant and without probable cause can state a claim for unlawful arrest in violation of Section 1983. *See, e.g.*, *Olsen*, 312 F.3d at 1312.

policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act . . . and in accordance with the principles established in that act"). Defendants San Juan County and City of Farmington are governmental entities and Defendant Officers are public employees within the meaning of the Act. *See id.* §§ 41-4-3(B) & (F). Accordingly, any tort claim asserted against Defendants must be brought within the limitations of the Act. *See id.* § 41-4-2(B).

A.      Battery and Trespass.

In support of his claims for battery and trespass, Plaintiff alleges that Defendant Officers in their individual and official capacities "unlawfully and intentionally entered Plaintiff's property, . . . forcibly broke down and damaged [the] door, forcibly and violently knocked Plaintiff, who was not dressed, to the ground, [and] touched or applied force to the person of Plaintiff[] in a rude, insolent or angry manner in connection with the arrest of Plaintiff on or about October 4, 1999." Plaintiff further alleges that the San Juan County Sheriff's Department and the City of Farmington Police Department "acquiesced" in Defendant Officers' conduct.

Plaintiff's claims for battery and trespass are based upon alleged conduct that occurred on October 4, 1999. Section 41-4-15 of the Tort Claims Act provides that "[a]ctions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death." N.M. Stat. Ann. § 41-4-15. The statute of limitations on a claim for battery or trespass begins to run on the date the action actually occurred. *See Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) ("[c]laims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the

actions actually occur") (citations omitted); *City of Ahawnee v. AT&T Corp.*, 910 F. Supp. 1546, 1561 (D. Kan. 1995) ("the ordinary trespass is complete when it is committed; the cause of action accrues, and the statute of limitations begins to run at that time") (citing W. Page Keeton *et al.*, *Prosser and Keeton on Torts* 83 (5th ed. 1984)).  Accordingly, the limitations period expired two years later on October 4, 2001.  Plaintiff filed his complaint outside the limitations period on March 22, 2002.  Plaintiff's claims for battery and trespass therefore are barred by the statute of limitations unless Plaintiff has alleged facts that demonstrate the statute was tolled.

In an effort to save his claim, Plaintiff invokes the continuing wrong doctrine, which has been recognized, although not applied consistently, by New Mexico courts.[13]  *See Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430-31 n.4 (10th Cir. 1996) (citations omitted); *see also F.D.I.C. v. Schuchmann*, 224 F. Supp. 2d 1332, 1341 (D.N.M. 2002).  "Under [this] doctrine, . . . 'where a tort involves a continuing or repeated injury, the cause of action accrues at, and the limitations begin to run from, the date of the last injury.'"  *Tiberi*, 89 F.3d at 1430-31 (quoting 54 C.J.S. Limitation of Actions § 177 (1987)); *accord Schuchmann*, 224 F. Supp. 2d at 1341.  In order to invoke the continuing wrong doctrine, a party must point to continuing wrongful conduct.  *See Tiberi*, 89 F.3d at 1430-31; *see also, e.g.*, *Ealy v. Sheppeck*, 100 N.M. 250, 251, 669 P.2d 259, 260 (N.M. Ct. App.) (rejecting application of continuing wrong doctrine where plaintiff filed an untimely malpractice claim because there was only intermittent and not continuous treatment by physician), *cert. denied*, 102 N.M. 259, 669 P.2d 735 (1983), *and overruled in part on other grounds by Juarez v. Nelson*, 133 N.M. 168, 61 P.3d 877 (N.M. Ct. App. 2002); *Flowers v.*

---

[13] The tolling of a statute of limitations, including tolling under the continuous wrong doctrine, is governed by state law.  *See F.D.I.C. v. Schuchmann*, 224 F. Supp. 2d 1332, 1341 (D.N.M. 2002).

*Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (continuing wrong "doctrine applies when there is 'no single incident' that can 'fairly or realistically be identified as the cause of significant harm'") (citing *Page v. United States*, 729 F.2d 818, 821-22 (D.C. Cir. 1984)).  Plaintiff's complaint, however, alleges only a single instance of battery and a single instance of trespass.  The Court neither can assume that Plaintiff can prove other cases of battery or trespass when Plaintiff has not alleged any facts to support this assumption nor accept as true Plaintiff's conclusory and unsupported allegation that Defendants' conduct was of a continuing nature.  Plaintiff has not alleged any continuing conduct.  Accordingly, Plaintiff cannot state a timely, valid claim for relief under the Tort Claims Act by invoking the continuing wrong doctrine.

Plaintiff argues that even if the continuing wrong doctrine does not toll the statute of limitations here, the Court nonetheless must deny Defendants' motion to dismiss.  According to Plaintiff, the complaint contains allegations indicating that the two-year statute of limitations in the Tort Claims Act does not govern his claims.[14]  First, Plaintiff argues that the Act does not provide immunity to law enforcement officers for alleged intentional conduct and that claims for battery and trespass, both intentional torts, are not covered by the Act.  In support of this argument, Plaintiff cites *Allen v. McClellan*, in which the court states that "an officer of the state who acts outside the scope of his authority and in so doing commits a willful and malicious tort may be held liable for his actions."  77 N.M. 801, 806, 427 P.2d 677, 680 (N.M. 1967), *overruled in part on other grounds by New Mexico Livestock Bd. v. Dose*, 94 N.M. 68, 607 P.2d 606 (N.M. 1980).  *Allen*, however, was decided in 1967, prior to the enactment of the Tort Claims Act,

---

[14] If the two-year statute of limitations does not apply, Plaintiff's claims would be governed by the common law three-year statute.  *See* N.M. Stat. Ann. § 37-1-8.  The October 4, 1999, battery and trespass fall within the common law's three-year limitations period.

when New Mexico officials were protected by the common law--and not statutory--doctrine of sovereign immunity.  In the 1970s, when the New Mexico legislature enacted the Tort Claims Act, the legislature expressly indicated that the Act covers "all government entities and public employees . . . within the limitations of the . . . Act . . . and in accordance with the principles established in that act."  N.M. Stat. Ann. § 41-4-2(A).  By its very terms, the Act protects and even indemnifies government entities and employees from negligent and intentional tort claims, provided those claims fall within the limitations of the Act.  Indeed, in *Risk Management Division v. McBrayer*, the court confirmed this fact by explicitly holding that the Act covers intentional torts.  *See* 129 N.M. 778, 783-85, 14 P.3d 43, 48-50 (N.M. Ct. App.) (officials are entitled to immunity for intentional torts provided immunity for those torts is not waived), *cert. denied*, 130 N.M. 17, 16 P.3d 442 (N.M. 2000); *see also Methola v. County of Eddy*, 95 N.M. 329, 332, 622 P.2d 234, 237 (N.M. 1980).

