## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DAVID TORREZ,

                Plaintiff,

vs.

CITY OF FARMINGTON, VINCENT MITCHELL, in his official and
individual capacities, GERALD MAESTAS, in his official and
individual capacities, DUSTY DOWNS, in his official and individual      Civ. No. 02-1381
capacities, JASON HENSLEY, in his official and individual capacities,     MV/RHS
JOHN AHLM, in his official and individual capacities, SAN JUAN
COUNTY for acts of its SHERIFF'S DEPARTMENT, a governmental
entity, JASON WAYBOURN, in his official and individual capacities,
SAN JUAN DISTRICT MAGISTRATE COURT, LINDA B. EATON,
in her official and individual capacities, AZTEC MUNICIPAL COURT,
BARBARA R. ALDAZ, in her official and individual capacities,
ELEVENTH JUDICIAL DISTRICT COURT, GREGORY T.
IRELAND, in his official and individual capacities, and OTHER JOHN
DOE DEFENDANTS, in their official and individual capacities,

                Defendants,

and

JULES LESLIE GODWIN,

                Plaintiff,

vs.

CITY OF FARMINGTON, VINCENT MITCHELL, in his official and
individual capacities, GERALD MAESTAS, in his official and
individual capacities, DUSTY DOWNS, in his official and individual
capacities, JASON HENSLEY, in his official and individual capacities,
JOHN AHLM, in his official and individual capacities, SAN JUAN
COUNTY for acts of its SHERIFF'S DEPARTMENT, a governmental
entity, JASON WAYBOURN, in his official and individual capacities,
SAN JUAN DISTRICT MAGISTRATE COURT, LINDA B. EATON,
in her official and individual capacities, AZTEC MUNICIPAL COURT,
BARBARA R. ALDAZ, in her official and individual capacities,
ELEVENTH JUDICIAL DISTRICT COURT, GREGORY T.
IRELAND, in his official and individual capacities, and OTHER JOHN
DOE DEFENDANTS, in their official and individual capacities,

                Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendants Eleventh Judicial District Court, Gregory T. Ireland, San Juan County Magistrate Court, and Linda B. Eaton's ("State Defendants") Motion to Dismiss Plaintiffs Torrez and Godwin, filed April 7, 2003 **[Doc. No. 27]**, Defendants Aztec Municipal Court and Barbara R. Aldaz's ("City Defendants") Motion to Dismiss Plaintiff David Torrez's First Amended Complaint, filed May 1, 2003 **[Doc. No. 41]**, and the City Defendants' Motion to Dismiss Plaintiff Jules Leslie Godwin's First Amended Complaint, filed April 30, 2003 **[Doc. No. 38]**.  The Court, having considered the motions, briefs, and relevant law and being otherwise fully informed, finds that the motions to dismiss are well taken in part and will be granted in part.

### BACKGROUND

On March 22, 2002, Plaintiff David Torrez and Plaintiff Jules Leslie Godwin filed separate actions in New Mexico state court asserting state constitutional and tort causes of action arising out of various arrests and prosecutions.  On October 8, 2002, Plaintiffs filed motions to amend their complaints and attached thereto proposed amended complaints asserting federal civil rights causes of action under 42 U.S.C. Section 1983.  Thereafter, on November 1, 2002, Defendants removed both actions to this Court.  On February 20, 2002, the actions were consolidated.

Plaintiff Torrez's amended complaint, which was filed February 25, 2003, contains federal Section 1983 claims for excessive police force, unlawful entry, unlawful detainment and arrest, and violation of due process.  Plaintiff Torrez's amended complaint also contains state claims for interference with prospective business advantage, false light invasion of privacy, intentional

infliction of emotional distress, defamation, violation of due process, battery, trespass, and

malicious abuse of process.  Plaintiff Godwin's amended complaint, also filed February 25, 2003,

contains federal and state due process claims and state tort claims for interference with

prospective business advantage, false light invasion of privacy, intentional infliction of emotional

distress, and defamation.  The State and City Defendants ("Defendants") move for dismissal of

both amended complaints.[1]

       The Court's review of the motions to dismiss is confined to the pleadings.  Therefore, the

Court describes below only those facts alleged by Plaintiffs in their amended complaints.

I.      <u>Plaintiffs and the Torrez Bail Company.</u>

       In 1988, Plaintiff Torrez started a business called Torrez Bail Company ("Torrez Bonds")

and began entering into contracts with persons to post bail bonds in exchange for compensation.

To assist this enterprise, Plaintiff Torrez cultivated relationships with various courts, entities, and

persons throughout San Juan County, New Mexico.  Plaintiff Godwin, an independent solicitor

licensed by the State of New Mexico, began working as a bail bondsman with Torrez Bonds in

1996.  Plaintiff Godwin also developed relationships with various courts, entities, and persons in

San Juan County.  Prior to February 25, 1998, the time the unlawful conduct alleged in the

amended complaints began, Plaintiffs and Torrez Bonds handled and performed a substantial

portion of the bonding business in San Juan County.

II.     <u>Suspension of Plaintiffs' Bail Bonding Privileges.</u>

---

[1] Other defendants who also are parties to this case have filed separate motions to dismiss
Torrez's and Godwin's amended complaints.  The Court only addresses herein, however, the
motions to dismiss filed by the State and City Defendants.  The Court addresses the remaining
motions to dismiss in two separate memorandum opinion and orders.

Plaintiff Torrez alleges that he unlawfully was arrested on February 25, 1998.  Two days after the arrest, Defendant Barbara Eaton, a judge on the San Juan County District Magistrate Court bench, suspended Plaintiff Torrez's and Plaintiff Godwin's bonding privileges in the San Juan County District Magistrate Court.  On July 21, 1998, a directed verdict was ordered in Plaintiff Torrez's favor from the charges arising out of the February 25, 1998, arrest.  Although a directed verdict was entered in Plaintiff Torrez's favor, Defendant Eaton did not reinstate either Plaintiff Torrez's or Plaintiff Godwin's bonding privileges in a timely fashion.

On June 23, 1999, Defendant Eaton unilaterally and without prior notice, hearing, or opportunity to be heard, suspended or revoked Plaintiff Torrez's and Plaintiff Godwin's bonding privileges a second time.  Specifically, Defendant Eaton published a statement defaming and injuring Plaintiffs Torrez and Godwin.  Copies of this statement are attached to the amended complaints.  The statement, a letter to the San Juan County Detention Center and the Farmington Police Holding Facility, provides, "Effective immediately Torrez Bail Bonds is no longer allowed to bond in Div. II & Div. III.  Default Judgment was entered for forfeiture and was not paid."  Defendant San Juan County Magistrate Court participated in, ratified, approved, or otherwise acquiesced in Defendant Eaton's decision to suspend or revoke Plaintiffs' bonding privileges on June 23, 1999, and on February 27, 1998.

On March 20, 1998, Defendant Gregory Ireland, court administrator for the Eleventh Judicial District Court, unilaterally and without prior notice, hearing, or opportunity to be heard, suspended or revoked Plaintiff Torrez's and Plaintiff Godwin's bonding privileges in the Eleventh Judicial District Court, pending resolution of the charges against Plaintiff Torrez stemming from the February 1998 unlawful arrest.  Defendants Ireland and Eleventh Judicial District Court did

not restore the bonding privileges until July 11, 1998.

In February 2000, Defendant Ireland suspended Plaintiff Torrez's and Plaintiff Godwin's bonding privileges a second time. Specifically, Defendant Ireland published a statement defaming and injuring Plaintiffs Torrez and Godwin. The statement indicates that Plaintiff Torrez, Plaintiff Godwin, and Torrez Bonds no longer can post bonds in the Eleventh Judicial District Court. Plaintiffs do not attach copies of the statement to their amended complaints or quote the precise language allegedly used by Defendant Ireland in the statement. Plaintiffs maintain that Defendant Ireland is in possession of the statement. Defendant Eleventh Judicial District Court participated in, ratified, approved, or otherwise acquiesced in Defendant Ireland's conduct. The amended complaints do not allege that a judge instructed or ordered Defendant Ireland to revoke Plaintiffs' bonding privileges.

On March 16, 2000, Defendant Barbara Aldaz, a judge on the Aztec Municipal Court bench, unilaterally and without prior notice, hearing, or opportunity to be heard, suspended or revoked Plaintiff Torrez's and Plaintiff Godwin's bonding privileges in the Aztec Municipal Court. Specifically, Defendant Aldaz published two statements defaming and injuring Plaintiffs, copies of which are attached to the amended complaints. The first statement is a letter to Torrez Bonds from Defendant Aldaz. The letter provides, "Please be advised this court will not accept Bail Bonds from your company due to the fact a large amount of money is still owed this court. The San Juan County Detention Center has also been notified of this decision." The second statement is a letter to the San Juan County Detention Center from Defendant Aldaz. The letter provides, "This is to inform you that having read the letter from Greg Ireland, Court Administrator, concerning David Torrez and his solicitors, Manuel Joe Albo and Jules L. Godwin,

Aztec Municipal Court will not accept any bonds from David Torrez and his solicitors due to two

large outstanding debts at this court.  Thank you for your cooperation in this matter."

III.     Other Allegedly Tortious Conduct.

        Plaintiff Torrez further alleges that Defendants have engaged in a course of conduct

consisting of defaming him.  Plaintiff Torrez contends that Defendants have published statements

that he has committed criminal offenses, that he has been involved with disreputable dealings and

persons, and that he is not fit or able to post bonds.  Plaintiff Godwin alleges that Defendants have

defamed him by publishing communications that he is not fit or able to conduct bonding business

and that he works and associates with criminals, including Plaintiff Torrez.  In support of the

defamation claims, Plaintiffs reference the June 23, 1999, letter from Defendant Eaton described

above, the February 2000 letter from Defendant Ireland described above, and the March 16, 2000,

letters from Defendant Aldaz described above.  Both Plaintiffs further allege that Defendants

Eaton and Aldaz have published disparaging statements about them to the media, including

statements of false information obtained from an unreliable source.

