## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DAVID TORREZ,

                Plaintiff,

vs.

CITY OF FARMINGTON, VINCENT MITCHELL, in his official and
individual capacities, GERALD MAESTAS, in his official and
individual capacities, DUSTY DOWNS, in his official and individual      Civ. No. 02-1381
capacities, JASON HENSLEY, in his official and individual capacities,      MV/RHS
JOHN AHLM, in his official and individual capacities, SAN JUAN
COUNTY for acts of its SHERIFF'S DEPARTMENT, a governmental
entity, JASON WAYBOURN, in his official and individual capacities,
SAN JUAN DISTRICT MAGISTRATE COURT, LINDA B. EATON,
in her official and individual capacities, AZTEC MUNICIPAL COURT,
BARBARA R. ALDAZ, in her official and individual capacities,
ELEVENTH JUDICIAL DISTRICT COURT, GREGORY T.
IRELAND, in his official and individual capacities, and OTHER JOHN
DOE DEFENDANTS, in their official and individual capacities,

                Defendants,

and

JULES LESLIE GODWIN,

                Plaintiff,

vs.

CITY OF FARMINGTON, VINCENT MITCHELL, in his official and
individual capacities, GERALD MAESTAS, in his official and
individual capacities, DUSTY DOWNS, in his official and individual
capacities, JASON HENSLEY, in his official and individual capacities,
JOHN AHLM, in his official and individual capacities, SAN JUAN
COUNTY for acts of its SHERIFF'S DEPARTMENT, a governmental
entity, JASON WAYBOURN, in his official and individual capacities,
SAN JUAN DISTRICT MAGISTRATE COURT, LINDA B. EATON,
in her official and individual capacities, AZTEC MUNICIPAL COURT,
BARBARA R. ALDAZ, in her official and individual capacities,
ELEVENTH JUDICIAL DISTRICT COURT, GREGORY T.
IRELAND, in his official and individual capacities, and OTHER JOHN
DOE DEFENDANTS, in their official and individual capacities,

                Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on Defendants San Juan County and Jason Waybourn's ("Waybourn") (collectively, "San Juan County Defendants") Motion to Dismiss Claims of Plaintiff Godwin, filed March 13, 2003 **[Doc. No. 17]** and on Defendant City of Farmington and Defendants Mitchell, Maestas, Downs, Hensley, and Ahlm's ("Farmington Officers") (collectively, "Farmington Defendants") Motion to Dismiss Jules Leslie Godwin's First Amended Complaint and Memorandum in Support, filed March 14, 2003 **[Doc. No. 21]**.  The Court, having considered the motions, briefs, and relevant law and being otherwise fully informed, finds that the motions are well taken in part and will be **GRANTED IN PART**.

## BACKGROUND

On March 22, 2002, Plaintiff Jules Leslie Godwin ("Plaintiff") filed an action in New Mexico state court asserting state constitutional and tort causes of action arising out of a series arrests and prosecutions, only some of which are relevant and discussed herein.  The complaint named various defendants, including municipal, state, and judicial actors, as well as law enforcement officers and other "John Doe" defendants in their individual and official capacities. Plaintiff did not name Defendant Waybourn as a party to the suit.  On October 8, 2002, Plaintiff filed a motion to amend his complaint and attached thereto a proposed amended complaint adding a federal due process claim under 42 U.S.C. Section 1983 and joining Defendant Waybourn as a party.  Thereafter, on November 1, 2002, the case was removed to this Court.[1]

_____

[1] On March 22, 2002, plaintiff David Torrez filed an action in state court asserting state constitutional and common law causes of action arising out of the same arrests and prosecutions

In addition to the federal and state due process claims, Plaintiff's amended complaint, which was filed on February 25, 2003, contains state common law claims for interference with prospective business advantage, false light invasion of privacy, intentional infliction of emotional distress, and defamation.[2]  Plaintiff alleges the following facts in support of the amended complaint.[3]

At all times relevant to the amended complaint, Plaintiff was an independent solicitor licensed by the State of New Mexico.  In 1996, Plaintiff began working as a bail bondsman with Torrez Bail Company, a business owned and operated by David Torrez ("Torrez").  During the course of his business, Plaintiff entered into contracts with persons to post bail bonds in exchange for compensation.  Prior to February 25, 1998, Plaintiff handled and performed a substantial portion of the bonding business in San Juan County.

On February 25, 1998, Defendant Waybourn and Defendant Farmington Officers

_____

that form the basis of Plaintiff Godwin's lawsuit.  When Torrez filed a motion to amend his complaint to add federal constitutional claims, the action was removed to this Court and consolidated with Godwin's action.  Other defendants have filed separate motions to dismiss both Godwin's and Torrez's complaints.  The Court only addresses, however, the motions by the San Juan County Defendants and the Farmington Defendants to dismiss Godwin's amended complaint herein.  The remaining motions to dismiss are addressed in two separate memorandum opinions and orders.

[2] The amended complaint does not allege that the San Juan County Defendants or the Farmington Defendants are liable or responsible for the federal or state due process violations. The San Juan County Defendants have moved to dismiss those claims, and the Court grants the motion.  The Farmington Defendants have not moved to dismiss the due process claims presumably because the amended complaint does not contain any due process allegations against them.

[3] The Court's review of the motions to dismiss is confined to the pleadings.  Therefore, the Court only shall describe the facts as alleged by Plaintiff in the amended complaint or attachments thereto.

("Defendant Officers") arrested Torrez on unspecified charges.  On July 21, 1998, a directed

verdict was ordered in Torrez's favor.  Since Torrez's February 1998 arrest through the present,

Defendant Officers have engaged in a course of conduct that has defamed Plaintiff personally and

professionally.  Defendant Officers published communications that Plaintiff was not fit or able to

perform his work as a bail bondsman and that Plaintiff worked and associated with criminals,

including Torrez.  Defendant Officers also published statements to the media unfavorably

disparaging and defaming him, including publishing false information from a source that

Defendant Officers knew was unreliable.

