**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DAVID TORREZ,
        Plaintiff,
vs.                                                                                                                Civ. No. 02-1381
                                                                                                                                MV/RHS

CITY OF FARMINGTON, VINCENT MITCHELL, in his official and
individual capacities, GERALD MAESTAS, in his official and
individual capacities, DUSTY DOWNS, in his official and individual
capacities, JASON HENSLEY, in his official and individual capacities,
JOHN AHLM, in his official and individual capacities, SAN JUAN
COUNTY for acts of its SHERIFF'S DEPARTMENT, a governmental
entity, JASON WAYBOURN, in his official and individual capacities,
SAN JUAN DISTRICT MAGISTRATE COURT, LINDA B. EATON,
in her official and individual capacities, AZTEC MUNICIPAL COURT,
BARBARA R. ALDAZ, in her official and individual capacities,
ELEVENTH JUDICIAL DISTRICT COURT, GREGORY T.
IRELAND, in his official and individual capacities, and OTHER JOHN
DOE DEFENDANTS, in their official and individual capacities,

        Defendants,

and

JULES LESLIE GODWIN,
        Plaintiff,                                                                         Civ. No. 02-1382
vs.                                                                                                           MV/RHS

CITY OF FARMINGTON, VINCENT MITCHELL, in his official and
individual capacities, GERALD MAESTAS, in his official and
individual capacities, DUSTY DOWNS, in his official and individual
capacities, JASON HENSLEY, in his official and individual capacities,
JOHN AHLM, in his official and individual capacities, SAN JUAN
COUNTY for acts of its SHERIFF'S DEPARTMENT, a governmental
entity, JASON WAYBOURN, in his official and individual capacities,
SAN JUAN DISTRICT MAGISTRATE COURT, LINDA B. EATON,
in her official and individual capacities, AZTEC MUNICIPAL COURT,
BARBARA R. ALDAZ, in her official and individual capacities,
ELEVENTH JUDICIAL DISTRICT COURT, GREGORY T.
IRELAND, in his official and individual capacities, and OTHER JOHN
DOE DEFENDANTS, in their official and individual capacities,
        Defendants.

1

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Vincent Mitchell, Gerald Maestas, Dusty Downs, Jason Hensley, John Ahlm ("Farmington Officers"), and the City of Farmington's (collectively, "Farmington Defendants") Motion for Summary Judgment on Plaintiff Godwin's Claims, filed July 15, 2005 **(Doc. No. 147)**. The Court, having considered the motion, briefs, and relevant law and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED**.

**BACKGROUND**

On March 22, 2002, Plaintiff Jules Leslie Godwin ("Plaintiff Godwin") and Plaintiff David Torrez ("Plaintiff Torrez") filed separate actions in New Mexico state court asserting various state constitutional and tort causes of action arising out of a series of arrests and prosecutions of Plaintiff Torrez. Both complaints named various defendants, including municipal, state, and judicial actors, as well as law enforcement officers and other "John Doe" defendants in their individual and official capacities. On October 8, 2002, Plaintiff Godwin and Plaintiff Torrez filed separate motions to amend their state court complaints and attached thereto proposed amended complaints, each adding a federal due process claim under 42 U.S.C. § 1983 and joining Defendant Waybourn as a party in their respective suits. On November 1, 2002, both Plaintiff Godwin's case and Plaintiff Torrez's case were removed to this Court and both cases were consolidated. *See* Order of Consolidation, *Godwin v. City of Farmington, et al.*, No. Civ. 02-1382 (Doc. 18).[1]

---

[1] Other defendants have filed separate motions for summary judgment against both Plaintiff Godwin and Plaintiff Torrez. The Court only addresses herein the Farmington

2

On February 25, 2003, Plaintiff Godwin filed an amended federal complaint, which contains state tort claims against the Farmington Defendants for interference with prospective business advantage (Count 2), defamation (Count 3), false light invasion of privacy (Count 4), and intentional infliction of emotional distress (hereinafter "IIED") (Count 5). In Count 1, Plaintiff Godwin alleged due process violations against various defendants, but the Farmington Defendants are not amongst the defendants charged in Count 1.

