## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DAVID TORREZ,

        Plaintiff,

vs.                                                Civ. No. 02-1381
                                                     MV/RHS

CITY OF FARMINGTON, VINCENT MITCHELL, in his official and
individual capacities, GERALD MAESTAS, in his official and
individual capacities, DUSTY DOWNS, in his official and individual
capacities, JASON HENSLEY, in his official and individual capacities,
JOHN AHLM, in his official and individual capacities, SAN JUAN
COUNTY for acts of its SHERIFF'S DEPARTMENT, a governmental
entity, JASON WAYBOURN, in his official and individual capacities,
SAN JUAN DISTRICT MAGISTRATE COURT, LINDA B. EATON,
in her official and individual capacities, AZTEC MUNICIPAL COURT,
BARBARA R. ALDAZ, in her official and individual capacities,
ELEVENTH JUDICIAL DISTRICT COURT, GREGORY T.
IRELAND, in his official and individual capacities, and OTHER JOHN
DOE DEFENDANTS, in their official and individual capacities,

           Defendants,

and

JULES LESLIE GODWIN,

        Plaintiff,

vs.                                                Civ. No. 02-1382
                                                     MV/RHS

CITY OF FARMINGTON, VINCENT MITCHELL, in his official and
individual capacities, GERALD MAESTAS, in his official and
individual capacities, DUSTY DOWNS, in his official and individual
capacities, JASON HENSLEY, in his official and individual capacities,
JOHN AHLM, in his official and individual capacities, SAN JUAN
COUNTY for acts of its SHERIFF'S DEPARTMENT, a governmental
entity, JASON WAYBOURN, in his official and individual capacities,
SAN JUAN DISTRICT MAGISTRATE COURT, LINDA B. EATON,
in her official and individual capacities, AZTEC MUNICIPAL COURT,
BARBARA R. ALDAZ, in her official and individual capacities,
ELEVENTH JUDICIAL DISTRICT COURT, GREGORY T.
IRELAND, in his official and individual capacities, and OTHER JOHN
DOE DEFENDANTS, in their official and individual capacities,

           Defendants.

1

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on Defendant San Juan County Sheriff's Department (SJCSD) and Jason Waybourn's ("Defendant Waybourn") (collectively, "San Juan County Defendants") Motion for Summary Judgment on Plaintiff Torrez' Claims Against San Juan County and Jason Waybourn, filed June 27, 2005 **[Doc. No. 132]**.  The Court, having considered the motion, briefs, and relevant law and being otherwise fully informed, finds that the motion is well taken in part and will be granted in part.

**BACKGROUND**

A.    **Factual Background**

The following facts are either undisputed or are facts, established by admissible evidence, that most favor Plaintiff David Torrez ("Plaintiff Torrez").

In 1988, Plaintiff Torrez started a business called Torrez Bonds and began entering into contracts with persons to post bail bonds in exchange for compensation.  Sometime in late 1996, Doug Kennedy, a law enforcement officer with the Farmington Police Department, approached Plaintiff Torrez and asked him to act as an informant on the criminals he encountered as a result of being a bail bondsmen.  Pl. Godwin and Torrez's Exhibits in Supp. of Pls.' Resp. to Def. San Juan County and Jason Waybourn's Mot. for Summ. J. (Doc. 163) (hereinafter "Pl.'s Exhibit"), Exhibit 3 (Aff. of David Torrez) at 1.[1]  Plaintiff Torrez rejected Officer Kennedy's request.  *Id.* at 2.  Subsequently, sometime in 1997, another officer, Defendant Gerald Maestas, asked Plaintiff

───────────────

[1]Officer Kennedy is not a party to this suit.

Torrez if he would be interested in becoming an informant and supplying names of drug dealers to law enforcement. *Id.* Officer Maestas stated that he and Plaintiff could ride motorcycles together and try to gather information on criminal activity in San Juan County. *Id.* Plaintiff Torrez again declined this request to act as an informant. In response, Officer Maestas told Plaintiff Torrez that he "was one of them." *Id.* Plaintiff Torrez understood this comment to mean that Officer Maestas was calling him a criminal. *Id.*

Boyd Elaine Godwin, a former employee of the Farmington Jail, attested that "law enforcement officials," when in the process of booking arrested individuals, would call Plaintiff Torrez a criminal and the "biggest drug dealer" in San Juan County. Pl.'s Exhibit 2 (Aff. of Boyd Elaine Godwin) at 1-2. Boyd Godwin averred that these statements were made "during the 1990's . . . by local police and jailers." *Id.*[2]

In the spring of 1999, Plaintiff Torrez met James Cooper ("Cooper"). Pl.'s Exhibit 1 (Dep. of David Torrez) at 133. Plaintiff Torrez and Cooper engaged in a variety of loans and business transactions resulting in Cooper owing Plaintiff Torrez money in excess of $15,000.00. *Id.* at 59, 134-35, 142. Cooper did odd jobs for Plaintiff Torrez, working an average of three or four times a month. *Id.* at 133-34. Two to three weeks prior to October 4, 1999, Cooper was doing carpet work for Plaintiff Torrez at apartments owned by Plaintiff. During this time, Cooper stayed on and off at Apartment F. *See id.* at 135-36. Plaintiff Torrez did not live at the apartment complex; it was a rental property. *See id.* at 59-60.

On or about October 1, 1999, Plaintiff Torrez learned that Cooper was shooting up drugs.

---

[2] Boyd Godwin's affidavit does not specify any names of the law enforcement officers who called Plaintiff Torrez a criminal, except for Steve Birch. Pl.'s Resp., Ex. 1 at 2. Steve Birch is not a party to this action.

3

*See id.* at 146.  Plaintiff thus decided to end Cooper's working and staying at the apartment.  *See id.*  Plaintiff Torrez told Cooper to leave, never come back, and pay what he owed.  *Id.*  On or about October 3, 1999, Plaintiff Torrez attempted to collect the past due debt in excess of $15,000.00 from Cooper.  *See id.* at 143-46.  When Plaintiff Torrez confronted Cooper, Cooper started running away and Plaintiff Torrez kicked him.  *See id.* at 145-46.  Cooper subsequently went to the Federal Bureau of Investigation ("FBI") and police with allegations that Plaintiff Torrez was dealing drugs.  *See id.* at 61, 143, 148-49.[3]  Plaintiff Torrez asserts that Cooper's allegations that Plaintiff Torrez dealt drugs were false.  *See id.* at 59-61, 136, 147-48.

On October 4, 1999, Cooper contacted Defendant Mitchell of the Farmington Police Department with allegations that Plaintiff Torrez was dealing methamphetamine and other drugs.  Exhibits in Supp. of Mot. for Summ. J. on Pl. Torrez' Claims against San Juan County and Jason Wayburn (Doc. No. 134) (hereinafter "Defs.' Exhibit"), Exhibit A (Aff. for Search Warrant) at 1-2.  That same day, Officer Mitchell prepared an affidavit in support of a warrant to search Apartments E and F in Plaintiff Torrez's apartment complex located at 107 E. Apache, Farmington, New Mexico.  *Id.*  In the affidavit, Officer Mitchell attested that he was assigned to the Region II Narcotics Task Force and had received "training on how to investigate crimes relating to the Controlled Substance Laws of the State of New Mexico."  *Id.*  Officer Mitchell averred that Cooper said he had personally seen Plaintiff Torrez with one pound of

_____

[3]Plaintiff Torrez claims that the FBI investigated Cooper's allegations and deemed them unfounded.  *See* Pl.'s Exhibit 1 at 148-49.  Plaintiff Torrez bases this allegation on FBI or police records.  *See id.*  However, Plaintiff Torrez does not have personal knowledge concerning this claim.  *See id.*  Moreover, he has failed to provide the Court with copies of any records or other admissible evidence to support his claim.  Therefore, the Court will not consider this allegation when ruling on the Farmington Defendant's motion for summary judgment.

methamphetamine in his possession on October 4, 1999, and that Plaintiff Torrez was intending to go to his apartment at 107 E. Apache. *Id.* at 2. Cooper told Officer Mitchell that Plaintiff Torrez and another man were in a dark green Kia sport utility vehicle at the time he saw them with the drugs. *Id.* Officer Mitchell also stated in the affidavit that he instructed Cooper to go to the apartment complex to identify the apartment that Plaintiff Torrez lived in and to determine if any drugs were in the residence. *Id.* According to the affidavit, Cooper told Officer Mitchell at 8:00 p.m. that he had been in Apartment F earlier, that drugs were inside the apartment, and that Apartment E was being used to store drugs. *Id.*[4] Officers Maestas and Mitchell went to the apartment complex and observed a dark green Kia vehicle that matched the description given by Cooper. *Id.* The officers also conducted a utility check on the apartment, which showed that there was no active account for Apartment E, consistent with Apartment E being used for storage. *Id.*

Based on the information contained in the affidavit, on October 4, 1999, District Judge George Harrison authorized the execution of the warrant to search Plaintiff Torrez's Apartments E and F. *See* Defs.' Exhibit A (Search Warrant) at 3-4. The warrant authorized a night time search because "drugs could be moved quickly." *Id.* at 4.