Plaintiff, citing *Weinstein v. City of Santa Fe*, also argues that the Tort Claims Act contains a blanket waiver of immunity for intentional torts.  *Weinstein*, however, does not stand for this proposition.  *See* 121 N.M. 646, 652, 916 P.2d 1313, 1319 (N.M. 1996).  In *Weinstein*, the court explained that Section 41-4-12 of the Tort Claims Act waives immunity for certain expressly enumerated torts.  *See id.*, 916 P.2d at 1319.  In its next sentence, the court stated that Section 41-4-12 waives immunity "not only for intentional torts committed by law enforcement officers, but also for acts committed by third parties when caused by the negligence of . . . officers."  *Id.*, 916 P.2d at 1319.  Plaintiff cites this latter sentence alone in support of his argument that the Act waives immunity for all intentional torts without referring to the immediately preceding sentence that explicitly limits the waiver of immunity to the expressly-

defined list of torts.  *See id.*, 916 P.2d at 1319; *see also, e.g., Caillouette v. Hercules, Inc.*, 113

N.M. 492, 497, 827 P.2d 1306, 1311 (N.M. Ct. App. 1992), *cert. denied*, 113 N.M. 352, 826

P.2d 573 (N.M. 1992); *Methola*, 95 N.M. at 333, 622 P.2d at 238.  Plaintiff's argument that one

sentence alone taken out of context in *Weinstein* stands for the proposition that the Tort Claims

Act waives immunity for all intentional torts does not have merit.  Indeed, it stands in direct

contravention of New Mexico law.  *See McBrayer*, 129 N.M. at 783-85, 14 P.3d at 48-50

(holding that the Act covers intentional torts and explaining that excluding such torts would be

irreconcilable with the indemnification provisions of the Act, which permit the state to recover

defense and settlement costs from employees who have "'acted fraudulently or with actual

intentional malice'") (quoting N.M. Stat. Ann. §§ 41-4-4(E), 41-4-17(A)).

      In the alternative, Plaintiff argues that Defendant Officers were acting outside the scope of

their duties and therefore are not entitled to immunity under the Tort Claims Act.[15]  Plaintiff,

however, does not directly allege that Defendant Officers acted outside the scope of their duties.

Instead, Plaintiff suggests that because he alleged in the amended complaint that Defendant

Officers acted in their individual capacities, Plaintiff effectively alleged (although he did not do so

specifically in the amended complaint) that Defendant Officers were acting outside the scope of

their duties.  Because the Tort Claims Act applies only to government entities and public

---

      [15] This argument applies only to Defendant Officers and not to Defendants San Juan
County or the City of Farmington.  A county or city cannot act inside or outside the scope of its
duties.  A "[county or] city can only act through its officials and employees."  *Speer v. City of
Wynne*, 276 F.3d 980, 986 (8th Cir. 2002); *see also Abalos v. Bernalillo County Dist. Attorney's
Office*, 105 N.M. 554, 558, 734 P.2d 794, 798 (N.M. Ct. App. 1987) (same), *cert. denied*, 106
N.M. 35, 738 P.2d 907 (N.M. 1987).  Accordingly, San Juan County and the City of Farmington
cannot be held independently liable, but rather must be found vicariously liable for the acts of their
officials.

employees acting within the scope of their duties, *see* N.M. Stat. Ann. §§ 41-4-2, 41-4-4, Plaintiff

suggests that the Act's two-year statute of limitations does not apply to his individual capacity

battery and trespass claims.

Plaintiff's argument assumes that there is a direct correlation between scope of duties and

the capacity in which an official is sued.  New Mexico does not recognize this correlation.  "[T]he

distinction between a[n] official in an official capacity and a[n] official in an individual capacity

does not turn on the type of conduct involved"--*i.e.*, whether the official was acting within or

outside the scope of his or her duties.  *Ford v. New Mexico Dep't of Public Safety*, 119 N.M.

405, 410, 891 P.2d 546, 551 (N.M. Ct. App. 1994) (rejecting argument that a lawsuit against an

official acting within the scope of his duties must by definition be a lawsuit against the official in

his or her official capacity), *cert. denied*, 119 N.M. 354, 890 P.2d 807 (N.M. 1995).  Rather, the

distinction "turns on procedural considerations and the relief sought."  *Id.*, 891 P.2d at 551.  In

essence, a suit against an official in his official capacity is a suit against the municipality; a suit

against an official in his individual capacity is a suit seeking damages from the individual and not

the municipality.  *See id.* at 411, 891 P.2d at 552; *see also Hafer v. Melo*, 502 U.S. 21, 26 (1991)

("the phrase 'acting in [his or her] official capacit[y] is best understood as a reference to the

capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged

injury").

Consistent with its obligation to interpret the amended complaint liberally in Plaintiff's

favor, however, the Court will construe the complaint as alleging that Defendant Officers were

acting outside the scope of their duties.  Plaintiff's claim must nonetheless fail for a different

reason.  A conclusory allegation that Defendant Officers were acting outside the scope of their

duties standing alone cannot defeat a motion to dismiss. The Court cannot locate, and Plaintiff does not identify, any factual allegations that support his claim that Defendant Officers acted outside the scope of their duties when he arrested Plaintiff on October 4, 1999.