**STANDARD**

        Rule 12(b)(6) of the Federal Rules of Civil Procedure provides in relevant part that

"failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any

pleading. Fed. R. Civ. P. 12(b)(6).  A court may dismiss a cause of action under Rule 12(b)(6)

for failure to state a claim only if it appears beyond a doubt that a plaintiff can prove no set of

facts in support of the claim that would entitle him or her to relief.  *See Hartford Fire Ins. Co. v.*

*California*, 509 U.S. 764, 811 (1993) (citation omitted).  In considering a Rule 12(b)(6) motion,

a court must assume all well-pleaded facts, but not conclusory allegations, to be true, and must

draw all reasonable inferences in favor of a plaintiff.  *See Housing Auth. of the Kaw Tribe v. City of Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991), *cert. denied*, 504 U.S. 912 (1992).  The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will prevail ultimately, but whether a plaintiff is entitled to offer evidence to support his or her claim.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

These deferential rules, however, do not allow a court to assume that a plaintiff "can prove facts that [the plaintiff] has not alleged or that the defendants have violated the . . . laws in ways that [the plaintiff has not] alleged."  *See Associated Gen. Contractors, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The rules also do not require a court to accept legal conclusions or unwarranted inferences.  *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citation omitted).

## DISCUSSION

Defendants move to dismiss Plaintiffs' amended complaints on the following grounds. First, the State Defendants argue that they are not subject to suit in federal court because the Eleventh Amendment bars Plaintiffs' federal and state claims against them.  The State Defendants also argue that the federal claims are barred by the definition of "persons" in 42 U.S.C. Section 1983.  Second, Defendants maintain that they are entitled to judicial immunity from Plaintiffs' federal and state causes of action.  Third, Defendants argue that Plaintiffs' claims are barred by the sovereign immunity and statute of limitations provisions in the New Mexico Tort Claims Act. The State Defendants also contend that the claims are barred by the notice provisions in the Tort Claims Act.  The Court will address each of these arguments in turn.

I.      Are the State Defendants Subject to Suit in Federal Court?

A.    <u>Claims against State Courts</u>.

Plaintiffs have brought federal and state claims against the Eleventh Judicial District Court and the San Juan County Magistrate Court ("Defendant State Courts").  Plaintiffs' claims, however, are barred by the Eleventh Amendment.  The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.  The Supreme Court has read the Eleventh Amendment as prohibiting suits in federal court against a state, its agencies, or its departments unless the state consents to suit or Congress has abrogated immunity.  *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984).  Eleventh Amendment immunity applies both to federal question and state claims brought against a state in federal court.[2]  *See id.* at 121.  The limitation "deprives federal courts of any jurisdiction to entertain . . . claims [against state courts], and thus may be raised at any point in a proceeding."  *Id.* at 99 n.8.  Plaintiffs have not argued and the State Defendants have not conceded that New Mexico has consented to suit or that Congress has abrogated immunity.[3]  Accordingly, the Court dismisses all

---

[2] Plaintiffs' state claims are barred by the Eleventh Amendment regardless of whether the State of New Mexico has consented to suit under the New Mexico Tort Claims Act.  The Supreme Court consistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver of Eleventh Amendment immunity in the federal courts.  *See Pennhurst*, 465 U.S. at 99-100 & n.9 (citing *Florida Dep't of Health & Rehabilitative Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 150 (1981) (per curiam)).

[3] The Supreme Court consistently has insisted both that a "State's consent be unequivocally expressed" and that Congress's intent "to overturn the constitutionally guaranteed immunity of the several States" be "unequivocal[ly] express[ed]."  *Pennhurst*, 465 U.S. at 99 (internal quotations and citations omitted).

of Plaintiffs' claims against Defendant State Courts.[4]

Plaintiffs' 42 U.S.C. Section 1983 claims against Defendant State Courts also are subject to dismissal because state courts are not "persons" within the meaning of Section 1983.  *See Harris v. Champion*, 51 F.3d 902, 906 (10th Cir. 1995) ("this and other circuit courts have held that a state court is not a 'person' under 1983") (citations omitted); *see also Coopersmith v. Supreme Ct. of Colo.*, 465 F.2d 993, 994 (10th Cir. 1972).  Accordingly, Plaintiffs' Section 1983 claims against Defendant State Courts are subject to dismissal on this ground as well.  *See, e.g., Bledsoe v. Coggins*, No. 94-3330, 1995 U.S. App. LEXIS 2250, *2 (10th Cir. Feb. 7, 1995) (unpublished opinion) (affirming lower court decision dismissing suit against state court because "court was not a 'person' for purposes of 1983").

B.    <u>Claims Against State Officials in their Official Capacities</u>.

Plaintiffs also bring federal Section 1983 and state claims against Defendants Eaton and Ireland in their individual and official capacities.  "When [a] suit is brought . . . against state officials, a question arises as to whether that suit is a suit against the State itself" and therefore barred by the Eleventh Amendment.  *Pennhurst*, 465 U.S. at 101.

To confirm whether the Eleventh Amendment bars a particular suit against a state official, a court must ask whether "the state is the real, substantial party in interest."  *Id.* (citations omitted); *see also Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945) (a plaintiff may not avoid state sovereign immunity by naming individual state officers as defendants where "the state is the real, substantial party in interest"), *overruled on other grounds by Lapides*

---

[4] Although the State Defendants moved only for dismissal of Plaintiffs' federal claims, Eleventh Amendment immunity is a jurisdictional bar that the Court raises sua sponte with respect to Plaintiffs' state claims.  *See Pennhurst*, 465 U.S. at 99 n.8.

*v. Board of Regents of Univ. System of Ga.*, 535 U.S. 613, 623 (2002); *see also Ex Parte Young*, 209 U.S. 123, 150 (1908) (claims made against a state official in his or her official (and not individual) capacity are barred because the state is the actual party on record). "'[T]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.'" *Pennhurst*, 465 U.S. at 101 (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam)). "[A] suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Id.* (citing *Cory v. White*, 457 U.S. 85, 91 (1982)). Plaintiffs' official capacity suits against Defendants Eaton and Ireland are in fact suits against the State of New Mexico. *See id.*; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *McGhee v. Draper*, 639 F.2d 639, 642 (10th Cir. 1981). These claims therefore are barred unless New Mexico has consented to suit or Congress has abrogated immunity. *See supra*. Plaintiffs have not argued, and the State Defendants have not conceded, that New Mexico has consented to suit or that Congress has waived immunity.

Plaintiffs nonetheless may overcome Eleventh Amendment immunity if their claims meet the requirements of the *Ex Parte Young* doctrine. "[W]hen a party seeks only prospective equitable relief--as opposed to any form of money damages or other legal relief--then the Eleventh Amendment generally does not stand as a bar to the exercise of the judicial power of the United States." *ANR Pipeline Co. v. Lafaver* 150 F.3d 1178, 1188 (10th Cir. 1998) (citing *Ex Parte Young*, 209 U.S. at 158-159). Relief "expressly denominated as damages" and relief that is "tantamount to an award of damages for a past violation of federal law, however, even though styled as something else" are both proscribed. *See Papasan v. Allain*, 478 U.S. 265, 278 (1986).

The *Ex Parte Young* doctrine does not apply here. Plaintiffs' claims against Defendants

-10-

Eaton and Ireland seek retroactive relief--*i.e.*, compensation for past injuries allegedly committed by the State Defendants in their individual and official capacities.  In support of their federal and state claims, Plaintiffs allege that they have suffered damages, including economic losses such as loss of income, benefits, personal and professional reputation, and present and future business relationships and opportunity.  Plaintiffs also allege damages in the form of humiliation and emotional distress.  Plaintiffs seek attorneys fees, compensatory damages, and punitive damages. Because this relief is in the form of damages for past harms, Plaintiffs cannot overcome Eleventh Amendment immunity by invoking the *Ex Parte Young* doctrine.  Accordingly, the Court dismisses Plaintiffs' official capacity claims against Defendants Eaton and Ireland.

Plaintiffs' Section 1983 claims against Defendants Eaton and Ireland in their official capacities also are barred because state officials in their official capacities are not "persons" within the meaning of Section 1983.  *See, e.g.*, *Harris*, 51 F.3d at 906 ("a state official who acts in his or her official capacity" is not a "person" under Section 1983 and therefore is not subject to suit unless sued for prospective injunctive relief).  Accordingly, the Court dismisses Plaintiffs' federal official capacity claims against Defendants Eaton and Ireland on this ground as well.

II.     Are Defendants Entitled to Judicial Immunity from Plaintiffs' Federal and State Claims?

Defendants argue that Plaintiffs' claims are barred by judicial immunity.  The Court's judicial immunity analysis is confined only to Defendants Eaton, Ireland, and Aldaz in their individual capacities.  The Supreme Court has held that personal immunities, such as judicial immunity, apply only to individual capacity suits.  *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) ( "[t]he only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh

Amendment"); *Hunter v. Supreme Ct.*, 951 F. Supp. 1161, 1179 (D.N.J. 1996) (personal immunities not available to defendants sued in their official capacities, because official capacity suits are in essence suits against a state).  Personal immunities also are unavailable to state entities.  *See Graham*, 473 U.S. at 166-67; *Hunter*, 951 F. Supp. at 1179.  Accordingly, judicial immunity does not apply to Defendant State Courts, Defendant Aztec Municipal Court, or Defendants Eaton, Ireland, or Aldaz in their official capacities.  *See Graham*, 473 U.S. at 166-67; *see also Hunter*, 951 F. Supp. at 1179.

The United States Supreme Court and the New Mexico Supreme Court have adopted the common law judicial immunity rule, which provides for absolute judicial immunity from damages for civil liability.  *See, e.g.*, *Bradley v. Fisher*, 80 U.S. 335, 354 (1871); *Edwards v. Wiley*, 70 N.M. 400, 402-03, 374 P.2d 284, 285-87 (N.M. 1962) (citations omitted); *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) (citation omitted).  The rationale for the judicial immunity doctrine is that judges should be free to make controversial decisions, exercise their functions with independence, and act upon their convictions without fear of personal liability.  *See id.* at 355; *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (citation omitted).  It is the concern for principled and fearless decisionmaking that forms the basis for judicial immunity.  *See id.*

Although the common law rule provided absolute immunity for judges, modern courts have recognized some exceptions.  For example, although "a judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority," "he will be subject to liability . . . when he has acted in the 'clear absence of all jurisdiction,'" or when he has acted in a nonjudicial capacity.  *Stump*, 435 U.S. at 356-57; *see also Mireles v. Waco*, 502 U.S. 9, 11 (1991).  Plaintiffs challenge the individual defendants' assertions

-12-

of judicial immunity on both of these grounds.