On October 4, 1999, Torrez was arrested a second time.  Defendant Farmington Officer

Mitchell filed a criminal complaint against Torrez charging him with "Possession with Intent to

Distribute Methamphetamines, Possession/Receiving Stolen Property (Firearm), Possession of

Drug Paraphernalia and Possession of a Controlled Substance (Marijuana less than 1 oz.)."  The

criminal complaint also contains allegations regarding the essential elements of the crimes.

Plaintiff maintains that the publishing of the criminal complaint against Torrez defamed him and

injured his professional, business, and personal reputation.  Plaintiff attaches to his amended

complaint the criminal complaint containing the allegedly defamatory statements.  The criminal

complaint filed against Torrez does not refer to Plaintiff or any person other than Torrez and the

Farmington Officer who filed the criminal complaint.  With the exception of the October 4, 1999,

criminal complaint, Plaintiff does not attach any documents containing defamatory statements

allegedly made by Defendant Officers.  Plaintiff also does not quote or attach any transcripts

containing the precise defamatory language allegedly used by Defendant Officers.

Plaintiff alleges that in addition to defaming Plaintiff, Defendant Officers have subjected

him to ongoing investigation, increased surveillance, scrutiny, harassment, and intimidation since

the time of Torrez's arrest on October 4, 1999.  Plaintiff maintains that Defendant Officers have

engaged in this conduct in an effort to harm him and his ability to conduct business.

**STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides in relevant part that

"failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any

pleading.  Fed. R. Civ. P. 12(b)(6).  A court may dismiss a cause of action under Rule 12(b)(6)

for failure to state a claim only if it appears beyond a doubt that a plaintiff can prove no set of

facts in support of the claim that would entitle him or her to relief.  *See Hartford Fire Ins. Co. v.*

*California*, 509 U.S. 764, 811 (1993) (citation omitted).  In considering a Rule 12(b)(6) motion,

a court must assume all well-pleaded facts, but not conclusory allegations, to be true, and must

draw all reasonable inferences in favor of a plaintiff.  *See Housing Auth. of the Kaw Tribe v. City*

*of Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991), *cert. denied*, 504 U.S. 912 (1992); *Maher v.*

*Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998).  The issue in reviewing the

sufficiency of a complaint is not whether a plaintiff will prevail ultimately, but whether a plaintiff is

entitled to offer evidence to support his or her claim.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236

(1974).

These deferential rules, however, do not allow a court to assume that a plaintiff "can

prove facts that [the plaintiff] has not alleged or that the defendants have violated the . . . laws in

ways that [the plaintiff has not] alleged."  *See Associated Gen. Contractors, Inc. v. California*

*State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The rules also do not require a court to

accept legal conclusions or unwarranted inferences.  *See United States v. Fisher*, 38 F.3d 1144,

1147 (10th Cir. 1994) (citation omitted).

## DISCUSSION

The San Juan County Defendants and Farmington Defendants ("Defendants") separately move to dismiss Plaintiff's amended complaint on the following common grounds.  First, Defendants argue that the statute of limitations bars Plaintiff's state tort claims for interference with prospective business advantage, false light invasion of privacy, intentional infliction of emotional distress, and defamation.  With respect to the defamation claims, Defendants also maintain that Plaintiff has failed to state valid claims for relief.  Second, Defendants contend they are immune from suit under the New Mexico Tort Claims Act for Plaintiff's interference with prospective business advantage, false light invasion of privacy, and intentional infliction of emotional distress claims.  The Court will address each of these arguments in turn.

I.     Does the Statute of Limitations Bar Plaintiff's State Tort Claims?

The New Mexico Tort Claims Act provides the exclusive remedy for a tort action brought against a governmental entity or a public employee.  *See* N.M. Stat. Ann. § 41-4-17 (the "Tort Claims Act . . . shall be the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived"); *see id.* § 41-4-2 ("it is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act . . . and in accordance with the principles established in that act").  Defendant San Juan County and Defendant City of Farmington are governmental entities and Defendant Officers are public employees within the meaning of the Act.  *See id.* §§ 41-4-3(B) & (F).  Accordingly, any tort claim asserted against Defendants must be brought within the limitations of the Act.  *See id.* § 41-4-2(B).

A.      <u>Interference with Prospective Business Advantage, False Light Invasion of</u>
        <u>Privacy, and Intentional Infliction of Emotional Distress.</u>

In support of his interference with prospective business advantage, false light invasion of

privacy, and intentional infliction of emotional distress claims, Plaintiff alleges, among other

things, that beginning in February 1998 and continuing through the present, Defendant Officers

published communications to third parties, including statements that Plaintiff was not fit or able to

perform his work as a bail bondsman and that Plaintiff worked and associated with criminals.

Plaintiff also alleges that Defendant Officers published disparaging statements to the media,

including false statements obtained from an untrustworthy source.  Plaintiff further alleges that

beginning in October 1999, Defendant Officers subjected him to ongoing investigation, increased

surveillance, scrutiny, harassment, and intimidation.

Plaintiff's claims are based upon alleged conduct that began in February 1998 and October

1999 and that has continued through the present.  Section 41-4-15 of the Tort Claims Act

provides that "[a]ctions against a governmental entity or a public employee for torts shall be

forever barred, unless such action is commenced within two years after the date of occurrence

resulting in loss, injury or death."  N.M. Stat. Ann. § 41-4-15.  The original complaint in this

action was filed on March 22, 2002.  To determine whether the statute of limitations bars

Plaintiff's claims the Court must first examine the accrual date of Plaintiff's causes of action to

discern when the statute of limitations on the claims began to run and next determine, if the

statute has run, whether the statute somehow was tolled.