Plaintiff Godwin alleged the following facts in his amended complaint in support of his claims against the Farmington Defendants.[2] Plaintiff Godwin alleged that he was an independent solicitor licensed by the State of New Mexico and that, in 1996, Plaintiff Godwin began working as a bail bondsman with Torrez Bail Company ("Torrez Bonds"), a business owned and operated by Plaintiff Torrez. Am. Compl. at 3-4. Plaintiff Godwin alleged that on February 25, 1998, the Farmington Officers, law enforcement officers with the City of Farmington Police Department, and Defendant Jason Waybourn, a law enforcement officer with the San Juan County Sheriff's Department, wrongfully arrested Plaintiff Torrez on unspecified charges. *Id.* at 2-3, 10-11. Plaintiff Godwin also claimed that on July 21, 1998, a directed verdict on those charges was ordered in Plaintiff Torrez's favor. *Id.* at 11. Plaintiff further contended that on October 4, 1999, Plaintiff Torrez was arrested again, and thereafter, Defendant Mitchell filed a criminal complaint against Plaintiff Torrez charging him with Possession with Intent to Distribute Methamphetamines; Possession/Receiving Stolen

---

Defendants' motion for summary judgment on Plaintiff Godwin's remaining claims in his amended complaint.

[2]The Court includes the allegations in Plaintiff Godwin's amended complaint solely for the purpose of providing background information and context. The Court recognizes that allegations in a complaint are not competent evidence for purposes of deciding a summary judgment motion and will not use them as such.

3

Property (Firearm); Possession of Drug Paraphernalia; and Possession of a Controlled Substance (Marijuana less than 1 oz.).[3] *See id.* at 14-15 & attachment (Criminal Complaint). Plaintiff Godwin asserted in his amended complaint that, since Plaintiff Torrez's unlawful arrest on February 25, 1998, and continuing through the present, the Farmington Defendants have engaged in a course of conduct that has defamed him personally and professionally by publishing communications that Plaintiff Godwin was not fit or able to perform his work as a bail bondsman, that Plaintiff was not able to conduct bonding business, and that he worked and associated with criminals, including Plaintiff Torrez. *Id.* at 13-15. Plaintiff also claimed in his complaint that the Farmington Officers published statements to the media unfavorably disparaging and defaming him, including publishing false information obtained from James Cooper, a source known by the Farmington Officers to be unreliable. *Id.* at 16. Plaintiff Godwin alleged that, in addition to defaming him, the Farmington Officers subjected him to ongoing investigation, increased surveillance, scrutiny, harassment, and intimidation since Plaintiff Torrez's arrest on October 4, 1999. *Id.* at 14. Plaintiff asserted in his complaint that the Farmington Officers engaged in this conduct with the intent to harm him and his ability to conduct business. *Id.* at 14.

On March 14, 2003, the Farmington Defendants filed a motion to dismiss, asking the Court to dismiss all of Plaintiff Godwin's claims in his amended complaint against them. On September 8, 2004, the Court entered an Order granting in part and denying in part the Farmington Defendants' motion **(Doc. 79)**. In that Order, the Court noted that Plaintiff Godwin had not asserted federal or state due process claims against the Farmington Defendants. *See* Memorandum Opinion and Order

---

[3]The criminal complaint filed by Defendant Mitchell against Plaintiff Torrez does not refer to Plaintiff Godwin or any person other than Plaintiff Torrez.