On October 4, 1999, at approximately 9:30 p.m., Officers Vincent Mitchell, Gerald Maestas, Dusty Downs, Jason Hensley, and John Ahlm from the Farmington Police Department,

---

[4]In his deposition, Plaintiff Torrez stated that some of his tenants called him and told him that Cooper broke into Apartment F on October 4, 1999. Pl.'s Exhibit 1 at 59-60, 62-63, 146-47. What his tenants told him concerning Cooper breaking into the apartment, however, is inadmissible hearsay, and Plaintiff Torrez has failed to provide a sworn statement from the tenants themselves. Consequently, this Court cannot consider this statement when deciding the Farmington Defendants' motion for summary judgment.

as well as Officer Jason Waybourn from the San Juan County Sheriff's Office, executed the search warrant of Apartments E and F in Plaintiff Torrez's apartment complex.  *See* Pl.'s Exhibit 1 at 58, 65-68; Defs.' Exhibit B.  At that time, Plaintiff Torrez was in Apartment F and had decided to take a shower.  *See* Pl.'s Exhibit 1 at 60, 151.  He took off his clothes, turned on the water, and headed towards the shower.  *Id.* at 153.  At that point, he heard a knock on the door.  *Id.* Plaintiff Torrez turned off the water, put on a towel, and went to the door.  *Id.* at 63, 153.  As he was walking toward the door, Plaintiff Torrez said, "hello," but he did not hear anything in response.  *Id.* at 63.  He then looked out the peep hole and saw a man dressed in black, crouched down and walking away from the door.  *Id.* at 63-64, 153-55.  Plaintiff did not recognize the man as a police officer.  *See id.* at 153-54.  Plaintiff Torrez returned to the shower.  *Id.* at 64, 155.  He then left the bathroom and was standing three or four feet from the door to the apartment.  *Id.* at 155, 157-58.[5]

Plaintiff heard a "boom."  *Id.* at 155.  Officer Maestas used a steel battering ram to force open the door.  *See id.* at 155-57.  The force was such that the door flew open and Officer Maestas, who was holding the battering ram, came through the doorway and fell on top of Plaintiff Torrez.  Plaintiff, naked, fell on top of the coffee table.  *See id.*  The battering ram hit Plaintiff in the stomach.  *Id.* at 158-59.  Two or three other officers then entered behind Officer Maestas with guns pointed at Plaintiff Torrez.  *Id.* at 67, 158.  Prior to the officers' entry,

_____

[5]It is unclear whether Plaintiff Torrez heard a second knock.  At one point in his deposition, Plaintiff stated, "They never knocked the second time."  Pl.'s Exhibit 1 at 156.  However, earlier in his deposition testimony, Plaintiff asserted:  "So then I go back to take a shower.  Then I hear another knock."  *Id.* at 64.  Given the inconsistency, at this point the Court will construe the evidence in the light most favorable to Plaintiff and interpret his testimony as meaning there was just one knock.

Plaintiff Torrez never heard the officers announce their presence.  *Id.* at 154-156.[6]  The time from

when Plaintiff Torrez heard the knock to when the officers entered was at least 60 seconds.  *See*

*id.* at 154.

Officer Maestas immediately got off Plaintiff Torrez.  *Id.* at 159.  Officer Maestas, who

had injured his hand, had Plaintiff Torrez get ice for him.  *Id.* at 66-67, 159.  The officers then

told Plaintiff Torrez to get dressed, which he did.  *See id.* at 160-61.  Plaintiff Torrez then sat

down, but when he went to get up again, he started to hurt.  *Id.* at 160-62.

The officers searched the apartment and found marijuana, a substance that looked like

methamphetamine, a stolen firearm, $8,820.00 in cash, a glass smoking device, and a digital scale.

Defs.' Exhibit B (Statement of Probable Cause); *see also* Pl.'s Exhibit 1 at 62.  Plaintiff Torrez

denied that the drugs and gun were his.  *Id.*  The officers arrested Plaintiff.  Pl.'s Exhibit 1 at 161-

62.  However, they did not handcuff Plaintiff until they put him in the police car.  *Id.* at 67-68.

The officers then took him to the hospital.  *Id.* at 68, 161-62.  Plaintiff suffered a sore back as a

result of this incident and had some bruising.  *Id.* at 65-66, 162.

That same evening, on October 4, 1999, Officer Mitchell filed a criminal complaint against

Plaintiff Torrez in the Magistrate Court of San Juan County charging him with four counts:  (1)

---

[6]Plaintiff Torrez's deposition testimony is contradictory on what the officers did or did not say prior to forcing open the door and what he did or did not say in response.  Early in his deposition testimony, Plaintiff stated that when he came back to the door the second time, he heard someone say, "hello."  Pl.'s Ex. 1 at 64.  Plaintiff then said that he said, "hello," in response. According to Plaintiff, as soon as Plaintiff said "hello," the officers forced open the door.  *Id.* Later in his deposition testimony, however, Plaintiff Torrez stated that the officers "never said who it was or nothing.  Nothing was ever said."  *Id.* at 156.  Plaintiff Torrez also stated that he himself "didn't say nothing."  *Id.*  Regardless of these inconsistencies, it does appear that Plaintiff Torrez's testimony is consistent on the more important alleged fact that the officers did not announce who they were or their purpose for being there.

Possession with Intent to Distribute Methamphetamines, (2) Possession/Receiving Stolen Property (Firearm), (3) Possession of Drug Paraphernalia, and (4) Possession of a Controlled Substance (Marijuana less than 1 oz.).  Defs.' Exhibit D (Criminal Complaint).  On October 5, 1999, Officer Mitchell filed a Statement of Probable Cause describing the reasons Plaintiff Torrez had been arrested.  Defs.' Exhibit B.  In this statement, Officer Mitchell averred that the warrant to search Plaintiff Torrez's apartment complex was based on information received from Cooper. *Id.*  Subsequently, a Criminal Information was filed in case No. CR-99-923-6 listing the charges against Plaintiff Torrez as a result of the October 4, 1999 arrest.  Defs.' Exhibit F.  On November 17, 1999, a San Juan County magistrate judge entered a Bind-Over Order in the case, stating that there was probable cause to believe that Plaintiff Torrez committed the four offenses listed in the criminal complaint.  Defs.' Exhibit E.  In addition, the Bind-Over Order noted that a preliminary examination was held on the offenses in the complaint.  *Id.*  The judge thus ordered that Plaintiff Torrez be bound over for trial.  *Id.*

On November 28, 1999, Plaintiff Torrez was again arrested.  See Defs.' Exhibit H (Criminal Information).  He was charged with six counts of possession of a narcotic in San Juan County District Court, No. CR-2000-195-1.  *Id.*

On or near April 20, 2000, the State filed a Nolle Prosequi in case No. CR-99-923-6, stating that it would not prosecute the charges arising from Plaintiff Torrez's October 4, 1999 arrest because an "[e]ssential [s]tate [w]itness will not cooperate."  Defs.' Exhibit F.  However, on May 4, 2000, the four charges arising from the October 4, 1999 arrest were refiled against Plaintiff Torrez in No. CR-2000-421-6.  Defs.' Exhibit G (Criminal Information).

On December 15, 2000, Plaintiff Torrez entered into a plea agreement with the State of

New Mexico whereby Plaintiff Torrez pled no contest to three counts of misdemeanor attempted possession of a narcotic, which were charged in CR-2000-195-6, the case arising from Plaintiff's November 28, 1999 arrest.  Defs.' Exhibit I (Plea and Disposition Agreement) at 1-2.  In exchange, the State agreed to dismiss the remaining three counts in CR-2000-195-6 as well as all four counts in CR-2000-421-6, the refiled case arising from Plaintiff's October 4, 1999 arrest.  *Id.* at 3.

      B.      **Procedural Background**

On March 22, 2002, Plaintiff David Torrez ("Plaintiff Torrez") filed an action in New Mexico state court asserting state constitutional and tort causes of action arising out of a series of arrests and prosecutions, only some of which are relevant and discussed herein.  The complaint named various defendants, including municipal, state, and judicial actors, as well as law enforcement officers and other "John Doe" defendants in their individual and official capacities ("Defendant Officers").  Plaintiff did not name Defendant Waybourn as a party to the state lawsuit.

On October 8, 2002, Plaintiff Torrez filed a motion to amend his complaint and attached thereto a proposed amended complaint adding various federal constitutional claims under 42 U.S.C. § 1983 and joining Defendant Waybourn as a party.  On November 1, 2002, pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1441(b) and 28 U.S.C. § 1446(b), the action was removed to this Court.[7]

---

[7] On March 22, 2002, Plaintiff Jules Leslie Godwin ("Plaintiff Godwin") filed an action in state court asserting state causes of action arising out of the same facts that form the basis of Plaintiff Torrez' lawsuit.  When Plaintiff Godwin filed a motion to add a federal claim, the action was removed to this Court and consolidated with Torrez' action.  Other defendants have filed separate motions for summary judgment.  The Court herein only addresses the motion for

Plaintiff Torrez' amended complaint, which was filed February 25, 2003, contains § 1983 claims for excessive police force, unlawful entry, and unlawful search and seizure. Plaintiff Torrez asserts a malicious abuse of process claim, which could be construed as brought under § 1983 or New Mexico common law. The amended complaint also contains state tort claims for battery, trespass, defamation, interference with prospective business advantage, false light invasion of privacy, and intentional infliction of emotional distress. The amended complaint does not allege that the San Juan County Defendants are responsible for the federal or state due process violations.

On April 28, 2003, the San Juan County Defendants filed a motion to dismiss all of Plaintiff Torrez' claims **[Doc. No. 15]**. The Court granted their motion in part, on September 8, 2004, and dismissed Torrez' state and federal due process claims (Count V), and the claims for Battery (Count III); Trespass (Count IV); and Defamation (Count VII) against the San Juan County Defendants. The Court also dismissed Plaintiff Torrez' malicious abuse of process claim with respect to the October 4, 1999 criminal complaint. *See* Memorandum Opinion and Order entered on September 8, 2004 **[Doc. No. 77]**. The remaining claims against SJCSD and Defendant Waybourn are for excessive police force and unlawful entry (Count I); malicious abuse of process (as to the May 4, 2000 criminal complaint) and unlawful search and seizure (Count II).[8,9] Also remaining are the state tort claims for Interference with Prospective Business

_____

summary judgment by SJCSD and Defendant Waybourn against Plaintiff Torrez' claims.

[8] Plaintiff Torrez also alleges a municipal liability claim within his excessive force claim (Count I). *See* Am. Compl., ¶¶ 43 and 44 **[Doc. No. 10]**. Plaintiff Torrez complains, *inter alia,* that San Juan County officials failed to properly train or supervise the San Juan County Defendants in the proper use of force in making an arrest, or that it had a policy of deliberate indifference such that improper conduct would result in constitutional violations. *Id*. These

Advantage (Count VI); False Light Invasion of Privacy (Count VIII); and Intentional Infliction of Emotional Distress (Count IX), only as against Waybourn.

The Court has previously observed that Plaintiff Torrez' state tort claims do not fall within the enumerated torts for which immunity has been waived under the NMTCA.  *See* NMSA 1978, 41-4-12 and **[Doc. No. 79** at 20-21]**.  Therefore, Defendant Waybourn is immune from these claims under the NMTCA.  However, because the Court could not conclude beyond a doubt whether Defendant Waybourn was acting within the scope of his official duties when he allegedly published statements to third parties about Plaintiff Torrez, the Court left these claims intact as common law tort claims.