To the contrary, the allegations in the complaint demonstrate that Defendant Officers were acting within the scope of their duties. In *Risk Management Division v. McBrayer*, the court broadly defined scope of duty under the Tort Claims Act. *See* 129 N.M. at 781, 14 P.3d at 46. The *McBrayer* court held that a reasonable jury could find that a university professor was acting within the scope of his duties when he lured a student to his apartment allegedly to obtain her homework assignments and then "brutally attacked," "sexually assaulted and tortured," and "tried to kill" her. *See id.* at 779, 781, 784, 14 P.3d at 44, 46, 49. Under the Tort Claims Act, "'scope of duty' means performing any duties that a pubic employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." N.M. Stat. Ann. § 41-4-3(G). The *McBrayer* court held that although the attack (of course) was unauthorized, a nexus existed between the instructor's authorized duties and his after-class interaction with the student seeking class assignments. *See McBrayer*, 129 N.M. at 784, 14 P.3d at 49; *see also Celaya v. Hall*, 85 P.3d 239, 245 (N.M. 2004). This connection was sufficient to conclude that the unauthorized attack could fall within the instructor's "scope of duties" under the Act. *See id.* at 245. The court held, "Because it appears that [the instructor] used this authorized duty as a subterfuge to accomplish his assault, we find that a reasonable fact finder could determine that his actions were within the scope of the duties that NMSU requested, required or authorized him to perform." *See McBrayer*, 129 N.M. at 784, 14 P.3d at 49; *accord Celaya*, 85 P.3d at 245.

Here, Plaintiff does not provide any factual allegations to support his claim that Defendant

Officers acted outside the scope of their duties.  Plaintiff only alleges that Defendant Officers

forcibly entered Plaintiff's apartment and knocked him down while attempting to arrest him and

search the apartment.  Arresting suspects and searching suspects and their homes are integral

parts of a law enforcement officer's duties, and there is clearly a connection between the arrest

and the alleged battery.  *See McBrayer*, 129 N.M. at 784, 14 P.3d at 49.  Indeed, the New

Mexico legislature has expressly provided that "the police officer of a municipality shall . . .

apprehend any person in the act of violating the laws of the state or the ordinances of the

municipality and bring him before competent authority for examination and trial."   N.M. Stat.

Ann. § 3-13-2(A); *see also id.* § 29-1-1 ("It is hereby declared to be the duty of every . . . peace

officer to investigate all violations of the criminal laws of the state which are called to the

attention of any such officer or of which he is aware").  The fact that Defendant Officers may

have used unreasonable force to effectuate the arrest does not render their actions outside the

scope of their duties.  Plaintiff does not argue otherwise.  Instead, Plaintiff claims that his

individual capacity allegations standing alone are sufficient to demonstrate that Defendant Officers

acted outside the scope of their duties.  Although it is difficult to imagine any act of a law

enforcement officer that is more required or authorized than the act of arresting a suspect, the

Court is not allowed to assume that Plaintiff could conceive of such a situation when Plaintiff has

not alleged any supporting facts.

Even if the Court assumes all well-pleaded facts to be true and draws all reasonable

inferences in favor of Plaintiff, the complaint does not state a valid claim for relief.  On the facts

alleged, the Tort Claims Act's two-year statute of limitations bars Plaintiff's claim.  The Court

therefore dismisses Plaintiff's battery and trespass claims without prejudice.

      B.    <u>Defamation</u>.

Defendants also challenge the timeliness of Plaintiff's defamation claims.  In support of the claims, Plaintiff alleges, "On or about October 4, 1999, Defendant[] [Officers] . . . published a communication and statement defaming Plaintiff and injuring Plaintiff's professional, business and personal reputation, including statements that Plaintiff had committed criminal offenses . . . and that Plaintiff and Torrez Bonds was not fit to conduct bonding business."  Plaintiff attaches the criminal complaint containing the allegedly defamatory statements to his amended complaint.

Although Plaintiff alleges that Defendant Officers defamed him by filing a criminal complaint against him, that statement was published on October 4, 1999, approximately two and one-half years before Plaintiff filed his original complaint in this action.  The statute of limitations on a defamation claim begins to run at the time the defamatory statement was published.  *See, e.g.*, *Fikes v. Furst*, 133 N.M. 146, 151, 61 P.3d 855, 860 (N.M. Ct. App. 2002) (citation omitted).  Accordingly, the two-year statute of limitations in the Tort Claims Act expired almost six months before Plaintiff filed his initial complaint.  Plaintiff's October 4, 1999, defamation claim therefore is barred unless the Act's statute of limitations was tolled.

Once again, Plaintiff attempts to resurrect his claim by invoking the continuing wrong doctrine.  As described herein, to invoke this doctrine, a defendant's wrongful conduct must be of a continuous nature.  *See Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430-31 (10th Cir. 1996); *Ealy v. Sheppeck*, 100 N.M. 250, 251, 669 P.2d 259, 260 (N.M. Ct. App. 1983).  In this case, the filing an allegedly defamatory criminal complaint alone does not meet the continuous conduct requirement of the doctrine.  Plaintiff, however, also alleges generally that "[d]efendant law

enforcement officers . . . have published statements to the media, unfavorably disparaging and defaming Plaintiff, including publishing false information obtained from Cooper, a source known by Defendant[s] to be unreliable and untrustworthy," and that "[b]eginning about February 1998, and continuing through the present time, . . . Defendants . . . publish[ed] communications . . . that Plaintiff was . . . dealing and using illegal drugs or controlled substances."

The parties cite no New Mexico cases and this Court has not found any New Mexico cases deciding whether the publication of multiple allegedly defamatory statements is sufficient to invoke the continuing wrong doctrine or whether such actions constitute discrete wrongful acts not subject to the doctrine. *See Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002). Defendants note, however, that the Ninth Circuit has held that "publication of [an allegedly defamatory statement] [i]s a single incident," and that "'[a] cause of action for defamation accrues immediately upon the occurrence of the tortious act and thus, is not appropriate for the continuing violation exception.'" *Id.* (quoting *Lettis v. U.S. Postal Serv.*, 39 F. Supp. 2d 181, 205 (E.D.N.Y. 1998)). In *Flowers v. Carville*, the court did not allow the plaintiff to resurrect her untimely defamation claim by relying upon later, timely defamatory statements by the same defendant. *See id.* at 1126-27. The court indicated, "The only thing 'continuing' about this tort was [the plaintiff's] protracted failure to bring a lawsuit when she had the chance." *Id.* at 1126. Likewise, in *Celli v. Shoell*, the District of Utah specifically held that "repeated defamatory statements do not toll the running of the statute of limitations. Rather, each new statement constitutes a distinct cause of action." 995 F. Supp. 1337, 1345 (D. Utah 1997) (citing 50 Am. Jur. 2d, Libel and Slander § 427 (1995); 53 C.J.S., Libel and Slander § 122 (1987)). Based on this holding, the *Celli* court dismissed the plaintiff's defamation claims because they were not brought within the