      A.     Defendants Eaton and Aldaz.

      1.     Judicial Act.

Plaintiffs allege that Defendants Eaton and Aldaz acted "in an administrative or ministerial capacity" when they suspended or revoked Plaintiff's bonding privileges in their respective courts, and that Defendants Eaton and Aldaz therefore are not entitled to judicial immunity.  In *Stump v. Sparkman*, the Supreme Court explained, "[W]hether an act by a judge is a 'judicial' one relates to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." 435 U.S. at 362; *see also Mireles*, 502 U.S. at 12.[5]

Under this two-part test, the Court first must consider whether the suspension or revocation of Plaintiffs' bail bonding privileges was an act normally performed by a judge.  *See id.* For purposes of this test, the focus is not on the "act itself," but rather on the "nature" and "function" of the act.  *See id.* at 13.  "[I]f only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'nonjudicial' act, because an improper or erroneous act cannot be said to be normally performed by a judge.  If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error or was in excess of his authority.'"  *Id.* (quoting *Stump*, 435 U.S. at 356) (additional citation omitted).  Accordingly, courts must "look to the particular act's

---

[5] The Tenth Circuit has held that an act may be "administrative or ministerial for some purposes and still be a 'judicial' act for purposes of immunity from liability for damages." *Martinez v. Winner*, 771 F.2d 424, 434 (10th Cir. 1985) (citation omitted).  Courts must apply the *Stump* immunity test to determine whether the act was "judicial" in nature for purposes of deciding whether judicial immunity bars a particular suit.  *See id.*

relation to a general function normally performed by a judge." *Id.*; *see also Forrester v. White*, 484 U.S. 219, 227 (1988) (judicial "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches") (emphasis in original).

Judges normally engage in the general function of setting and approving bail bonds. As part of the bond approval process, judges have inherent authority to determine who shall serve as a bondsman before their courts. *See State v. Armstrong*, 364 So. 2d 558, 562 (La. 1978) ("within its inherent power to regulate judicial proceedings before it, the trial court may inhibit or deny an authorized surety company from furnishing bail undertakings before that court"); 8A Am. Jr. 2d Bail and Recognizance § 3 ("[c]ourts have the inherent power to make reasonable rules for the regulation of the bail bond business" and "a trial court has full authority to determine who should be allowed to make bonds in its court").[6]  In evaluating a bondsman, judges have discretion to consider the bondsman's moral and financial sufficiency. *See, e.g.*, *United States v. Melville*, 309 F. Supp. 824, 828 (S.D.N.Y. 1970) ("not only is there a concern for the financial risk in accepting an undertaking but also for a moral risk because when a defendant is called upon to pay his obligation to society, it is not the sum of the bail bond that society asks for, but rather the presence of the defendant for imprisonment") (internal quotations and citation omitted).[7]  Because judges have inherent authority to regulate bondsmen and determine the moral and financial

---

[6] *See also Hull v. State*, 543 S.W.2d 611, 612 (Tenn. Crim. Ct. App. 1976) (citation omitted); *In re Johnson*, 217 S.E.2d 85, 88 (N.C. Ct. App. 1975); *Gilbreath v. Ferguson*, 260 S.W.2d 276, 278 (Tenn. 1953); *Commonwealth v. Miller*, 160 A. 240, 240 (Pa. Super. Ct. 1932); *Concord Cas. & Sur. Co. v. United States*, 69 F.2d 78, 81 (2nd Cir. 1934).

[7] *See also American Druggists Ins. v. Bogart*, 707 F.2d 1229, 1233 (11th Cir. 1983); *United States v. Lee*, 170 F. 613, 614 (S.D. Ohio 1909); *State ex rel Howell v. Schiele*, 88 N.E.2d 215, 219 (1949); *Jefferson v. City of Hazlehurst*, 936 F. Supp. 382, 389 (D. Miss. 1995) (citing 8 C.J.S. Bail § 102 and 8 Am. Jur. 2d Bail & Recognizance § 8) (additional citations omitted).

sufficiency of bondsmen, the regulation of bondsmen falls within the normal functions of a judge.
*See Stump*, 435 U.S. at 362.  Defendants Eaton and Aldaz therefore have satisfied the first part of
the *Stump* judicial immunity test.

Under the second part of the *Stump* test, the Court must consider whether Plaintiffs dealt
with Defendants Eaton and Aldaz in their judicial, and not administrative, capacities.  *See* 435
U.S. at 362; *see also Mireles*, 502 U.S. at 12.  Bondsmen are akin to officers of the court.  *See*
*Calvert v. Judges of the 40th Judicial Cir. Ct. & the 71-A Judicial Dist. Ct.*, 502 N.W.2d 293,
298 n.2 (Mich. 1993) (Brikely, J., dissenting on other grounds).  Bondsmen are not employees of
the court and they do not serve other administrative arms of the government.  Although a court's
hiring and firing of its own personnel is an administrative function, *see, e.g.*, *McMillan v.
Svetanoff*, 793 F.2d 149, 155 (7th Cir. 1986) ("hiring and firing an employee is typically an
administrative task"); *Clark v. Campbell*, 514 F. Supp. 1300, 1302 (W.D. Ark. 1981) (judge's
duties in hiring and firing county employees were clearly administrative), Plaintiffs are not court
employees, but rather are retained by parties in cases before the court.  Bail bondsmen are tied to
specific *judicial* cases before the court--not *administrative* functions of the court (*e.g.*, personnel
decisions)--and therefore are tied to judges and other court personnel in their judicial--not
administrative--capacities.  *See, e.g.*, *Summit Fidelity & Sur. Co. v. Nimtz*, 64 N.W.2d 803, 808
(Neb. 1954) (acceptance and approval of bonds is a judicial function) (citation omitted); *Harris
County Bail Bond Bd. v. Burns*, 790 S.W.2d 862, 864 (Tex. Ct. App. 1990) (the act of
suspending or revoking a license is a decision judicial in nature); *Travis County Bail Bond Bd. v.*

*Smith*, 531 S.W.2d 236, 240 (Tex. Ct. App. 1975) (same).[8]

Another indication that Plaintiffs dealt with Defendants Eaton and Aldaz in their judicial capacities is the fact that Defendants Eaton and Aldaz were called upon to use their education, training, and experience to make their decisions to suspend or revoke Plaintiffs' bonding privileges. *See McMillan*, 793 F.2d at 155 (an act is judicial if judges must use their "education, training, and experience in the law to decide whether or not to [suspend or revoke privileges]"). As described above, judges must use their inherent powers to regulate sureties and determine the sufficiency of their sureties by evaluating the sureties' moral and financial integrity. *See, e.g.*, *American Druggists*, 707 F.2d at 1233. This evaluation requires judges to use their education, training, and experience to determine whether a particular bail bondsman is capable of preventing a defendant from absconding and otherwise ensuring the presence of a defendant in court. This exercise of discretion also is linked inextricably to the resolution of any given defendant's case before the court and the defendant's right, if any, to bail, which lends further support to the judicial nature of the decision. *See McMillan*, 793 F.2d at 155 (act is judicial if decision will assist in the exercise of judicial discretion in the resolution of disputes).

Under the two-part *Stump* test, the Court holds that the decision by Defendants Eaton and Aldaz to suspend or revoke Plaintiffs' right to practice before their courts was a judicial act. Defendants Eaton and Aldaz therefore are entitled to judicial immunity from Plaintiffs' federal and state due process claims and Plaintiffs' interference with prospective business advantage, false light invasion of privacy, intentional infliction of emotional distress, and defamation claims to the

_____

[8] *Compare  Bradley v. Fisher*, 80 U.S. 335, 357 (1871); *Forrester v. White*, 484 U.S. 219, 229 (1988); *Meek v. County of Riverside*, 183 F.3d 962, 967 & n.2 (9th Cir. 1999); *McMillan v. Svetanoff*, 793 F.2d 149, 155 (7th Cir. 1986).

extent those claims are based upon conduct related to the revocation of Plaintiffs' bonding

privileges.[9]  *See, e.g.*, *Battle v. Whitehurst*, No. 93-2245, 1994 U.S. App. LEXIS 24318, *3-4

(4th Cir. Sept. 8, 1994) (unpublished opinion) (judge entitled to judicial immunity because the act

of revoking a bonding certificate is judicial in nature); *Jefferson v. City of Hazlehurst*, 936 F.

Supp. 382, 389-90 (D. Miss. 1995) (judge entitled to judicial immunity because refusing to allow

a bondsman to write bonds in judge's court is a judicial act).[10]

The Court's decision comports with the rationale of judicial immunity, which is to

encourage fearless judicial decisionmaking.  *See Pierson v. Ray*, 386 U.S. 547, 554 (1967);

*compare McMillan*, 793 F.2d at 154 ("[i]f the acts do not involve the judicial process so that a

fear exists that freedom of judicial decisionmaking may be stifled, the judge should not be free

from suit").  If judges are not granted immunity for decisions to regulate sureties, they will not

exercise their discretion freely in determining whether a particular surety is morally and financially

sufficient to secure the presence and prevent the absconding of an accused.  In the absence of

immunity, judges might approve all sureties regardless of their qualifications or ability to produce

---

[9] Plaintiffs also allege that Defendants Eaton, Aldaz, and Ireland have published statements that Plaintiff Torrez has committed criminal offenses, that he has been involved with disreputable dealings and persons, and that he is not fit or able to post bonds, and that Plaintiff Godwin associates with criminals and is not fit or able to post bonds.  Plaintiffs further allege that Defendants Eaton and Aldaz have published disparaging statements about them to the media, including statements of false information obtained from an unreliable source.  This conduct is not necessarily tied to the suspension or revocation of bonding privileges.  Defendants only have argued that they are entitled to judicial immunity for acts related to the suspension or revocation of Plaintiffs' bonding privileges.  The claims unrelated to the suspension or revocation therefore still are pending against Defendants Eaton and Aldaz.

[10] *See also Summit Fidelity & Surety Co. v. Nimtz*, 64 N.W.2d 803, 808 (Neb. 1954); *Harris County Bail Bond Board v. Burns*, 790 S.W.2d 862, 864 (Tex. Ct. App. 1990); *Travis County Bail Bond Board v. Smith*, 531 S.W.2d 236, 240 (Tex. Ct. App. 1975).

defendants at trial.  Alternatively, judges might deny bail altogether to a particular defendant based not on the merits of the defendant but rather on a distrust of a particular bondsman from whom the court is forced (by fear of liability) to accept bonds.  The Court's decision here avoids either untenable result.