In New Mexico, a statute of limitations begins to run "when the cause of action accrues,

the accrual date usually being the date of discovery."  *New Mexico v. Public Employees*

*Retirement Ass'n*, 133 N.M. 20, 27, 59 P.3d 500, 507 (N.M. 2002) (citation omitted); *see also*

*Primedical, Inc. v. Allied Investment Corp.*, No. 90-1802, 1994 U.S. Dist. LEXIS 4517, *13-14

(D.D.C. Mar. 31, 1994) ("the clock begins ticking [on a tortious interference with business

relationship claim] when the fact of injury is sufficiently plain for plaintiffs' cause of action to

accrue even though the extent and precise nature of the injury has not yet developed") (citation

and internal quotations omitted), *aff'd*, Nos. 94-7078, 94-7151, 1995 U.S. App. LEXIS 5199

(D.C. Cir. 1995).  In *Bolden v. Corrales*, the New Mexico Court of Appeals held that for injuries

that are not "inherently unknowable," discovery occurs on the date of a tortious act, even if "the

full extent of the injury was not known" until later.  111 N.M. 721, 722, 809 P.2d 635, 636 (N.M.

Ct. App.), *cert. denied*, 111 N.M. 77, 801 P.2d 659 (N.M. 1990); *see also F.D.I.C. v.

Schuchmann*, 224 F. Supp. 2d 1332, 1339 (D.N.M. 2002) (applying accrual rule set forth in

*Bolden*) (citations omitted).  The *Bolden* court refused to apply a line of case law holding that the

limitations period under the Tort Claims Act commences when an injury manifests itself rather

than when the wrongful act occurs, reasoning that this case law applies only where the injury is

"inherently unknowable."  *See Bolden*, 111 N.M. at 721-22, 801 P.2d at 635-36.  Under the rule

announced in *Bolden*, the statute of limitations on Plaintiff's claims began to run when the alleged

conduct occurred.  *See id.*, 801 P.2d at 635-36; *Schuchmann*, 224 F. Supp. 2d at 1339 (citations

omitted).  Because Plaintiff alleged various instances of wrongful conduct beginning in February

1998 and October 1999 and continuing through the present, the statute of limitations expired at

different times depending upon when the wrongful acts alleged by Plaintiff occurred.  The Court,

however, need not decide the exact accrual date of Plaintiff's claims because Plaintiff has alleged

that the statute of limitations, no matter when it began to run, was tolled by the continuing wrong

doctrine.

The tolling of a statute of limitations, including tolling under the continuing wrong doctrine, is governed by state law.  *See id.* at 1341.  The continuing wrong doctrine has been recognized, although not applied consistently, by New Mexico courts.  *See Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430-31 n.4 (10th Cir. 1996); *see also Schuchmann*, 224 F. Supp. 2d at 1341. "Under [this] doctrine, . . . 'where a tort involves a continuing or repeated injury, the cause of action accrues at, and the limitations begin to run from, the date of the last injury.'"  *Tiberi*, 89 F.3d at 1430-31 (quoting 54 C.J.S. Limitation of Actions § 177 (1987)); *accord Schuchmann*, 224 F. Supp. 2d at 1341.  In order to invoke the continuing wrong doctrine, a party must point to continuing wrongful conduct.  *See Tiberi*, 89 F.3d at 1430-31; *see also, e.g.*, *Ealy v. Sheppeck*, 100 N.M. 250, 251, 669 P.2d 259, 260 (N.M. Ct. App.) (rejecting application of continuing wrong doctrine where plaintiff filed an untimely malpractice claim because there was only intermittent and not continuous treatment by physician), *cert. denied*, 102 N.M. 259, 669 P.2d 735 (1983), *and overruled in part on other grounds by Juarez v. Nelson*, 133 N.M. 168, 61 P.3d 877 (N.M. Ct. App. 2002); *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (continuing wrong "doctrine applies when there is 'no single incident' that can 'fairly or realistically be identified as the cause of significant harm'") (citation omitted).  A court will not apply the continuing wrong doctrine, however, if "the plaintiff's injury is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress."  *Tiberi*, 89 F.3d at 1431 (quotations omitted); *see also Schuchmann*, 224 F. Supp. 2d at 1341.

Plaintiff's complaint alleges conduct beginning in 1998 and 1999 and continuing through the present.  Defendants argue that the continuing wrong doctrine does not apply because

Plaintiff's allegations demonstrate that Plaintiff's claims were ascertainable beginning in 1998 and

1999 and that the statute of limitations period began to run at that time.  *See Tiberi*, 89 F.3d at

1431; *Schuchmann*, 224 F. Supp. 2d at 1341.  For purposes of a motion to dismiss, the Court

must construe all inferences in favor of Plaintiff and only dismiss if it appears beyond a doubt that

Plaintiff can prove no set of facts in support of his claims that would entitle him to relief.  Under

this generous standard, Plaintiff's allegations do not indicate that he discovered the injury in 1998

or 1999.  Rather, the allegations demonstrate that at the time Plaintiff filed his complaint, he was

aware that these actions had occurred beginning in 1998 and 1999 and continuing through the

present.  The Court cannot say that Plaintiff can prove no set of facts indicating that the

continuing wrong doctrine should apply.[4]  Accordingly, the Court must deny Defendants' motions

to dismiss.

      The Court also denies the motions to dismiss Plaintiff's claims on another ground.