4

(Doc. 79, filed September 8, 2004) at 3 n.2. The Court dismissed Plaintiff Godwin's claim of defamation (Count 3) without prejudice, allowing Plaintiff Godwin fourteen days in which to file an amended complaint alleging facts sufficient to state a timely and valid defamation claim. *Id.* at 24. Plaintiff Godwin failed to do so, which finally disposed of his defamation claim against the Farmington Defendants. As for the three other claims, at that juncture, and in view of the undeveloped record, the Court denied the Farmington Defendants' motion to dismiss because the Court could not conclude beyond a doubt that Plaintiff Godwin could not prove those claims. *Id.* at 15, 24. Thus, Plaintiff Godwin's remaining claims against the Farmington Defendants are interference with prospective business advantage (Count 2); false light invasion of privacy (Count 4); and IIED (Count 5).

On July 15, 2005, the Farmington Defendants filed the instant Motion for Summary Judgment on Plaintiff Godwin's Claims, requesting that the Court dismiss the three remaining counts in the amended complaint. (Doc. No. 147). The Farmington Defendants attached the affidavits of Defendants Mitchell, Maestas, Hensley, and Ahlm, in which each officer stated that he did not publish any statements to the media or to third parties about Plaintiff Godwin, Plaintiff Torrez, or Torrez Bonds. Farmington Defs.' Mot. for Summ. J. on Pl. Godwin's Claims (hereinafter "Defs.' Mot."), Ex. A-D. The Farmington Defendants also attached the affidavit of Defendant Downs, in which he stated that in his capacity as the official spokesman for the Region II narcotics task force, he was charged and authorized with making statements to the media about the law enforcement activities of the task force. *Id.*, Ex. E at 2. Officer Downs averred that, in his capacity as official spokesman, he may have made statements to the media that Plaintiff Torrez was arrested on October 4, 1999, and may have recited the criminal charges made against Plaintiff Torrez in association with that arrest.

5

*Id.* Officer Downs stated that he made no other statements about Plaintiff Torrez. *Id.* Based on these affidavits, the Farmington Defendants argue that the undisputed facts show that they engaged in no conduct, as alleged by Plaintiff Godwin, outside the scope of their duties and thus are entitled to the protection of the New Mexico Tort Claims Act. The Farmington Defendants also contend that the New Mexico Tort Claims Act does not waive immunity for Plaintiff Godwin's remaining state tort causes of action, and consequently, they are entitled to summary judgment.

On August 15, 2005, Plaintiff Godwin filed a response to their motion (Doc. No. 168). Plaintiff Godwin contends that there are disputed facts that raise genuine issues which preclude summary judgment. Plaintiff Godwin attached his own deposition testimony in which he averred that he was a bail bond solicitor who worked under Plaintiff Torrez's bail bond license. Pl. Godwin's Resp. to Farmington Defs.' Mot. for Summ. J. on Pl. Godwin's Claims (hereinafter "Pl.'s Resp."), Ex. 1 at 17-19. Plaintiff Godwin indicated in his deposition that James Cooper, who owed Plaintiff Torrez money, may have set Plaintiff Torrez up by going to the Farmington police and making allegations about Plaintiff Torrez. *See id.*, Ex. 1 at 133-34.[4] Plaintiff Godwin also testified that when Plaintiff Torrez was arrested and had to give up his bonding license, Plaintiff Godwin became unemployed. *See id.*, Ex. 1 at 29-32, 137. Plaintiff Godwin also attached the Affidavit of Boyd Elaine Godwin, in which Boyd Godwin averred that in the 1990's, when in the process of booking arrested persons, "law enforcement officials would say that David Torrez was a criminal when he came to bond out clients." Pl.'s Resp., Ex. 2 at 2. Boyd Godwin also stated that "law enforcement

---

[4]In reviewing Plaintiff Godwin's deposition testimony, the Court finds that Plaintiff Godwin does not have personal knowledge to support his claim that James Cooper set up Plaintiff Torrez. Plaintiff Godwin appears to be recounting what Plaintiff Torrez told him. Although Plaintiff Godwin attached an Affidavit of David Torrez, the affidavit is silent as to the assertion that James Cooper set up Plaintiff Torrez.