On June 27, 2005, the San Juan County Defendants filed a Motion for Summary Judgment

---

allegations are wholly unsupported by affidavits or evidence in the record.  Plaintiff Torrez has failed to join any defendants with policy-making or supervisory authority, rendering his claim defective.  Moreover, Plaintiff Torrez omitted this claim from the Pre-Trial Order and in doing so, has waived this claim.  *See* Fed. R. Civ. P. 16(e) (The pretrial order "shall control the subsequent course of the action.")  Therefore, Plaintiff Torrez' claim for municipal liability will be *sua sponte* dismissed.

[9] Plaintiff's October 4, 1999 malicious abuse of process claim is based upon the issuance of a criminal complaint against him, and issuing a criminal complaint is clearly within the scope of a law enforcement officer's duties.  *See* N.M. Stat. Ann. § 29-1-1 (setting forth general duties of all law enforcement officers, including the duty to "file a complaint or information"); *id.* § 3-13-2(B) ("a police officer shall . . . be subject to the same responsibilities as sheriffs"); *id.* § 4-37-4(A) ("[i]t is the duty of every . . . sheriff . . . diligently [to] file a complaint or information"); *id.* § 4-41-2 (the "sheriff shall . . . cause all offenders to keep the peace and to appear at the next term of the court and answer such charges as may be preferred against them").  The exclusive remedy for claims against law enforcement officers acting in their official capacity is the remedy provided under the New Mexico Tort Claims Act (NMTCA) (citation omitted).  Plaintiff Torrez failed to file his claim regarding the October 4, 1999 criminal complaint within the two year NMTCA statute of limitations.  On September 8, 2004 the Court dismissed this portion of Plaintiff Torrez' malicious abuse of process claim.  *See* **[Doc. No. 77]**.  Therefore the analysis herein regarding Plaintiff Torrez' malicious abuse of process claim applies solely to the May 4, 2000 criminal complaint (which includes charges from the October 4, 1999 arrest).

on Plaintiff Torrez' Claims against San Juan County and Jason Waybourn.  **[Doc. No. 132]**.  On

August 2, 2005, Plaintiff Torrez and Plaintiff Godwin filed a joint Response to Defendants San

Juan County and Jason Waybourn's Motion for Summary Judgment.  **[Doc. No. 161]**.  On August

29, 2005, the San Juan County Defendants filed their reply in support of their motion for

summary judgment.  **[Doc. No. 177]**.

### LEGAL STANDARD

Summary judgment is appropriate only if "'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.  *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527

(10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).   "All facts and reasonable inferences must be

construed in the light most favorable to the nonmoving party."  *Id.* (internal quotations omitted).

Under Rule 56(c), the mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, only disputes of facts that might affect the

outcome of the case will properly preclude the entry of summary judgment.  *Id.* at 248.

Initially, the moving party bears the burden of showing that no genuine issue of material

fact exists.  *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  Once the

moving party meets its burden, the nonmoving party must show that genuine issues remain for

trial.  *Id.*  The nonmoving party must go beyond the pleadings and by its own affidavits, or by the

depositions, answers to interrogatories, and admissions on file, designate specific facts showing

that there is a genuine issue for trial.  *See id.*; *Kaus v. Standard Ins. Co.*, 985 F.Supp. 1277, 1281

(D. Kan. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  There is no issue for

trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict

for that party.  *See Anderson*, 477 U.S. at 248.  The Court will consider the San Juan County

Defendants' motion in light of these standards.

## DISCUSSION

### Is There Evidence In The Record Upon Which A Jury Could Properly Rely In Returning A Verdict For Plaintiff Torrez, The Nonmoving Party?

The Court shall consider each of Plaintiff Torrez' remaining claims against the San Juan

County Defendants in turn.  Plaintiff Torrez' claims for excessive force, unlawful entry, malicious

abuse of process and unlawful search and seizure are against the San Juan County Sheriff's

Department and Defendant Waybourn.  The remaining common law tort claims are against only

Defendant Waybourn.[10]

    A.      Section 1983 Excessive Force, Defendants SJCSD and Waybourn

           i.      Excessive Force

"Unquestionably, individuals have the right to be free from the use of excessive force by

governmental officers when being detained."  *Culver v. Torrington,* 930 F.2d 1456, 1459 (10th

Cir. 1991) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  "However, not all force used

by governmental officers rises to the level of a constitutional violation since the use of excessive

---

[10] In support of his interference with prospective business advantage claim against
Defendant Waybourn, Plaintiff Torrez alleges that "Defendant Waybourn participated in defaming
Plaintiff Torrez at the detention center." Joint response, p. 2 .  Because the Court has previously
ruled that the New Mexico Tort Claims Act does not waive immunity for the claims Plaintiff
Torrez alleges, the discussion herein regarding Plaintiff's common law interference with
prospective business advantage claim pertains only to Defendant Waybourn's unofficial conduct
in allegedly participating in defaming Plaintiff Torrez at the San Juan Detention Center.

force must be established." *Culver*, 930 F.2d at 1459-60 (citing *Martinez v. California*, 444 U.S. 277, 285 (1980) and *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir. 1988)). "In determining whether a § 1983 claim involving excessive force by law enforcement officers has been stated the court must apply a constitutional standard." *Id.* at 1460. "Three alternative constitutional standards have been utilized: 1) the Eighth Amendment's ban on cruel and unusual punishment; 2) the Fourth Amendment standard of 'objective reasonableness;' and 3) the Fourteenth Amendment substantive due process standard which protects against use of excessive force that amounts to punishment." *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 318-26 (1986); and *Graham v. Connor*, 490 U.S. 386, 395-96 n.10 (1989)).

In *Graham v. Connor*, the Supreme Court held that the use of excessive force during arrest violates a person's Fourth Amendment right against unreasonable search and seizure and that all excessive force claims should be analyzed under the reasonableness standard of the Fourth Amendment. *See Graham v. Connor,* 490 U. S. at 395. The objectively reasonable standard set forth in *Graham* is still precedent today and therefore is the standard under which the Court must assess Defendant Waybourn's conduct. *See Saucier v. Katz*, 533 U. S. 194, 201-02 (2001); *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001).

The Fourth Amendment reasonableness inquiry is objective and heavily fact dependent. *See, e. g*., *Wilson v. Meeks*, 52 F.3d 1547, 1553 (10th Cir. 1995). It recognizes that the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and it must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *See Graham*, 490 U. S. at 396-97.

14

"[T]he reasonableness of Defendants' actions depends both on whether the officers were in danger at the precise moment that they used force and on whether Defendants' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997) (quoting *Sevier v. City of Lawrence*, *Kan.*, 60 F.3d 695, 699 (10th Cir. 1995)).  However, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968)).

A court must pay careful attention to the totality of the facts and circumstances of each particular case, including (i) the severity of the crime at issue, (ii) whether the subject poses an immediate threat to the safety of the officer, and (iii) whether the subject is resisting arrest by attempting to flee the scene. *See Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (The question is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure.").

Therefore, the Court will first consider whether, under *Graham*, Plaintiff Torrez posed an immediate threat to the safety of Defendant Waybourn during the October 4, 1999 arrest. *See Medina*, 252 F.3d at 1132 (The primary focus of the Court's reasonableness inquiry "remains on whether the officer was in danger at the exact moment of the threat of force.").  In this regard, the law is clear that the use of force to arrest, subdue, or control a suspect may be excessive where it is manifestly unnecessary or wholly gratuitous in light of the threat posed by the defendant. *See, e.g.*, *Martinez v. New Mexico Dep't of Public Safety*, No. 01-2156, 2002 U.S. App. LEXIS 15323, ** 11-12 (10th Cir. July 29, 2002), *cert. dismissed*, 537 U.S. 1180, 123 S. Ct. 1015, 154

L. Ed. 2d 930 (2003).

Against this legal framework, the San Juan County Defendants argue that the excessive force alleged to have occurred on October 4, 1999, is not actionable because the force exerted by Defendant Maestas (not an employee of SJCSD), in colliding into Plaintiff Torrez was nothing more than an accident.  The Court will not weigh this fact in the context of the San Juan County Defendants' motion for summary judgment because it is not relevant to Plaintiff Torrez' claims against them.  Rather, the Court must focus on what conduct Defendant Waybourn engaged in, and whether, under the *Graham* three-pronged "totality of the circumstances" test, there is a genuine issue of material fact with respect to whether Defendant Waybourn used excessive force.

Plaintiff Torrez argues that the San Juan County Defendants "admit that they participated in the October 4, 1999 raid on Plaintiff Torrez' residential rental property."  *See* Joint Response, p. 1.  This fact, in the context of Defendant Waybourn's motion, does nothing to support Plaintiff Torrez' allegation against Defendant Waybourn that he used excessive force during the October 4, 1999 arrest.  Plaintiff Torrez also attempts to support his claim against Defendant Waybourn by citing to his deposition testimony which purportedly states that Defendant Waybourn told Plaintiff Torrez that the October 4, 1999 "raid" was in retaliation for Plaintiff Torrez' refusal to act as informant.[11]  *Id.*  Notwithstanding, "[a]n officer's evil intentions will not make a Fourth

---

[11] At deposition, Plaintiff Torrez testified as follows:  "Q:  Okay.  Now, after you were arrested on October 4th, 1999, did you ever come into contact with Jason Waybourn again?  *A: I came in contact with him at a property I got in Kirtland.  And he come up to me in a nasty little way of communication.  Now he was dressed as a sheriff, but I didn't really understand who he was.  I think he had an attitude against me.  And I really didn't know why.*"  Pl. Exhibit 1, 81:2-9.  "Q:  And do you recall what he said to you?  *A:  About what made me realize that it might have been him is that in that case we didn't do it right.  And I looked at him and I snapped.  You didn't get a conviction or you didn't help me.  And that's when I realized it was Waybourn.  The name made sense because he knew about October the 4th.*"  Pl. Exhibit 1, 82:1-7.  The Court

16

Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham* at 397 (citing *Scott v. United States*, 436 U.S. 128, 138 (1978) (citation omitted)).