-36-

statute of limitations.  *See id.*

The Court need not determine at this stage, however, whether Plaintiff can resurrect his October 4, 1999, defamation claim by proving subsequent conduct within the limitations period and invoking the continuing wrong doctrine to toll the statute of limitations on the earlier claim.[16] Plaintiff's defamation claims fail for another reason.  Although Plaintiff's October 4 defamation allegation is sufficiently specific to state a claim for relief,[17] the allegations comprising Plaintiff's other more general defamation claims that fall within the limitations period are not sufficiently specific to state valid claims for relief.  In his general defamation allegations, Plaintiff does not specify precisely what defamatory statements Defendant Officers allegedly made or when Defendant Officers allegedly made the statements.  Claims of defamation require "'greater factual detail and specificity with regard to most elements of the complaint than might otherwise be true in civil actions.'"  *Andrews v. Stallings*, 119 N.M. 478, 485, 892 P.2d 611, 618 (N.M. Ct. App. 1995).  A plaintiff alleging defamation must "'plead precisely the statements about which [he or she] complain[s].'"  *Id.* at 485, 892 P.2d at 618 (citations omitted).  Here, Plaintiff has not alleged his general defamation claims with sufficient specificity, and Plaintiff therefore has not stated a valid claim for relief.  *See Celli*, 995 F. Supp. at 1346 (holding that "the complaint fails to identify any specific defamatory statements made by the defendants or when, where, or to whom any

---

[16]  The Court likewise need not consider whether Plaintiff's awareness of his rights outside the limitations period prohibits application of the continuing wrong doctrine.  *See Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1431 (10th Cir. 1996); *F.D.I.C. v. Schuchmann*, 224 F. Supp. 2d 1332, 1341 (D.N.M. 2002).

[17]  Plaintiff attaches to his amended complaint a copy of the criminal complaint containing the allegedly defamatory statements.  Accordingly, Plaintiff specifies precisely the allegedly defamatory language.

defamatory statements were made" and that "[s]ince plaintiffs have failed to identify any

defamatory statement, the defamation claim is subject to dismissal for failure to state a claim upon

which relief can be granted").  Accordingly, the Court must dismiss without prejudice under Rule

12(b)(6) Plaintiff's vague and unspecific general defamation claims.

Because Plaintiff's general allegations of defamation do not state a valid claim for relief,

Plaintiff cannot rely on these allegations to invoke the continuing wrong doctrine and resurrect his

October 4, 1999, claim.  Plaintiff has alleged properly only a single--and not a continuous--wrong,

and therefore Plaintiff has not stated a valid claim for tolling the statute of limitations on his

October 4 defamation claim.  The Court therefore dismisses without prejudice Plaintiff's October

4, 1999, defamation claim under Rule 12(b)(6) for failure to state a valid claim for relief.[18]

C.    Interference with Prospective Business Advantage, False Light Invasion of
      Privacy, and Intentional Infliction of Emotional Distress.

The San Juan County Defendants also argue that the statute of limitations bars Plaintiff's

claims for interference with prospective business advantage, false light invasion of privacy, and

---

[18] Plaintiff does not argue that the two-year statute of limitations in the Tort Claims Act is inapplicable to the October 4, 1999, claim because Defendant Officers were acting outside the scope of their duties.  Even if Plaintiff had set forth this argument, however, the Court would reject it for the same reasons it rejected the argument in reference to Plaintiff's battery and trespass claims.  A conclusory legal allegation that Defendant Officers acted outside the scope of their duties is not sufficient to withstand a motion to dismiss when the factual allegations indicate that Defendant Officers were acting within the scope of their duties.  Plaintiff's October 4, 1999, defamation claim is based upon the issuance of a criminal complaint against him, and issuing a criminal complaint is clearly within the scope of a law enforcement officer's duties.  *See* N.M. Stat. Ann. § 29-1-1 (setting forth general duties of all law enforcement officers, including the duty to "file a complaint or information"); *id.* § 3-13-2(B) ("a police officer shall . . . be subject to the same responsibilities as sheriffs"); *id.* § 4-37-4(A) ("[i]t is the duty of every . . . sheriff . . . diligently [to] file a complaint or information"); *id.* § 4-41-2 (the "sheriff shall . . . cause all offenders to keep the peace and to appear at the next term of the court and answer such charges as may be preferred against them").

intentional infliction of emotional distress claims.  In support of these claims, Plaintiff alleges, among other things, that beginning in February 1998 and continuing through the present, Defendant Officers published communications to third parties, including statements that Plaintiff was not fit or able to perform his work as a bail bondsman and that Plaintiff worked and associated with criminals.  Plaintiff also alleges that Defendant Officers published disparaging statements to the media, including false statements obtained from an untrustworthy source. Plaintiff further alleges that beginning in October 1999, Defendant Officers subjected him to ongoing investigation, increased surveillance, scrutiny, harassment, and intimidation.

Plaintiff's claims are based upon alleged conduct that began in February 1998 and October 1999 and that has continued through the present.  The original complaint in this action was filed on March 22, 2002.  To determine whether the two-year statute of limitations in the Tort Claims Act bars Plaintiff's claims the Court must first examine the accrual date of Plaintiff's causes of action to discern when the statute of limitations on the claims began to run and next determine, if the statute has run, whether the statute somehow was tolled.