Plaintiffs' argument that regulation of bondsmen is a legislative--and therefore not judicial--function of a court does not alter the Court's decision.  Plaintiffs argue that because the New Mexico legislature enacted the Bail Bonding Licensing Law, N.M. Stat. Ann. §§ 59A-51-1 et seq., which authorizes the Superintendent of the Department of Insurance to license bail bondsmen, regulation of bail bondsmen is an act reserved to the legislative and not judicial branch.  Courts, however, consistently have held that the presence of a legislative scheme does not prohibit judges from exercising judicial discretion and revoking or suspending a surety's bonding privileges.  *See, e.g.*, *American Druggists*, 707 F.2d at 1233 ("[t]he surety's approval by the Secretary of the Treasury . . . does not preclude the district court from exercising its discretion to approve only those bonds which it feels confident will result in the defendant's presence at trial); *Concord Cas. & Sur. Co. v. United States*, 69 F.2d 78, 81 (2d Cir. 1934) (even though legislative scheme authorized the secretary of the treasury to grant, suspend, or revoke a bondsman's license, the court still could take the judicial action of approving bonds or refusing to accept bonds of any named surety company).[11]

In addition, the Bail Bondsmen Licensing Law itself expressly grants courts authority to

---

[11] *See also* 8A Am. Jr. 2d Bail and Recognizance § 3; *Calvert v. Judges of the 40th Judicial Cir. Ct. & the 71-A Judicial Dist. Ct.*, 502 N.W.2d 293, 294-97 (Mich. 1993); *Summit Fidelity & Sur. Co. v. Nimtz*, 64 N.W.2d 803, 808 (Neb. 1954); *In re Hitt*, 910 S.W.2d 900, 904 (Tenn. Crim. Ct. App. 1995); *In re Johnson*, 217 S.E.2d 85, 87 (N.C. Ct. App. 1975).

exercise their discretion in accepting bonds from licensed sureties.  Section 59A-51-3(c) provides in relevant part, "Any bail bondsman licensed under the provisions [of this Law] shall be entitled to post bail bonds in any court in New Mexico subject to the court rules regulating the posting of bonds in that court."  N.M. Stat. Ann. § 59A-51-3(c).  It does not, as Plaintiffs suggest, require courts to accept bonds tendered by a surety that has complied with the legislative scheme.

Plaintiffs argue that New Mexico courts and judges do not have discretion to refuse bonds tendered by a statutorily approved surety and cite the Montana case *Wilshire Insurance v. Carrington* in support thereof.  *See* 570 P.2d 301, 304 (Mont. 1977).  In *Wilshire*, however, the Montana legislature had enacted a legislative scheme that mandated approval by courts of bonds offered by commercial sureties properly authorized to do business in the state.  *See id.*  In contrast, the New Mexico legislature specifically has granted courts the right to regulate bail bondsmen.  *See* N.M. Stat. 59A-51-3(c).  *Wilshire* therefore does not apply here.

Plaintiffs' argument that the function of regulating bail bondsmen is administrative in nature because (i) bail bonds can be signed by a judge or other authorized person, (ii) the conduct occurred outside the courtroom or chambers, and (iii) the conduct did not involve a pending case, likewise does not persuade the Court otherwise.  In support of their position, Plaintiffs argue that courts generally consider four factors in determining whether to grant judicial immunity:  "(1) whether the precise act complained of is a normal judicial function, or, whether the act is normally performed by a judge; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the parties dealt with the judge . . . in his or her official capacity."  46 Am. Jur. 2d Judges § 75 (1994) (internal footnotes omitted).  According to

-19-

Plaintiffs, these factors weigh against granting judicial immunity to defendant judges.

Plaintiffs' argument is not persuasive.  Plaintiffs cite the four factors without mentioning that courts consistently have construed the four factors broadly in favor of immunity and that courts have granted immunity "even though one or more of the[] [four] factors is not met."  *Id.* Courts also "generally [have] held that immunity should not be denied if denying it carries the potential of raising more than a frivolous concern in a judge's mind that to take proper action might expose him or her to personal liability."  *Id.* (internal footnotes omitted).  The Court already has held that the suspension or revocation of Plaintiffs' bonding privileges was a normal judicial function and that the parties dealt with Defendants Eaton and Aldaz in their judicial capacities.  *See supra* § II.A.1.  The fact that Plaintiffs cite a bail bond form with space for a "[j]udge or [a]uthorized [p]erson" to sign a bail bond does not change the fact that regulation of bail bondsmen is a function that normally falls to judges.  *See* N.M. Rules Ann. Form 9-304. Furthermore, although Plaintiffs maintain that the suspension or revocation of their bonding privileges occurred outside the courtroom or the judges' chambers and that the controversy did not center around any single case before the courts, there are no allegations in the complaints to support Plaintiffs' claims.  Where at least two (if not more) of the four factors clearly weigh in favor of granting immunity and where denying immunity will raise significant concern in the minds of judges that they will be subject to liability, the Court cannot deem the suspension or revocation of Plaintiffs' bonding privileges an administrative or non-judicial act.

2.    Jurisdiction.

Plaintiffs also argue that Defendants Eaton and Aldaz acted in excess of their authority and that judicial immunity therefore does not bar Plaintiffs' claims.  Courts repeatedly have held,

however, that a judge's actions in excess of his or her authority are insufficient to waive judicial

immunity.  *See, e.g.*, *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).  Courts also have held

that "the scope of the judge's jurisdiction must be construed broadly where the issue is the

immunity of the judge."  *Id.* at 356 (citations and internal quotations omitted).

Even if Plaintiffs had alleged that Defendants Eaton and Aldaz acted in the absence of all

jurisdiction, however, Plaintiffs could not prevail here.  Under the plain language of New

Mexico's legislative scheme, judges have jurisdiction to regulate bondsmen practicing before their

courts even though the bondsmen may be licensed properly.  *See* N.M. Stat. Ann. § 59A-51-3(c).

Furthermore, the rules governing Defendant State Courts or the Aztec Municipal Court also

authorize the regulation of bail bondsmen, *see* N.M. Dist. Ct. R. Crim. P. 5-401B (setting forth

requirements for justification of a bond submitted to the court by a paid surety); N.M. Mag. Ct.

R. Crim. P. 6-401B (same); N.M. Mun. Ct. R. 8-401B (same), and case law, as described above,

provides that courts have inherent powers to regulate bondsmen, *see supra* § II.A.1.  *See also*

N.M. Const. Art. II, § 13 ("all persons shall be bailable for *sufficient* sureties") (emphasis added).

Plaintiffs cannot argue that Defendants Eaton and Aldaz acted in the absence of all jurisdiction

when a statute, rules of the courts, and case law explicitly authorize courts to regulate bail

bondsmen.  *Cf. Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985) (interpreting jurisdiction of

judge broadly for judicial immunity purposes and holding judge immune as long as judge has

jurisdiction to perform the general and not specific act in question).

Plaintiffs also argue that a court's grant of bonding privileges sufficiently resembles a state

license to which a property right has attached and that due process procedures must be invoked

before privileges may be withdrawn.  Because Defendants Eaton and Aldaz did not provide

Plaintiffs with prior notice, hearing, or opportunity to be heard, Plaintiffs maintain that judicial immunity does not apply. Even if Defendants Eaton and Aldaz were required to provide Plaintiffs with due process protections, which the Court does not decide here, Plaintiffs only can prove that Defendants Eaton and Aldaz acted in excess, and not in absence, of authority. As described herein, this showing is not sufficient to overcome judicial immunity. *See Stump*, 435 U.S. at 356-57; *compare Mireles v. Waco*, 502 U.S. 9, 13 (1991) (although judge's direction to officers to remove late attorney from one courtroom and transfer attorney with excessive force to judge's courtroom constitutes an act in excess of authority, judge is protected by immunity because his actions were not in the absence of all authority). Plaintiffs have not demonstrated that Defendants Eaton and Aldaz acted in the absence of all jurisdiction. Defendants Eaton and Aldaz therefore have not waived judicial immunity. The Court dismisses Plaintiffs' federal and state due process claims as well as the defamation, interference with business advantage, false light invasion of privacy, and intentional infliction of emotional distress claims to the extent those claims are based on the suspension or revocation of Plaintiffs' bonding privileges.

   B.   <u>Defendant Ireland</u>.

   The same absolute immunity afforded to judges has been extended to other judicial officers, including court administrators, when their functions are undertaken pursuant to the explicit direction of a judge. *See Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994).[12] Defendant Ireland does not argue that his actions were taken pursuant to the instructions of a judge. Even if

---

[12] *See also Plassman v. City of Wauseon*, No. 95-3736, 1996 U.S. App. LEXIS 14496, *19-20 (6th Cir. May 14, 1996) (unpublished opinion); *Gilbert v. Ferry*, 298 F. Supp. 2d 606, 612 (E.D. Mich. 2003); *compare Bell v. Manspeaker*, No. 00-1415, 2002 U.S. App. LEXIS 6664, *9 (10th Cir. Apr. 10, 2002) (unpublished opinion) (court clerks) (citation omitted).

he did make such an argument, on a motion to dismiss, the Court only may consider facts alleged in the pleadings.  Nowhere in the amended complaints do Plaintiffs allege that Defendant Ireland acted pursuant to a judge's instructions.  To the contrary, Plaintiffs allege that Defendant Ireland acted "unilaterally."[13]  Accordingly, the Court cannot grant Defendant Ireland absolute quasi-judicial immunity on this ground.  If, however, at a later stage in this proceeding, the undisputed evidence demonstrates that a judge instructed or ordered Defendant Ireland to suspend or revoke Plaintiffs' bonding privileges, judgement in Defendant Ireland's favor would be appropriate.  *See Bush*, 38 F.3d at 847-48 (granting court administrator absolute quasi-judicial immunity because administrator acted pursuant to a judge's direction); *compare Battle*, 831 F. Supp. at 528 (granting clerk immunity for suspending bonding privileges because letter sent by clerk indicating plaintiff's bonding privileges were being suspended also indicated that clerk was acting pursuant to instructions of a judge).

Immunity also has been extended to other judicial officials "where performance of a judicial act is involved or [the official's] duties have an integral relationship with the judicial process."  *Coleman v. Farnsworth*, No. 03-3296, 2004 U.S. App. LEXIS 3496, *10 (10th Cir. Feb. 24, 2004) (unpublished opinion) (citations omitted).  In deciding whether Defendant Ireland's actions meet this test, the Court once again must consider the "nature and function of the act in question, not the act per se."  *Id.* at *7 (citing *Mireles v. Waco*, 502 U.S. 9, 13 (1991)).

---

[13] Although the amended complaints also allege that Defendant Eleventh Judicial District Court participated in, ratified, approved, or otherwise acquiesced in Defendant Ireland's pattern of unlawful conduct and the unlawful decision to suspend or revoke Plaintiffs' bonding privileges, the Court cannot conclude, construing the complaints in the light most favorable to Plaintiffs, that Plaintiffs can prove no set of facts indicating that Defendant Ireland acted unilaterally without instruction or direction from a judge.