Plaintiff argues, and the Court agrees, that if the amended complaint contains factual allegations

that Defendant Officers were acting outside the scope of their duties, the claims are not covered

by the Tort Claims Act and therefore are not barred by the two-year statute of limitations in the

Act.[5]  Plaintiff, however, does not directly allege that Defendant Officers acted outside the scope

---

[4] Once the parties have developed the record in this case, the facts may demonstrate that
there was a definite and discoverable injury outside the limitations period and that plaintiff had no
reason for not coming forward to seek redress within the limitations period.  *See Schuchmann*,
224 F. Supp. 2d at 1342.  If such a time comes, judgment in Defendants' favor might be
appropriate.  *See id.* (granting summary judgment in defendant's favor because plaintiff presented
only vague assertions of wrongful conduct within the limitations period and because there was "a
definite and discoverable injury" outside the limitations period and no reason why plaintiff did not
"come forward to seek redress within the statute of limitations for that injury").

[5] This conclusion applies only to Defendant Officers and not to San Juan County or the
City of Farmington.  A county or city cannot act inside or outside the scope of its duties.  A

of their duties.  Instead, Plaintiff suggests that because he alleged in the amended complaint that

Defendant Officers acted in their individual capacities, Plaintiff effectively alleged (although he did

not do so specifically in the amended complaint) that the officers were acting outside the scope of

their duties.  Because the Tort Claims Act applies only to government entities and public

employees acting within the scope of their duties, *see* N.M. Stat. Ann. §§ 41-4-2, 41-4-4, Plaintiff

suggests that the Act's two-year statute of limitations does not apply to his individual capacity

claims against the officers.  Rather, Plaintiff argues that the three-year common law statute of

limitation applies.  *See* N.M. Stat. Ann. § 37-1-8.  Under the three-year statute of limitations,

claims based on conduct occurring before March 22, 1999, would be barred unless the statute of

limitations was tolled.

       Plaintiff's argument assumes that there is a direct correlation between scope of duties and

the capacity in which an official is sued.  New Mexico does not recognize this correlation.  "[T]he

distinction between a[n] official in an official capacity and a[n] official in an individual capacity

does not turn on the type of conduct involved"--*i.e.*, whether the official was acting within or

outside the scope of his or her duties.  *Ford v. New Mexico Dep't of Public Safety*, 119 N.M.

405, 410, 891 P.2d 546, 551 (N.M. Ct. App. 1994) (rejecting argument that a lawsuit against an

official acting within the scope of his or her duties must by definition be a lawsuit against the

official in his or her official capacity), *cert. denied*, 119 N.M. 354, 890 P.2d 807 (N.M. 1995).

Rather, the distinction "turns on procedural considerations and the relief sought."  *Id.*, 891 P.2d at

---

"[county or] city can only act through its officials and employees."  *Speer v. City of Wynne*, 276
F.3d 980, 986 (8th Cir. 2002); *see also Abalos v. Bernalillo County Dist. Attorney's Office*, 105
N.M. 554, 558, 734 P.2d 794, 798 (N.M. Ct. App. 1987) (same), *cert. denied*, 106 N.M. 35, 738
P.2d 907 (N.M. 1987).  San Juan County and the City of Farmington cannot be held
independently liable, but rather must be found vicariously liable for the acts of their officials.

551.  In essence, a suit against an official in his or her official capacity is a suit against the

municipality; a suit against an official in his or her individual capacity is a suit seeking damages

from the individual and not the municipality.  *See id.* at 411, 891 P.2d at 552; *see also Hafer v.*

*Melo*, 502 U.S. 21, 26 (1991) ("the phrase 'acting in [his or her] official capacit[y] is best

understood as a reference to the capacity in which the state officer is sued, not the capacity in

which the officer inflicts the alleged injury").

     Consistent with its obligation to interpret the complaint liberally in Plaintiff's favor,

however, the Court will construe the complaint as alleging that Defendant Officers were acting

outside the scope of their duties.  Although a conclusory allegation that Defendant Officers were

acting outside the scope of their duties alone is not sufficient to overcome the motions to dismiss,

the Court's review of the complaint described below reveals factual allegations that support this

conclusion.  The Court therefore cannot determine beyond a doubt on the allegations alone that

Plaintiff can prove no set of facts in support of his claims that would entitle him to relief.  *See*

*Hartford Fire*, 509 U.S. at 811.

     In *Risk Management Division v. McBrayer*, the court broadly defined scope of duty under

the Tort Claims Act.  *See* 129 N.M. at 781, 14 P.3d at 46.  The *McBrayer* court held that a

reasonable jury could find that a university professor was acting within the scope of his duties

when he lured a student to his apartment allegedly to obtain her homework assignments and then

"brutally attacked," "sexually assaulted and tortured," and "tried to kill" her.  *See id.* at 779, 781,

784, 14 P.3d at 44, 46, 49.  Under the Tort Claims Act, "'scope of duty' means performing any

duties that a pubic employee is requested, required or authorized to perform by the governmental

entity, regardless of the time and place of performance."  N.M. Stat. Ann. § 41-4-3(G).  The

*McBrayer* court held that although the attack (of course) was unauthorized, a nexus existed between the instructor's authorized duties and his after-class interaction with the student seeking class assignments.  *See McBrayer*, 129 N.M. at 784, 14 P.3d at 49; *see also Celaya v. Hall*, 85 P.3d 239, 245 (N.M. 2004).  This connection was sufficient to conclude that the unauthorized attack could fall within the instructor's "scope of duties" under the Act.  *See id.* at 245.  The court held, "Because it appears that [the instructor] used this authorized duty as a subterfuge to accomplish his assault, we find that a reasonable fact finder could determine that his actions were within the scope of the duties that NMSU requested, required or authorized him to perform."  *See McBrayer*, 129 N.M. at 784, 14 P.3d at 49; *accord Celaya*, 85 P.3d at 245.