officers and other jailers" told Boyd Godwin that "David Torrez was 'the biggest drug dealer' in San Juan County." *Id.*[5] Finally, Plaintiff Godwin attached the Affidavit of David Torrez. Pl.'s Resp., Ex. 3. In his affidavit, Plaintiff Torrez stated that in 1996 he was approached by Officer Doug Kennedy of the Farmington Police Department, who asked him to work as an informant against his bail bond customers, and that Plaintiff Torrez refused the request. *Id.*, Ex. 3 at 1-2. Plaintiff Torrez further averred that in 1997 he was approached by Defendant Maestas, who also wanted Plaintiff Torrez to act as an informant. *Id.*, Ex. 3 at 2. Plaintiff Torrez stated that, when he refused this request, Defendant Maestas stated that he was "one of them," which Plaintiff Torrez understood to mean that Defendant Maestas was calling him a criminal. *Id.* Plaintiff Torrez averred that within a year, "local law enforcement" began arresting him. *Id.*

Plaintiff Godwin argues in his response that, based on the aforementioned alleged facts, there is disputed evidence that the Farmington Officers acted outside the scope of their duties in calling Plaintiff Torrez a criminal at the jail, in using James Cooper to "set up" Plaintiff Torrez, and in blackmailing Plaintiff Torrez by threatening him with arrest if he did not act as an informant. Pl.'s Resp. at 2-5. Plaintiff Godwin thus claims that the aforementioned facts preclude summary judgment.

On September 2, 2005, the Farmington Defendants filed their reply (Doc. No. 180).

**STANDARD**

Summary judgment is appropriate only if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[5] Boyd Godwin's affidavit does not specify the names of the law enforcement officers who allegedly made these statements, except for Steve Birch. Steve Birch, however, is not a party to this action.

7

of law. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted). Under Rule 56(c), the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Id.* at 248.

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.*; *Kaus v. Standard Ins. Co.*, 985 F.Supp. 1277, 1281 (D. Kan. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. The Court will consider the Farmington Defendants' motion in light of these standards.

## DISCUSSION

The New Mexico Tort Claims Act ("NMTCA") provides the exclusive remedy for a state tort action brought against a governmental entity or public employee. *See* NMSA 1978, § 41-4-17 ("The Tort Claims Act shall be the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived . . . ."). The Act retained governmental immunity

except for eight enumerated classes of activity, including certain unlawful acts by law enforcement officers. *See Cole v. City of Las Cruces*, 99 N.M. 302, 303, 657 P.2d 629, 630 (1983) (citations omitted); NMSA 1978, § 41-4-4 (2001) (granting immunity from tort liability for "a governmental entity and any public employee while acting within the scope of duty . . . except as waived by Sections 41-4-5 through 41-4-12"). As to torts committed by law enforcement officers, the NMTCA waives immunity for injuries "resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers *while acting within the scope of their duties*." NMSA 1978, § 41-4-12 (emphasis added).

The NMTCA defines "scope of duties" as "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." *Id.*, § 41-4-3(G). The legislature created a unique standard to be applied to NMTCA claims by using the phrase "scope of duties." *Celaya v. Hall*, 2004-NMSC-005, ¶ 22, 135 N.M. 115, 120-21 (2004). The standard for "scope of duties" under the NMTCA is thus distinct from the common law concept of "scope of employment." *Id.* In order to show that a public employee's actions fell within his "scope of duties" under the NMTCA, a party must show a nexus between the incident and the public employee's official duties. *See id.*, ¶¶ 26-28, 135 N.M. at 121-22. There must be "a connection between the public employee's actions at the time of the incident and the duties the public employee was 'requested, required or authorized' to perform" in order to demonstrate that the public employee was acting within the scope of his duties. *Id.*, ¶ 26, 135 N.M. at 121. A public employee may be acting within the scope of his duties even if the employee's acts

9

are fraudulent, intentionally malicious, or even criminal. *Seeds v. Lucero*, 2005-NMCA-67, ¶ 10, 113 P.3d 859, 862 (2005). Determining whether an employee is acting within the scope of duties is a question of fact. *Celaya*, 2004-NMSC-005, ¶ 28, 135 N.M. at 122.