Plaintiff Torrez further argues that Defendant Waybourn used excessive force against him during the October 4, 1999 arrest by pointing a gun at him when he was naked during the execution of the search warrant.[12]  *See* Joint Response, p. 2.  Plaintiff Torrez also states that "Defendant Waybourn supervised the officers who pointed guns at the naked Plaintiff Torrez."[13] Joint response, p. 3.

At the time Defendant Waybourn entered Plaintiff Torrez' apartment, Plaintiff Torrez had fallen to the ground, was naked, and did not pose a threat to Defendant Waybourn or any other of the Defendant Officers.  Moreover, when Defendant Officers entered Plaintiff Torrez' apartment,

---

does not find the specific statement in Plaintiff Torrez' deposition testimony that Defendant Waybourn told Plaintiff Torrez that the October 4, 1999 arrest was in retaliation for Plaintiff Torrez' refusal to be an informant.  Plaintiff Torrez' testimony on this issue is largely incomprehensible and the Court will not stack inference upon inference to arrive at the conclusion that Plaintiff Torrez argues.  Pl. Exhibit 1, 82:2-7.

[12] "Where conduct falls beyond the reach of the Fourth Amendment [ *i.e.*], "[f]orce inspired by malice or by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience . . . [it] may be redressed under [the Fourteenth Amendment]." *Holland v. Harrington*, 268 F.3d 1179, 1191 (10th Cir. 2001) (quoting *Latta v. Keryte*, 118 F.3d 693, 702 (10th Cir. 1997) (quotations omitted) (citation omitted)).  The Court is satisfied that on the facts as alleged by Plaintiff Torrez, Defendant Waybourn's decision to point his gun at Plaintiff Torrez during the execution of the search warrant did not amount to "an abuse of official power that shocks the conscience."  The Court will therefore limit discussion of Plaintiff Torrez' excessive force claim to analysis under the Fourth Amendment.

[13] This conclusory allegation is unsupported in the record.  There is no evidence at bar such that Defendant Waybourn, employed by the San Juan County Sheriff's Department was in charge of executing the Mitchell (who was employed by the City of Farmington) warrant.  "Allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under §·1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2nd Cir. 1987).

they had only a search warrant based on a suspicion of controlled substances (and possibly weapons).  *See* Defs.' Exhibit A.  Defendant Officers did not have an arrest warrant on Plaintiff Torrez, nor was Plaintiff Torrez suspected of any crime other than possession of drugs, a non-violent offense.  Plaintiff Torrez was not attempting to flee the apartment initially, and there are no facts at bar to suggest that Plaintiff Torrez attempted to evade arrest once contraband was found.  On these facts, and in light of the precedents discussed above, the Court must conclude that Plaintiff Torrez did not pose an immediate threat to the safety of Defendant Waybourn sufficient to justify pointing a loaded gun at him.  "Indeed, an individual who is standing still, naked and unarmed with his hands placed either on a mattress or in the air poses no threat to anyone."  *Griffin v. Hickson*, No. 98-3805, 2002 U.S. Dist. LEXIS 8567, * 18 (E.D. Pa. May 10, 2002).

The "use of guns and handcuffs must be justified by the circumstances."  *Baker v. Monroe Twp.,* 50 F.3d 1186, 1193 (3rd Cir. 1995) (citations omitted).  "The display of weapons, and the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force."  *Rucker v. Hampton*, No. 01-7022, 2002 U.S. App. LEXIS 21894, ** 14 (10th Cir. October 18, 2002) (quoting *Holland v. Harrington*, 268 F.3d 1179, 1191 (10th Cir. 2001)).  "Such a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time."  *Id.*  "These are the very ingredients relevant to an excessive force inquiry."  *Id.*  "Where a person has submitted to the officers' show of force without resistance, and where an officer has no reasonable cause to believe that person poses a danger to the officer or to others, it may be excessive and unreasonable to continue to aim a loaded firearm directly at that person, in contrast to simply holding the weapon in a fashion ready

18

for immediate use." *Id.*

Looking at the intrusiveness of all aspects of the incident in the aggregate, the Court

concludes that Defendant Waybourn's conduct may have been unreasonable.[14]  *Id.*  Accepting

Plaintiff Torrez' argument, Defendant Waybourn pointed a weapon of potentially deadly force at

Plaintiff Torrez, without any reason to feel threatened or fear that Plaintiff Torrez would escape.

Because Plaintiff Torrez was on the floor of the apartment, naked, was not resisting detention or

arrest and had no weapon, the Court holds that genuine issues of material fact remain regarding

whether Defendant Waybourn's actions in pointing a gun at Plaintiff Torrez during the October 4,

1999 arrest were objectively reasonable under the circumstances.

ii.    Qualified Immunity

Defendant contends that he is entitled to qualified immunity if pointing a gun at Plaintiff

Torrez constituted excessive force.  Def. Reply, p. 4.  In resolving cases in which a defendant

claims qualified immunity, the Court must first consider whether the plaintiff has alleged a

deprivation of an actual constitutional right.  *See Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th

Cir. 2004) (citing *Saucier v. Katz*, 533 U.S. at 201).  In that the Court has found a constitutional

violation as explained above, the Court must next determine whether that right was clearly

established at the time of the alleged violation.  *See id.*  A right is "clearly established" if Supreme

Court or Tenth Circuit case law exists on point or if the clearly established weight of authority

from other circuits found a constitutional violation from similar actions.  *See Murrell v. School*

---

[14] Defendant Waybourn attempts to eviscerate the effect of having pointed a gun at
Plaintiff Torrez by arguing that displaying or drawing a gun upon entry of a residence is
reasonable.  Def. Reply p. 11.  However, drawing a gun upon entry and aiming it directly at a
prone, naked victim are distinguishable levels of force.  *Holland v. Harrington*, 268 F.3d at 1191.

*Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999).  "Under this standard, the contours of the

right must be sufficiently clear that a reasonable official would understand that what he is doing

violates that right." *Peterson v. Jensen,* 371 F.3d at 1202 (quoting *Anderson v. Creighton*, 483

U.S. 635, 639-40 (1987) (citations omitted)).  "This is not to say that an official action is

protected by qualified immunity unless the very action in question has previously been held

unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent."  *Id.*

      In the present case, the Court has cited Tenth Circuit law, Third Circuit law and precedent

from the United States Supreme Court on point.  It is well-established that pointing a loaded gun

at a suspect who does not pose a threat of violence or escape may be an unreasonable show of

force.  Because the law in this area was well-established at the time of the October 4, 1999

search, Defendant Waybourn is not entitled to qualified immunity.  Defendant Waybourn's motion

for summary judgment on Plaintiff Torrez' claim for excessive force (Count I) is denied.

      B.    <u>Section 1983, Unlawful Entry, Defendants SJCSD and Waybourn</u>

      Congress has codified the common law "knock and announce" rule which requires law

enforcement officers to announce their authority and purpose before breaking doors and windows

of private homes pursuant to a search warrant if refused entrance.  *See* 18 U.S.C. § 3109.  "The

Supreme Court has held that the 'knock and announce' principle embodied in § 3109 'forms a

part of the reasonableness inquiry under the Fourth Amendment.'"  *United States v. Gallegos,*

314 F.3d 456, 458 (10th Cir. 2002) (quoting *Wilson v. Arkansas*, 514 U.S. 927, 929 (1995)).

      "[I]n *United States v. Ruminer*, 786 F.2d 381, 383 (10th Cir. 1986), the Tenth Circuit

Court of Appeals observed that the purpose of § 3109 is to decrease the potential for violence,

protect the privacy rights of individuals, and avoid the unnecessary destruction of property."

*Gallegos*, 314 F.3d at 459 (quoting *Richards v. Wisconsin*, 520 U.S. 385, 393 n.5 (1997)).  "In

elaborating on these purposes, the Supreme Court has held that the privacy interests advanced by

the rule include: (1) permitting individuals to comply with the law by peaceably permitting officers

to enter their homes; (2) avoiding the unnecessary destruction of property that attends a forcible

entry; and (3) providing an opportunity for occupants to 'prepare themselves' for entry by law

enforcement officers by, for example, 'pulling on clothes or getting out of bed.'"  *Id.*  "Indeed, the

Supreme Court has described § 3109 as codifying a rule that is 'deeply rooted in our heritage and

[one that] should not be given grudging application.'"  *Id.* (quoting *Miller v. United States*, 357

U.S. 301, 313 (1958)).

 "The starting point of [the Court's] analysis must be the language of the statute."

*Gallegos,* 314 F.3d at 459.  "As noted above, § 3109 permits law enforcement officers to forcibly

enter a residence, if after announcing their presence and purpose, the officers are refused entry."

*Id.*  "The first prong of the rule requires officers to announce their presence and purpose before

breaking into an individual's home."  *Id.*  In the present case, Plaintiff Torrez contends that

Defendant Officers, including Defendant Waybourn, failed to comply with this requirement.  Joint

Response at 9 ("Plaintiff Torrez' testimony is that there was a single knock and insufficient time

for him to respond before being hit with a battering ram coming through his door.").

 "It is by now well-established that an occupant of a home need not affirmatively refuse

admittance to trigger the right of the police to enter by force."  *Gallegos* at 459 (citing *United

States v. Knapp*, 1 F.3d 1026, 1030 (10th Cir. 1993)).  "On the contrary, the refusal may be

'constructive' or 'reasonably inferred' from the circumstances."  *Id.* (quoting *United States v.

Bonner*, 874 F.2d 822, 824 (D.C. Cir. 1989)).  "In *United States v. Moore*, 91 F.3d 96 (10th Cir.

1996), the Tenth Circuit Court of Appeals held that a constructive refusal occurs, giving police the right to enter by force, where 'the occupants do not admit the officers within a reasonable period of time.'" *Id.* (quoting *Moore,* 91 F.3d at 98 (citation omitted)).