In New Mexico, a statute of limitations begins to run "when the cause of action accrues, the accrual date usually being the date of discovery."  *New Mexico v. Public Employees Retirement Ass'n*, 133 N.M. 20, 27, 59 P.3d 500, 507 (N.M. 2002) (citation omitted); *see also Primedical, Inc. v. Allied Investment Corp.*, No. 90-1802, 1994 U.S. Dist. LEXIS 4517, *13-14 (D.D.C. Mar. 31, 1994) ("the clock begins ticking [on a tortious interference with business relationship claim] when 'the fact of injury is sufficiently plain for plaintiffs' cause of action to accrue even though the extent and precise nature of the injury has not yet developed'") (citation omitted).  In *Bolden v. Corrales*, the New Mexico Court of Appeals held that for injuries that are

not "inherently unknowable," discovery occurs on the date of a tortious act, even if "the full

extent of the injury was not known" until later.  111 N.M. 721, 722, 809 P.2d 635, 636 (N.M. Ct.

App.), *cert. denied*, 111 N.M. 77, 801 P.2d 659 (N.M. 1990); *see also F.D.I.C. v. Schuchmann*,

224 F. Supp. 2d 1332, 1339 (D.N.M. 2002) (applying accrual rule set forth in *Bolden*) (citations

omitted).  The *Bolden* court refused to apply a line of case law holding that the limitations period

under the Tort Claims Act commences when an injury manifests itself rather than when the

wrongful act occurs, reasoning that this case law applies only where the injury is "inherently

unknowable."  *See Bolden*, 111 N.M. at 721-22, 801 P.2d at 635-36.  Under the rule announced

in *Bolden*, the statute of limitations on Plaintiff's claims began to run when the alleged conduct

occurred.  *See id.*, 801 P.2d at 635-36; *Schuchmann*, 224 F. Supp. 2d at 1339 (citations omitted).

Because Plaintiff alleged various instances of wrongful conduct beginning in February 1998 and

October 1999 and continuing through the present, the statute of limitations expired at different

times depending upon when the wrongful acts alleged by Plaintiff occurred.  The Court, however,

need not decide the exact accrual date of Plaintiff's claims because Plaintiff has alleged that the

statute of limitations, no matter when it began to run, was tolled by the continuing wrong

doctrine.

Plaintiff's complaint alleges conduct beginning in 1998 and 1999 and continuing through

the present.  The San Juan County Defendants argue that the continuing wrong doctrine does not

apply because Plaintiff's allegations demonstrate that Plaintiff's claims were ascertainable

beginning in 1998 and 1999 and that the statute of limitations period began to run at that time.

*See Tiberi v. Cigna*, 89 F.3d 1423, 1431 (10th Cir. 1996).  For purposes of a motion to dismiss,

the Court must construe all inferences in favor of Plaintiff and only dismiss if it appears beyond a

doubt that Plaintiff can prove no set of facts in support of his claims that would entitle him to

relief.  Under this generous standard, Plaintiff's allegations do not indicate that he discovered the

injury in 1998 or 1999.  Rather, the allegations demonstrate that at the time Plaintiff filed his

complaint, he was aware that these actions had occurred beginning in 1998 and 1999 and

continuing through the present.  The Court cannot say that Plaintiff can prove no set of facts

indicating that the continuing wrong doctrine should apply.[19]  Accordingly, the Court must deny

the motion to dismiss.

        The Court also denies the motion to dismiss Plaintiff's claims on another ground.  Plaintiff

argues, and the Court agrees, that if the amended complaint contains factual allegations that

Defendant Officers were acting outside the scope of their duties, the claims are not covered by the

Tort Claims Act and therefore are not barred by the two-year statute of limitations in the Act.

Although a conclusory allegation that Defendant Officers were acting outside the scope of their

duties alone is not sufficient to overcome a motion to dismiss, the Court's review of the complaint

reveals factual allegations that support this conclusion.  Specifically, the Court cannot determine

beyond a doubt that publishing communications to the media (or other third-parties unrelated to

the judicial proceedings instituted against Torrez, *compare supra* note 18) is within the scope of a

law enforcement officer's duties--*i.e.*, that the San Juan County Sheriff's Department or the City

of Farmington Police Department "requested, required or authorized" Defendant Officers to

_____

        [19] Once the parties have developed the record in this case, the facts may demonstrate that
there was a definite and discoverable injury outside the limitations period and that plaintiff had no
reason for not coming forward to seek redress within the limitations period.  *See Schuchmann*,
224 F. Supp. 2d at 1342.  If such a time comes, judgment in Defendants' favor might be
appropriate.  *See id.*

perform these acts.[20]  *See McBrayer*, 129 N.M. at 781, 784, 14 P.3d at 46, 49 (conduct may be within the scope of an official's duties if a connection exists between the official's authorized duties and his or her allegedly tortious conduct).  Defendants do not point to any statutory provision, and the Court cannot find any such provision, indicating that a law enforcement officer has a duty to communicate such information to third parties or the media.  Rather, by statute, the general duties of a law enforcement officer include investigating crimes, arresting and detaining suspects, filing criminal complaints, and assisting prosecutors in their cases.  *See, e.g.*, N.M. Stat. Ann. §§ 29-1-1, 3-13-2 (A) & (B), 4-37-4(A), 4-41-2.

Conduct such as this is markedly different from the conduct Plaintiff alleged in support of his battery, trespass, and defamation claims and that the Court concluded fell within the scope of a law enforcement officer's duties.  Although the filing of a criminal complaint normally does not constitute conduct outside the scope of a law enforcement officer's duties, and entering a suspect's home based on alleged probable cause to arrest the suspect also normally does not constitute conduct outside the scope of a law enforcement officer's duties, publishing communications to third parties and the media that a suspect is not fit or able to perform his work as a bail bondsman could fall outside the scope of an officer's duties.[21]

---

[20] The San Juan County Defendants argue that the alleged communications to the media and other third parties relate only to the arrest of Torrez, and that publishing these communications falls within the scope of Defendant Waybourn's duties.  Although some of the allegations in the amended complaint relate to the filing of the criminal complaint against Torrez, other allegations do not.  Accordingly, this argument does not have merit.  Moreover, even if the communications to the media and other third parties did relate to the arrest, the Court cannot conclude that such statements regarding an arrest necessarily fall within the scope of a law enforcement officer's duties.