The proponent of a claim of absolute immunity bears the burden of establishing the justification for such immunity.  *See, e.g.*, *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432, 433 n.4 (1993) ("We have consistently emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.  The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties.") (internal quotation and citation omitted).  Although this Court has held that the function of regulating bail bondsmen is judicial in nature, *see supra* § II.A.1, Defendant Ireland also must demonstrate that he had jurisdiction to perform that function.  *See Stump*, 435 U.S. at 356-67 (immunity does not apply if actions were in the absence of all jurisdiction); *see also Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1390 (9th Cir. 1987).  Courts extend judicial immunity only when officials are performing acts within their authority or the scope of their duties.  *See, e.g.*, *Castillo v. Castillo*, 297 F.3d 940, 948 (9th Cir. 2002) ("individuals, when acting within the scope of their duties, who participate in the judicial process" may be entitled to quasi-judicial immunity") (citations omitted).[14]  Defendant Ireland has not cited any grant of authority (*e.g.*, a statute, rule, case precedent, or simple delegation of authority from a judge) allowing him to regulate the bonding privileges of bail bondsmen.  Accordingly, Defendant Ireland has not fulfilled his burden, and the Court cannot extend absolute quasi-judicial immunity to Defendant Ireland at this time.

The Court's decision in this regard comports with the rule that "[t]he privilege of absolute judicial immunity should be 'applied sparingly' in suits brought under section 1983 since to give

---

[14] *See also Sparks v. Character & Fitness Committee*, 859 F.2d 428, 431 (6th Cir. 1988); *Mullis*, 828 F.2d at 1390; *Smith v. Rosenbaum*, 333 F. Supp. 35, 38-39 (E.D. Pa. 1971) (citation omitted).

too wide a scope of protection to state officials would effect a 'judicial repeal' of the congressional purpose to make liable 'every person' who under color of state law abridges a citizen's rights." *McCray v. State of Maryland*, 456 F.2d 1, 3 (4th Cir. 1972) (citations omitted); *see also Antoine*, 508 U.S. at 433 n.4 ("'We have been quite sparing in our recognition of absolute immunity, and have refused to extend it any further than its justification would warrant.'") (quoting *Burns*, 500 U.S. at 486-87).  In deciding whether to extend immunity, courts must consider whether denying immunity would "have a chilling effect on the judicial duties and actions of [an official], who would be readily subject to suit in the course of performing his or her [official] duties." *Coleman*, 2004 U.S. App. LEXIS 3496, at *12.  Defendant Ireland has not provided any argument to justify the extension of immunity to him, and the Court cannot say that denying Defendant Ireland immunity would have a chilling effect on the official duties of court administrators.  There is no evidence or argument in the record indicating that it is within the official duties of a court administrator to regulate bail or bail bondsmen.  To the contrary, Defendants state that "[o]bviously, in this case no one could have made the decision to suspend bonding privileges during pendency of the felony charges[] other than a judge."  Accordingly, absent a showing that it is within a court administrator's duties to regulate the bonding privileges of bail bondsmen, denying immunity for an act involving such regulation should not have a negative impact on the decisionmaking of administrators.  *See id.*; *see also Hendriksen v. Bentley*, 644 F.2d 852, 855-56 (10th Cir. 1981) (courts must "weigh the nature of the activity involved and the need for unfettered exercise of discretion against the individual interest in protection under § 1983").

On the evidence and argument before the Court, the Court cannot conclude that

Defendant Ireland is entitled to absolute quasi-judicial immunity.[15]  If Defendant Ireland could demonstrate that he had some authority or jurisdiction to suspend or revoke Plaintiffs' bonding privileges, extension of absolute quasi-judicial immunity might be appropriate at that time.  To date, however, Defendant Ireland has not provided any indication that such authority or jurisdiction exists.

III.    Does the New Mexico Tort Claims Act Bar Plaintiffs' Claims?

Defendants Eaton in her individual capacity, Aldaz in her individual and official capacities, Ireland in his individual capacity, and Aztec Municipal Court ("Remaining Defendants") argue that Plaintiffs' state claims are barred by various provisions in the New Mexico Tort Claims Act.[16]  First, the Remaining Defendants argue that they are immune from suit under the Act for Plaintiffs' state tort claims.  Second, the Remaining Defendants maintain that the statute of limitations bars Plaintiffs' state claims.  With respect to Plaintiffs' defamation claims, the Remaining Defendants argue that Plaintiffs have failed to state a valid claim for relief.  Third, Defendants Eaton and Ireland argue that Plaintiffs' state claims are barred by the notice provisions in the New Mexico

---

[15] The Court does not discuss qualified immunity because Defendant Ireland did not raise that defense.

[16] Although Defendant State Courts and Defendant Eaton in her official capacity also make this argument, the Court already has dismissed Plaintiffs' claims against these defendants. The Court therefore need not consider the argument that the Tort Claims Act bars Plaintiffs' state claims against these defendants.  Likewise, because the Court has dismissed Plaintiffs' state due process claims against Defendants Eaton and Aldaz in their individual capacities as well as the interference with prospective business advantage, false light invasion of privacy, intentional infliction of emotional distress, and defamation claims to the extent these claims are based upon the suspension or revocation of Plaintiffs' bonding privileges against Defendants Eaton and Aldaz in their individual capacities, the Court need not consider whether these claims against these defendants are barred by the Tort Claims Act.  Where convenient, however, the Court will address some of the already-dismissed claims against these defendants to demonstrate that the claims are subject to dismissal on multiple grounds.

-26-

Tort Claims Act.  The Court will address each of these arguments in turn.

      A.    <u>Are Defendants Immune from Suit Under the New Mexico Tort Claims Act</u>?

      The Remaining Defendants argue that Plaintiffs cannot state a claim for relief under the New Mexico Tort Claims Act for interference with prospective business advantage, false light invasion of privacy, intentional infliction of emotional distress, defamation, and/or violation of state due process rights unless Plaintiffs can establish that the Remaining Defendants waived their immunity under the Act.  *See* N.M. Stat. Ann. § 41-4-4 (granting immunity from tort liability for "governmental entit[ies] and any public employee while acting within the scope of duty . . . except as waived by Sections 41-4-5 through 41-4-12"); *see also Pemberton v. Cordova*, 105 N.M. 476, 478, 734 P.2d 254, 256 (N.M. Ct. App. 1987), *overruled in part on other grounds by Bober v. New Mexico State Fair*, 111 N.M. 644, 808 P.2d 614 (N.M. 1991).  None of the waiver provisions in the Tort Claims Act applies to courts, judges, or court personnel.  *See* N.M. Stat. Ann. §§ 41-4-5 to 41-4-12.  The Remaining Defendants therefore argue they are immune from Plaintiffs' claims.  *See id.* § 41-4-4.

      To avoid dismissal, Plaintiffs maintain that the Tort Claims Act does not bar their claims for three separate reasons.  First, Plaintiffs argue that the Act does not grant immunity for alleged intentional conduct, such as interference with business relations, false light invasion of privacy, intentional infliction of emotional distress, defamation, or violation of state due process rights, and that the Remaining Defendants therefore are not entitled to sovereign immunity under the Act.  In support of this argument, Plaintiffs cite *Allen v. McClellan*, in which the court stated that "an officer of the state who acts outside the scope of his authority and in so doing commits a willful and malicious tort may be held liable for his actions."  77 N.M. 801, 806, 427 P.2d 677, 680

-27-

(N.M. 1967), *overruled in part on other grounds by New Mexico Livestock Bd. v. Dose*, 94 N.M. 68, 607 P.2d 606 (N.M. 1980).  *Allen*, however, was decided in 1967, prior to the enactment of the Tort Claims Act, when New Mexico officials were protected by the common law--and not statutory--doctrine of sovereign immunity.  In the 1970s, when the New Mexico legislature enacted the Tort Claims Act, the legislature expressly indicated that the Act covers "all government entities and public employees . . . within the limitations of the . . . Act . . . and in accordance with the principles established in that act."  N.M. Stat. Ann. § 41-4-2(A).  By its very terms, the Act protects and even indemnifies government entities and employees from negligent and intentional tort claims, provided those claims fall within the limitations of the Act.  *See McBrayer*, 129 N.M. at 782-83, 14 P.3d at 47-48 (construing Sections 41-4-4(E), 41-4-17(A), and 41-4-4(c) of the Tort Claims Act and holding that the Act covers intentional, and even criminal, conduct).  Indeed, in *Risk Management Division v. McBrayer*, the court confirmed this fact by explicitly holding that the Act covers intentional torts.  *See id.* at 783-85, 14 P.3d at 48-50 (officials are entitled to immunity for intentional torts provided immunity for those torts is not waived); *see also Methola*, 95 N.M. at 332, 622 P.2d at 237.  Plaintiffs' first argument therefore does not overcome the immunity afforded to the Remaining Defendants under the Act.

Second, Plaintiffs argue that immunity for their interference with prospective business advantage, defamation, and state due process claims is waived under Section 41-4-4(D)(2), because their claims involve a property right.  Although Section 41-4-4(D)(2) refers to property rights, it does so in granting public employees the right to indemnification from governmental entities for suits alleging violation of property rights.  *See* N.M. Stat. Ann. §4-41-4(D)(2).  The Section does not contain a waiver of immunity.  *See id.* § 41-4-4(A) (granting immunity except as

contained in one of the Act's waiver provisions located in Sections 41-4-5 through 41-4-12).

Accordingly, Plaintiffs' argument does not overcome the Act's immunity provisions.

Third, Plaintiffs argue that their claims for interference with prospective business advantage, false light invasion of privacy, intentional infliction of emotional distress, defamation, and violation of state due process rights are not covered by the Tort Claims Act because the Remaining Defendants were acting outside the scope of their duties when they engaged in the conduct underlying these claims.  This third and final argument applies only to the Defendants Eaton, Aldaz, and Ireland and not to Defendant Aztec Municipal Court.  A government entity, such as a court, cannot act inside or outside the scope of its duties.  A "[entity] can only act through its officials and employees."  *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002); *see also Abalos v. Bernalillo County Dist. Attorney's Office*, 105 N.M. 554, 558, 734 P.2d 794, 798 (N.M. Ct. App. 1987) (same), *cert. denied*, 106 N.M. 35, 738 P.2d 907 (N.M. 1987). Immunity under the Tort Claims Act therefore protects Defendant Aztec Municipal Court, and the Court dismisses Plaintiffs' state tort claims against this entity.[17]

In contrast, Plaintiffs' argument that the Act does not apply to Defendants Eaton, Aldaz, and Ireland would be persuasive if these defendants were acting outside the scope of their duties. Plaintiffs, however, do not directly allege that these defendants acted outside the scope of their duties.  Instead, Plaintiffs suggest that because they alleged in their amended complaints that the defendants acted in their individual capacities, Plaintiffs effectively alleged (although they did not

---

[17] The Court previously dismissed all of Plaintiffs' claims against Defendant State Courts on the ground of Eleventh Amendment immunity.  Plaintiffs' state claims against Defendant State Courts, however, also are subject to dismissal under the immunity provisions in the Tort Claims Act, and the Court dismisses them on this ground as well.

do so specifically in the amended complaints) that the defendants were acting outside the scope of their duties.  Because the Tort Claims Act applies only to government entities and public employees acting within the scope of their duties, *see* N.M. Stat. Ann. §§ 41-4-2, 41-4-4, Plaintiffs suggest that the Act's immunity provisions do not apply to their individual capacity claims against Defendants Eaton, Aldaz, and Ireland.