Although the *McBrayer* court interpreted scope of duty broadly, the amended complaint contains factual allegations that could support Plaintiff's claim that Defendant Officers acted outside the scope of their duties.  Specifically, the Court cannot determine beyond a doubt that publishing communications to the media (or other third-parties unrelated to the judicial proceedings instituted against Torrez, *compare infra* note 12) is within the scope of a law enforcement officer's duties--*i.e.*, that the San Juan County Sheriff's Department or the City of Farmington Police Department "requested, required or authorized" Defendant Officers to perform these acts.[6]  *See McBrayer*, 129 N.M. at 781, 784, 14 P.3d at 46, 49 (conduct may be within the

_____

[6] The San Juan County Defendants argue that the alleged communications to the media and other third parties only relate to the arrest of Torrez, and that publishing these communications falls within the scope of Defendant Officers' duties.  Although some of the allegations in the amended complaint relate to the filing of the criminal complaint against Torrez, other allegations do not.  Accordingly, Defendants' argument does not have merit.  Moreover, even if the communications to the media and other third parties did relate to the arrest, the Court cannot conclude that such statements regarding an arrest necessarily fall within the scope of a law enforcement officer's duties.

scope of an official's duties if a connection exists between the official's authorized duties and his or her allegedly tortious conduct).  Defendants do not point to any statutory provision, and the Court cannot find any such provision, indicating that law enforcement officers have a duty to communicate such information to third parties or the media.  Rather, by statute, the general duties of a law enforcement officer include investigating crimes, arresting and detaining suspects, filing criminal complaints, and assisting prosecutors in their cases.[7]  *See, e.g.*, N.M. Stat. Ann. §§ 29-1-1, 3-13-2 (A) & (B), 4-37-4(A), 4-41-2.

If Defendant Waybourn acted outside the scope of his duties, the San Juan County Defendants also argue that the amended--and not original--complaint must control for purposes of determining the timeliness of Plaintiff's claims.  If the amended complaint controls, Plaintiff's claims based on conduct prior to February 25, 2000, would be barred.  In support of this theory, the San Juan County Defendants argue that Waybourn was not named as a defendant in the original complaint, and that Plaintiff's addition of Waybourn does not meet the requirements for "relation back" under Federal Rule of Civil Procedure 15(c).  This argument is not persuasive.  Even if Plaintiff's claims against Waybourn do not "relate back" to the original complaint, Plaintiff has alleged that the statute of limitations was tolled by the continuing wrong doctrine.  Accordingly, regardless of whether the original or amended complaint controls, Plaintiff has

---

[7] Plaintiff also alleges in support of these claims that Defendant Officers have subjected him to ongoing investigation, increased surveillance, scrutiny, harassment, and intimidation.  Unlike publishing communications to the media, this conduct is connected to acts within the scope of a law enforcement officer's duties.  *See McBrayer*, 129 N.M. at 781, 784, 14 P.3d at 46, 49.  Even if Plaintiff only had alleged conduct such as this that falls within the scope of Defendant Officers' duties, Plaintiff's claims would not be subject to dismissal because, as described herein, Plaintiff has alleged facts on which he could prove the statute of limitations was tolled by the continuing wrong doctrine.  *See supra.*

stated a valid claim for relief.[8]  *See supra.*

Assuming all well-pleaded facts to be true and drawing all reasonable inferences in favor of Plaintiff, the amended complaint states a valid claim for relief for interference with prospective business advantage, false light invasion of privacy, and intentional infliction of emotional distress. On the facts alleged, the claims are not barred by the statute of limitations.  The Court therefore denies the motions to dismiss on this ground as well.

B.    Defamation.

Defendants also challenge the timeliness of Plaintiff's defamation claims.  In support of his defamation claims, Plaintiff alleges, "On or about October 4, 1999, Defendant[] [Officers] . . . published a communication and statement defaming Plaintiff and injuring Plaintiff's professional, business and personal reputation, including statements that Plaintiff worked with and associated with persons who had committed criminal offenses, including Torrez[,] . . . and that Plaintiff was not fit [or able] to conduct bonding business."  Plaintiff attaches the criminal complaint containing these allegedly defamatory statements to his amended complaint.

Although Plaintiff alleges that Defendant Officers defamed him by filing a criminal complaint against him, that statement was published on October 4, 1999, approximately two and one-half years before Plaintiff filed his original complaint in this action.  The statute of limitations on a defamation claim begins to run at the time the defamatory statement was published.  *See,*

---

[8] The San Juan County Defendants also argue that Waybourn may not be a proper party to the amended complaint because courts outside this circuit have held that a party cannot be added to an action once the statute of limitations has expired.  *See, e.g.*, *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir.), *cert. denied*, 519 U.S. 821 (1996).  As described herein, however, Plaintiff has alleged facts indicating that the statute of limitations has not expired because it was tolled by the continuing wrong doctrine.  Accordingly, this argument does not have merit.

*e.g.*, *Fikes v. Furst*, 133 N.M. 146, 151, 61 P.3d 855, 860 (N.M. Ct. App. 2002) (citation omitted).  Accordingly, the two-year statute of limitations in the Tort Claims Act expired almost six months before Plaintiff filed his initial complaint.  Plaintiff's October 4, 1999, defamation claim therefore is barred unless the Act's statute of limitations was tolled.