In this case, the Farmington Officers are public employees and the City of Farmington is a governmental entity within the meaning of the NMTCA, and thus, any tort claim asserted against them must be considered in light of the limitations of the NMTCA. *See* NMSA 1978, §§ 41-4-3(B), (D), & (F). This Court has already concluded that the torts of interference with prospective business advantage, false light invasion of privacy, and IIED do not fall within the limited waiver provision of § 41-4-12 of the NMTCA. Memorandum Opinion and Order (Doc. No. 79) at 20-21. *See also* Memorandum Opinion and Order (Doc. No. 77) at 49 (noting that Plaintiff Torrez's state tort claims for interference with prospective business advantage, false light invasion of privacy, and IIED are not enumerated in list of expressly defined torts for which immunity is waived). Thus, Plaintiff Godwin can only proceed with these three tort claims if the Farmington Officers were acting outside the scope of their duties when they engaged in the conduct underlying these claims. *See id.*

This Court has already noted that Plaintiff Godwin's allegations in his amended complaint that the Farmington Officers subjected him to ongoing investigations, increased surveillance, scrutiny, harassment, and intimidation were acts that fell within the scope of a law enforcement officer's duties. Memorandum Opinion and Order (Doc. No. 79) at 14 n.7. *See also* Memorandum Opinion and Order (Doc. No. 77) at 42-43 n.21. However, this Court also determined that, at the motion to dismiss stage, the Court could not conclude beyond a doubt that publishing communications to the media and third parties unrelated to the judicial proceedings instituted against Plaintiff Torrez is within the scope of an officer's duties. *See* Memorandum Opinion and Order (Doc. No. 79) at 13,

23. *See also* Memorandum Opinion and Order (Doc. No. 77) at 42 ("publishing communications to third parties and the media that a suspect is not fit or able to perform his work as a bail bondsman could fall outside the scope of an officer's duties"). The Farmington Defendants now argue that the undisputed facts adduced in this case demonstrate that the only published communications to the media and third parties made by the Farmington Officers occurred within the scope of their duties. The Court agrees.

The Farmington Defendants provided affidavits from Defendants Mitchell, Maestas, Hensley, and Ahlm in which each officer stated that he did not publish any statement to the media or to third parties about Plaintiff Torrez or Torrez Bonds. Defs.' Mot., Ex. A-D. Defendant Downs stated in his affidavit that from 1998 to the present he was the official spokesman for the Region II narcotics task force and was "authorized and charged with making statements to the media about the law enforcement activities of the task force." *Id.*, Ex. E at 2. Defendant Downs' affidavit also averred that, in his capacity as official spokesman for the Region II narcotics task force, he "may have made statements to the media that David Torrez was arrested on October 4, 1999, and may have recited the criminal charges made against David Torrez in association with that arrest." *Id.* The affidavit asserts, however, that Defendant Downs made no other statements about Plaintiff Torrez. *Id.*

Plaintiff Godwin does not specifically refute the assertions made by the Farmington Officers in their affidavits. *See* Pl.'s Resp. at 2. Rather, Plaintiff Godwin responds by referring to the Affidavit of Boyd Elaine Godwin. *Id.* In that affidavit, Boyd Godwin averred that "law enforcement officials would say that David Torrez was a criminal when he came to bond out clients" and that "law enforcement officers and other jailers" told Boyd Godwin that "David Torrez was the 'biggest drug dealer' in San Juan County." Pl.'s Resp., Ex. 2 at 2. Although Boyd Godwin's affidavit does not