"[W]here there are no exigent circumstances justifying a shorter interval, the central inquiry in conducting this determination is whether an objectively reasonable officer would believe that occupants of the residence had a reasonable opportunity to voluntarily admit the officer, thereby supporting a conclusion that the occupants refused admittance." *Id.* at 459-60 (citing *United States v. Granville*, 222 F.3d 1214, 1218 (9th Cir. 2000) ("[H]olding that officers violated § 3109 because the delay did not provide defendant with 'reasonable opportunity to ascertain who was at the door and to respond to [the officer's] request for admittance.'"); *see also Richards*, 520 U.S. at 393 (noting that one purpose of the "knock and announce" rule is to permit individuals an opportunity to comply with the law)). "Furthermore, it is clear that 'the amount of time that officers must wait after knocking and announcing depends on the particular facts and circumstances of each case.'" *Id.* at 460 (quoting *United States v. Jenkins*, 175 F.3d, 1208, 1213 (10th Cir. 1999); *cf. Richards*, 520 U.S. at 394 (stating that "in each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement."). "[A] bright-line rule for determining how much time is enough is inappropriate." *Id.* (citation omitted).

Defendant Waybourn argues that the only fact at issue is whether Defendant Maestas' forced entry was accidental. Here again, the Court will not consider Officer Maestas' conduct in ruling on the San Juan County Defendants' motion for summary judgment. In response, Plaintiff Torrez raises several fact issues. Plaintiff Torrez testified at deposition that he heard a knock on

the apartment door when he was preparing to shower, but when he went to see who was at the door, he saw someone going down the stairs, away from the door. Pl.'s Exhibit 1 at 153. At that point, Plaintiff Torrez did not know who had knocked, or his or her purpose for knocking. *Id.* Plaintiff Torrez then returned to the bathroom to begin his shower. *Id.* at 155. Shortly after Plaintiff Torrez returned to the apartment door a second time, Defendant Maestas burst through the door with a battering ram and fell on top of Plaintiff Torrez. *Id.* at 155-57. Plaintiff Torrez testified that none of the Defendant Officers announced their presence or purpose, and they only knocked once (and departed from the door area) before using force to enter his apartment. *Id.* at 156. Plaintiff Torrez did not know who knocked at the apartment door until after the officers had forced their way in. The "20/20 vision of hindsight" cannot be used to determine whether a particular use of force was reasonable. *See Graham*, 490 U.S. at 396-97.

Under these facts the Court is unable to conclude that there is an absence of genuine issues of material fact concerning Plaintiff Torrez' claim that Defendant Officers, including Defendant Waybourn, unlawfully entered his apartment. Each of the Defendant Officers, including Defendant Waybourn, were required to comply with the Fourth Amendment. If any one of the officers failed to provide the requisite "knock and announce," any one other of the officers present were required to ensure that Plaintiff Torrez had proper notice of their presence and purpose. The facts, taken in the light most favorable to Plaintiff, indicate that the Defendant Officers or Defendant Waybourn may not have provided proper notice of their intent to search Plaintiff Torrez' apartment in violation of the Fourth Amendment. Thus, there are genuine issues of material fact surrounding Defendant Waybourn's participation in the forced entry of Plaintiff

23

Torrez' apartment.[15]  The San Juan County Defendants' motion for summary judgment on

Plaintiff Torrez' unlawful entry claim (Count I) is thus denied.

> C.   Malicious Abuse of Process and Malicious Prosecution, Defendants SJCSD and
>      Waybourn [16]
>
>      i.   Elements

The Tenth Circuit "has recognized the viability of malicious prosecution claims under

§ 1983 . . . ." *Taylor v. Meacham,* 82 F.3d 1556, 1560 (10th Cir. 1996) (citing *Wolford v.*

*Lasater*, 78 F.3d 484 (10th Cir. 1996) (citations omitted)).  In this circuit, the common law

elements of malicious prosecution are the starting point for the analysis of a § 1983 malicious

prosecution claim.  *Taylor*, 82 F. 3d at 1561.  The Tenth Circuit has recognized the following

elements as constituting the common law elements of the tort of malicious prosecution:  (1)

initiation of the original action; (2) termination of the original action in favor of the plaintiff; (3)

no probable cause to support the original arrest, continued confinement, or prosecution; (4)

malice; and (5) damages.  *Pierce v. Gilchrist*, 359 F.3d 1279, 1291-97 (10th Cir. 2004).[17]  In

---

[15] It appears that in their motion for summary judgment and reply, Defendants did not argue a qualified immunity defense directly applicable to Plaintiff Torrez' unlawful entry claim.   If they had, however, qualified immunity would have been denied on the basis that the "knock and announce rule" is so "deeply rooted in our heritage" that the right could not have been more "clearly established at the time of the alleged violation."  *See Miller v. United States*, 357 U.S. 301, 313 (1958).  *See also Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[16] The Court is unable to discern whether Plaintiff Torrez' malicious abuse of process claim is brought under § 1983 or under New Mexico common law.  Therefore the Court's analysis contemplates both standards.  A civil rights action parallels the tort of malicious prosecution and the claims are treated in a quite similar manner.  *See Weststar Mortg. Corp. v. Jackson*, 2003-NMSC-2, ¶ 10, 133 N.M. 114, 61 P.3d 823 (citing Dan B. Dobbs, The Law of Torts § 430, at 1216 (2000)).

[17] Neither party in *Pierce* questioned the applicability of malice as an element of a § 1983 claim, and thus the Tenth Circuit did not directly address the issue of whether malice is a

addition, to establish a malicious prosecution claim under § 1983, Plaintiff Torrez must also prove

a Fourth Amendment constitutional violation.  *Taylor*, 82 F.3d at 1561.

As for Plaintiff's malicious abuse of process claim, *DeVaney* was the initial case in which

the New Mexico "Supreme Court recognized the tort of malicious abuse of process, when it

combined the torts of abuse of process and malicious prosecution."  *Valles v. Silverman*, 2004-

NMCA-19, ¶ 7, 135 N.M. 91, 84 P.3d 1056, *overruled in part by Rio Grande Chapter of the*

*Sierra Club v. N.M. Mining Comm'n,* 2003-NMSC-5, 133 N.M. 97, 61 P.3d 806.  The elements

of New Mexico's malicious abuse of process tort are similar to those recognized by the Tenth

Circuit as constituting the common law elements of a malicious prosecution claim under § 1983.

*Cf. Pierce*, 359 F.3d at 1291-97; *Devaney*, 1998-NMSC-1, ¶ 17, 124 N.M. at 518, 953 P.2d at

283.  The elements of malicious abuse of process are:

> (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2)
> an act by the defendant in the use of process other than such as would be proper in
> the regular prosecution of the claim; (3) a primary motive by the defendant in
> misusing the process to accomplish an illegitimate end; and (4) damages.

*Devaney*, 1998-NMSC-1, ¶ 17, 124 N.M. at 518, 953 P.2d at 283.  "Under New Mexico law,

lack of probable cause to initiate criminal proceedings is an essential element of the tort of

malicious prosecution."  *Wolford*, 78 F.3d at 489.

"In restating the torts as a single cause of action [the New Mexico Supreme Court]

observed that they shared a common purpose of protecting 'a plaintiff who has been made the

subject of legal process improperly, where the action was wrongfully brought by a defendant

merely for the purpose of vexing or injuring the plaintiff, and resulting in damage to his or her

---

necessary element of the claim.  *Pierce*, 359 F.3d at 1296-97 & n.12.

personal rights.'"  *Weststar Mortg. Corp. v. Jackson*, 2003-NMSC-2, ¶ 6, 133 N.M. 114, 61 P.3d

823.  The tort of malicious abuse of process must be construed narrowly to protect the right of

access to the courts.  *Id.* (citing *DeVaney,* 1998-NMSC at ¶ 19).

> ii.    Initiation of Judicial Proceedings

It is noteworthy under the circumstances of this case that the first element, initiation of

judicial proceedings, "never required that the defendant be a party in the underlying, often

criminal, proceeding."  *Valles*, 2004-NMCA at ¶ 11 (citing *e.g., Hughes v. Van Bruggen*, 44

N.M. 534, 538-39, 105 P.2d 494, 497 (1940) ("[H]olding that whether or not the criminal

proceedings were initiated by the defendant depends on whether the defendant's actions were the

determining factor in the decision to prosecute or if the defendant knowingly furnished the official

with false information."); *cf. Johnson v. Weast*, 1997-NMCA-66, ¶ 20, 123 N.M. 470, 943 P.2d

117 ("Merely providing information that is not false to the authorities does not initiate

proceedings . . . if the decision to proceed is left to the discretion of . . . the prosecutor and the

absence of falsity allows the prosecutor to exercise independent judgment."); *Zamora v.*

*Creamland Dairies, Inc.*, 106 N.M. 628, 633, 747 P.2d 923, 928 (Ct. App. 1987) ("A defendant

cannot be held liable for malicious prosecution [in an underlying criminal case] unless he took

some active part in instigating or encouraging prosecution.")).  Under this line of decisional

authority, a "'defendant can be regarded as an instigator of the proceeding only if (a) he [or she]

communicates material information falsely or inaccurately and the prosecutor relies upon his [or

her] statement, or (b) the defendant uses his [or her] power or position to influence the prosecutor

in favor of prosecution.'"  *Weststar*, 2003-NMSC-2 at ¶ 11 (quoting Dan B. Dobbs, The Law of

Torts § 430, at 1216 (2000)) (internal footnote omitted).

iii.   Improper Act

"An improper act constituting a misuse of process is the second essential element of the

tort of malicious abuse of process." *Weststar,* 2003-NMSC-2 at ¶ 15. "A misuse of process may

be established by showing *either a lack of probable cause or a procedural impropriety. Id.*

(emphasis added). "'Under this new tort, there must be a misuse of process by the defendant

beyond the mere initiation of proceedings against the plaintiff.'" *Id.* (quoting *DeVaney,* 1998-

NMSC-1 at ¶ 53.

a.   Probable Cause

Probable cause is defined as the reasonable belief, founded on known facts established

after a reasonable pre-filing investigation, that a claim can be established to the satisfaction of a

court or jury. *DeVaney,* 1998-NMSC-1 at ¶ 22. *See also United States v. Gordon,* 173 F.3d

761, 766-67 (10th Cir. 1999) (stating that probable cause is based on a reasonably fair likelihood

of criminal conduct, not a positive showing of criminal conduct). "The lack of probable cause

must be manifest." *Weststar,* 2003-NMSC-2 at ¶ 16. "'[W]hether the facts amount to probable

cause, is a question of law' and 'shall be decided by the trial judge.'" *Id.* at ¶ 17 (quoting

*DeVaney,* 1998-NMSC-1 at ¶¶ 24, 41).

b.   Procedural Impropriety

"A procedural impropriety under the tort of malicious abuse of process might arise if there

was an improper use of criminal or civil process in a manner not contemplated by law." *Weststar,*

2003-NMSC-2 at ¶ 20. "There is no liability when the defendant in an abuse of process claim has

done nothing more than carry out the process to its authorized conclusion, even if done with bad

intentions." *Id.* "'Nevertheless, the filing of a proper complaint with probable cause, and without

any overt misuse of process, will not subject a litigant to liability for malicious abuse of process, even if it is the result of a malicious motive.'"  *Id.* (quoting DeVaney, 1998-NMSC-1 at ¶ 20).

iv.    <u>Plaintiff Torrez Has Not Met Requisite Elements</u>

Because Plaintiff Torrez cannot meet either of the first two elements, the Court does not reach analysis under the third and fourth elements of this tort.  Defendant Waybourn argues that the November 17, 1999 Bind-Over Order established probable cause, which forecloses Plaintiff Torrez' malicious abuse of process claim.  Although the Court agrees with this proposition in the context of the San Juan County Defendants' motion, the analysis does not end there.