[21] Plaintiff also alleges in support of these claims that Defendants have subjected him to ongoing investigation, increased surveillance, scrutiny, harassment, and intimidation.  Unlike publishing communications to the media, this conduct is connected to acts within the scope of a

If Defendant Waybourn acted outside the scope of his duties, the San Juan County

Defendants argue that the amended--and not original--complaint must control for purposes of

determining the timeliness of Plaintiff's claims.  If the amended complaint controls, Plaintiff's

claims based on conduct prior to February 25, 2000, would be barred.  In support of this theory,

the San Juan County Defendants argue that Waybourn was not named as a defendant in the

original complaint, and that Plaintiff's addition of Waybourn does not meet the requirements for

"relation back" under Federal Rule of Civil Procedure 15(c).  This argument is not persuasive.

Even if Plaintiff's claims against Waybourn do not "relate back" to the original complaint, Plaintiff

has alleged that the statute of limitations was tolled by the continuing wrong doctrine.

Accordingly, regardless of whether the original or amended complaint controls, Plaintiff has

stated a valid claim for relief.[22]

Assuming all well-pleaded facts to be true and drawing all reasonable inferences in favor

of Plaintiff, the amended complaint states a valid claim for relief for interference with prospective

business advantage, false light invasion of privacy, and intentional infliction of emotional distress.

On the facts alleged, the claims are not barred by the statute of limitations.  The Court therefore

---

law enforcement officer's duties.  *See McBrayer*, 129 N.M. at 781, 784, 14 P.3d at 46, 49.  Even
if Plaintiff only had alleged conduct such as this that falls within the scope of Defendants' duties,
Plaintiff's claims would not be subject to dismissal because, as described herein, Plaintiff has
alleged facts on which he could prove the statute of limitations was tolled by the continuing
wrong doctrine.  *See supra.*

[22] The San Juan County Defendants also argue that Waybourn may not be a proper party
to the amended complaint because courts outside this circuit have held that a party cannot be
added to an action once the statute of limitations has expired.  *See, e.g.*, *Cox v. Treadway*, 75
F.3d 230, 240 (6th Cir.), *cert. denied*, 519 U.S. 821 (1996).  As described herein, however,
Plaintiff has alleged facts indicating that the statute of limitations has not expired because it was
tolled by the continuing wrong doctrine.  Accordingly, this argument does not have merit.

-43-

denies the San Juan County Defendants' motion to dismiss on this ground.

        D.      <u>Malicious Abuse of Process</u>.

      The San Juan County Defendants also argue that the statute of limitations bars Plaintiff's malicious abuse of process claims.  In support his claims, Plaintiff alleges that on October 4, 1999, Defendant Officers "instituted [a] criminal complaint against Plaintiff, without probable cause and with malice, for the improper purpose[] [of] depriv[ing] Plaintiff of his liberty, his lawful property, and . . . the use and benefit of his bail bond license."  Plaintiff also alleges that on May 4, 2000, Defendant Officers "sought, pursued, encouraged, and obtained a refiling of the action against Plaintiff based on the same charges stemming from the October 4, 1999, arrest, without probable cause and with procedural impropriety for an improper purpose, including the deprivation of Plaintiff's rights to liberty and property."

      Malicious abuse of process is a merged tort comprised of the former separate torts of malicious prosecution and abuse of process.  *See Devaney v. Thriftway Marketing Corp.*, 124 N.M. 512, 517, 953 P.2d 277, 282 (N.M. 1997), *cert. denied*, 524 U.S. 915 (1998).  New Mexico courts have not determined when the statute of limitations on the newly-merged tort of malicious abuse of process begins to run.  Courts have held, however, that the statute of limitations on the separate torts of malicious prosecution and abuse of process "does not begin to run until the underlying action, which is the basis for the claims, has concluded."  *Lopez v. United States*, 129 F. Supp. 2d 1284, 1296 (D.N.M. 2000), *aff'd*, No. 01-2090, 2001 U.S. App. LEXIS 24587 (10th Cir. Nov. 15, 2001); *see also, e.g.*, *Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001) (citing *Heck v. Humphrey*, 512 U.S. 477, 489 (1994)).  Accrual upon completion of the underlying action for these separate torts was appropriate because a malicious prosecution

-44-

plaintiff must demonstrate a favorable termination in the underlying action in order to establish a prima facie case. *See Devaney*, 24 N.M. at 521, 953 P.2d at 286.

In *Devaney v. Thriftway Marketing Corporation*, the New Mexico Supreme Court, however, explicitly declined to include favorable termination as an element of the newly-merged tort of malicious abuse of process. *See id.*, 953 P.2d at 286. Because a favorable termination is no longer an element of the tort, the San Juan County Defendants argue that the statute of limitations should begin to run at the initiation--and not the conclusion--of the underlying proceedings. If the San Juan County Defendants are correct, Plaintiff's malicious abuse of process claim founded on the October 4, 1999, criminal complaint, would be barred.

In New Mexico, claims generally accrue on the date of the tortious act. *See Bolden v. Corrales*, 111 N.M. 721, 722, 809 P.2d 635, 636 (N.M. Ct. App.), *cert. denied*, 111 N.M. 77, 801 P.2d 659 (N.M. 1990); *see also F.D.I.C. v. Schuchmann*, 224 F. Supp. 2d 1332, 1339 (D.N.M. 2002). The elements of a malicious abuse of process claim include: (i) initiation of judicial proceedings against the plaintiff by the defendant; (ii) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (iii) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (iv) damages. *See Devaney*, 24 N.M. at 518, 953 P.2d at 283. With respect to the October 4, 1999, criminal complaint filed against Plaintiff, the initiation of the judicial proceedings occurred on October 4, 1999, the alleged irregularity in prosecution--*i.e.*, the filing of the criminal complaint without probable cause--occurred on October 4, 1999, the primary motive of Defendants alleged by Plaintiff--*i.e.*, to deprive Plaintiff of his "liberty, lawful property, and . . . of the use and benefit of his bail bond license"--occurred with the filing of the complaint on October 4, 1999, and

damages also began to occur on October 4, 1999.  Accordingly, the statute of limitations began to

run on October 4, 1999, and it expired on October 4, 2001, prior to the time Plaintiff filed his

complaint.  Plaintiff's malicious abuse of process claim based on the October 4, 1999, criminal

complaint, therefore is barred, and the Court dismisses the claim.[23]