Plaintiffs' argument assumes that there is a direct correlation between scope of duties and the capacity in which an official is sued.  New Mexico does not recognize this correlation.  "[T]he distinction between a[n] official in an official capacity and a[n] official in an individual capacity does not turn on the type of conduct involved"--*i.e.*, whether the official was acting within or outside the scope of his or her duties.  *Ford v. New Mexico Dep't of Public Safety*, 119 N.M. 405, 410, 891 P.2d 546, 551 (N.M. Ct. App. 1994) (rejecting argument that a lawsuit against an official acting within the scope of his or her duties must by definition be a lawsuit against the official in his or her official capacity), *cert. denied*, 119 N.M. 354, 890 P.2d 807 (N.M. 1995).  Rather, the distinction "turns on procedural considerations and the relief sought."  *Id.*, 891 P.2d at 551.  In essence, a suit against an official in his or her official capacity is a suit against the municipality; a suit against an official in his or her individual capacity is a suit seeking damages from the individual and not the municipality.  *See id.* at 411, 891 P.2d at 552; *see also Hafer v. Melo*, 502 U.S. 21, 26 (1991) ("the phrase 'acting in [his or her] official capacit[y] is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury").

Consistent with its obligation to interpret the amended complaints liberally in Plaintiffs' favor, *see Housing Auth. of the Kaw Tribe,* 952 F.2d at 1187, *cert. denied*, 504 U.S. 912 (1992),

however, the Court will construe the amended complaints as alleging that Defendants Eaton, Aldaz, and Ireland were acting outside the scope of their duties.  Conclusory allegations that these defendants were acting outside the scope of their duties alone, however, are not sufficient to overcome a motion to dismiss.  The factual allegations in the amended complaints must support the conclusion that these defendants acted outside the scope of their duties.

In *Risk Management Division v. McBrayer*, the court broadly defined scope of duty under the Tort Claims Act.  *See* 129 N.M. at 781, 14 P.3d at 46.  The *McBrayer* court held that a reasonable jury could find that a university professor was acting within the scope of his duties when he lured a student to his apartment allegedly to obtain her homework assignments and then "brutally attacked," "sexually assaulted and tortured," and "tried to kill" her.  *See id.* at 779, 781, 784, 14 P.3d at 44, 46, 49.  Under the Tort Claims Act, "'scope of duty' means performing any duties that a pubic employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance."  N.M. Stat. Ann. § 41-4-3(G).  The *McBrayer* court held that although the attack (of course) was unauthorized, a nexus existed between the instructor's authorized duties and his after-class interaction with the student seeking class assignments.  *See McBrayer*, 129 N.M. at 784, 14 P.3d at 49; *see also Celaya v. Hall*, 85 P.3d 239, 245 (N.M. 2004).  This connection was sufficient to conclude that the unauthorized attack could fall within the instructor's "scope of duties" under the Act.  *See id.* at 245.  The court held, "Because it appears that [the instructor] used this authorized duty as a subterfuge to accomplish his assault, we find that a reasonable fact finder could determine that his actions were within the scope of the duties that NMSU requested, required or authorized him to perform."  *See McBrayer*, 129 N.M. at 784, 14 P.3d at 49; *accord Celaya*, 85 P.3d at 245.

The amended complaints contain allegations indicating that Defendants Eaton and Aldaz may have been acting within the scope of their duties when they engaged in certain alleged conduct.  As described herein, judges have authority and jurisdiction to regulate bail bondsmen, *see supra* § II.A.1, *i.e.*, they have been "requested, required or authorized" to perform the acts that form the basis of some of Plaintiffs' claims.  Because the acts complained of  in support of the state due process claims--*i.e.*, the suspension or revocation of Plaintiffs' bonding privileges--fall within the scope of Defendants Eaton's and Aldaz's duties, the due process claims against these defendants are barred by the sovereign immunity provisions in the Tort Claims Act.[18]  To the extent Plaintiffs' remaining tort claims against these defendants for interference with prospective business advantage, false light invasion of privacy, intentional infliction of emotional distress, and defamation are based upon the suspension or revocation of bonding privileges, those claims also are barred by the sovereign immunity provisions in the Tort Claims Act.[19]  The Court therefore dismisses these claims against Defendants Eaton and Aldaz.

Plaintiffs also allege, however, that Defendants Eaton and Aldaz have defamed Plaintiffs and their business, published communications that Plaintiffs were not able to conduct bonding business and that Plaintiffs were involved with disreputable dealings and persons, and published

---

[18] The Court already has dismissed the individual capacity due process claims against Defendant Aldaz on the ground that the claims are barred by judicial immunity.  *See supra* § II.A. The Court also has dismissed the individual and official capacity due process claims against Defendant Eaton on the grounds of Eleventh Amendment immunity (official capacity claim) and judicial immunity (individual capacity claim).  *See supra* § I.B, II.A.  These claims, however, also are subject to dismissal under the immunity provisions of the Tort Claims Act.

[19] The Court already has dismissed these claims against Defendants Eaton and Aldaz in their individual capacities on the ground of judicial immunity and against Defendant Eaton in her official capacity on the ground of Eleventh Amendment immunity.  The claims also are subject to dismissal under the immunity provisions of the Tort Claims Act.

disparaging statements to the media.  Defendants Eaton and Aldaz have not provided any

argument or cited any authority demonstrating that these actions are within the scope of their

duties for purposes of the Tort Claims Act.  Accordingly, the Court cannot say that Plaintiffs can

prove no set of facts indicating that Defendants Eaton and Aldaz acted outside the scope of their

duties when they allegedly engaged in this conduct.  On the facts alleged, these defendants may

not be entitled to sovereign immunity.  The Court therefore denies the motions to dismiss the

interference with prospective business advantage, false light invasion of privacy, intentional

infliction of emotional distress, and defamation claims on this ground to the extent these claims

are based on conduct other than the suspension or revocation of Plaintiffs' bonding privileges.

The amended complaints also contain factual allegations that could support Plaintiffs'

claims that Defendant Ireland acted outside the scope of his duties.  Plaintiffs allege that

Defendant Ireland engaged in a course of conduct (i) defaming Plaintiffs and their business, (ii)

publishing communications that Plaintiffs were not able to conduct bonding business and that

Plaintiffs were involved with disreputable dealings and persons, and (iii) unlawfully suspending or

revoking Plaintiffs' bonding privileges.  The Court cannot determine beyond a doubt that

defaming Plaintiffs, publishing communications regarding Plaintiffs' ability to conduct bonding

business, and suspending Plaintiffs' bonding privileges are within the scope of a court

administrator's duties--*i.e.*, that the Eleventh Judicial District Court or the State of New Mexico

has "requested, required or authorized" Defendant Ireland to perform these acts.  *See  Hartford*

*Fire*, 509 U.S. at 811; *see also McBrayer*, 129 N.M. at 781, 784, 14 P.3d at 46, 49 (conduct may

be within the scope of an official's duties if a connection exists between the official's authorized

duties and his or her allegedly tortious conduct).  Defendant Ireland has not pointed to any

authority (*i.e.*, statute, rule, case precedent, or delegation of authority) indicating that court administrators have a duty or are otherwise authorized to engage in any of these acts.  *See also supra* II.B.

Plaintiffs have alleged facts sufficient to indicate that Defendant Ireland may have been acting outside the scope of his duties when he committed the conduct alleged in the amended complaints and therefore that he may not be protected by sovereign immunity.  Accordingly, the Court denies Defendant Ireland's motion to dismiss the state claims for interference with prospective business advantage, false light invasion of privacy, intentional infliction of emotional distress, defamation, and violation of state due process rights.

B.   <u>Does the Statute of Limitations Bar Plaintiffs' State Tort Claims</u>?

    1.   <u>Interference with Prospective Business Advantage, False Light Invasion of Privacy, and Intentional Infliction of Emotional Distress</u>.

Defendants Eaton, Aldaz, and Ireland ("Individual Defendants") also argue that the statute of limitations in the Tort Claims Act bars Plaintiffs' interference with prospective business advantage, false light invasion of privacy, and intentional infliction of emotional distress claims against them.[20]  These claims are based upon alleged conduct that began in February 1998 and that has continued through the present.  Section 41-4-15 of the Tort Claims Act provides that "[a]ctions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death."  N.M. Stat. Ann. § 41-4-15.  The original complaints in this action were filed on March 22, 2002.  To determine whether the statute of limitations bars Plaintiffs' claims the Court must first examine the accrual date of Plaintiffs' causes of action to discern when the statute of limitations began to run and next determine, if the statute has run, whether the statute somehow was tolled.

In New Mexico, a statute of limitations begins to run "when the cause of action accrues, the accrual date usually being the date of discovery."  *New Mexico v. Public Employees Retirement Ass'n*, 133 N.M. 20, 27, 59 P.3d 500, 507 (N.M. 2002) (citation omitted); *see also Primedical, Inc. v. Allied Investment Corp.*, No. 90-1802, 1994 U.S. Dist. LEXIS 4517, *13-14 (D.D.C. Mar. 31, 1994) (unpublished opinion) ("the clock begins ticking [on a tortious

---

[20] Although these claims still are pending against Defendant Ireland in his individual capacity, the Court has dismissed the claims against Defendants Eaton and Aldaz to the extent they are based on the suspension or revocation of Plaintiffs' bonding privileges.  To the extent the claims are based on other conduct, the claims still are pending against the defendant judges.

interference with business relationship claim] when the fact of injury is sufficiently plain for

plaintiffs' cause of action to accrue even though the extent and precise nature of the injury has not

yet developed") (citation and internal quotations omitted).  In *Bolden v. Corrales*, the New

Mexico Court of Appeals held that for injuries that are not "inherently unknowable," discovery

occurs on the date of a tortious act, even if "the full extent of the injury was not known" until

later.  111 N.M. 721, 722, 809 P.2d 635, 636 (N.M. Ct. App.), *cert. denied*, 111 N.M. 77, 801

P.2d 659 (N.M. 1990); *see also F.D.I.C. v. Schuchmann*, 224 F. Supp. 2d 1332, 1339 (D.N.M.