Once again, Plaintiff invokes the continuing wrong doctrine.  As described herein, to invoke this doctrine, a defendant's wrongful conduct must be of a continuous nature.  *See Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430-31 (10th Cir. 1996); *Ealy v. Sheppeck*, 100 N.M. 250, 251, 669 P.2d 259, 260 (N.M. Ct. App. 1983).  In this case, the filing an allegedly defamatory criminal complaint alone does not meet the continuous conduct requirement of the doctrine.  Plaintiff, however, also alleges generally that Defendant Officers have "published statements to the media, unfavorably disparaging and defaming Plaintiff, . . . including publishing false information obtained from . . . a source known by [the officers] to be unreliable and untrustworthy," and that "[a]fter Torrez's unlawful arrest of February 25, 1998, and continuing through the present time, [Defendant Officers] publish[ed] communications . . . that Plaintiff was . . . not fit [or able] to perform work as a bail bondsman, [and] that Plaintiff worked and associated with criminals, including Torrez."

The parties cite no New Mexico cases and this Court has not found any New Mexico cases deciding whether the publication of multiple allegedly defamatory statements is sufficient to invoke the continuing wrong doctrine or whether such actions constitute discrete wrongful acts not subject to the doctrine.  *See Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (discrete wrongful acts are not sufficient to toll the statute of limitations under the continuing wrong doctrine).  Defendants note, however, that the Ninth Circuit has held that "publication of

-16-

[an allegedly defamatory statement] [i]s a single incident," and that "'[a] cause of action for

defamation accrues immediately upon the occurrence of the tortious act and thus, is not

appropriate for the continuing violation exception.'"  *Id.* (quoting *Lettis v. U.S. Postal Serv.*, 39

F. Supp. 2d 181, 205 (E.D.N.Y. 1998)).  In *Flowers v. Carville*, the court did not allow the

plaintiff to resurrect her untimely defamation claim by relying upon later, timely defamatory

statements by the same defendant.  *See id.* at 1126-27.  The court indicated, "The only thing

'continuing' about this tort was [the plaintiff's] protracted failure to bring a lawsuit when she had

the chance."  *Id.* at 1126.  Likewise, in *Celli v. Shoell*, the District of Utah specifically held that

"repeated defamatory statements do not toll the running of the statute of limitations.  Rather, each

new statement constitutes a distinct cause of action."  995 F. Supp. 1337, 1345 (D. Utah 1997)

(citing 50 Am. Jur. 2d, Libel and Slander § 427 (1995); 53 C.J.S., Libel and Slander § 122

(1987)).  Based upon this holding, the *Celli* court dismissed the plaintiff's defamation claims

because they were not brought within the statute of limitations.  *See id.*

    The Court need not determine at this stage, however, whether Plaintiff can resurrect his

October 4, 1999, defamation claim by proving subsequent conduct within the limitations period

and invoking the continuing wrong doctrine to toll the statute of limitations on the earlier claim.[9]

Plaintiff's defamation claims fail for another reason.  Although Plaintiff's October 4 defamation

allegation is sufficiently specific to state a claim for relief,[10] the allegations comprising Plaintiff's

---

    [9] The Court likewise need not consider whether Plaintiff's awareness of his rights outside
the limitations period prohibits application of the continuing wrong doctrine.  *See Tiberi*, 89 F.3d
at 1431; *F.D.I.C. v. Schuchmann*, 224 F. Supp. 2d 1332, 1341 (D.N.M. 2002).

    [10] Plaintiff attaches to his amended complaint a copy of the criminal complaint containing
the allegedly defamatory statements.  Accordingly, Plaintiff specifies precisely the allegedly
defamatory language.

other, more general defamation claims that fall within the limitations period are not sufficiently specific to state valid claims for relief.  In his general defamation allegations, Plaintiff does not specify what defamatory statements Defendant Officers allegedly made or when Defendant Officers allegedly made the statements.  Claims of defamation require "'greater factual detail and specificity with regard to most elements of the complaint than might otherwise be true in civil actions.'"  *Andrews v. Stallings*, 119 N.M. 478, 485, 892 P.2d 611, 618 (N.M. Ct. App. 1995) (citation omitted).  A plaintiff alleging defamation must "'plead precisely the statements about which [he or she] complain[s].'"  *Id.* at 485, 892 P.2d at 618 (citations omitted).  Here, Plaintiff has not alleged his general defamation claims with sufficient specificity, and Plaintiff therefore has not stated a valid claim for relief.  *See Celli*, 995 F. Supp. at 1346 (holding that "the complaint fails to identify any specific defamatory statements made by the defendants or when, where, or to whom any defamatory statements were made" and that "[s]ince plaintiffs have failed to identify any defamatory statement, the defamation claim is subject to dismissal for failure to state a claim upon which relief can be granted").  Accordingly, the Court must dismiss without prejudice under Rule 12(b)(6) Plaintiff's vague and unspecific general defamation claims.

Because Plaintiff's general allegations of defamation do not state valid claims for relief, Plaintiff cannot rely on these allegations to invoke the continuing wrong doctrine and resurrect his October 4, 1999, claim.[11]  Plaintiff has alleged properly only a single--and not a continuous--

---

[11] To the extent the October 4, 1999, claim is based upon the criminal complaint issued against Torrez, Plaintiff's claim also must fail because Plaintiff has not established that the allegedly defamatory "communication was concerning the [Plaintiff]."  N.M. U.J.I. 13-1002(B); *see also Saenz v. Morris*, 106 N.M. 530, 533, 746 P.2d 159,162 (N.M. Ct. App.) (dismissal proper where publication was not "of and concerning the plaintiff") (citation omitted), *cert. denied*, 106 N.M. 511, 745 P.2d 1159 (N.M. 1987).  Plaintiff alleges that the filing of a criminal complaint against Torrez constitutes a defamatory act against Plaintiff.  The criminal complaint

wrong, and therefore Plaintiff has not stated a valid claim for tolling the statute of limitations on

his October 4 defamation claim.  The Court therefore dismisses without prejudice Plaintiff's

October 4 defamation claim under Rule 12(b)(6) for failure to state a valid claim for relief.[12]

_____

neither mentions Plaintiff's name nor refers to any individual other than Torrez and the officer signing the complaint.  Accordingly, Plaintiff's October 4, 1999, defamation claim does not state a valid claim for relief.  *See Scott v. Performance Contrs.*, 166 F.R.D. 372, 374 (M.D. La. 1996) (noting that exhibits to complaint are part of pleadings and that when conclusions of fact made in complaint are contradicted by an attached exhibit, the appended document controls and dismissal under Rule 12(b)(6) is appropriate) (citation omitted), *aff'd without op.* 95 F.3d 55 (5th Cir. 1996).