11

name any of the Farmington Officers as any of the law enforcement officers who made these statements, Plaintiff Godwin nonetheless urges this Court to assume that the Farmington Officers could have made those statements because they "do not deny they are law enforcement officers and, thus, included within Boyd Elaine Godwin's evidence." Pl.'s Resp. at 2. This Court refuses to make such an enormous inferential leap. The general statement in Boyd Godwin's affidavit concerning "law enforcement officers" simply does not refute the specific assertions made by Officers Mitchell, Maestas, Hensley, and Ahlm – that they did not publish any statements to the media or to third parties about Plaintiff Torrez or Torrez Bonds.[6]

As to Defendant Downs' admission that he "may have made statements to the media that David Torrez was arrested on October 4, 1999, and may have recited the criminal charges made against David Torrez in association with that arrest," Defendant Downs averred that he was required to make such statements in his capacity as the official spokesman for the Region II narcotics task force. Plaintiff Godwin has offered no evidence to rebut Defendant Downs' statements in his affidavit. The Farmington Defendants have thus clearly shown a nexus between Defendant Downs' possible statements to the media and his official duties as spokesman. Accordingly, based on the undisputed facts before the Court, the Court concludes that the Farmington Officers did not publish any communications to the media or third parties outside the scope of their duties.

Nevertheless, Plaintiff Godwin argues that the Farmington Defendants improperly "attempt

---

[6]Moreover, even *if* the Court assumed that the Farmington Officers were among the law enforcement officers described in Boyd Godwin's affidavit who called Plaintiff Torrez a criminal, the affidavit indicates that these statements were made while the officers were "in the process of booking arrested individuals." Pl.'s Resp., Ex. 2 at 2. Booking arrested individuals is clearly a duty that law enforcement officers are authorized and required to perform, and thus, falls within the scope of their duties. Consequently, Plaintiff Torrez's state law tort claims arising out of the allegations in Boyd Godwin's affidavit would also be barred by the NMTCA.

12

to limit activities outside the scope of employment to libel." Pl.'s Resp. at 4. Plaintiff Godwin contends in his response that "the Farmington Defendants were outside the scope of their duties when they used James Cooper to 'set up' Plaintiff Torrez for not providing information to law enforcement officers about his bail bond clients." Pl.'s Resp. at 3. Plaintiff Godwin also asserts that "Defendant Maestas' blackmail of a bail bondsmen by threatening him with arrest if he did not act as an informant against his customers" is prohibited by the Bail Bondsmen Licensing Act, specifically NMSA 1978, § 59A-51-13, and urges the Court to rule that such extortion and blackmail are outside the Farmington Officers' scope of duties. *See* Pl.'s Resp. at 4-5.

Plaintiff Godwin attempts to expand the activities the Court considers beyond the Farmington Officers' publication of statements to third parties when determining whether the Farmington Officers acted outside the scope of their duties. Plaintiff's expansion attempt is flawed for a number of reasons. The first and foremost reason is that Plaintiff Godwin himself limited the activities that this Court can consider by only alleging in his complaint that his state tort claims arose out of the Farmington Officers' alleged publication of false statements. *See* Am. Compl. at 13, 18-20.[7] The allegations in Plaintiff Godwin's complaint in support of his state tort claims do not include the allegation that the Farmington Officers used James Cooper to set up Plaintiff Torrez. Rather, Plaintiff Godwin's complaint is limited to allegations that the Farmington Officers *published* false information obtained from James Cooper. *See* Am. Compl. at 16. Plaintiff Godwin also made no allegations in his complaint, under either a separate cause of action or as support for his claims of interference with

---

[7]Plaintiff Godwin also alleged in support of his state tort claims that the Farmington Officers subjected him to ongoing investigation, increased surveillance, scrutiny, harassment, and intimidation. Am. Compl. at 14. As discussed supra, this Court already determined that these activities constituted acts within the scope of a law enforcement officer's duties. Memorandum Opinion and Order (Doc. No. 79) at 14 n.7.