The October 4, 1999 criminal complaint was filed as a result of Defendant Officers' executed search of Plaintiff Torrez' property under the authority of a valid search warrant obtained by a City of Farmington employee.[18]  Defs.' Exhibit D.  The search warrant was based on Defendant Mitchell's Statement of Probable Cause to the San Juan County Magistrate Court. *See* Defs.' Exhibit B.  There is no allegation on record that Defendant Waybourn participated in obtaining the search warrant.[19]  Likewise, there is no evidence on record that Defendant Waybourn spoke with Cooper, the witness whom Plaintiff Torrez alleges gave false information in support of the warrant.

The October 4, 1999 criminal complaint was not prosecuted because an "Essential State Witness [would] not cooperate."  Defs.' Exhibit F.  On November 17, 1999, the San Juan County

---

[18]The San Juan County Magistrate Court was satisfied that there was probable cause to issue the October 4, 1999 search warrant.

[19]Although Plaintiff Torrez alleges that the search warrant obtained by Defendant Mitchell was based on false information from Cooper and that "the officers" knew that the information was false, there are no specific allegations asserted against Defendant Waybourn such that he spoke with Cooper or that he relayed information from Cooper to any of the Farmington Defendants.

28

Magistrate Court issued a Bind-Over Order that was based on "probable cause to believe that the . . . offenses have been committed and that the defendant committed them."  Defs.' Exhibit E. On May 4, 2000, the October 4, 1999 criminal complaint was reinstated, along with a criminal complaint arising out of a November 28, 1999 arrest during which Plaintiff Torrez was found to possess Oxycodone and other controlled substances.[20]  Defs.' Exhibit H.  There is no allegation on record that Defendant Waybourn participated in filing the second criminal complaint.

Plaintiff Torrez poses only one factual argument in support of his malicious abuse of process and malicious prosecution claims against Defendant Waybourn.  Plaintiff Torrez alleges that "Defendant Waybourn later confirmed the connection between the October 4, 1999 raid and Plaintiff Torrez' refusal to act as an informant."  Pl.'s Exhibit 1 at 81-83.  However, as stated earlier in this Opinion, the Court cannot contrive Plaintiff Torrez' deposition testimony to support this allegation.  Furthermore, the Court herein only addresses the criminal complaint filed on May 4, 2000.  Plaintiff Torrez' entire argument pertains to the October 4, 1999 criminal complaint.

Plaintiff Torrez was required to come forward with specific facts supporting that Defendant Waybourn personally participated in the alleged improper conduct surrounding the May 4, 2000 criminal complaint.  *See Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976).  Under § 1983, Plaintiff Torrez was also required to establish a constitutional violation. *See Taylor,* 82 F.3d at 1561.  He failed to make either showing.  "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Culver v. Torrington,* 930 F.2d 1456, 1459 (10th Cir. 1991) (citing *Celotex v.*

---

[20]Plaintiff Torrez alleges in his amended complaint that Defendant Officers, including Defendant Waybourn, "sought, pursued, encouraged, and obtained a refiling of the action against Plaintiff . . . ."  There is no evidence in the record to support this conclusion.

*Catrett*, 477 U.S. 317, 322-23; *Lake Hefner Open Space Alliance v. Dole*, 871 F.2d 943, 945 (10th Cir. 1989)).

In this case, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* Plaintiff Torrez has failed to set forth specific evidence to support the first and second elements of his claim against Defendant Waybourn for malicious abuse of process arising out of the May 4, 2000 criminal complaint. Similarly, Plaintiff Torrez has also failed to set forth specific evidence to support the elements of his malicious prosecution claim under § 1983. Under these circumstances, the Court grants Defendant Waybourn's motion for summary judgment on Plaintiff Torrez' malicious abuse of process claim and malicious prosecution claim under § 1983 (Count II).

    D.      <u>Section 1983, Unlawful Search and Seizure, Defendants SJCSD and Waybourn</u>

The language of the Fourth Amendment explicitly references unreasonable searches and seizures, and the United States Supreme Court has specifically applied the same standard as that applicable to claims of excessive force. "[A]ll claims that law enforcement officers used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under a substantive due process approach." *Graham*, 490 U.S. at 395. Since the San Juan County Defendants do not dispute that a seizure was made, the question for decision here is whether this particular seizure can be considered unreasonable. Reasonableness in the Fourth Amendment context is judged on an objective, not a subjective, standard and can be decided by the court rather than a jury. *See Holland v. Harrington*, 268 F. 3d 1179, 1196 (10th Cir. 2001)

(citing *Terry v. Ohio*, 392 U. S. 1, 21 (1968) ("The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: whether the facts available to the officer at the moment of the seizure or the search, warrant a man of reasonable caution in the belief that the action taken was appropriate.").

In particular, the Court notes that law enforcement agents may detain a person without probable cause while executing a search warrant if justified by the circumstances. *See Wright v. City of St. Francis,* No. 02-3337, 2004 U.S. App. LEXIS 7630, ** 21 (10th Cir. April 20, 2004) (citing *Florida v. Royer*, 460 U.S. 491, 504 (1983)); *see also Michigan v. Summers*, 452 U.S. 692, 704-05 (1981) (during execution of search warrant, police can lawfully detain the occupant of the house they have a warrant to search). However, such a detention must be "carefully tailored" to the law enforcement interests used to justify it. *Summers*, 452 U.S. at 702-03.

The San Juan County Defendants argue that the October 4, 1999 search warrant obtained by Defendant Mitchell was based on probable cause, as was the ensuing Bind- Over Order. Def. Memo in Support, Material Fact Nos. 1, 2, 5 and 6. Although Plaintiff Torrez failed to specifically controvert San Juan County's arguments concerning his unlawful search and seizure claim, Plaintiff Torrez' theory underlying these claims appears to be that he was first unlawfully detained pursuant to a search warrant that lacked probable cause, and then unlawfully arrested based on the deficient warrant and contraband found in his apartment that did not belong to him. Joint Response, at 2, 4, 5 and 6. Other than Plaintiff Torrez' blanket conclusory statement

regarding all Defendant Officers, the facts at hand do not demonstrate that Defendant Waybourn knew the warrant to be based on false information.  Joint Response at 6.[21]

In his application for the search warrant, Defendant Mitchell swore that he had reason to believe that Plaintiff Torrez was concealing controlled substances in his apartment and that in his experience, "drug dealers often store contraband in or near their homes . . . ."  Defs.' Exhibit A.  The search warrant did not mention or indicate that Defendant Waybourn provided information in support of the warrant or that Defendant Waybourn had communicated with Cooper and relayed such communication to Defendant Mitchell.  Therefore, in this context, the Court does not reach the question of whether Defendant Mitchell knowingly relied on false information from Cooper in securing the search warrant, rendering the warrant defective.

During the execution of the October 4, 1999 search warrant, Defendant Officers found contraband (including methamphetamines, an unlicensed gun, drug paraphernalia and marijuana) in Plaintiff Torrez' apartment.  Although Defendant Officers did not have an arrest warrant, they arrested Plaintiff Torrez.  The constitutional validity of a warrantless arrest does, of course, depend upon whether the arresting officer has probable cause.  *See Beck v. Ohio*, 379 U.S.89, 91 (1964).  Such cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent man in believing that an offense has occurred.  *Id.*  However, "[t]he Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested . . . nor by the mistaken execution of a valid search warrant on the

---

[21] In support of his unlawful search and seizure claim, Plaintiff Torrez again resurrects his claim that Defendant Waybourn told him that the October 4, 1999 "raid" was in retaliation for Plaintiff Torrez' refusal to act as an informant.  The Court reiterates that it does not find this fact supported in Plaintiff Torrez' deposition testimony.

wrong premises." *Graham*, 490 U.S. at 396 (citing *Hill v. California*, 401 U.S. 797, 802 (1971)

and *Maryland v. Garrison*, 480 U.S. 79, 88 (1987).  "[I]n determining whether probable cause

exists, the courts must apply the 'totality of circumstances' test."  *Brierley v. Schoenfeld,* 781

F.2d 838, 841 (10th Cir. 1986) (citing *Illinois v. Gates*, 462 U.S. 213,  233 (1983)).  Under the

present circumstances, the Court concludes that the seizure of contraband in Plaintiff Torrez'

apartment provided Defendant Waybourn with probable cause to initiate or assist in Plaintiff

Torrez' arrest.

    To the extent that Defendant Waybourn actively participated in the October 4, 1999[22]

search and seizure of Plaintiff Torrez and his property, the record is bereft of any facts that would

demonstrate that Defendant Waybourn was acting any way other than in reliance on the facially

valid search warrant and within constitutional compliance concerning Plaintiff Torrez' arrest,

which was based on the seizure of contraband.  The San Juan County Defendants' motion for

summary judgment on Plaintiff Torrez' unlawful search and seizure claim (Count II) is therefore

granted.

    D.    Interference with Prospective Business Advantage, Defendant Waybourn

    "To establish a claim for tortious interference with prospective business relations, a

plaintiff must show intentional and improper interference preventing the formation of a contract."

*Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995) (citations omitted).  "The defendant can

interfere either by inducing or causing a third party not to enter into or continue relations, or by

preventing the plaintiff from acquiring or continuing the relations."  *Id.*  "It is not necessary to

---

[22] Because Plaintiff Torrez does not argue that the November 28, 1999 arrest constituted
an unlawful search and seizure, the Court will not address that arrest herein.

prove an underlying contract." *Id.* (citing *Wasalco, Inc. v. El Paso County*, 689 P.2d 730, 732

(Colo. Ct. App. 1984). "However, a protected relationship exists only if there is a reasonable

likelihood or probability that a contract would have resulted; there must be something beyond a

mere hope." *Id.* (citing *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 898 (3rd Cir.

1981) (citations omitted)).

New Mexico recognizes this tort in the same context. "In discussions of the type of

situation involved in this case, terms such as 'economic expectancies' and 'prospective advantage'

have been used." *M & M Rental Tools v. Milchem, Inc.*, 94 N.M. 449, 452, 612 P.2d 241, 244

(Ct. App. 1980) (citations omitted). This case does not involve existing contractual relations.[23]

Rather, this case involves general interference with existing and prospective business relationships

and any advantage resulting therefrom. "A claim for tortious interference with contractual

relations that does not induce the breach of an existing contract is in the nature of a claim for

interference with prospective business advantage, and it requires a plaintiff to prove that the

---

[23]In his amended complaint, Plaintiff Torrez brings a claim for interference with prospective business advantage against "Defendant law enforcement officers." *See* amended complaint, Count VI. In the Pre-Trial Order, Plaintiff Torrez states that his claims include that his business "was illegally shut down and forced out of business," and that "Defendants engaged in unlawful conduct as they interfered with Plaintiff Torrez' prospective business advantage." *See* Pre-Trial Order, p. 4 **[Doc. No. 160]**. In his joint response, Plaintiff Torrez argues in support of a claim for intentional interference with contractual relations. *See* joint response, pp. 10 - 11 **[Doc. No. 161]**. Although the distinction between the proof required to sustain these two claims may be diminutive as noted herein, the Court will treat Plaintiff Torrez' Count VI as a claim for interference with prospective business advantage because: 1) under Fed. R. Civ. P. 16, once the Pre-Trial Order is entered, it "shall control the subsequent course of action;" and 2) if Plaintiff Torrez had intended to litigate the effect of Defendant Waybourn's alleged conduct on his existing contracts, he was obligated to provide Defendant Waybourn with a copy of such contracts with his amended complaint. *See* Rule 1-009(I) NMRA 2005 (applicable to the original complaint filed in state district court). Defendant Waybourn has not addressed such contracts in his Motion and the Court is aware of no such contracts having been made available to Defendant Waybourn.

defendant used improper means or acted with an improper motive intended solely to harm the plaintiff." *Silverman* v. *Progressive Broad, Inc.,* 1998-NMCA-107, ¶ 28, 125 N.M. 500, 964 P.2d 61 (citing *Kelly v. St. Vincent Hosp.*, 102 N.M. 201, 207, 692 P.2d 1350, 1356 (Ct. App. 1984)).

However, "American courts are not as willing to protect interests in prospective contractual relations as they are to protect interests in existing contracts." *Fikes v. Furst*, 2003-NMSC-33, ¶ 22, 134 N.M. 602, 81 P.3d 545 (citing *Anderson v. Dairyland Ins. Co.*, 97 N.M. 155, 158, 637 P.2d 837, 840 (1981) (quoting James A. Henderson, Jr. & Richard N. Pearson, The Torts Process 1166 (2d ed. 1981)). "Where the defendant is accused of interfering with the plaintiff's opportunity to enter into contracts with third persons, a strong showing must be made that the defendant acted not from a profit motive but from some other motive, such as personal vengeance or spite." *Id.* Therefore, if the facts demonstrate that Defendant Waybourn was involved defaming Plaintiff Torrez at the San Juan County Detention Center for the purpose of interfering with Plaintiff Torrez' business advantage, his motive in doing so must be proven to have been solely to harm Plaintiff Torrez. *See id.*; *Clough v. Adventist Health Sys., Inc.*, 108 N.M. 801, 806, 780 P.2d 627, 632 (1989).

Defendant argues that there is no evidence on record of conduct on the part of Defendant Waybourn to support a claim for interference with prospective business advantage.[24] *See* Def. Memo. in Support at 13.  In turn, Plaintiff Torrez argues that his Affidavit "establishes [that Defendant Waybourn had] the requisite improper motive, *i.e.,* retaliation for not acting as an

---

[24]Defendant Waybourn argues that there is no evidence on record to support *any* of the claims Plaintiff Torrez asserts against him. *See* Def. Memo in Support.

informant for law enforcement officers against Plaintiff Torrez' customers."  Joint Response at 10; *see also* Pl.'s Exhibit 3.  In his Affidavit, Plaintiff Torrez states that Doug Kennedy and Gerald Maestas approached him about being an informant and possibly supplying some names of drug dealers to law enforcement.  *See* Pl.'s Exhibit 3, ¶¶ 3 and 5.  Plaintiff Torrez further states that "[w]ithin a year" of refusing to do so, "local law enforcement began arresting me, and the facts supporting my present lawsuit began."  *Id.* at ¶ 7.  Plaintiff Torrez' Affidavit says nothing in regard to Defendant Waybourn.

Plaintiff Torrez further argues that "Boyd Elaine Godwin's Affidavit establishes the interference with Torrez' business."  Joint Response at 10; *see also* Pl.'s Exhibit 2.  Boyd Godwin's affidavit likewise fails to specifically address Defendant Waybourn's alleged involvement in defaming Plaintiff Torrez at the San Juan County Detention Center.  Plaintiff Torrez attempts to preserve this claim against Defendant Waybourn by claiming that at deposition, "Plaintiff Torrez testified that Defendant Waybourn later talked to him about the October 4, 1999 arrest and connected the arrest to Plaintiff Torrez' refusal to act as an informant."  Joint Response at 10; *see also* Pl.'s Exhibit 1, 81-83.  However, Plaintiff Torrez' deposition testimony on this issue is largely unintelligible and confusing at best.  Although Plaintiff Torrez makes it clear that he came into contact with Defendant Waybourn after the October 4, 1999 arrest, he never actually states that Waybourn told him the arrest was the result of Plaintiff Torrez' refusal to act as an informant.  *Id.*

Plaintiff Torrez asks the Court to read between the lines of his deposition testimony to infer that Defendant Waybourn's alleged statement to Plaintiff Torrez such that "you didn't get a conviction or you didn't help me," meant that Defendant Waybourn initiated the October 4, 1999

arrest because Plaintiff Torrez refused to become an informant.  Pl.'s Exhibit 1 at 82.  It is not

clear from the deposition transcript whether Defendant Waybourn was even the individual who

said, "You didn't get a conviction or you didn't help me."  *Id.*  "While a party opposing summary

judgment is entitled to have reasonable inferences drawn from the facts . . .  to reach plaintiffs'

conclusion[ ] the trial court would have had to stack one inference upon another inference."  *See*

*Hansler v. Bass*, 106 N.M. 382, 386, 743 P.2d 1031, 1035 (Ct. App. 1987).  "This is not

permitted."  *Id.* (citing *Lovato v. Plateau, Inc.*, 79 N.M. 428, 444 P.2d 613 (Ct. App.1968) ("a

'reasonable inference' is a conclusion arrived at by a process of reasoning, and the conclusion

must be a rational and logical deduction from the facts admitted or established.").  Furthermore,

that Defendant Waybourn admits that he was "involved in the October 4, 1999 arrest" cannot

provide the specific factual evidence with which Plaintiff Torrez must now come forward to

survive summary judgment on this claim.  Joint Response at 10.  Plaintiff Torrez has failed to

sustain his burden to establish a genuine issue of material fact on his intentional interference with

prospective business advantage claim against Defendant Waybourn.  Defendant Waybourn's

motion for summary judgment as to this claim (Count VI) is granted.

E.    False Light Invasion of Privacy, Defendant Waybourn

New Mexico recognizes the tort of invasion of privacy.  *See Andrews v. Stallings,* 119

N.M. 478, 492, 892 P.2d 611, 625 (Ct. App. 1995); *McNutt v. New Mexico State Tribune Co*., 88

N.M. 162, 165, 538 P.2d 804, 807 (Ct. App.).  "The tort is generally broken down into four

categories:  false light, intrusion, publication of private facts, and appropriation."  *Id.*  (citing

*Moore v. Sun Publishing Corp*., 118 N.M. 375, 383, 881 P.2d 735, 743(Ct. App.).  In this case,

Plaintiff Torrez claims that Defendant Waybourn placed him in a "false light."

37

"False light" invasion of privacy is "a close cousin of defamation."  *Andrews*, 119 N.M. at 492, 892 P.2d at 625 (citing *Moore*, 118 N.M. at 383, 881 P.2d at 743 (quoting Rodney A. Smolla, Law of Defamation § 10.01[2], at 10-3 (1994))).  "It is not, however, necessary to the action for invasion of privacy that the plaintiff be defamed." *Moore* at 383, 743 (citing Restatement (Second) of Torts, § 652E cmt. b, at 395).  "It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position."  *Id*.  "In the absence of proof of a specific false statement of fact, "unfairness, improper tone, or unfounded implication or innuendo, even though they might sound as though they fit the phrase 'false light,' will no sooner support a recovery for false-light invasion of privacy than for defamation." *Andrews*, 119 N.M. at 625-26, 492-93 (quoting Robert D. Sack & Sandra S. Baron, Libel, Slander, and Related Problems, 565 (2d ed. 1994)).

Defendant Waybourn again argues that Plaintiff Torrez has failed to put forth evidence that Defendant Waybourn's conduct gave rise to a claim for false light invasion of privacy.  Def. Memo. in Support at 12-13.  The Court agrees.  In his joint response, Plaintiff Torrez sets forth essentially four facts to establish a genuine issue of material fact as to all of his claims against the San Juan County Defendants.  These facts are: 1) that the San Juan County Defendants "admit that they participated in the October 4, 1999 raid on Plaintiff Torrez' residential rental property;" 2) that Defendant Waybourn told Plaintiff Torrez that the October "raid" was in retaliation for Plaintiff Torrez' refusal to act as an informant; 3) that Defendant Waybourn pointed a gun at Plaintiff Torrez during the execution of the search warrant and subsequent arrest; and 4) that Defendant Waybourn participated in defaming Plaintiff Torrez at the San Juan County Detention

38

Center.  *See* Joint Response at 1-2.

None of these arguments raise a genuine issue of material fact with respect to Plaintiff Torrez' false light invasion of privacy claim against Defendant Waybourn.  First, Defendant Waybourn's participation in the October 4, 1999 arrest does not constitute, on its face, a constitutional or common law violation.  Second, as the Court has stated throughout, Plaintiff Torrez' deposition testimony does not support the allegation that Defendant Waybourn told Plaintiff Torrez that the October 4, 1999 arrest was in retaliation for Plaintiff Torrez' refusal to act as an informant.  Third, that Defendant Waybourn pointed a gun at Plaintiff Torrez during the executing of the search warrant and arrest does nothing to further Plaintiff Torrez' false light invasion of privacy claim.

Plaintiff's fourth argument is deficient as well.  Plaintiff Torrez refers to the Court to his Exhibit 2, a sworn Affidavit by Boyd Elaine Godwin in support of his claim that Defendant Waybourn defamed him.  However, this Affidavit makes no reference to Defendant Waybourn.  Boyd Godwin states that during her employment (at the San Juan County Detention Center), she "was told many derogatory statements about David Torrez."  Pl.'s Exhibit 2, ¶ 2.  She states that "in the process of booking arrested individuals, law enforcement officials would say that David Torrez was a criminal . . . ."  *Id.* at ¶ 3.  Although Ms. Godwin goes on to aver that she heard many other derogatory statements against Plaintiff Torrez during her employment, she fails to specifically identify Defendant Waybourn as the author of any of the statements.  The Court will not go so far as to infer that Defendant Waybourn was one of the "law enforcement officials" to whom Ms. Godwin refers.  Plaintiff Torrez has failed to make even a minimal factual showing on essential issues on which he bears the burden of proof pursuant to his claim of false light invasion

of privacy against Defendant Waybourn.  Summary judgment is granted to the San Juan County

Defendants on Plaintiff Torrez' Count VIII, false light invasion of privacy.

      F.      <u>Intentional Infliction of Emotional Distress, Defendant Waybourn</u>

      With respect to the tort of intentional infliction of emotional distress (IIED), New Mexico

courts have adopted the approach taken by the RESTATEMENT (SECOND) OF TORTS § 46

(1965).  *See Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMSC- 004, ¶ 25, 131 N.M. 607,

41 P.3d 333.  To establish such a claim, a plaintiff must show that "1) the conduct in question was

extreme and outrageous; 2) the conduct of the defendant was intentional or in reckless disregard

of the plaintiff; 3) the plaintiff's mental distress was extreme and severe; and 4) there is a causal

connection between the defendant's conduct and the claimant's mental distress."  *Id.*  (quoting

*Hakkila v. Hakkila*, 112 N.M. 172, 182, 812 P.2d 1320, 1330 (Ct. App. 1991); *see also Andrews*

*v. Stallings,* 119 N.M. 478, 491, 892 P.2d 611, 624 (Ct. App. 1995) (A claim for intentional

infliction of emotional distress requires a plaintiff to show that defendants engaged in extreme and

outrageous conduct which was done recklessly or with the intent to cause severe emotional

distress.); and UJI 13-1628 NMRA 2005.  "To recover emotional distress damages, those

damages must be 'severe.'"  *See Jaynes v. Strong-Thorne Mortuary, Inc.*, 1998-NMSC-4, ¶ 20,

124 N.M. 613, 954 P.2d 45 and UJI 13-1628 NMRA 2005; *see also Flores v. Baca*, 117 N.M.

306, 313, 871 P.2d 962, 969 (1994).

      "By 'severe' we intend that 'a reasonable person, normally constituted, would be unable to

cope adequately with the mental distress engendered by the circumstances.'"  *Id.* (quoting *Folz v.*

*State*, 110 N.M. 457, 469, 797 P.2d 246, 254 (1990), *rev'd on other grounds,* 115 N.M. 639, 857

P.2d 39 (1993), *cert. denied*, 115 N.M. 602, 856 P.2d 250 (1993); *see also* UJI 13-1628 NMRA

2005).  "Extreme and outrageous conduct is described as conduct 'so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community.'"  *Silverman v. Progressive Broad,*

*Inc.,* 1998-NMCA-107, ¶ 32, 125 N.M. 500, 964 P.2d 61 (quoting *Phifer v. Herbert*, 115 N.M.

135, 139, 848 P.2d 5, 9 (Ct. App. 1993) (quoting Restatement (Second) of Torts § 46 cmt. d

(1965)), *overruled on other grounds by Spectron Dev. Lab. v. American Hollow Boring Co*.,

1997 NMCA 25, ¶¶ 31-32, 123 N.M. 170, 936 P.2d 852).  Mere insults do not exceed the bounds

of decency.  *Andrews*, 119 N.M. at 491, 624 (citing *Koch v. Goldway*, 817 F.2d 507, 510 (9th

Cir. 1987)).

"Initially, the court determines as a matter of law whether conduct reasonably may be

regarded as so extreme and outrageous that it will permit recovery under the tort of intentional

infliction of emotional distress."  *Padwa v. Hadley,* 1999-NMCA-67, ¶ 9, 127 N.M. 416, 981

P.2d 1234, *cert. denied*, 127 N.M. 389, 981 P.2d 1207 (1999) (citing *Trujillo v. Puro*, 101 N.M.

408, 414, 683 P.2d 963, 969 (Ct. App. 1984) and Restatement (Second) of Torts § 46 cmt. h

(1965)).  "When reasonable persons may differ on that question, it is for the jury to decide,

subject to the oversight of the court."  *Id.* (citing Restatement, *supra*).

Defendant Waybourn argues that Plaintiff Torrez failed "to present any evidence that

Defendant Waybourn made any derogatory publications to support Plaintiff's claims . . . ."  *See*

Defs.' Reply at 12.  In this case, it appears that Plaintiff Torrez' claim of intentional infliction of

emotional distress arises from Defendant Waybourn's alleged participation in defaming Plaintiff

Torrez at the San Juan County Detention Center.  *See* Joint Response at 2, 4, 8 and 10.[25]  Indeed, the deficiencies pointed out in Plaintiff Godwin's response to the San Juan County Defendants' motion for summary judgment on the common law tort claims are present in Plaintiff Torrez' joint response as well.  Just as Plaintiff Godwin failed to do, Plaintiff Torrez has failed to come forward with specific facts in support of his state common law claims (including his IIED claim) against Defendant Waybourn.  More specifically, there is no evidence against Defendant Waybourn in the record regarding what defamatory statements he may have made about Plaintiff Torrez at the San Juan County Detention Center, or to whom Defendant Waybourn made such statements.  Here again, there is no evidence on record that would allow the Court to make the requisite threshold ruling as to whether the conduct alleged rises to the applicable standard, *i.e.,* "extreme and outrageous conduct," such that it will permit recovery against Defendant Waybourn.  San Juan County Defendants' motion for summary judgment on Plaintiff Torrez' claim for intentional infliction of emotional distress (Count IX) is granted.

## CONCLUSION

For all of the reasons stated above, **IT IS THEREFORE ORDERED** that the San Juan County Defendants' Motion For Summary Judgment on Plaintiff Torrez' Claims Against San Juan County and Jason Waybourn **[Doc. No. 132]**, is hereby **GRANTED IN PART** as follows:

1.     The San Juan County Defendants' Motion For Summary Judgment on Plaintiff

---

[25]In his amended complaint, Plaintiff Torrez merely states that "Defendants' conduct was extreme and outrageous under the above described circumstances and violated notions of common decency in a civilized society."  Amended Complaint, ¶ 134.  Plaintiff Torrez did not elucidate this claim in his joint response, or in his Exhibits in support thereof.  Therefore the Court will make the inference that the "above described circumstances" to which Plaintiff Torrez refers in his amended complaint, pertain to Defendant Waybourn, and his alleged participation in defaming Plaintiff Torrez at the San Juan County Detention Center.

Torrez' Count I, Excessive Force against the San Juan County Sheriff's Department and Jason Waybourn (regarding two factual issues:  1) the reasonableness of Defendant Waybourn's conduct in pointing a gun at Plaintiff Torrez; and 2) whether Defendant Waybourn gave proper notice of the officers' purpose and presence on October 4, 1999) is hereby DENIED as to Jason Waybourn and GRANTED as to San Juan County.  As to all other issues pertinent to Plaintiff Torrez' Count I, summary judgment is GRANTED;

2.    The San Juan County Defendants' Motion for Summary Judgment on Plaintiff Torrez' Count II, Malicious Abuse of Process against the San Juan County Sheriff's Department and Jason Waybourn is hereby GRANTED;

3.    The San Juan County Defendants' Motion for Summary Judgment on Plaintiff Torrez' Count II, Unlawful Search and Seizure (unlawful detention and arrest) against the San Juan County Sheriff's Department and Jason Waybourn is hereby GRANTED;

4.    The San Juan County Defendants' Motion for Summary Judgment on Plaintiff Torrez' Count VI, Interference With Prospective Business Advantage against Jason Waybourn is hereby GRANTED;

5.    The San Juan County Defendants' Motion for Summary Judgment on Plaintiff Torrez' Count VIII, False Light Invasion of Privacy against Jason Waybourn is hereby GRANTED; and

6.    The San Juan County Defendants' Motion for Summary Judgment on Plaintiff Torrez' Count IX, Intentional Infliction of Emotional Distress against Defendant Waybourn is hereby GRANTED.

Dated this 22nd day of February, 2006.

43

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE


Attorney for Plaintiff Godwin:
     Gilbert J. Vigil, Esq.

Attorneys for Jason Waybourn:
     Ronald J. Childress, Esq.
     Elaine R. Dailey, Esq.

Attorneys for Farmington Defendants:
     Sean Olivas, Esq.
     Melanie Frassanito, Esq.