The fact that the *Devaney* court tied the result in the underlying litigation to the standard

for a malicious abuse of process claim founded on lack of probable cause--rather than some other

type of irregular process, *see* 24 N.M. at 518, 953 P.2d at 283 (second element requires plaintiff

to allege an act by defendant in the use of process other than such as would be proper in the

regular prosecution of the claim)--does not affect the Court's conclusion.  Specifically, the

*Devaney* court held that a plaintiff basing its suit on lack of probable must demonstrate lack of

probable cause by clear and convincing evidence if the underlying litigation has not yet concluded

and by a preponderance of the evidence if the underlying litigation has concluded and the

malicious abuse of process plaintiff has received a favorable termination in that proceeding.[24]  *See*

*id.* at 521-22, 953 P.2d at 286-87.  The *Devaney* court's holding in this regard does not render

---

[23] Although in *Lopez v. United States of America*, 129 F. Supp. 2d 1284, 1296 (D.N.M. 2000), the Court stated three years after *Devaney* that the statute of limitations on the separate torts of malicious prosecution and abuse of process begins to run after conclusion of the underlying action, this statement does not change the Court's holding here.  *Lopez* is distinguishable because the parties and court treated the claims separately rather than as the merged tort of malicious abuse of process, and because the defendant conceded that the claim began to run at the completion of the underlying action and that there was no statute of limitations problem.  *See id.*  The *Lopez* court therefore was not presented with the task of deciding when the statute of limitations began to run and whether the limitations period had expired.  *See id.*

[24] In contrast, the *Devaney* court held that an unfavorable determination in the underlying proceeding, "meaning some form of recovery for the original-proceeding plaintiff, is 'conclusive evidence of the existence of probable cause.'"  24 N.M. at 521, 953 P.2d at 286 (citations omitted).

lack of probable cause an element of a plaintiff's malicious abuse of process case.  Rather, the
*Devaney* court merely developed additional guidelines regarding burden of proof for plaintiffs
alleging lack of probable cause for the "irregular process" element of the malicious abuse of
process tort.  *See id.* at 518, 521-22, 953 P.2d at 283, 286-87.  In short, the *Devaney* court's
stipulation regarding probable cause does not affect that court's decision to abolish the
requirement of a favorable determination of the underlying proceeding.

Although Plaintiff's malicious abuse of process claim based on the October 4, 1999,
criminal complaint must fail, Plaintiff's second malicious abuse of process claim founded on the
filing of the criminal complaint on May 4, 2000, is not barred by the statute of limitations.  That
claim began to accrue on May 4, 2000, and the statute of limitations expired on May 4, 2002, one
and one-half months after Plaintiff filed his original complaint.

In addition to challenging Plaintiff's malicious abuse of process claims on a statute of
limitations ground, however, the San Juan County Defendants argue that the finding of probable
cause by the magistrate in the underlying proceeding and Plaintiff's no contest plea in the
underlying proceeding preclude Plaintiff's malicious abuse of process claim.  On a motion to
dismiss, the Court's review is confined only to the pleadings.  *See Lybrook v. Members of
Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1341-42 (10th Cir. 2000).[25]  The Court

_____

[25] *See also Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d
24, 25 (2nd Cir. 1988); *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992); *Covington v. Illinois
Sec. Serv.*, 269 F.3d 863, 864-65 (7th Cir. 2001).  *But see Watterson v. Page*, 987 F.2d 1, 3 (1st
Cir. 1993) (narrow exceptions to the rule that courts shall not consider matters outside the
complaint exist for documents whose authenticity is not disputed, official public records,
documents central to plaintiff's claim, or documents sufficiently referred to in complaint,
particularly when plaintiffs themselves introduce the documents to bolster their arguments against
defendants' motion to dismiss).

cannot consider facts alleged by the San Juan County Defendants in support of their motion to

dismiss.  *See id.*  The Court also cannot consider the bind-over order from the magistrate court

judge or the plea agreement attached to the San Juan County Defendants' memorandum in

support of the motion to dismiss.  *See id.*  The San Juan County Defendants' arguments should be

brought on summary judgment or at some other later stage in this proceeding.  The Court denies

the motion to dismiss Plaintiff's May 4, 2000, malicious abuse of process claim.

IV.    Are Defendants Entitled to Immunity under the Tort Claims Act from Plaintiff's State
       Tort Claims?

Defendants argue that Plaintiff cannot state a claim for relief under the New Mexico Tort

Claims Act for interference with prospective business advantage, false light invasion of privacy,

and intentional infliction of emotional distress unless Plaintiff can establish that Defendants waived

their immunity under the Act.  *See* N.M. Stat. Ann. § 41-4-4 (granting immunity from tort liability

for "governmental entit[ies] and any public employee while acting within the scope of duty . . .

except as waived by Sections 41-4-5 through 41-4-12"); *see also Pemberton v. Cordova*, 105

N.M. 476, 478, 734 P.2d 254, 256 (N.M. Ct. App. 1987), *overruled in part on other grounds by

Bober v. New Mexico State Fair*, 111 N.M. 644, 808 P.2d 614 (N.M. 1991).  Law enforcement

officers waive their immunity under the Act for:

> personal injury, bodily injury, wrongful death or property damage
> resulting from assault, battery, false imprisonment, false arrest,
> malicious prosecution, abuse of process, libel, slander, defamation
> of character, violation of property rights or deprivation of any
> rights, privileges or immunities secured by the constitution and laws
> of the United States or New Mexico when caused by law
> enforcement officers while acting within the scope of their duties.

N.M. Stat. Ann. § 41-4-12 .

Plaintiff's claims do not fall within this limited waiver provision.  Although the Tort

Claims Act waives immunity for "personal injury," "bodily injury," and "property damage," it does

so only for injury "resulting from" an expressly-defined list of torts.  None of Plaintiff's state tort

claims is enumerated in that list.  *See Caillouette v. Hercules, Inc.*, 113 N.M. 492, 497, 827 P.2d

1306, 1311 (N.M. Ct. App. 1992) ("personal injury" must result from one of the torts listed in

Section 41-4-12), *cert. denied*, 113 N.M. 352, 826 P.2d 573 (N.M. 1992); *see also Methola v.

County of Eddy*, 95 N.M. 329, 333, 622 P.2d 234 (1980).  Defendants therefore are immune from

these claims if the claims fall within the Act.  *See, e.g., Romero v. Otero*, 678 F. Supp. 1535, 1540

(D.N.M. 1987) (holding that the Tort Claims Act does not waive the immunity of law

enforcement officers for intentional infliction of emotional distress standing alone as a common

law tort because it is not one of the enumerated acts under Section 41-4-12).

Plaintiff argues, however, and the Court agrees, that the claims for interference with

prospective business advantage, false light invasion of privacy, and intentional infliction of

emotional distress are not covered by the Tort Claims Act if Defendant Officers were acting

outside the scope of their duties when they engaged in the conduct underlying these claims.[26]  As

---

[26] Plaintiff also argues that under *Allen v. McClellan*, 77 N.M. 801, 806, 427 N.M. 677,
680 (N.M. 1967), the Tort Claims Act does not apply to a willful or malicious tort, and that under
*Weinstein v. City of Santa Fe*, 121 N.M. 646, 652, 916 P.2d 1313, 1319 (N.M. 1996), there is no
immunity for intentional torts committed by law enforcement officers.  As discussed herein, these
arguments do not have merit.  *See supra* § III.A.  In addition, Plaintiff implies that immunity for
his interference with prospective business advantage claim is waived under Section 41-4-4(D)(2),
because his claim involves a property right.  Although Section 41-4-4(D)(2) refers to property
rights, it does so in granting public employees the right to indemnification from governmental
entities for suits alleging violation of property rights.  *See* N.M. Stat. Ann. §4-4(D)(2).  The
Section does not contain a waiver of immunity.  *See* N.M. Stat. Ann. § 41-4-4(A) (granting
immunity except as contained in one of the Act's waiver provisions located in Sections 41-4-5
through 41-4-12).

described herein, the Court cannot conclude beyond a doubt on the allegations alone that publishing communications to the media and third parties unrelated to the judicial proceedings instituted against Torrez falls inside the scope of an officer's duties. *See supra* § III.C. Assuming the facts alleged by Plaintiff to be true and drawing all reasonable inferences in favor of Plaintiff, the Court cannot say that Plaintiff can prove no set of facts entitling him to relief. Plaintiff has alleged facts sufficient to indicate that Defendant Officers may have been acting outside the scope of their duties when they committed the allegedly tortious conduct. Accordingly, the Court denies the motions to dismiss Plaintiff's interference with prospective business advantage, false light invasion of privacy, and intentional infliction of emotional distress claims.

## CONCLUSION

For the reasons stated above, **IT IS THEREFORE ORDERED** that the San Juan Defendants' Motion to Dismiss Claims of David Torrez **[Doc. No. 15]**, and the Farmington Defendants' Partial Motion to Dismiss David Torrez's Claims **[Doc. No. 58]**, are hereby **GRANTED IN PART** as follows:

1.      The San Juan County Defendants' motion to dismiss the 42 U.S.C. Section 1983 claims on the ground that the claims are barred by the statute of limitations is hereby DENIED;

2.      The San Juan County Defendants' and the Farmington Defendants' motions to dismiss Plaintiff's 42 U.S.C. Section 1983 claim for excessive police force on the ground of qualified immunity are hereby DENIED;

3.      The San Juan County Defendants' and the Farmington Defendants' motions to dismiss Plaintiff's 42 U.S.C. Section 1983 claim for unlawful entry on the ground of qualified immunity are hereby DENIED;

4.      The San Juan County Defendants' and the Farmington Defendants' motions to dismiss Plaintiff's 42 U.S.C. Section 1983 claim for unlawful detainment and arrest on the ground of qualified immunity are hereby DENIED;

5.      The San Juan County Defendants' motion to dismiss Plaintiff's federal and state due process claims is hereby GRANTED with prejudice;

6.      The San Juan County Defendants' and the Farmington Defendants' motions to dismiss Plaintiff's common law battery and trespass claims on the ground that the claims are barred by the statute of limitations are hereby GRANTED without prejudice; the Court grants Plaintiff leave to file a second amended complaint within fourteen (14) days from the date of this Memorandum Opinion and Order if he can allege facts consistent with this Order to state timely and valid battery and trespass claims for relief;

7.      The San Juan County Defendants' and the Farmington Defendants' motions to dismiss Plaintiff's common law defamation claims on the grounds that the claims are barred by the statute of limitations and do not state a claim for relief are hereby GRANTED without prejudice; the Court grants Plaintiff leave to file a second amended complaint within fourteen (14) days from the date of this Memorandum Opinion and Order if he can allege facts consistent with this Order to state timely and valid defamation claims for relief;

8.      The San Juan County Defendants' motion to dismiss Plaintiff's common law interference with prospective business advantage, false light invasion of privacy, and intentional infliction of emotional distress claims on the ground that the claims are barred by the statute of limitations is hereby DENIED;

9.      The San Juan County Defendants' motion to dismiss Plaintiff's malicious abuse of

process claims on the ground that the claims are barred by the statute of limitations is hereby

GRANTED without prejudice with respect to the claim based on the October 4, 1999, criminal

complaint, and DENIED with respect to the claim based on the May 4, 2000, criminal complaint;

and

   10. The San Juan County Defendants' and the Farmington Defendants' motions to

dismiss Plaintiff's common law interference with prospective business advantage, false light

invasion of privacy, and intentional infliction of emotional distress claims on the ground that the

claims are barred by the immunity provisions in the New Mexico Tort Claims Act are hereby

DENIED.

Dated this 8th day of September, 2004.

           _____

           MARTHA VÁZQUEZ
           CHIEF UNITED STATES DISTRICT JUDGE


Attorney for Plaintiff:

  Gilbert J. Vigil, Esq.

Attorneys for the San Juan County Defendants:

  Ronald J. Childress, Esq.
  Elaine R. Dailey, Esq.

Attorneys for the Farmington Defendants:

  Sean Olivas, Esq.
  Melanie Frassanito, Esq.