2002) (applying accrual rule set forth in *Bolden*) (citations omitted).  The *Bolden* court refused to

apply a line of case law holding that the limitations period under the Tort Claims Act commences

when an injury manifests itself rather than when the wrongful act occurs, reasoning that this case

law applies only where the injury is "inherently unknowable."  *See Bolden*, 111 N.M. at 721-22,

801 P.2d at 635-36.  Under the rule announced in *Bolden*, the statute of limitations on Plaintiffs'

claims began to run when the alleged conduct occurred.  *See id.*, 801 P.2d at 635-36;

*Schuchmann*, 224 F. Supp. 2d at 1339 (citations omitted).  Because Plaintiffs alleged various

instances of wrongful conduct beginning in February 1998 and continuing through the present, the

statute of limitations expired at different times depending upon when the wrongful acts alleged by

Plaintiffs occurred.  The Court, however, need not decide the exact accrual date of Plaintiffs'

claims because Plaintiffs have alleged that the statute of limitations, no matter when it began to

run, was tolled by the continuing wrong doctrine.

The tolling of a statute of limitations, including tolling under the continuing wrong

doctrine, is governed by state law.  *See id.* at 1341.  The continuing wrong doctrine has been

recognized, although not applied consistently, by New Mexico courts.  *See Tiberi v. Cigna Corp.*,

89 F.3d 1423, 1430-31 n.4 (10th Cir. 1996) (New Mexico courts have "considered the applicability of the continuing wrong doctrine in a variety of cases") (citations omitted); *see also Schuchmann*, 224 F. Supp. 2d at 1341.  "Under [this] doctrine, . . . 'where a tort involves a continuing or repeated injury, the cause of action accrues at, and the limitations begin to run from, the date of the last injury.'" *Tiberi*, 89 F.3d at 1430-31 (quoting 54 C.J.S. Limitation of Actions § 177 (1987)); *accord Schuchmann*, 224 F. Supp. 2d at 1341.  In order to invoke the continuing wrong doctrine, a party must point to continuing wrongful conduct.  *See Tiberi*, 89 F.3d at 1430-31; *see also, e.g.*, *Ealy v. Sheppeck*, 100 N.M. 250, 251, 669 P.2d 259, 260 (N.M. Ct. App.) (rejecting application of continuing wrong doctrine where plaintiff filed an untimely malpractice claim because there was only intermittent and not continuous treatment by physician), *cert. denied*, 102 N.M. 259, 669 P.2d 735 (1983), *and overruled in part on other grounds by Juarez v. Nelson*, 133 N.M. 168, 61 P.3d 877 (N.M. Ct. App. 2002); *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (continuing wrong "doctrine applies when there is no single incident that can fairly or realistically be identified as the cause of significant harm") (citation and internal quotations omitted).  A court will not apply the continuing wrong doctrine, however, if "the plaintiff's injury is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress." *Tiberi*, 89 F.3d at 1431 (quotations omitted); *see also Schuchmann*, 224 F. Supp. 2d at 1341.

Plaintiffs' amended complaints allege conduct beginning in February 1998 and continuing through the present.  The Individual Defendants argue that the continuing wrong doctrine does not apply because Plaintiffs' allegations demonstrate that Plaintiffs' claims were ascertainable beginning in February 1998 and that the statute of limitations period began to run at that time.

*See Tiberi*, 89 F.3d at 1431; *Schuchmann*, 224 F. Supp. 2d at 1341.  For purposes of a motion to

dismiss, the Court must construe all inferences in favor of Plaintiffs and dismiss only if it appears

beyond a doubt that Plaintiffs can prove no set of facts in support of their claims that would

entitle them to relief.  Under this deferential standard, Plaintiffs' allegations do not indicate that

they discovered the injury in February 1998.  Rather, the allegations demonstrate that at the time

Plaintiffs filed their complaints, they were aware that these actions had occurred beginning in

February 1998 and continuing through the present.  The Court cannot say that Plaintiffs can prove

no set of facts indicating that the continuing wrong doctrine should apply.[21]  Accordingly, the

Court denies the motions to dismiss on this ground.

    The Court also denies the motions to dismiss on another ground.  Plaintiffs argue, and the

Court agrees, that if the amended complaints contain factual allegations that the Individual

Defendants were acting outside the scope of their duties, the claims are not covered by the Tort

Claims Act and therefore are not barred by the two-year statute of limitations in the Act.  Rather,

Plaintiffs argue that the three-year common law statute of limitation applies.  *See* N.M. Stat. Ann.

§ 37-1-8.  Under the three-year statute of limitations, claims based on conduct occurring before

March 22, 1999, would be barred unless the statute of limitations was tolled.  As described herein,

the Court cannot conclude beyond a doubt on the allegations alone that the Individual

---

[21] The City Defendants argue that Plaintiffs filed a Tort Claims Notice on June 7, 2000,
and that Plaintiffs therefore had notice of the claims at that time.  On a motion to dismiss,
however, the Court only may consider factual allegations in the pleadings or the attachments
thereto.  Furthermore, without considering the substance of the Tort Claims Notice, it is not clear
precisely what facts, if any, Plaintiffs had notice of in June 2000.  Once the parties have developed
the record in this case, however, the facts may demonstrate that there was a definite and
discoverable injury outside the limitations period and that Plaintiffs had no reason for not coming
forward to seek redress within the limitations period.  *See Schuchmann*, 224 F. Supp. 2d at 1342.
If such a time comes, judgment in the Individual Defendants' favor might be appropriate.  *See id.*

Defendants' conduct, other than the conduct based on the suspension or revocation of Plaintiffs' bonding privileges, was within the scope of their duties. Assuming all well-pleaded facts to be true and drawing all reasonable inferences in favor of Plaintiff, the amended complaints state valid claims for relief for interference with prospective business advantage, false light invasion of privacy, and intentional infliction of emotional distress to the extent these claims are based on conduct other than the suspension or revocation. On the facts alleged, the claims are not barred by the statute of limitations. The Court therefore denies the motions to dismiss on this ground as well.

        2.    <u>Defamation</u>.

      The Individual Defendants also challenge the timeliness of Plaintiffs' defamation claims against Defendant Ireland and Defendants Eaton and Aldaz. In support of their claims against Defendant Ireland, Plaintiffs allege that in February 2000, Defendant Ireland published a statement indicating that Plaintiffs could not post bonds with the Eleventh Judicial District Court. Plaintiffs do not attach copies of that statement to their amended complaints or otherwise quote the precise defamatory language allegedly used by Defendant Ireland.

      Although Plaintiffs allege that Defendant Ireland defamed them by publishing a statement revoking Plaintiffs' bonding privileges, that statement was published in February 2000, approximately 25 months before Plaintiffs filed their original complaints in this action. The statute of limitations on a defamation claim begins to run at the time the defamatory statement was published. *See, e.g.*, *Fikes v. Furst*, 133 N.M. 146, 151, 61 P.3d 855 (N.M. Ct. App. 2002) (citation omitted). Accordingly, the two-year statute of limitations in the Tort Claims Act expired approximately one month before Plaintiffs filed their initial complaints. Plaintiffs' February 2000

defamation claims therefore are barred unless the Act's statute of limitations was tolled.

Once again, Plaintiffs attempt to resurrect their claims by invoking the continuing wrong doctrine. As described herein, to invoke this doctrine, a defendant's wrongful conduct must be of a continuous nature. *See Tiberi*, 89 F.3d at 1430-31; *Sheppeck*, 100 N.M. at 251, 669 P.2d at 260. In this case, one allegedly defamatory statement cannot meet the continuous conduct requirement of the doctrine.[22] Although the amended complaints indicate that other "[d]efendant law enforcement officers and judges . . . have published [additional] statements" defaming Plaintiffs, the complaints do not indicate that Defendant Ireland, court administrator, has published additional defamatory statements. Accordingly, Plaintiffs cannot save their defamation claims against Defendant Ireland by invoking the continuing wrong doctrine.

Plaintiffs' defamation claims against Defendant Ireland also fail because they are not sufficiently specific to state valid claims for relief. Claims of defamation require "'greater factual detail and specificity with regard to most elements of the complaint than might otherwise be true in civil actions.'" *Andrews v. Stallings*, 119 N.M. 478, 485, 892 P.2d 611, 618 (N.M. Ct. App. 1995) (citation omitted). A plaintiff alleging defamation must "'plead precisely the statements

---

[22] If Plaintiffs had alleged continuous wrongful conduct, it is unclear whether such allegedly defamatory conduct would meet the requirements of the continuing wrong doctrine. Other courts have found the doctrine inapplicable to defamation claims. For example, the Ninth Circuit has held that "publication of [an allegedly defamatory statement] [i]s a single incident," and that "'[a] cause of action for defamation accrues immediately upon the occurrence of the tortious act and thus, is not appropriate for the continuing violation exception.'" *Flowers*, 310 F.3d at 1126 (quoting *Lettis v. U.S. Postal Serv.*, 39 F. Supp. 2d 181, 205 (E.D.N.Y. 1998)). Likewise, in *Celli v. Shoell*, the District of Utah specifically held that "repeated defamatory statements do not toll the running of the statute of limitations. Rather, each new statement constitutes a distinct cause of action." 995 F. Supp. 1337, 1345 (D. Utah 1997) (citing 50 Am. Jur. 2d, Libel and Slander § 427 (1995); 53 C.J.S., Libel and Slander § 122 (1987)). Resolution of this question, however, is not necessary here.

about which [he or she] complain[s].'"  *Id.* at 485, 892 P.2d at 618 (citations omitted).  Here,

Plaintiffs have not alleged their defamation claims with sufficient specificity, and Plaintiffs

therefore have not stated valid claims for relief.  *See Celli*, 995 F. Supp. at 1346 (holding that "the

complaint fails to identify any specific defamatory statements made by the defendants or when,

where, or to whom any defamatory statements were made" and that "[s]ince plaintiffs have failed

to identify any defamatory statement, the defamation claim is subject to dismissal for failure to

state a claim upon which relief can be granted").  Plaintiffs merely have alleged that Defendant

Ireland published a statement defaming Plaintiffs by stating that they could not post bonds and

that they were not fit to post bonds in the Eleventh Judicial District Court.  The Court therefore

grants Defendant Ireland's motion to dismiss Plaintiffs' defamation claims.

      The Court also grants Defendants Eaton's and Aldaz's motions to dismiss Plaintiffs'

defamation claims.  In their amended complaints, Plaintiffs allege that Defendants Eaton and

Aldaz have published defamatory statements to the media that unfavorably disparage and defame

Plaintiffs including publishing false information obtained from a source known by law enforcement

to be unreliable.  Plaintiffs, however, do not plead the precise language allegedly used by these

defendants.  Accordingly, Plaintiffs' defamation claims are dismissed for failure to state a

sufficiently specific claim for relief.[23]

      C.    <u>Does the Notice Provision in the New Mexico Tort Claims Act Bar Plaintiffs'</u>

---

[23] Plaintiffs also allege Defendants Eaton and Aldaz defamed them by publishing various
letters.  These letters, however, relate to the suspension or revocation of Plaintiffs' bonding
privileges.  The Court already has dismissed these defamation allegations on the ground of judicial
immunity (individual capacity claims only) and sovereign immunity under the Tort Claims Act
(individual and official capacity claims).  *See supra* § II.A, III.A.  The Court also has dismissed all
of the official capacity defamation claims against Defendant Eaton on the ground of Eleventh
Amendment immunity.  *See supra* §§ I.B.

Claims?

Defendants Eaton and Ireland argue that Plaintiffs' claims are barred by the notice provisions in the Tort Claims Act.[24]  Section 41-4-16 provides in relevant part, "Every person who claims damages from the state . . . shall cause to be presented to the risk management division . . . within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury."  N.M. Stat. Ann. § 41-4-16.  Actual notice also satisfies this requirement. *See, e.g.*, *Frappier v. Mergler*, 107 N.M. 61, 64, 752 P.2d 253, 156 (N.M. 1988); *Lopez v. State*, 122 N.M. 611, 616, 930 P.22d 146, 151 (N.M. 1996).

Although Plaintiffs have not raised this argument, the Court notes that the notice provisions in the Tort Claims Act do not apply to claims against public employees.  *See, e.g.*, *Martinez v. City of Clovis*, 95 N.M. 654, 655-56, 625 P.2d 583, 584-85 (N.M. Ct. App. 1980); *Dutton v. McKinley County Bd. of Comm'rs*, 113 N.M. 51, 53, 822 P.2d 1134, 1136 (N.M. 1978).  Section 41-4-16(A) "requires [a plaintiff] to give written notice to the officials therein named of any claim against 'the state or any local public body' within the ninety-day period, or suffer dismissal for lack of jurisdiction."  *Martinez*, 95 N.M. at 656, 625 P.2d at 585.  Section 41-4-15 does not require "such notice from one who claims damages against a public employee." *Id.*, 625 P.2d at 585.  The Court therefore denies the motion to dismiss Plaintiffs' claims against Defendants Eaton and Ireland on this ground.

In addition, Plaintiffs argue, and the Court agrees, that Defendants Eaton and Ireland have

---

[24] Defendant State Courts also make this argument.  The Court, however, need not consider the applicability of the argument to these defendants because the Court already has dismissed these defendants from this case on the ground of Eleventh Amendment immunity.

not satisfied their burden of proving lack of notice. Courts have held that a defendant has the burden of proving that a plaintiff has not met the notice requirements of the Tort Claims Act. *See, e.g.*, *Dutton*, 113 N.M. at 51, 822 P.2d at 1135. In their motions to dismiss, the Individual Defendants argue that the notice given by Plaintiffs "was not specific enough to give . . . [them] timely notice that [they] might be sued as required by the Tort Claims Act." Plaintiffs deny this allegation, and Defendants Eaton and Ireland provide no details about the allegedly insufficient notice and no argument in support of their claim that the notice given was not sufficiently specific. Defendants Eaton and Ireland therefore have not met their burden of proving lack of notice, and the Court denies the motion to dismiss on this ground as well.[25]

## CONCLUSION

For the reasons stated above, **IT THEREFORE IS ORDERED** that Defendants Eleventh Judicial District Court, Gregory T. Ireland, San Juan County Magistrate Court, and Linda B. Eaton's Motion to Dismiss Plaintiffs Torrez and Godwin, filed April 7, 2003 **[Doc. No. 27]**, Defendants Aztec Municipal Court and Barbara R. Aldaz's Motion to Dismiss Plaintiff David Torrez's First Amended Complaint, filed May 1, 2003 **[Doc. No. 41]**, and Defendants Aztec Municipal Court and Barbara R. Aldaz's Motion to Dismiss Plaintiff Jules Leslie Godwin's First Amended Complaint, filed April 30, 2003 **[Doc. No. 38]** are hereby **GRANTED** in part as follows:

---

[25] The Court further notes that the notice provision applies to Plaintiffs' claims only to the extent those claims are brought under the Tort Claims Act. Plaintiffs allege that Defendants Eaton and Ireland acted outside the scope of their duties and are not covered by the Act. If Plaintiffs prove Defendants Eaton and Ireland were acting outside the scope of their duties, the notice provision in the Act would not be applicable to them. *See* N.M. Stat. Ann. § 41-4-16 (notice provision applies to claims for which immunity has been waived under the Act).

1.       Plaintiffs' federal 42 U.S.C. Section 1983 due process claims and state claims for interference with prospective business advantage, false light invasion of privacy, intentional infliction of emotional distress, defamation, and violation of state due process rights against Defendants Eleventh Judicial District Court and San Juan County Magistrate Court are hereby DISMISSED;

2.       Plaintiffs' federal 42 U.S.C. Section 1983 due process claims and state claims for interference with prospective business advantage, false light invasion of privacy, intentional infliction of emotional distress, defamation, and violation of state due process rights against Defendant Eaton in her official capacity are hereby DISMISSED; Plaintiffs' 42 U.S.C. Section 1983 and state due process claims against Defendant Eaton in her individual capacity are hereby DISMISSED; Plaintiffs' state law claims for interference with prospective business advantage, false light invasion of privacy, and intentional infliction of emotional distress against Defendant Eaton in her individual capacity are hereby DISMISSED only to the extent those claims are based upon the suspension or revocation of Plaintiffs' bonding privileges; Plaintiffs' defamation claims against Defendant Eaton in her individual capacity are hereby DISMISSED; with respect to the defamation claims against Defendant Eaton in her individual capacity, the Court grants Plaintiffs leave to file second amended complaints within fourteen (14) days from the date of this Memorandum Opinion and Order if they can allege facts consistent with this Order to state timely and sufficiently specific defamation claims for relief;

3.       Plaintiffs' federal 42 U.S.C. Section 1983 due process claims and state claims for interference with prospective business advantage, false light invasion of privacy, intentional infliction of emotional distress, defamation, and violation of state due process rights against

Defendant Ireland in his official capacity are hereby DISMISSED; Plaintiffs' defamation claims against Defendant Ireland in his individual capacity are hereby DISMISSED; with respect to the defamation claims against Defendant Ireland in his individual capacity, the Court grants Plaintiffs leave to file second amended complaints within fourteen (14) days from the date of this Memorandum Opinion and Order if they can allege facts consistent with this Order to state timely and sufficiently specific defamation claims for relief;

4.       Plaintiffs' federal 42 U.S.C. Section 1983 and state due process claims against Defendant Aldaz in her individual capacity are hereby DISMISSED; Plaintiffs' state claims for interference with prospective business advantage, false light invasion of privacy, intentional infliction of emotional distress, and violation of state due process rights against Defendant Aldaz in her individual and official capacities are hereby DISMISSED only to the extent those claims are based upon the suspension or revocation of Plaintiffs' bonding privileges; Plaintiffs' defamation claims against Defendant Aldaz in her individual and official capacities are hereby DISMISSED; with respect to the defamation claims against Defendant Aldaz in her individual and official capacities, the Court grants Plaintiffs leave to file second amended complaints within fourteen (14) days from the date of this Memorandum Opinion and Order if they can allege facts consistent with this Order to state timely and sufficiently specific defamation claims for relief; and

5.       Plaintiffs' state claims for interference with prospective business advantage, false light invasion of privacy, intentional infliction of emotional distress, defamation, and violation of state due process rights against Defendant Aztec Municipal Court are hereby DISMISSED.

The motions to dismiss are hereby **DENIED** in part as follows:

1.       Defendant Eaton's motion in her individual capacity to dismiss Plaintiffs' state

claims for interference with prospective business advantage, false light invasion of privacy, and intentional infliction of emotional distress is hereby DENIED to the extent those claims are based on conduct other than the suspension or revocation of Plaintiffs' bonding privileges;

2.     Defendant Ireland's motion to dismiss Plaintiffs' federal 42 U.S.C. Section 1983 due process claims against him in his individual capacity is hereby DENIED; Defendant Ireland's motion to dismiss Plaintiffs' state claims for interference with prospective business advantage, false light invasion of privacy, intentional infliction of emotional distress, and violation of state due process rights against him in his individual capacity is hereby DENIED; Defendant Ireland, however, is granted leave to file a second motion to dismiss Plaintiffs' federal and state claims, and a memorandum in support thereof, on the ground of absolute quasi-judicial immunity within fourteen (14) days from the date of this Memorandum Opinion and Order, provided that the motion is consistent with this Memorandum Opinion and Order; if Defendant Ireland files a second motion to dismiss, all discovery related to the revocation or suspension of Plaintiffs' bonding privileges with respect to Defendant Ireland shall be stayed pending decision of Defendant Ireland's second motion to dismiss;

3.     Defendant Aldaz's motion to dismiss in her official capacity Plaintiff's federal 42 U.S.C. Section 1983 due process claims also is hereby DENIED; Defendant Aldaz's motion to dismiss in her individual and official capacities Plaintiffs' state claims for interference with prospective business advantage, false light invasion of privacy, and intentional infliction of emotional distress is DENIED to the extent those claims are based on conduct other than the suspension or revocation of Plaintiffs' bonding privileges; and

4.     Defendant Aztec Municipal Court's motion to dismiss Plaintiffs' federal 42 U.S.C.

-46-

Section 1983 due process claim is hereby DENIED.

Dated this 8th day of September, 2004.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
     Gilbert J. Vigil, Esq.

Attorney for Defendants State Defendants:
     Richard L. Gerding, Esq.

Attorney for Defendants City Defendants:
     Agnes Fuentevilla Padilla, Esq.