[12] Plaintiff does not argue that the two-year statute of limitations in the Tort Claims Act is inapplicable to the October 4, 1999, claim because Defendant Officers were acting outside the scope of their duties.  Even if Plaintiff had set forth this argument, however, the Court would reject it.  A conclusory legal allegation that Defendant Officers acted outside the scope of their duties is not sufficient to withstand a motion to dismiss when the factual allegations indicate that Defendants were acting within the scope of their duties.  Plaintiff's October 4, 1999, defamation claim is based upon the issuance of a criminal complaint against him, and issuing a criminal complaint is clearly within the scope of a law enforcement officer's duties.  *See* N.M. Stat. Ann. § 29-1-1 (setting forth general duties of all law enforcement officers, including the duty to "file a complaint or information"); *id.* § 3-13-2(B) ("a police officer shall . . . be subject to the same responsibilities as sheriffs"); *id.* § 4-37-4(A) ("[i]t is the duty of every . . . sheriff . . . diligently [to] file a complaint or information"); *id.* § 4-41-2 (the "sheriff shall . . . cause all offenders to keep the peace and to appear at the next term of the court and answer such charges as may be preferred against them").

II.   <u>Are Defendants Entitled to Immunity under the Tort Claims Act from Plaintiff's State</u>
      <u>Tort Claims</u>?

Defendants argue that Plaintiff cannot state a claim for relief under the New Mexico Tort

Claims Act for interference with prospective business advantage, false light invasion of privacy,

and intentional infliction of emotional distress unless Plaintiff can establish that Defendants waived

their immunity under the Act.  *See* N.M. Stat. Ann. § 41-4-4 (granting immunity from tort liability

for "governmental entit[ies] and any public employee while acting within the scope of duty . . .

except as waived by Sections 41-4-5 through 41-4-12"); *Pemberton v. Cordova*, 105 N.M. 476,

478, 734 P.2d 254, 256 (N.M. Ct. App. 1987) ("[i]f no specific waiver of immunity can be found

in the Tort Claims Act, plaintiff's complaint must be dismissed as to the governmental

defendant"), *overruled in part on other grounds by Bober v. New Mexico State Fair*, 111 N.M.

644, 808 P.2d 614 (N.M. 1991).  Law enforcement officers waive their immunity under the Act

for:

> personal injury, bodily injury, wrongful death or property damage
> resulting from assault, battery, false imprisonment, false arrest,
> malicious prosecution, abuse of process, libel, slander, defamation
> of character, violation of property rights or deprivation of any
> rights, privileges or immunities secured by the constitution and laws
> of the United States or New Mexico when caused by law
> enforcement officers while acting within the scope of their duties.

N.M. Stat. Ann. § 41-4-12 .

Plaintiff's claims do not fall within this limited waiver provision.  Although the Tort

Claims Act waives immunity for "personal injury," "bodily injury," and "property damage," it does

so only for injury "resulting from" an expressly-defined list of torts.  None of Plaintiff's state tort

claims is enumerated in that list.  *See Caillouette v. Hercules, Inc.*, 113 N.M. 492, 497, 827 P.2d

-20-

1306, 1311 (N.M. Ct. App. 1992) ("personal injury" must result from one of the torts listed in Section 41-4-12), *cert. denied*, 113 N.M. 352, 826 P.2d 573 (N.M. 1992); *see also Methola v. County of Eddy*, 95 N.M. 329, 333, 622 P.2d 234 (1980).  Defendants therefore are immune from these claims.  *See, e.g.*, *Romero v. Otero*, 678 F. Supp. 1535, 1540 (D.N.M. 1987) (holding that the Tort Claims Act does not waive the immunity of law enforcement officers for intentional infliction of emotional distress standing alone as a common law tort because it is not one of the enumerated acts under Section 41-4-12).

Plaintiff's argument that the Tort Claims Act contains a blanket waiver of immunity for intentional torts does not persuade the Court otherwise.  Although Plaintiff cites *Weinstein v. City of Santa Fe* in support of this argument, *Weinstein* does not stand for this proposition.  *See* 121 N.M. 646, 652, 916 P.2d 1313, 1319 (N.M. 1996).  In *Weinstein*, the court explained that Section 41-4-12 of the Tort Claims Act waives immunity for certain expressly enumerated torts. *See id.*, 916 P.2d at 1319; *see also* N.M. Stat. Ann. § 41-4-12.  In its next sentence, the court stated that Section 41-4-12 waives immunity "not only for intentional torts committed by law enforcement officers, but also for acts committed by third parties when caused by the negligence of . . . officers." *Id.*, 916 P.2d at 1319.  Plaintiff cites this latter general sentence alone in support of his argument that the Act waives immunity for all intentional torts without referring to the immediately preceding, more specific sentence that explicitly limits the waiver of immunity to the expressly-defined list of torts. *See id.*, 916 P.2d at 1319; *see also, e.g.*, *Caillouette*, 113 N.M. at 497, 827 P.2d at 1311 (immunity waived only for claims for injury that result from one of the enumerated torts listed in Section 41-4-12), *cert. denied*, 113 N.M. 352, 826 P.2d 573 (N.M. 1992); *Methola*, 95 N.M. at 333, 622 P.2d at 238 (only claims for torts specifically enumerated in

Section 41-4-12 are actionable) (internal footnote omitted).  Plaintiff's argument that one

sentence alone taken out of context in *Weinstein* stands for the proposition that the Tort Claims

Act waives immunity for all intentional torts does not have merit.  Indeed, it stands in direct

contravention of New Mexico law.  *See Risk Management Div. v. McBrayer*, 129 N.M. 778, 783-

85, 14 P.3d 43, 48-50 (N.M. Ct. App.) (holding that the Act covers intentional torts and

explaining that excluding such acts would be irreconcilable with the indemnification provisions of

the Act, which permit the state to recover defense and settlement costs from employees who have

"'acted fraudulently or with actual intentional malice'") (quoting N.M. Stat. Ann. §§ 41-4-4(E),

41-4-17(A)), *cert. denied*, 130 N.M. 17, 16 P.3d 442 (N.M. 2000).

      Plaintiff also argues that the Tort Claims Act does not bar his claims even absent a blanket

waiver because the Act does not actually grant immunity to law enforcement officers for alleged

intentional conduct.  This argument also has no merit.  Plaintiff contends that his claims for

interference with business relations, false light invasion of privacy, and intentional infliction of

emotional distress are intentional torts and that they are not covered by the Act.  In support of

this argument, Plaintiff cites *Allen v. McClellan*, in which the court stated that "an officer of the

state who acts outside the scope of his authority and in so doing commits a willful and malicious

tort may be held liable for his actions."  77 N.M. 801, 806, 427 P.2d 677, 680 (N.M. 1967),

*overruled in part on other grounds by New Mexico Livestock Bd. v. Dose*, 94 N.M. 68, 607 P.2d

606 (N.M. 1980).  *Allen*, however, was decided in 1967, prior to the enactment of the Tort

Claims Act, when New Mexico officials were protected by the common law--and not statutory--

doctrine of sovereign immunity.  In the 1970s, when the New Mexico legislature enacted the Tort

Claims Act, the legislature expressly indicated that the Act covers "all government entities and

-22-

public employees . . . within the limitations of the . . . Act . . . and in accordance with the principles established in that act."  N.M. Stat. Ann. § 41-4-2(A).  By its very terms, the Act protects and even indemnifies government entities and employees from negligent and intentional tort claims, provided those claims fall within the limitations of the Act.  *See McBrayer*, 129 N.M. at 782-83, 14 P.3d at 47-48 (construing Sections 41-4-4(E), 41-4-17(A), and 41-4-4(C) of the Tort Claims Act and holding that the Act covers intentional, and even criminal, conduct).  Indeed, in *Risk Management Division v. McBrayer*, the court confirmed this fact by explicitly holding that the Act covers intentional torts.  *See id.* at 783-85, 14 P.3d at 48-50 (officials are entitled to immunity for intentional torts provided immunity for those torts is not waived); *see also Methola*, 95 N.M. at 332, 622 P.2d at 237.

Plaintiff also argues that his claims for interference with prospective business advantage, false light invasion of privacy, and intentional infliction of emotional distress are not covered by the Tort Claims Act because Defendant Officers were acting outside the scope of their duties when they engaged in the conduct underlying these claims.  Plaintiff's argument in this regard is persuasive.  As described herein, the Court cannot conclude beyond a doubt on the allegations alone that publishing communications to the media and third parties unrelated to the judicial proceedings instituted against Torrez falls inside the scope of an officer's duties.  *See supra* § I.A.  Assuming the facts alleged by Plaintiff to be true and drawing all reasonable inferences in favor of Plaintiff, *see Housing Auth. of the Kaw Tribe*, 952 F.2d at 1187, the Court cannot say that Plaintiff can prove no set of facts entitling him to relief, *see Hartford*, 509 U.S. at 811.  Plaintiff has alleged facts sufficient to indicate that Defendant Officers may have been acting outside the scope of their duties when they committed the allegedly tortious conduct.  Accordingly, the Court

denies the motions to dismiss Plaintiff's interference with prospective business advantage, false

light invasion of privacy, and intentional infliction of emotional distress claims.

## CONCLUSION

For the reasons stated above, **IT IS THEREFORE ORDERED** that the San Juan

County Defendants' Motion to Dismiss Claims of Plaintiff Godwin **[Doc. No. 17]** and the

Farmington Defendants' Motion to Dismiss Jules Leslie Godwin's First Amended Complaint and

Memorandum in Support **[Doc. No. 21]**, are hereby **GRANTED IN PART** and **DENIED IN**

**PART** as follows:

1.      The San Juan County Defendants' and the Farmington Defendants' motions to

dismiss Plaintiff's common law interference with prospective business advantage, false light

invasion of privacy, and intentional infliction of emotional distress claims are hereby DENIED;

2.      The San Juan County Defendants' and the Farmington Defendants' motions to

dismiss Plaintiff's common law defamation claims are hereby GRANTED without prejudice; the

Court grants Plaintiff leave to file a second amended complaint within fourteen (14) days from the

date of this Memorandum Opinion and Order if he can allege facts consistent with this Order to

state a timely and valid defamation claim for relief; and

3.      The San Juan County Defendants' motion to dismiss Plaintiff's state and federal

constitutional due process claims is hereby GRANTED.

Dated this 8th day of September, 2004.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE


Attorney for Plaintiff:

     Gilbert J. Vigil, Esq.

Attorneys for San Juan County Defendants:

     Ronald J. Childress, Esq.
     Elaine R. Dailey, Esq.

Attorneys for Farmington Defendants:

     Sean Olivas, Esq.
     Melanie Frassanito, Esq.