prospective business advantage, false light invasion of privacy, or IIED, that the Farmington Officers engaged in extortion or blackmail. Thus, the act of publication is the only conduct at issue here. Furthermore, the facts before the Court in support of Plaintiff Godwin's response do not support Plaintiff's allegations that Defendant Maestas blackmailed Plaintiff Torrez or that the Farmington Officers knowingly set up Plaintiff Torrez by using false statements by James Cooper. Moreover, even if this Court were to consider Plaintiff Godwin's post-complaint allegations, the facts show that the Farmington Officers were acting within the scope of their duties when relying on the statements of James Cooper to obtain a search warrant for Plaintiff Torrez's apartments.[8] Investigating crimes, obtaining warrants, executing warrants, and making arrests are clearly activities within the scope of a law enforcement officer's duties. The facts similarly demonstrate that Defendant Maestas was acting within the scope of his law enforcement officer duties when requesting that Plaintiff Torrez act as an informant for law enforcement. *See Risk Management Div. v. McBrayer*, 2000-NMCA-104, ¶¶ 19-20, 129 N.M. 778, 784 (2000); Memorandum Opinion and Order (Doc. No. 79) at 14 n.7 ; NMSA 1978, § 29-1-1 (declaring it to be the duty of every peace officer to investigate all violations of the criminal laws of the state that are called to the attention of any such officer and to diligently file a complaint or information if the circumstances so warrant).

Accordingly, based on the undisputed facts before the Court that support the allegations in

---

[8] As just mentioned, Plaintiff Godwin's response does not provide competent admissible evidence to support the allegation that James Cooper "set up" Plaintiff Torrez. In fact, Plaintiff Godwin offers few details at all to support this claim. Nevertheless, in examining the undisputed facts as set forth in the Farmington Defendants' Motion for Summary Judgment on Plaintiff Torrez's Claims (Doc. No. 148) and Plaintiff Torrez's response to that motion (Doc. No. 167), this Court concludes that those undisputed facts show that Plaintiff Godwin could not succeed on his claim, even if he had included such admissible facts in his response, because the actions taken by the Farmington Officers in regard to James Cooper were all within the scope of their duties as law enforcement officers.

Plaintiff Godwin's complaint for interference with prospective business advantage, false light invasion of privacy, and IIED, the Farmington Officers engaged in no conduct outside the scope of their duties, and thus, are entitled to the immunity afforded by the NMTCA for each of these claims. Because the Farmington Officers are immune from suit under the NMTCA for Plaintiff Torrez's claims of interference with prospective business advantage, false light invasion of privacy, and IIED, the City of Farmington is likewise immune from suit for those claims. *See Weinstein v. City of Santa Fe ex rel. Santa Fe*, 121 N.M. 646, 651, 916 P.2d 1313, 1318 (1996) (governmental entity could be held vicariously liable for alleged torts committed by officers *for which immunity has been waived*); *Abalos v. Bernalillo County Dist. Attorney's Office*, 105 N.M. 554, 558, 734 P.2d 794, 798 (Ct. App. 1987) ("An entity or agency can only act through its employees."); *Kinetics v. El Paso Products Co.,* 99 N.M. 22, 27, 653 P.2d 522, 527 (Ct. App. 1982) (noting that where there is no primary liability, there can be no secondary, or derivative, liability). The Farmington Defendants are thus entitled to summary judgment on Plaintiff Godwin's remaining causes of action.

## CONCLUSION

**IT IS THEREFORE ORDERED**, based on the aforementioned reasons, that the Farmington Defendants' Motion for Summary Judgment on Plaintiff Godwin's Claims **(Doc. No. 147)** is hereby **GRANTED**. Accordingly, the Farmington Defendants are entitled to summary

judgment on the following claims: Interference with Prospective Business Advantage (Count 2), False Light Invasion of Privacy (Count 4) and Intentional Infliction of Emotional Distress (Count 5)**.**

Dated this 22nd day of February, 2006.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE