## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DAVID TORREZ,

        Plaintiff,

vs.
                                                   Civ. No. 02-1381
                                                          MV/RHS

CITY OF FARMINGTON, VINCENT MITCHELL, in his official and
individual capacities, GERALD MAESTAS, in his official and
individual capacities, DUSTY DOWNS, in his official and individual
capacities, JASON HENSLEY, in his official and individual capacities,
JOHN AHLM, in his official and individual capacities, SAN JUAN
COUNTY for acts of its SHERIFF'S DEPARTMENT, a governmental
entity, JASON WAYBOURN, in his official and individual capacities,
SAN JUAN DISTRICT MAGISTRATE COURT, LINDA B. EATON,
in her official and individual capacities, AZTEC MUNICIPAL COURT,
BARBARA R. ALDAZ, in her official and individual capacities,
ELEVENTH JUDICIAL DISTRICT COURT, GREGORY T.
IRELAND, in his official and individual capacities, and OTHER JOHN
DOE DEFENDANTS, in their official and individual capacities,

              Defendants,

and

JULES LESLIE GODWIN,

        Plaintiff,

vs.
                                                   Civ. No. 02-1382
                                                            MV/RHS

CITY OF FARMINGTON, VINCENT MITCHELL, in his official and
individual capacities, GERALD MAESTAS, in his official and
individual capacities, DUSTY DOWNS, in his official and individual
capacities, JASON HENSLEY, in his official and individual capacities,
JOHN AHLM, in his official and individual capacities, SAN JUAN
COUNTY for acts of its SHERIFF'S DEPARTMENT, a governmental
entity, JASON WAYBOURN, in his official and individual capacities,
SAN JUAN DISTRICT MAGISTRATE COURT, LINDA B. EATON,
in her official and individual capacities, AZTEC MUNICIPAL COURT,
BARBARA R. ALDAZ, in her official and individual capacities,
ELEVENTH JUDICIAL DISTRICT COURT, GREGORY T.
IRELAND, in his official and individual capacities, and OTHER JOHN
DOE DEFENDANTS, in their official and individual capacities,

              Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on Defendant Vincent Mitchell, Gerald Maestas, Dusty Downs, Jason Hensley, John Ahlm ("Farmington Officers"), and the City of Farmington's (collectively, "Farmington Defendants") Motion for Summary Judgment on Plaintiff Torrez's Claims, filed July 15, 2005 (**Doc. No. 148**). The Court, having considered the motion, briefs, and relevant law and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED** in part.

I.   **BACKGROUND**

   A.   **Factual Background**

The following facts are either undisputed or are facts, established by admissible evidence, that most favor Plaintiff David Torrez ("Plaintiff Torrez").

In 1988, Plaintiff Torrez started a business called Torrez Bonds and began entering into contracts with persons to post bail bonds in exchange for compensation. Sometime in late 1996, Doug Kennedy, a law enforcement officer with the Farmington Police Department, approached Plaintiff Torrez and asked him to act as an informant on the criminals he encountered as a result of being a bail bondsmen. Pl. Torrez' Resp. to Farmington Defs.' Mot. for Summ. J. on Pl. Torrez' Claims (hereinafter "Pl.'s Resp."), Ex. 2 (Aff. of David Torrez) at 1.[1] Plaintiff Torrez rejected Officer Kennedy's request. *Id.* at 2. Subsequently, sometime in 1997, another officer, Defendant Gerald Maestas, asked Plaintiff Torrez if he would be interested in becoming an informant and supplying names of drug dealers to law enforcement. *Id.* Officer Maestas stated that he and Plaintiff could ride motorcycles together and try to gather information on criminal activity in San Juan County. *Id.*

---

[1]Officer Kennedy is not a party to this suit.

Plaintiff Torrez again declined this request to act as an informant.  In response, Officer Maestas told Plaintiff Torrez that he "was one of them." *Id.*  Plaintiff Torrez understood this comment to mean that Officer Maestas was calling him a criminal. *Id.*

Boyd Elaine Godwin, a former employee of the Farmington Jail, attested that "law enforcement officials," when in the process of booking arrested individuals, would call Plaintiff Torrez a criminal and the "biggest drug dealer" in San Juan County. *Id.*, Ex. 1 (Aff. of Boyd Elaine Godwin) at 1-2.  Boyd Godwin averred that these statements were made "during the 1990's . . . by local police and jailers." *Id.*[2]

In the spring of 1999, Plaintiff Torrez met James Cooper ("Cooper"). *Id.*, Ex. 3 (Dep. of David Torrez) at 133.  Plaintiff Torrez and Cooper engaged in a variety of loans and business transactions resulting in Cooper owing Plaintiff Torrez money in excess of $15,000.00. *Id.* at 59, 134-35, 142.  Cooper did odd jobs for Plaintiff Torrez, working an average of three or four times a month. *Id.* at 133-34.  Two to three weeks prior to October 4, 1999, Cooper was doing carpet work for Plaintiff Torrez at apartments owned by Plaintiff.  During this time, Cooper stayed on and off at Apartment F. *See id.* at 135-36.  Plaintiff Torrez did not live at the apartment complex; it was a rental property. *See id.* at 59-60.

On or about October 1, 1999, Plaintiff Torrez learned that Cooper was shooting up drugs. *See id.* at 132, 146.  Plaintiff thus decided to end Cooper's working and staying at the apartment. *See id.*  Plaintiff Torrez told Cooper to leave, never come back, and pay what he owed. *Id.* at 146. On or about October 3, 1999, Plaintiff Torrez attempted to collect the past due debt in excess of

---

[2] Boyd Godwin's affidavit does not specify any names of the law enforcement officers who called Plaintiff Torrez a criminal, except for Steve Birch. Pl.'s Resp., Ex. 1 at 2.  Steve Birch is not a party to this action.

$15,000.00 from Cooper.  *See id.* at 143-46.  When Plaintiff Torrez confronted Cooper, Cooper started running away and Plaintiff Torrez kicked him.  *Id.* at 132, 145-46.  Cooper subsequently went to the Federal Bureau of Investigation ("FBI") and police with allegations that Plaintiff Torrez was dealing drugs.  *See id.* at 61, 132-33, 143.[3]  Plaintiff Torrez asserts that Cooper's allegations that Plaintiff Torrez dealt drugs were false.  *See id.* at 59-61, 136, 147-48.

On October 4, 1999, Cooper contacted Defendant Mitchell of the Farmington Police Department with allegations that Plaintiff Torrez was dealing methamphetamine and other drugs. Farmington Defs.' Mot. for Summ. J. on Pl. Torrez' Claims (hereinafter "Defs.' Mot."), Ex. F (Affidavit for Search Warrant) at 1-2.  That same day, Officer Mitchell prepared an affidavit in support of a warrant to search Apartments E and F in Plaintiff Torrez's apartment complex located at 107 E. Apache, Farmington, New Mexico.  *Id.*  In the affidavit, Officer Mitchell attested that he was assigned to the Region II Narcotics Task Force and had received "training on how to investigate crimes relating to the Controlled Substance Laws of the State of New Mexico."  *Id.*  Officer Mitchell averred that Cooper said he had personally seen Plaintiff Torrez with one pound of methamphetamine in his possession on October 4, 1999, and that Plaintiff Torrez was intending to go to his apartment at 107 E. Apache.  *Id.* at 2.  Cooper told Officer Mitchell that Plaintiff Torrez and another man were in a dark green Kia sport utility vehicle at the time he saw them with the drugs.  *Id.*  Officer Mitchell also stated in the affidavit that he instructed Cooper to go to the apartment complex to identify the

_____

[3]Plaintiff Torrez claims that the FBI investigated Cooper's allegations and deemed them unfounded.  *See* Pl.'s Resp., Ex. 3 at 148-49.  Plaintiff Torrez bases this allegation on FBI or police records.  *See id.*  However, Plaintiff Torrez does not have personal knowledge concerning this claim.  *See id.*  Moreover, he has failed to provide the Court with copies of any records or other admissible evidence to support his claim.  Therefore, the Court will not consider this allegation when ruling on the Farmington Defendant's motion for summary judgment.

apartment that Plaintiff Torrez lived in and to determine if any drugs were in the residence. *Id.*
According to the affidavit, Cooper told Officer Mitchell at 8:00 p.m. that he had been in Apartment
F earlier, that drugs were inside the apartment, and that Apartment E was being used to store drugs.
*Id.*[4]  Officers Maestas and Mitchell went to the apartment complex and observed a dark green Kia
vehicle that matched the description given by Cooper. *Id.*  The officers also conducted a utility check
on the apartment, which showed that there was no active account for Apartment E, consistent with
Apartment E being used for storage. *Id.*

      Based on the information contained in the affidavit, on October 4, 1999, District Judge
George Harrison authorized the execution of the warrant to search Plaintiff Torrez's Apartments E
and F. Defs.' Mot. at 7; *Id.*, Ex. G (Search Warrant). The warrant authorized a night time search
because "drugs could be moved quickly." *Id.*, Ex. G at 2.

      On October 4, 1999, at approximately 9:30 p.m., Officers Vincent Mitchell, Gerald Maestas,
Dusty Downs, Jason Hensley, and John Ahlm from the Farmington Police Department, as well as
Officer Jason Waybourn from the San Juan County Sheriff's Office, executed the search warrant of
Apartments E and F in Plaintiff Torrez's apartment complex. *See* Pl.'s Resp., Ex. 3 at 58, 65-68;
Defs.' Mot., Ex. H. At that time, Plaintiff Torrez was in Apartment F and had decided to take a
shower. *See* Pl.'s Resp., Ex. 3 at 60, 151. He took off his clothes, turned on the water, and headed
towards the shower. *Id.* at 153. At that point, he heard a knock on the door. *Id.* Plaintiff Torrez

---

     [4]In his deposition, Plaintiff Torrez stated that some of his tenants called him and told him
that Cooper broke into Apartment F on October 4, 1999. Pl.'s Resp., Ex. 3 at 59-60, 62-63, 146-
47. What his tenants told him concerning Cooper breaking into the apartment, however, is
inadmissible hearsay, and Plaintiff Torrez has failed to provide a sworn statement from the tenants
themselves. Consequently, this Court cannot consider this statement when deciding the
Farmington Defendants' motion for summary judgment.

5

turned off the water, put on a towel, and went to the door. *Id.* at 63, 153. As he was walking toward the door, Plaintiff Torrez said, "hello," but he did not hear anything in response. *Id.* at 63. He then looked out the peep hole and saw a man dressed in black, crouched down and walking away from the door. *Id.* at 63-64, 153-55. Plaintiff did not recognize the man as a police officer. *See id.* at 153-54. Plaintiff Torrez returned to the shower. *Id.* at 64, 155. He then left the bathroom and was standing three or four feet from the door to the apartment. *Id.* at 155, 157-58.[5]

Plaintiff heard a "boom." *Id.* at 155. Officer Maestas used a steel battering ram to force open the door. *See id.* at 155-57. The force was such that the door flew open and Officer Maestas, who was holding the battering ram, came through the doorway and fell on top of Plaintiff Torrez. Plaintiff, naked, fell on top of the coffee table. *See id.* The battering ram hit Plaintiff in the stomach. *Id.* at 158-59. Two or three other officers then entered behind Officer Maestas with guns pointed at Plaintiff Torrez. *Id.* at 67, 158. Prior to the officers' entry, Plaintiff Torrez never heard the officers announce their presence. *Id.* at 154-156.[6] The time from when Plaintiff Torrez heard the knock to

---

[5]It is unclear whether Plaintiff Torrez heard a second knock. At one point in his deposition, Plaintiff stated, "They never knocked the second time." Pl.'s Resp., Ex. 3 at 156. However, earlier in his deposition testimony, Plaintiff asserted: "So then I go back to take a shower. Then I hear another knock." *Id.* at 64. Given the inconsistency, at this point the Court will construe the evidence in the light most favorable to Plaintiff and interpret his testimony as meaning there was just one knock.

[6]Plaintiff Torrez's deposition testimony is contradictory on what the officers did or did not say prior to forcing open the door and what he did or did not say in response. Early in his deposition testimony, Plaintiff stated that when he came back to the door the second time, he heard someone say, "hello." Pl.'s Resp., Ex. 3 at 64. Plaintiff then said that he said, "hello," in response. According to Plaintiff, as soon as Plaintiff said "hello," the officers forced open the door. *Id.* Later in his deposition testimony, however, Plaintiff Torrez stated that the officers "never said who it was or nothing. Nothing was ever said." *Id.* at 156. Plaintiff Torrez also stated that he himself "didn't say nothing." *Id.* Regardless of these inconsistencies, it does appear that Plaintiff Torrez's testimony is consistent on the more important alleged fact that the officers did not announce who they were or their purpose for being there.

when the officers entered was at least 60 seconds.  *See id.* at 154.

Officer Maestas immediately got off Plaintiff Torrez.  *Id.* at 159.  Officer Maestas, who had injured his hand, had Plaintiff Torrez get ice for him.  *Id.* at 66-67, 159.  The officers then told Plaintiff Torrez to get dressed, which he did.  *See id.* at 160-61.  Plaintiff Torrez then sat down, but when he went to get up again, he started to hurt.  *Id.* at 160-62.

The officers searched the apartment and found marijuana, a substance that looked like methamphetamine, a stolen firearm, $8,820.00 in cash, a glass smoking device, and a digital scale. Defs.' Mot., Ex. H (Statement of Probable Cause); *see also* Pl.'s Resp., Ex. 3 at 62.  Plaintiff Torrez denied that the drugs and gun were his.  *Id.*  The officers arrested Plaintiff.  Pl.'s Resp., Ex. 3 at 161-62.  However, they did not handcuff Plaintiff until they put him in the police car.  *Id.* at 67-68.  The officers then took him to the hospital.  *Id.* at 68, 161-62.  Plaintiff suffered a sore back as a result of this incident and had some bruising.  *Id.* at 65-66, 162.

That same evening, on October 4, 1999, Officer Mitchell filed a criminal complaint against Plaintiff Torrez in the Magistrate Court of San Juan County charging him with four counts:  (1) Possession with Intent to Distribute Methamphetamines, (2) Possession/Receiving Stolen Property (Firearm), (3) Possession of Drug Paraphernalia, and (4) Possession of a Controlled Substance (Marijuana less than 1 oz.).  Defs.' Mot., Ex. J (Criminal Complaint).  On October 5, 1999, Officer Mitchell filed a Statement of Probable Cause describing the reasons Plaintiff Torrez had been arrested.  *Id.*, Ex. H.  In this statement, Officer Mitchell averred that the warrant to search Plaintiff Torrez's apartment complex was based on information received from Cooper.  *Id.*  Subsequently, a Criminal Information was filed in case No. CR-99-923-6 listing the charges against Plaintiff Torrez as a result of the October 4, 1999 arrest.  *Id.*, Ex L.  On November 17, 1999, a San Juan County

magistrate judge entered a Bind-Over Order in the case, stating that there was probable cause to believe that Plaintiff Torrez committed the four offenses listed in the criminal complaint. *Id.*, Ex. K. In addition, the Bind-Over Order noted that a preliminary examination was held on the offenses in the complaint. *Id.* The judge thus ordered that Plaintiff Torrez be bound over for trial. *Id.*

On November 28, 1999, Plaintiff Torrez was again arrested. *See id.*, Ex. N (Criminal Information). He was charged with six counts of possession of a narcotic in San Juan County District Court, No. CR-2000-195-1. *Id.*

On or near April 20, 2000, the State filed a Nolle Prosequi in case No. CR-99-923-6, stating that it would not prosecute the charges arising from Plaintiff Torrez's October 4, 1999 arrest because an "[e]ssential [s]tate [w]itness will not cooperate." *Id.*, Ex. M. However, on May 4, 2000, the four charges arising from the October 4, 1999 arrest were refiled against Plaintiff Torrez in No. CR-2000-421-6. *See id.*, Ex. O (Criminal Information).

On December 15, 2000, Plaintiff Torrez entered into a plea agreement with the State of New Mexico whereby Plaintiff Torrez pled no contest to three counts of misdemeanor attempted possession of a narcotic, which were charged in CR-2000-195-6, the case arising from Plaintiff's November 28, 1999 arrest. *Id.*, Ex. P (Plea and Disposition Agreement) at 1-2. In exchange, the State agreed to dismiss the remaining three counts in CR-2000-195-6 as well as all four counts in CR-2000-421-6, the refiled case arising from Plaintiff's October 4, 1999 arrest. *Id.* at 3.

B.      **Procedural History**

On March 22, 2002, Plaintiff Torrez filed an action in New Mexico state court asserting state constitutional and tort causes of action arising out of a series of arrests and prosecutions, of which the relevant ones are discussed above. The complaint named various defendants, including municipal,

8

state, and judicial actors, as well as law enforcement officers and other "John Doe" defendants in their individual and official capacities.  (Doc. 1).

On October 8, 2002, Plaintiff Torrez filed a motion to amend his state court complaint and attached thereto a proposed amended complaint adding various federal constitutional claims under 42 U.S.C. § 1983 and joining Defendant Waybourn as a party.  On November 1, 2002, the case was removed to this Court.[7]   (Doc. 1).

On February 25, 2003, Plaintiff Torrez filed an amended federal complaint, which contains § 1983 claims against the Farmington Defendants for excessive police force, unlawful entry, and unlawful arrest (Count 1) as well as for unlawful search and seizure (Count 2).  Plaintiff Torrez also asserts in Count 2 a malicious abuse of process claim against the Farmington Defendants, which could be construed as brought under § 1983 or New Mexico common law.  Additionally, the amended complaint contains state tort claims against the Farmington Defendants for battery (Count 3), trespass (Count 4), interference with prospective business advantage (Count 6), defamation (Count 7), false light invasion of privacy (Count 8), and intentional infliction of emotional distress ("IIED") (Count 9).  In Count 5, Plaintiff Torrez alleges due process violations against various defendants, but the Farmington Defendants are not amongst the defendants charged in Count 5.

On June 5, 2003, the Farmington Defendants filed a partial motion to dismiss, asking the

_____

[7] On March 22, 2002, Plaintiff Jules Leslie Godwin ("Plaintiff Godwin") filed an action in state court asserting state causes of action arising out of the same facts that form the basis of Plaintiff Torrez's lawsuit.  *See* Notice of Removal, *Godwin v. City of Farmington, et al.*, No. Civ. 02-1382 (Doc. 1 at 1).  When Plaintiff Godwin filed a motion to add a federal claim, the action was removed to this Court and consolidated with Plaintiff Torrez's case.  *See id.*; *see also* Order of Consolidation, *Godwin v. City of Farmington, et al.*, No. Civ. 02-1382 (Doc. 18).  The Farmington Defendants as well as the other defendants have filed separate motions for summary judgment against both Plaintiffs Godwin and Torrez.  The Court herein only addresses the motion for summary judgment filed by the Farmington Defendants as to Plaintiff Torrez's claims.

9

Court to dismiss Plaintiff Torrez's § 1983 claims and claims for battery, trespass, interference with prospective business advantage, defamation, false light invasion of privacy, and IIED.  On September 8, 2004, the Court entered an Order granting in part and denying in part the Farmington Defendants' motion.  (Doc. No. 77).  The Court dismissed Plaintiff Torrez's battery (Count 3), trespass (Count 4), and defamation (Count 7) claims against the Farmington Defendants without prejudice, allowing Plaintiff Torrez fourteen days in which to file an amended complaint alleging facts sufficient to state timely and valid claims.  Memorandum Opinion and Order (Doc. No. 77) at 51.  Plaintiff Torrez did not file an amended complaint.  The Court denied the Farmington Defendants' motion to dismiss the other counts against them.  *See id.* at 50-52.  Thus, the claims that remain against the Farmington Defendants are excessive police force, unlawful entry, and unlawful arrest under § 1983 (Count 1); malicious abuse of process, malicious prosecution, and unlawful search and seizure (Count 2); interference with prospective business advantage (Count 6); false light invasion of privacy (Count 8); and IIED (Count 9).

On July 15, 2005, the Farmington Defendants filed a Motion for Summary Judgment on Plaintiff Torrez' Claims, requesting that the Court dismiss the remaining counts in the complaint. (Doc. No. 148).  On August 15, 2005, Plaintiff Torrez filed a response to their motion (Doc. No. 167), and on September 2, 2005, the Farmington Defendants filed their reply (Doc. No. 179).

## II.   **LEGAL STANDARD**

Summary judgment is appropriate only if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir.

1995) (quoting Fed. R. Civ. P. 56(c)).  "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted).  Under Rule 56(c), the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment.  *Id.* at 248.

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists.  *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial.  *Id.*  The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *See id.*; *Kaus v. Standard Ins. Co.*, 985 F.Supp. 1277, 1281 (D. Kan. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Anderson*, 477 U.S. at 248.  The Court will consider the Farmington Defendants' motion in light of these standards.

III.    **DISCUSSION**

In their motion for summary judgment, the Farmington Defendants argue that they are entitled to summary judgment on each of Plaintiff Torrez's state law tort claims as well as qualified immunity and summary judgment on each of his constitutional claims.  The Court will first address the Farmington Defendants' arguments as to Plaintiff's state law claims and then discuss the merits of Plaintiff's constitutional claims.

11

A.      **State Tort Claims**

1.      **Interference with Prospective Business Advantage, False Light Invasion of Privacy, and IIED**

The Farmington Defendants seek summary judgment based on the New Mexico Tort Claims Act ("NMTCA") for Plaintiff Torrez's claims for interference with prospective business advantage, false light invasion of privacy, and IIED.  The Farmington Defendants argue that the NMTCA does not waive immunity from liability for these three torts, and thus, the NMTCA bars these claims to the extent the Farmington Officers were acting within the scope of their duties.  The Farmington Officers contend that the evidence shows that they did not engage in any conduct outside the scope of their duties, and thus, these three tort claims must be dismissed.  Plaintiff Torrez responds that disputed issues of fact exist as to whether the Farmington Officers acted outside the scope of their duties.

The NMTCA provides the exclusive remedy for a tort action brought against a governmental entity or public employee.  *See* NMSA 1978, § 41-4-17 ("The Tort Claims Act shall be the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived . . . .").  The Act retained governmental immunity except for eight enumerated classes of activity, including certain unlawful acts by law enforcement officers.  *See Cole v. City of Las Cruces*, 99 N.M. 302, 303, 657 P.2d 629, 630 (1983) (citations omitted); NMSA 1978, § 41-4-4 (2001) (granting immunity from tort liability for "a governmental entity and any public employee while acting within the scope of duty . . . except as waived by Sections 41-4-5 through 41-4-12").  As to torts committed by law enforcement officers, the NMTCA waives immunity for injuries "resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges

12

or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers *while acting within the scope of their duties*."  NMSA 1978, § 41-4-12 (emphasis added).

The NMTCA defines "scope of duties" as "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." *Id.*, § 41-4-3(G).  The legislature created a unique standard to be applied to NMTCA claims by using the phrase "scope of duties." *Celaya v. Hall*, 2004-NMSC-005, ¶ 22, 135 N.M. 115, 120-21 (2004).  The standard for "scope of duties" under the NMTCA is thus distinct from the common law concept of "scope of employment." *Id.*  In order to show that a public employee's actions fell within his "scope of duties" under the NMTCA, a party must show a nexus between the incident and the public employee's official duties. *See id.*, ¶¶ 26-28, 135 N.M. at 121-22.  There must be "a connection between the public employee's actions at the time of the incident and the duties the public employee was 'requested, required or authorized' to perform" in order to demonstrate that the public employee was acting within the scope of his duties. *Id.*, ¶ 26, 135 N.M. at 121.  A public employee may be acting within the scope of his duties even if the employee's acts are fraudulent, intentionally malicious, or even criminal. *Seeds v. Lucero*, 2005-NMCA-67, ¶ 10, 113 P.3d 859, 862 (2005).  Determining whether an employee is acting within the scope of duties is a question of fact. *Celaya*, 2004-NMSC-005, ¶ 28, 135 N.M. at 122.

In this case, the Farmington Officers are public employees and the City of Farmington is a governmental entity within the meaning of the NMTCA, and thus, any tort claim asserted against them must be considered in light of the limitations of the NMTCA. *See* NMSA 1978, §§ 41-4-3(B), (D), & (F). This Court has already concluded that the torts of interference with prospective business

13

advantage, false light invasion of privacy, and IIED do not fall within the limited waiver provision of § 41-4-12 of the NMTCA.  Memorandum Opinion and Order (Doc. No. 77) at 49 (noting that Plaintiff Torrez's state tort claims for interference with prospective business advantage, false light invasion of privacy, and IIED are not enumerated in list of expressly defined torts for which immunity is waived).  Thus, this Court determined that Plaintiff Torrez can only proceed with these three tort claims if the Farmington Officers "were acting outside the scope of their duties when they engaged in the conduct underlying these claims."  *Id.*  This Court noted that Plaintiff Torrez's allegations that the Defendants subjected him to ongoing investigations, increased surveillance, scrutiny, harassment, and intimidation were acts that fell within the scope of a law enforcement officer's duties.  *Id.* at 42-43 n.21.  However, this Court also determined that "publishing communications to third parties and the media that a suspect is not fit or able to perform his work as a bail bondsman could fall outside the scope of an officer's duties."  *Id.* at 42.  At the motion to dismiss stage, this Court held that it could not "conclude beyond a doubt on the allegations alone that publishing communications to the media and third parties unrelated to the judicial proceedings instituted against Torrez falls inside the scope of an officer's duties."  *Id.* at 50.  The Farmington Defendants now argue that the undisputed facts adduced in this case demonstrate that the Farmington Officers acted only within the scope of their duties.  The Court agrees.

The Farmington Defendants provided affidavits from Defendants Mitchell, Maestas, Hensley, and Ahlm, in which each officer stated that he did not publish any statement to the media or to third parties about Plaintiff Torrez or Torrez Bonds.  Defs.' Mot., Ex. A-D.  Defendant Downs additionally stated in his affidavit that from 1998 to the present he was the official spokesman for the Region II narcotics task force and was "authorized and charged with making statements to the media about the

14

law enforcement activities of the task force." *Id.*, Ex. E at 2.  Defendant Downs' affidavit also averred that, in his capacity as official spokesman for the Region II narcotics task force, he "may have made statements to the media that David Torrez was arrested on October 4, 1999, and may have recited the criminal charges made against David Torrez in association with that arrest."  *Id.*  The affidavit asserted, however, that Defendant Downs made no other statements about Plaintiff Torrez. *Id.*

Plaintiff Torrez does not specifically refute the assertions made by the Farmington Officers in their affidavits.  *See* Pl.'s Resp. at 2.  Rather, Plaintiff Torrez responds by referring to the Affidavit of Boyd Elaine Godwin.  *Id.*  In that affidavit, Boyd Godwin averred that "law enforcement officials would say that David Torrez was a criminal when he came to bond out clients" and that  "law enforcement officers and other jailers"told Boyd Godwin that "David Torrez was the 'biggest drug dealer' in San Juan County."  Pl.'s Resp., Ex. 1 at 2.  Although Boyd Godwin's affidavit does not name any of the Farmington Officers as any of the law enforcement officers who made these statements, Plaintiff Torrez nonetheless urges this Court to assume that the Farmington Officers could have made those statements because they "do not deny they are law enforcement officers and, thus, included within Boyd Elaine Godwin's evidence."  *Id.* at 2.  This Court refuses to make such an enormous inferential leap.  The general statement in Boyd Godwin's affidavit concerning "law enforcement officers" simply does not refute the specific assertions made by Officers Mitchell, Maestas, Hensley, and Ahlm – that they did not publish any statements to the media or to third parties about Plaintiff Torrez or Torrez Bonds.[8]

---

[8]Moreover, even *if* the Court assumed that the Farmington Officers were among the law enforcement officers described in Boyd Godwin's affidavit who called Plaintiff Torrez a criminal, the affidavit indicates that these statements were made while the officers were "in the process of

15

As to Defendant Downs' admission that he "may have made statements to the media that David Torrez was arrested on October 4, 1999, and may have recited the criminal charges made against David Torrez in association with that arrest," Defendant Downs averred that he was required to make such statements in his capacity as the official spokesman for the Region II narcotics task force. Plaintiff Torrez has offered no evidence to specifically rebut Defendant Downs' statements in his affidavit. The Farmington Defendants have thus clearly shown a nexus between Defendant Downs' possible statements to the media and his official duties as spokesman. Accordingly, based on the undisputed facts before the Court, the Court concludes that the Farmington Officers did not publish any communications to the media or third parties outside the scope of their duties.

Nevertheless, Plaintiff Torrez argues that the Farmington Defendants improperly "attempt to limit activities outside the scope of employment to libel." Pl.'s Resp. at 7. Plaintiff Torrez asserts that "Defendant Maestas' blackmail of a bail bondsmen by threatening him with arrest if he did not act as an informant against his customers" is prohibited by the Bail Bondsmen Licensing Act, specifically NMSA 1978, § 59A-51-13, and urges the Court to rule that such extortion and blackmail are outside the Farmington Officers' scope of duties. *See* Pl.'s Resp. at 7.

The Court rejects Plaintiff Torrez's argument for a number of reasons. First, the undisputed facts do not show that Defendant Maestas blackmailed or extorted Plaintiff Torrez. Rather, the facts demonstrate that in 1997 Defendant Maestas asked Plaintiff Torrez if he would be interested in being an informant and supplying the names of drug dealers and users to law enforcement. When Plaintiff

_____

booking arrested individuals." Pl.'s Resp., Ex. 1 at 2. Booking arrested individuals is clearly a duty that law enforcement officers are authorized and required to perform, and thus, falls within the scope of their duties. Consequently, Plaintiff Torrez's state law tort claims arising out of the allegations in Boyd Godwin's affidavit would also be barred by the NMTCA.

16

Torrez rejected this request, Defendant Maestas said that Plaintiff was "one of them," which Plaintiff understood to mean that Defendant Maestas was calling him a criminal.  Approximately two years later, the Farmington Officers found contraband in his apartment in the course of the execution of a search warrant based on statements provided by Cooper.  Plaintiff Torrez was subsequently arrested. These facts do not support Plaintiff's claim that Defendant Maestas blackmailed or extorted Plaintiff Torrez.  More importantly, the actions taken by Defendant Maestas in requesting that Plaintiff Torrez act as an informant for law enforcement and by the Farmington Officers in investigating Cooper's allegations, obtaining a search warrant, executing the search warrant, and arresting Plaintiff were well within the scope of their duties as law enforcement officers.  *See Risk Management Div. v. McBrayer*, 2000-NMCA-104, ¶¶ 19-20, 129 N.M. 778, 784 (2000); Memorandum Opinion and Order (Doc. No. 77) at 42-43 n.21; NMSA 1978, § 29-1-1 (declaring it to be the duty of every peace officer to investigate all violations of the criminal laws of the state that are called to the attention of any such officer and to diligently file a complaint or information if the circumstances so warrant).

Accordingly, based on the undisputed facts before the Court that relate to Plaintiff Torrez's claims for interference with prospective business advantage, false light invasion of privacy, and IIED, the Farmington Officers engaged in no conduct outside the scope of their duties, and thus, are entitled to the immunity afforded by the NMTCA for each of these claims.[9]

---

[9]In his response, Plaintiff Torrez only addressed the effect of the NMTCA on the tort of intentional interference with prospective business advantage.  Plaintiff Torrez did not argue that his claims of false light invasion of privacy or IIED were not barred by the NMTCA.  As discussed above, however, even if the Court assumed that Plaintiff's arguments concerning his intentional interference with prospective business advantage cause of action applied to these other two state torts, Plaintiff's arguments would still fail.

2.    **Malicious Abuse of Process**[10]

The Farmington Defendants contend that the undisputed facts show that they are entitled to summary judgment on this claim because the officers had probable cause in filing the criminal complaint.  They argue that the magistrate's finding of probable cause at the preliminary hearing demonstrates that probable cause existed to believe Plaintiff Torrez committed the offenses charged. Plaintiff Torrez, on the other hand, asserts that the Farmington Officers used the false statements of Cooper to support the affidavit to search his residence.  Moreover, Plaintiff argues that the magistrate's finding of probable cause was also based on the false statements of Cooper.  Plaintiff Torrez contends that the magistrate's finding of probable cause does not preclude a malicious abuse of process claim where the officers made false or misleading statements to obtain the search warrant prior to Plaintiff Torrez's arrest.

New Mexico combined the torts of abuse of process and malicious prosecution into a single tort:  malicious abuse of process.  *Devaney v. Thriftway Marketing Corp.*, 1998-NMSC-001, ¶ 17, 124 N.M. 512, 518 (1997).  "In restating the torts as a single cause of action, [the New Mexico Supreme Court] observed that they shared a common purpose of protecting a plaintiff who has been made the subject of legal process improperly, where the action was wrongfully brought by a defendant merely for the purpose of vexing or injuring the plaintiff, and resulting in damage to his or her personal rights."  *Weststar Mortgage Corp. v. Jackson*, 2003-NMSC-2, ¶ 6, 133 N.M. 114, 120

---

[10]Plaintiff Torrez alleges a malicious abuse of process claim in Count 2 of his amended complaint.  It is unclear from the allegations in Count 2, however, whether this claim is being brought as a state tort claim, a constitutional claim, or both.  The Farmington Defendants have moved for summary judgment under both legal theories.  Construing the complaint in the light most favorable to Plaintiff, this Court will likewise construe the complaint as alleging both causes of action.  The Court will address the constitutional malicious prosecution claim later in this opinion.

(2002) (internal citations omitted).  The tort of malicious abuse of process must nonetheless be construed narrowly to protect the right of access to the courts.  *DeVaney,* 1998-NMSC-001, ¶ 19, 124 N.M. at 519.

> The following are the elements of malicious abuse of process:
>
> (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages.

*Id.*  The improper act, as required by the second element, need not occur subsequent to the filing of the complaint, and can be found in the complaint itself or precede the filing of the complaint.  *Id.*, ¶ 20, 124 N.M. at 520.  There are two independent ways a plaintiff may prove the second element:  (1) by demonstrating that the defendant filed the action against the plaintiff without probable cause, or (2) by showing some "irregularity or impropriety suggesting extortion, delay, or harassment," such as a procedural irregularity.  *Id.*, ¶¶ 22, 28, 124 N.M. at 520-22.  "The lack of probable cause must be manifest."  *Id.*, ¶ 22, 124 N.M. at 520-21.

In this case, the facts, taken in the light most favorable to Plaintiff, do not support Plaintiff Torrez's malicious abuse of process claim because Plaintiff Torrez cannot meet the second or third elements of the four-part *Devaney* test.  To meet the second element, Plaintiff Torrez must either demonstrate that the Farmington Officers filed the criminal case against him without probable cause or show a procedural impropriety.

In this case, the statements and information provided in the affidavit in support of the search warrant were sufficient to establish probable cause to search Plaintiff Torrez's apartment.  The affidavit noted that Cooper said he had personally seen Plaintiff Torrez with one pound of

methamphetamine in his possession on October 4, 1999; that Plaintiff Torrez was intending to go to

his apartment at 107 E. Apache; and that Cooper told Officer Mitchell that drugs were inside the

apartment.  Furthermore, the affidavit explained the steps the officers did to corroborate some of

Cooper's statements.  Based on the affidavit as a whole, District Judge George Harrison authorized

the execution of the warrant to search Plaintiff Torrez's Apartments E and F.  Defs.' Mot. at 7; *Id.*,

Ex. G (Search Warrant).  This Court finds no reason based on the information provided in the

affidavit to disagree with Judge Harrison's finding of probable cause.  The information in the affidavit

provided the judge with a substantial basis for concluding that there was a fair probability that

contraband or evidence of a crime would be found. *See Lawmaster v. Ward*, 125 F.3d 1341, 1348

(10th Cir. 1997) (concluding that warrant was supported by probable cause where affidavit related

informant's eyewitness account of alleged illegal activity together with the investigating officer's

verification that suspect had never registered any firearms).

Moreover, it is undisputed that, during the search, the Farmington Officers found drug

paraphernalia, marijuana, and a substance that appeared to be methamphetamine.  This evidence,

coupled with what the officers learned from Cooper that was set forth in the affidavit in support of

the search warrant and reiterated in the Statement of Probable Cause, supplied the magistrate with

the necessary information to find that there was probable cause to proceed to trial against Plaintiff

Torrez.[11]

------

[11]The Farmington Defendants also argue that Plaintiff Torrez's no contest plea shows the
existence of probable cause.  In the plea agreement, however, Plaintiff Torrez pled no contest to
three charges in an unrelated case and, in exchange, the charges arising from his October 4, 1999
arrest were dismissed.  Because the plea agreement dismissed all the charges that Plaintiff Torrez
claims were brought improperly, the Court does not view the plea agreement as conclusively
establishing that there was probable cause to initiate criminal proceedings against Plaintiff Torrez.

Contrary to the Farmington Defendants' argument, however, this does not end the inquiry. This Court must determine what the Farmington Officers knew at the time they prepared the affidavit to search Plaintiff Torrez's apartment. If the Farmington Officers knew or should have known that Cooper was providing them false information, then it not only would have undermined the district judge's and magistrate's findings of probable cause but it also would have been a procedural impropriety for them to obtain a search warrant based on this false evidence. *See Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) ("It is a violation of the Fourth Amendment for an arrest warrant affiant to 'knowingly, or with reckless disregard for the truth,' include false statements in the affidavit.") (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

Based on the Court's review of the evidence, however, Plaintiff Torrez has not demonstrated that the Farmington Officers knew or should have known that the information Cooper was providing to them was false. Plaintiff Torrez has offered no evidence that the officers knew that Cooper was lying to them or that the officers knew of any motives that Cooper may have had to lie to them. Although Plaintiff Torrez claimed in his deposition testimony that the FBI investigated the charges by Cooper and deemed them unfounded, Plaintiff had no personal knowledge of this allegation. Nor was Plaintiff able to testify to whether this alleged investigation occurred prior to the search and whether the FBI notified the Farmington Officers that they deemed Cooper's allegations to be unfounded. Furthermore, Plaintiff Torrez has offered no evidence that the Farmington Officers' investigation prior to executing the search warrant was deficient and that they should have known that Cooper was lying.[12] Plaintiff Torrez's deposition testimony in which he testified that Cooper

---

[12]In fact, the undisputed evidence actually shows that the Farmington Officers did conduct an investigation to corroborate aspects of Cooper's statements to them. Cooper told them that Plaintiff Torrez was in a dark green Kia sport utility vehicle at the time Cooper saw him with the

falsely alleged that he was drug dealer is simply not sufficient to show that the Farmington Officers engaged in any procedural improprieties in relying on Cooper's statements to them.

Plaintiff Torrez additionally argues that the second element is met because the Farmington Defendants "failed to produce the witness for testimony at trial." Pl.'s Resp. at 8. The undisputed evidence before the Court is that the State filed a Nolle Prosequi dismissing the original charges against Plaintiff Torrez because an "[e]ssential [s]tate [w]itness will not cooperate." Defs.' Mot., Ex. M. The fact that an essential witness for the State would not cooperate in their case, without more, does not amount to a procedural impropriety, especially when, as discussed above, there is no evidence to establish that the State lacked probable cause to proceed on the charges up to the point it filed the Nolle Prosequi. Thus, Plaintiff Torrez cannot meet the second element of the tort of malicious abuse of process.

Furthermore, Plaintiff Torrez has not shown that he can meet the third element of the tort. The third element requires that he show that the Farmington Officers' primary motive in misusing the process was to accomplish an illegitimate end. Plaintiff argues that the Farmington Officers wanted to destroy his bail bonds business in retaliation for his refusal to act as an informant. Pl.'s Resp. at 8. The undisputed evidence, however, does not support Plaintiff Torrez's allegation. The evidence shows that two officers at two different times approached Plaintiff Torrez and asked him to become an informant. Plaintiff refused these requests. Officer Maestas, upon being refused, told Plaintiff

---

pound of methamphetamine. Def.'s Resp., Ex. F at 2. Officers Maestas and Mitchell went to Plaintiff Torrez's apartment complex prior to the search and verified that a dark green Kia Sportage was parked outside the apartment complex, which corroborated the description of the vehicle given by Cooper. *See id.* Furthermore, Cooper told Officer Mitchell that Torrez stored drugs in an empty apartment across from Torrez's apartment. *Id.* Officers conducted a utility check on the apartment complex and verified that there was no active account for Apartment E, which was consistent with that apartment being used for storage. *See id.*

Torrez that he "was one of them," which Plaintiff understood to mean that Officer Maestas was calling him a criminal.  The conversation with Officer Maestas occurred approximately two years prior to Plaintiff's arrest.  This evidence is simply not enough to support the inference that Officer Maestas or any of the other Farmington Officers wanted to destroy Plaintiff Torrez's business in retaliation for his refusal to become an informant.  *Westar Mortgage Corp. v. Jackson*, 2003-NMSC-002, ¶ 11 n.2, 133 N.M. 114, 121 n.2 (2002) ("A reasonable inference cannot be based on supposition or conjecture.") (quoting *Andrus v. Gas Co. of N.M.*, 110 N.M. 593, 596, 798 P.2d 194, 197 (Ct. App. 1990)).

Accordingly, the Farmington Officers are entitled to summary judgment on Plaintiff Torrez's state law claim for malicious abuse of process because the undisputed facts show that Plaintiff cannot meet either the second or third elements of the tort.

 3.    **Vicarious Liability**

"An entity or agency can only act through its employees." *Abalos v. Bernalillo County Dist. Attorney's Office*, 105 N.M. 554, 558, 734 P.2d 794, 798 (Ct. App. 1987).  Where there is no primary liability, there can be no secondary, or derivative, liability.  *See Kinetics v. El Paso Products Co.*, 99 N.M. 22, 27, 653 P.2d 522, 527 (Ct. App. 1982).  This Court has already determined that the Farmington Officers are immune from suit under the NMTCA for Plaintiff Torrez's claims of interference with prospective business advantage, false light invasion of privacy, and IIED.  Because the officers are immune from suit, the City of Farmington is likewise immune from suit for those claims.  *See Weinstein v. City of Santa Fe ex rel. Santa Fe*, 121 N.M. 646, 651, 916 P.2d 1313, 1318 (1996) (governmental entity could be held vicariously liable for alleged torts committed by officers *for which immunity has been waived*).  As for Plaintiff Torrez's state tort claim for malicious abuse

23

of process, this Court has concluded that the Farmington Officers are entitled to summary judgment. Since the Farmington Officers cannot be found primarily liable for this claim, the City of Farmington cannot be found vicariously liable for the malicious abuse of process claim.  Furthermore, Plaintiff Torrez has not shown any evidence that the City of Farmington itself is primarily liable under this cause of action.  The City of Farmington is therefore entitled to summary judgment on Plaintiff Torrez's remaining state tort claims.

B.     **Constitutional Claims**

1.     **Qualified Immunity and Summary Judgment**

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity operates to protect officers from the sometimes hazy border between excessive and acceptable force and to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful.  *Saucier v. Katz*, 533 U.S. 194, 206 (2001).  When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test.  *See Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000).  The plaintiff must demonstrate that the defendant violated a constitutional or statutory right and that the right was clearly established at the time of the conduct.  *Id.*  The inquiry is more specific than whether the officer's conduct violated a constitutional right; the question is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances he confronted.  *Saucier*, 533 U.S. at 202.  Furthermore, "in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly

established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). If the plaintiff establishes both elements of the qualified immunity test, then the burden shifts back to the defendant to show there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Nelson*, 207 F.3d at 1206. Under this framework, the Court will address each of the Farmington Defendants' qualified immunity claims as to each of Plaintiff Torrez's constitutional causes of action.[13]

a.       **§ 1983 Malicious Prosecution**

The Farmington Defendants argue that they are entitled to qualified immunity and summary judgment on Plaintiff's § 1983 malicious prosecution claim in Count 2 because the undisputed facts show that the underlying criminal action did not terminate in Plaintiff's favor and that probable cause existed to believe that Plaintiff committed the offenses with which he was charged. The Farmington Defendants assert that the no contest plea agreement in which Plaintiff entered was not a termination in his favor and that the magistrate judge's finding of probable cause at the preliminary hearing precludes Plaintiff's constitutional malicious prosecution claim.

The Tenth Circuit "has recognized the viability of malicious prosecution claims under § 1983." *Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996). The Tenth Circuit has concluded that the common law elements of malicious prosecution are the starting point for the analysis of a § 1983

---

[13]Plaintiff Torrez contends that the doctrine of law of the case bars the re-litigation of the qualified immunity issue. This argument lacks merit. The Court previously addressed the qualified immunity issue at the motion to dismiss stage, which limited the Court to a determination based on the facts as alleged in the complaint. The Court can re-examine the qualified immunity issue at the summary judgment stage once there has been a fleshing out of the facts through the discovery process.

malicious prosecution claim, but that the ultimate question is always whether the plaintiff has proven a Fourth Amendment constitutional violation. *Id.* at 1561. In *Pierce v. Gilchrist*, the Tenth Circuit clarified that the common law elements of malicious prosecution do not refer to the specific terms of the tort law of any particular state, but rather "to general principles of common law among the several states." 359 F.3d 1279, 1288 (10th Cir. 2004). Thus, a plaintiff need not satisfy each element of the common law tort of malicious prosecution of the state in which the action arose in order to state a claim under § 1983. *Id.* at 1288-90. Consequently, the Court will not look to New Mexico's tort of malicious abuse of process in determining Plaintiff's constitutional claim, but will instead rely on the general principles of malicious prosecution as discussed in *Pierce* to provide a starting point.

The Tenth Circuit in *Pierce* recognized that termination of the original action in favor of the plaintiff is an element of a § 1983 claim for malicious prosecution. *See id.* at 1294. As discussed above, in the plea agreement, Plaintiff Torrez pled no contest to three charges in an unrelated case and, in exchange, the charges arising from his October 4, 1999 arrest were dismissed. Although Plaintiff Torrez did not admit to the truth of any of the charges arising from his October 4, 1999 arrest in that plea agreement, the dismissal of these charges as part of the plea agreement does not constitute an acquittal on the charges and does not necessarily indicate the innocence of Plaintiff. *See Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997) ("Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, for these purposes, only when its final disposition is such as to indicate the innocence of the accused."); *Kent v. Katz*, 146 F.Supp.2d 450, 461 (D. Vt. 2001) ("[T]he fact that [plaintiff] pled 'no contest' to a lesser (even if unrelated) charge does nothing to establish his innocence as to the original DUI charge. Rather, the termination leaves open the question of [plaintiff's] guilt or innocence on the DUI charge."). "The prevailing view is

26

that if the abandonment was the result of a compromise to which the accused agreed, . . . it is not a termination in favor of the accused for purposes of a malicious prosecution claim." *Murphy*, 118 F.3d at 949.  Thus, the undisputed facts before the Court indicate that Plaintiff Torrez cannot show that the plea agreement constituted a termination indicating his actual innocence, and thus, Plaintiff cannot meet a necessary element of the malicious prosecution claim.  Nevertheless, even if Plaintiff could make such a showing, Plaintiff Torrez still cannot prevail on his malicious prosecution claim because he cannot demonstrate that there was no probable cause to support his arrest and prosecution.

The Tenth Circuit determined  that the "third element in the tort of malicious prosecution is that there was no probable cause to support the original arrest, continued confinement, or prosecution." *Pierce*, 359 F.3d at 1294.  *See also Taylor*, 82 F.3d at 1561-62; *Wolford*, 78 F.3d at 489.  The probable cause element "is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford*, 78 F.3d at 489.  The *Pierce* court noted that the "probable cause requirement is central to the common law tort, because not every arrest, prosecution, confinement, or conviction that turns out to have involved an innocent person should be actionable." *Pierce*, 359 F.3d at 1294.

As discussed above in section III.A.2, this Court has concluded that the statements and information provided in the affidavit in support of the search warrant were sufficient to establish probable cause to search Plaintiff Torrez's apartment.  *See supra*.  The information in the affidavit provided the judge with a substantial basis for concluding that there was a fair probability that contraband or evidence of a crime would be found. *See Lawmaster*, 125 F.3d at 1348.

Plaintiff Torrez nevertheless contends that the affidavit in support of the warrant to search his

27

apartment was based on false and misleading statements by Cooper, and that without those statements, there was no probable cause to support the warrant.   "It is a violation of the Fourth Amendment for an arrest warrant affiant to '*knowingly, or with reckless disregard for the truth,*' include false statements in the affidavit." *Wolford*, 78 F.3d at 489 (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)) (emphasis added).  As discussed above in section III.A.2, however, Plaintiff Torrez has not shown any evidence that any of the Farmington Officers knew or should have known that Cooper's statements were false.   Thus, the Farmington Officers did not act unconstitutionally in preparing the affidavit, presenting it to the magistrate, and executing the warrant.  *See Clanton v. Cooper*, 129 F.3d 1147, 1154 (10th Cir. 1997) ("[I]t is the deliberate falsity or reckless disregard '*of the affiant, not of any nongovernmental informant*' that is unconstitutional.") (quoting *Franks*, 438 U.S. at 171) (emphasis added).  The resulting evidence from the search was therefore not improperly obtained, and consequently, the magistrate judge had sufficient evidence at the preliminary hearing to find that there was probable cause to bind Plaintiff over for trial.   Accordingly, based on the undisputed evidence presented to the Court, Plaintiff cannot show a Fourth Amendment violation sufficient to support his § 1983 malicious prosecution claim.  *See Taylor*, 82 F.3d at 1563 (concluding that sheriff did not violate Fourth Amendment when he presented arrest warrant affidavit to judge resulting in plaintiff's arrest where plaintiff offered no evidence that suggested that sheriff included false statements in affidavit with reckless disregard for truth); *see also Pierce*, 359 F.3d at 1296-97 & n.12 (discussing malice element, although noting that parties did not question applicability of malice as element of § 1983 claim).  The Farmington Officers are thus not only entitled to summary judgment but also to qualified immunity as Plaintiff Torrez cannot show that the Farmington Officers' actions violated a constitutional right.

b.      **§ 1983 Unlawful Search and Seizure and Unlawful Arrest**

Plaintiff Torrez additionally alleges in his complaint that the Farmington Officers unlawfully searched his apartment and seized his property (Count 2) as well as unlawfully arrested him (Count 1).   The Farmington Defendants argue that they are entitled to qualified immunity and summary judgment on Plaintiff Torrez's false arrest claim because the magistrate judge found probable cause to bind Plaintiff Torrez over for trial, a finding which precludes this constitutional claim.   The Farmington Defendants assert that their search of Plaintiff Torrez's apartments was lawful because they were executing a valid search warrant that was based on probable cause.   The Court concludes that the Farmington Defendants are entitled to qualified immunity and summary judgment on both the unlawful search and seizure and unlawful arrest claims for virtually the same reasons that this Court determined that the Farmington Defendants were entitled to qualified immunity and summary judgment on the malicious prosecution claim.

i.      **Unlawful search and seizure**

The Fourth Amendment imposes a presumptive warrant requirement for searches and seizures.   U.S. Const. amend. IV; *Katz v. United States*, 389 U.S. 347, 357 (1967).   In this case, the Farmington Officers obtained a warrant to search Plaintiff Torrez's apartments on the day of the search.   District Judge George Harrison found probable cause to authorize the search warrant. Furthermore, as discussed supra, this Court agrees with Judge Harrison's determination that the face of the affidavit gave the officers probable cause to search Plaintiff Torrez's Apartments E and F.

Nevertheless, Plaintiff contends that the affidavit provided false information and statements from Cooper, and that without those statements, there was no probable cause to support the issuance of the warrant.   This Court has already rejected this argument because Plaintiff Torrez has not

demonstrated that any of the Farmington Officers knew that the statements Cooper made to them were false or that they included the allegedly false statements with reckless disregard for the truth. Probable cause is only vitiated if the affiant knowingly or with reckless disregard for the truth included false statements in the affidavit. *See Franks*, 438 U.S. at 155-56. Officer Mitchell thus did not act unlawfully in including Cooper's statements in the affidavit, and this Court can consider those statements in determining whether there was probable cause to support the authorization of the search warrant. Based on this Court's review of the affidavit and warrant, the Farmington Officers reasonably relied on the search warrant to search Plaintiff's apartments and seize the contraband found therein. *See Lawmaster*, 125 F.3d at 1348 ("Agents conducting a search are entitled to rely, in good faith, on a magistrate's determination of probable cause."). Accordingly, Plaintiff Torrez has not shown that the Farmington Officers violated a constitutional right, and thus, they are entitled to qualified immunity and summary judgment on Plaintiff's unlawful search and seizure claim.

### ii.    **Unlawful arrest**

The constitutional validity of a warrantless arrest depends upon whether the arresting officer had probable cause. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). Such cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent man to believe that the suspect has committed or was committing an offense. *Id.* "[I]n determining whether probable cause exists, the courts must apply the 'totality of circumstances' test." *Brierley v. Schoenfeld,* 781 F.2d 838, 841 n.1 (10th Cir. 1986) (citing *Illinois v. Gates*, 462 U.S. 213 (1983)).

During the execution of the October 4, 1999 search warrant, the Farmington Officers found the following items in Plaintiff Torrez's apartment: a substance that looked like methamphetamine, marijuana, a stolen firearm, $8,820.00 in cash, a glass smoking device, and a digital scale. Based on

the discovery of the contraband, coupled with the information provided by Cooper, the Farmington

Officers had probable cause to believe that Plaintiff Torrez was committing the offenses of possession

with intent to distribute methamphetamine, possession of one ounce of marijuana, possession of drug

paraphernalia, and possession of a stolen firearm.  Therefore, the Farmington Officers lawfully

arrested Plaintiff Torrez without a warrant, and thus, Plaintiff has not established that the Farmington

Defendants' conduct amounted to a violation of a clearly established constitutional right.

Consequently, the Farmington Defendants are entitled to qualified immunity as well as summary

judgment on Plaintiff's unlawful arrest claim.

c.      **§ 1983 Unlawful Entry**

In Count 1 of his complaint, Plaintiff Torrez also alleges that the Farmington Officers

unlawfully entered Apartment F by failing to give proper notice before violently and forcibly entering

the door with a battering ram.  The Farmington Officers contend that the undisputed facts show that

the officers knocked at least once and announced their presence prior to entering the apartment more

than sixty seconds after the initial knock.  The Farmington Officers thus argue that they are entitled

to qualified immunity and summary judgment on the unlawful entry claim.  Plaintiff Torrez, on the

other hand, insists that there is a disputed fact as to whether the officers announced their presence.

Moreover, Plaintiff contends that the night time raid was not justified by the circumstances.

i.      **Knock and announce**

Congress has codified the common law "knock and announce" rule, which requires law

enforcement officers to announce their authority and purpose before breaking doors and windows

of private homes in execution of a search warrant if refused entrance.  *See* 18 U.S.C. § 3109.  The

purpose of § 3109 is to decrease the potential for violence, protect the privacy rights of individuals,

31

and avoid the unnecessary destruction of property. *United States v. Gallegos,* 314 F.3d 456, 459 (10th Cir. 2002).

State officers, however, are not governed by 18 U.S.C. § 3109, but rather by the Fourth Amendment. *United States v. Jenkins*, 175 F.3d 1208, 1212 (10th Cir. 1999). Nevertheless, the applicable standards under § 3109 and the Fourth Amendment are similar. *Id.* at 1313. The 'knock and announce' principle embodied in § 3109 "'forms a part of the reasonableness inquiry under the Fourth Amendment.'" *Gallegos,* 314 F.3d at 458 (quoting *Wilson v. Arkansas*, 514 U.S. 927, 929 (1995)). Section 3109 is thus "a guide in conducting the 'reasonableness' inquiry dictated by the Fourth Amendment." *Jenkins*, 175 F.3d at 1213 (quoting *United States v. Moore*, 91 F.3d 96, 98 (10th Cir. 1996)).

The Fourth Amendment includes a general presumption that officers executing a search warrant must announce their presence and authority before entering. *Id.* If the occupants then do not admit the officers within a reasonable period of time, the officers may be deemed to have been constructively refused admittance, and they may then enter by force. *Id.* The amount of time the officers must wait after knocking and announcing their presence depends on the particular facts and circumstances of each case. *Id.* Exigent circumstances, however, such as the risk of destruction of evidence or the threat of violence, may justify dispensing with the knock-and-announce requirement altogether. *Id.* at 1214.

In the present case, Plaintiff Torrez contends that there is a disputed factual issue as to whether or not the Farmington Officers failed to comply with the knock and announce requirement by not announcing their presence. Plaintiff Torrez testified at his deposition that he heard a knock on the door when he was preparing to shower. *See* Pl.'s Resp., Ex. 3 at 60, 151, 153. He then

turned off the water, put on a towel, and went to the door. *Id.* at 63, 153.  As he was walking toward

the door, Plaintiff Torrez said, "hello," but he did not hear anything in response. *Id.* at 63.  He then

looked out the peep hole and saw a man dressed in black, crouched down and walking away from the

door. *Id.* at 63-64, 153-55.  Plaintiff did not recognize the man as a police officer. *See id.* at 153-54.

At that point, Plaintiff Torrez did not know who had knocked or his or her purpose for knocking.

*Id.* at 153.  Plaintiff Torrez then returned to the bathroom to begin his shower.  *Id.* at 64, 155.

Shortly thereafter, Plaintiff Torrez returned to the apartment door a second time, and Defendant

Maestas burst through the door with a battering ram and fell on top of Plaintiff Torrez. *Id.* at 155-57.

Plaintiff Torrez testified that none of the Farmington Officers announced their presence or purpose

and that they only knocked once before using force to enter his apartment.  *Id.* at 154-56.  Plaintiff

Torrez did not know who knocked at the apartment door until after the officers had forced their way

into the apartment.  The time from when Plaintiff Torrez heard the knock to when the officers entered

was approximately 60 seconds. *See id.* at 154.  In contrast to Plaintiff's account, Defendant Maestas

stated in his affidavit that, prior to entering the apartment, the officers knocked and announced their

presence.  Defs.' Mot., Ex. B at 2.

        Based on these facts, the Court concludes that there is a genuine issue of material fact

concerning whether the Farmington Officers announced their presence prior to entering the

apartment.  The witnesses recall events differently, and thus, it is up to the trier of fact to determine

whose testimony is to be believed.  Because a genuine issue of fact exists about whether the officers

announced their presence, the Farmington Officers are not entitled to summary judgment on their

unlawful entry claim because the facts taken in the light most favorable to Plaintiff may state a Fourth

Amendment violation.  *See Holland v. Harrington*, 268 F.3d 1179, 1193-94 (10th Cir. 2001) ("The

genuine factual dispute concerning whether the officers announced their presence as they entered the Heflin residence has a direct bearing upon the Fourth Amendment reasonableness of the ensuing search.").[14]

Under the qualified immunity analysis, however, merely establishing that the Defendants may have violated a constitutional right is not enough.  Plaintiff must also demonstrate that the right was clearly established at the time of the violation.  In 1995, the Supreme Court held that "an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment."  *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995).  Moreover, the Tenth Circuit determined that in 1996 it was clearly established that a Fourth Amendment violation may occur where officers fail to announce their presence as they enter a residence when executing a search warrant.  *Holland*, 268 F.3d at 1193-94.  Accordingly, taking the facts alleged by Plaintiff Torrez as true, if the Farmington Officers did not announce their presence prior to forcibly opening the door to the apartment, then those facts show a violation of a clearly established constitutional right.  The Farmington Officers are thus not entitled to qualified immunity or summary judgment on this claim.[15]

ii.    **Night time search**

---

[14]The Farmington Defendants argue that knocking alone may satisfy the knock-and-announce requirement.  They cite *United States v. Myers*, 106 F.3d 936 (10th Cir. 1997), to support this proposition.  In *Myers*, however, the agents knocked "and announced that they had a search warrant."  *Id.* at 939.  Thus, *Myers* cannot be construed as holding that officers need only knock prior to entering. The Farmington Defendants have provided this Court with no other authority that supports their argument that announcement of law enforcement's authority and purpose is not required under the Fourth Amendment.

[15]The presence of exigent circumstances can, in certain circumstances, justify a no-knock-and-announce entry.  The Farmington Defendants, however, do not argue that exigent circumstances were present in this case such that the officers did not need to announce their presence, and thus, this Court will not address that issue.

34

In his response to the Farmington Defendants' motion for summary judgment, Plaintiff Torrez complains for the first time that the execution of the search warrant violated the Fourth Amendment because it was an unlawful nighttime search. *See* Pl.'s Resp. at 12. The Court has examined Plaintiff's amended complaint and has found no allegation in the complaint that would give the Farmington Defendants notice that one of Plaintiff's claims was that the search was an unlawful nighttime search. As this claim was neither raised nor supported in the complaint, Plaintiff cannot proceed on this claim.

In any event, even if this Court were to construe Plaintiff's complaint as containing such a cause of action, the Farmington Officers would be entitled to both qualified immunity and summary judgment. When state officers conduct a search, the search is analyzed under the Fourth Amendment. *See United States v. Callwood*, 66 F.3d 1110, 1112 (10th Cir. 1995); *United States v. Keene*, 915 F.2d 1164, 1167 (8th Cir. 1990). The Fourth Amendment does not require that searches be conducted during daylight hours. *Keene*, 915 F.2d at 1167-68; *United States v. Dupree*, 1996 WL 473864, *3 (D. Kan. June 20, 1996) (unpublished opinion). Nevertheless, that a search is conducted at night factors into the reasonableness analysis under the Fourth Amendment. *United States v. Morehead*, 959 F.2d 1489, 1497 (10th Cir. 1992); *Dupree*, 1996 WL 473864 at *3. The Tenth Circuit has noted that night time searches are particularly intrusive. *Callwood*, 66 F.3d at 1112-13.

Rule 5-211(B) of the New Mexico Rules of Criminal Procedure for the District Courts provides that a search warrant must be served between the hours of 6:00 a.m. and 10:00 p.m., "unless the issuing judge, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at any time." The New Mexico rule is patterned after Fed. R. Crim. P. 41. *See* NMRA 5-211 (Committee commentary). Under Fed. R. Crim. P. 41(e)(2), search warrants generally are to

be executed in the daytime, unless the judge expressly authorizes a nighttime search for good cause. Rule 41(a)(2)(B) defines "daytime" as "the hours between 6:00 a.m. and 10:00 p.m. according to local time."

In this case, the undisputed facts show that the search warrant was executed at 9:30 p.m. and that the warrant issued by the state district judge authorized a night time search because "drugs could be moved quickly."  Defs.' Mot., Ex. G at 2 & Ex. H.  According to both the state and federal rules, the 9:30 p.m. search was conducted during the "daytime."  Moreover, the state judge authorized a nighttime search for the purpose of preventing the suspect from moving the drugs.  For these reasons, this Court rejects Plaintiff Torrez's argument that the 9:30 p.m. search was unreasonable under the Fourth Amendment, and thus, Plaintiff cannot show a violation of a constitutional right, much less that the right was clearly established.  Thus, the Farmington Defendants are entitled to qualified immunity as well as summary judgment on this claim.  *See Callwood*, 66 F.3d at 1113 (concluding that Fourth Amendment was not violated when state officers conducted search after 10:00 p.m. because judge authorized nighttime search); *Morehead*, 959 F.2d at 1497 ("Given the fact that the marijuana could have readily been moved or destroyed, and that neither Senior or Junior were in custody at the time, the officers' search, even if it was conducted in the evening, was not unreasonable."); *Keene*, 915 F.2d at 1168 (holding that search conducted at 8:20 p.m. was "daytime" search and did not violate Fourth Amendment).

d.    **§ 1983 Excessive Force**

Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 395-97 (1989).  In order to state a claim of excessive force under the Fourth Amendment, a plaintiff must demonstrate both that a seizure

occurred and that the seizure was unreasonable.  *Brower v. County of Inyo*, 489 U.S. 593, 599

(1989); *Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994).  However, the Fourth

Amendment addresses misuse of power, not the accidental effects of otherwise lawful government

conduct.  *Brower*, 489 U.S. at 596.  As the Supreme Court explained,

> a Fourth Amendment seizure does not occur whenever there is a governmentally
> caused termination of an individual's freedom of movement . . ., nor even whenever
> there is a governmentally caused and governmentally *desired* termination of an
> individual's freedom of movement . . ., but only when there is a governmental
> termination of freedom of movement *through means intentionally applied*.

*Id.* at 596-97.  A seizure occurs when a person has been "stopped by the very instrumentality set in

motion or put in place in order to achieve that result."  *Id.* at 599.

    As for the reasonableness of the seizure, the reasonableness of the officer's belief as to the

appropriate level of force should be judged from the perspective of an officer on the scene, rather

than with the 20/20 vision of hindsight.  *Graham*, 490 U.S. at 396.  The right to make an arrest

necessarily carries with it the right to use some degree of physical force to effect it.  *Id.* at 396.

Among the factors that courts should consider in determining whether a police officer applied

excessive force are (1) the severity of the crime at issue, (2) whether the suspect poses an immediate

threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or

attempting to evade arrest by flight.  *Id.* at 396.  Reasonableness of the use of force depends, in part,

on whether the officer's own reckless or deliberate conduct unreasonably created the need to use such

force.  *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995).  The Fourth Amendment only

protects individuals against unreasonable seizures, not seizures conducted in a negligent manner.

*Dodd v. City of Norwich*, 827 F.2d 1, 7-8 (2d Cir. 1987) (on reargument).  After all, "[i]t makes little

sense to apply a standard of reasonableness to an accident."  *Id.* at 7.

            i.       **Collision between Defendant Maestas and Plaintiff Torrez**

Plaintiff Torrez's first claim of excessive force arises from Defendant Maestas knocking Plaintiff down after the force of the battering ram caused Defendant Maestas to fall on Plaintiff. The Farmington Officers contend that they are entitled to summary judgment on this issue because the undisputed evidence shows that the collision was an accident, and accidental contact cannot form the basis of an excessive force claim. The Court agrees.

The undisputed evidence shows that Defendant Maestas did not intend to hit or fall on top of Plaintiff Torrez. Defendant Maestas' falling on Plaintiff was the accidental result of the forced entry into the apartment. There is no evidence to suggest that Defendant Maestas collided with Plaintiff for the purpose of seizing him. The evidence does not show that the collision was the result of Defendant Maestas' intentional act. To be sure, Defendant Maestas intended to force open the door to the apartment, but he did not intend by that same act to seize Plaintiff Torrez. As Defendant Maestas did not intend to use this particular instrumentality (the battering ram) to effect Plaintiff's seizure, Plaintiff Torrez cannot show that a seizure occurred, and thus, that the Farmington Officers violated his clearly established constitutional rights.[16] Accordingly, the Farmington Defendants are entitled to qualified immunity and summary judgment on the excessive force claim arising from Defendant Maestas accidentally falling on top of Plaintiff Torrez as he forcibly entered the apartment. *See Dodd*, 827 F.2d at 7 (holding that inadvertent shooting of already apprehended burglar was

---

[16]That the collision occurred at about the same time as the officers entered with their guns drawn and that Plaintiff was arrested after the search does not change the analysis as to whether Plaintiff was seized by the collision. The collision itself must constitute a seizure in order for Plaintiff to state an excessive force claim arising out of the collision. *See Dodd*, 827 F.2d at 7-8 (shooting was not a seizure even though it occurred while officer was handcuffing suspected burglar); *Cardona v. Connolly*, 361 F.Supp.2d 25, 32-34 (D. Conn. 2005) (dog bite was not a seizure even though it occurred after officer had placed plaintiff in handcuffs).

accident, and thus, there was no Fourth Amendment violation); *Cardona v. Connolly*, 361 F.Supp.2d 25, 32-34 (D. Conn. 2005) (holding that dog bite did not constitute Fourth Amendment seizure because officer did not intentionally use police canine to bring about such seizure, and thus, granting summary judgment for defendant on plaintiff's unreasonable force claim).[17]

ii.      **Drawn guns**

Secondly, Plaintiff Torrez argues that the Farmington Defendants are not entitled to summary judgment on his excessive force claim because a disputed issue of fact exists as to whether "the officers held guns on him when he was naked." Pl.'s Resp. at 13. The Farmington Officers assert that drawing their weapons during the initial entry of the apartment when executing a warrant to search for drugs is insufficient as a matter of law for an excessive force claim. The Farmington Officers contend they are entitled to qualified immunity because Plaintiff cannot show a constitutional violation or that the officers' actions were in violation of clearly established law.

In determining whether Plaintiff Torrez has shown a constitutional excessive force violation, the Court must first address whether Plaintiff Torrez was "seized" within the meaning of the Fourth Amendment when the officers drew their guns and pointed them at him. A person is seized "when, considering all the surrounding circumstances, the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *United States v. King*, 990 F.2d 1552, 1556 (10th Cir. 1993) (internal quotations omitted). Viewing the evidence in the light most favorable to Plaintiff, two or three officers entered

---

[17]The fact that the Farmington Officers cannot be found liable for excessive force arising from the collision does not necessarily mean that Plaintiff Torrez cannot recover any damages for his alleged injury resulting from the collision. If Plaintiff Torrez is able to prove his unlawful entry claim, then he may be entitled to the damages caused as a result of the unlawful entry, which may include his injuries as a result of the collision.

39

behind Officer Maestas with guns pointed at Plaintiff.  Plaintiff was naked, unarmed, and not acting

in a threatening manner at the time.  The Court concludes that this evidence is sufficient to meet

Plaintiff's burden of showing that he was seized by the officers when they pointed their guns at him.

*See Holland*, 268 F.3d at 1187-88 (SWAT team's execution of search warrant constituted "seizure"

of all persons at residence when SWAT team members entered with weapons drawn and each person

submitted to show of authority until they were informed that they were free to leave after conclusion

of search); *King*, 990 F.2d at 1559 n.2 ("[W]e agree that Defendants were not seized until Officer

LeMasters drew her revolver because it was at this point that Officer LeMasters' conduct would

communicate to a reasonable person that he or she was unable to terminate the encounter.").

In addition to showing that a seizure occurred, Plaintiff must also demonstrate that the seizure

was unreasonable.  At the time the Farmington Officers entered Plaintiff Torrez's apartment, Plaintiff

Torrez had fallen to the ground, was naked, and did not pose a threat to any of the Farmington

Officers.  Moreover, when the Farmington Officers entered Plaintiff Torrez's apartment, they had

only a search warrant based on a suspicion of controlled substances (and possibly weapons).  *See*

Defs.' Mot., Ex. F.  The Farmington Officers did not have an arrest warrant on Plaintiff Torrez, nor

was Plaintiff Torrez suspected of any crime other than possession of drugs, a non-violent offense.

Plaintiff Torrez was not attempting to flee the apartment initially, and there are no facts at bar to

suggest that Plaintiff Torrez attempted to evade arrest once contraband was found.  On these facts,

and in light of the precedents discussed above, the Court must conclude that Plaintiff Torrez did not

pose an immediate threat to the safety of the officers sufficient to justify pointing a loaded gun at him.

"Indeed, an individual who is standing still, naked and unarmed with his hands placed either on a

mattress or in the air poses no threat to anyone."  *Griffin v. Hickson*, No. 98-3805, 2002 U.S. Dist.

40

LEXIS 8567, * 18 (E.D. Pa. May 10, 2002).

The "use of guns and handcuffs must be justified by the circumstances." *Baker v. Monroe Twp.,* 50 F.3d 1186, 1193 (3rd Cir. 1995) (citations omitted). "The display of weapons, and the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force." *Rucker v. Hampton*, 49 Fed. Appx. 806, 810 (10th Cir. Oct. 18, 2002) (unpublished decision) (quoting *Holland*, 268 F.3d at 1191). "Such a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time." *Id.* "These are the very ingredients relevant to an excessive force inquiry." *Id.* "Where a person has submitted to the officers' show of force without resistance, and where an officer has no reasonable cause to believe that person poses a danger to the officer or to others, it may be excessive and unreasonable to continue to aim a loaded firearm directly at that person, in contrast to simply holding the weapon in a fashion ready for immediate use." *Id.*

Looking at the intrusiveness of all aspects of the incident in the aggregate, the Court concludes that the Farmington Officers' conduct may have been unreasonable.[18] *Id.* The officers pointed a weapon of potentially deadly force at Plaintiff Torrez, without any reason to feel threatened or fear that Plaintiff Torrez would escape. Because Plaintiff Torrez was on the floor of the apartment, naked, not resisting detention or arrest, and had no weapon, the Court holds that genuine issues of material fact remain regarding whether the Farmington Officers' actions in pointing a gun at Plaintiff Torrez during the October 4, 1999 arrest were objectively reasonable under the

---

[18] The Farmington Officers attempt to eviscerate the effect of having pointed a gun at Plaintiff Torrez by arguing that displaying or drawing a gun upon entry of a residence is reasonable. However, drawing a gun upon entry and aiming it directly at a prone, naked victim are distinguishable levels of force. *See Holland*, 268 F.3d at 1191.

circumstances.

The Farmington Officers nevertheless contend that they are entitled to qualified immunity because there is no clearly established law that drawing weapons during the initial entry into a dwelling while executing a search warrant for drugs constitutes excessive force. Defs.' Resp. at 23. The Court disagrees. In the present case, the Court has cited Tenth Circuit law, Third Circuit law, and precedent from the United States Supreme Court on point. It is well-established that pointing a loaded gun at a suspect who does not pose a threat of violence or escape may be an unreasonable show of force. Because the law in this area was well-established at the time of the October 4, 1999 search, the Farmington Officers are not entitled to qualified immunity. The Farmington Officers' motion for summary judgment on Plaintiff Torrez's claim for excessive force is thus denied.

2.     **Municipal Liability**

Plaintiff Torrez also alleges a municipal liability claim in Count 1. *See* Am. Compl., ¶¶ 43 and 44 (Doc. No. 10). Plaintiff Torrez complains, *inter alia,* that City of Farmington officials failed to properly train or supervise the Farmington Officers in the use of informants, proper use of force in making an arrest, and in proper search and seizure practices. *Id.* ¶ 43. Plaintiff also claims that the City of Farmington had a policy of deliberate indifference to the risk that improper conduct would result in constitutional violations. *Id.* ¶ 44. The Farmington Defendants contend that Plaintiff has failed to prove, or even allege, a municipal policy or custom that caused the alleged constitutional violations, and thus, Plaintiff's constitutional claims against the City of Farmington must be dismissed.

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dept. of Social Services*, 43 U.S. 658, 691 (1978). A municipality is only liable under

42

§ 1983 when its policy or custom inflicts the injury. *Id.* at 694. In this case, Plaintiff Torrez's allegations concerning the failure to train officers and a policy of deliberate indifference are unsupported by affidavits or evidence in the record. The only evidence in the record to which Plaintiff Torrez points is the affidavit of Officer Mitchell in which he stated he received training from the City of Farmington on how to investigate drug crimes. Pl.'s Resp. at 14. This is not evidence of a failure to train or a policy of deliberate indifference that caused the alleged constitutional violations. Plaintiff has simply not provided this Court with any admissible evidence to support his claims of municipal liability, and thus, the City of Farmington is entitled to summary judgment on all Plaintiff Torrez's constitutional claims.

IV.     **CONCLUSION**

IT IS THEREFORE ORDERED, based on the foregoing reasons, that the Farmington Defendants' Motion for Summary Judgment on Plaintiff Torrez's Claims **(Doc. No. 148)** is hereby GRANTED IN PART as follows:

1.      The Farmington Defendants' motion for summary judgment as to Plaintiff Torrez's unlawful entry claim in Count 1 based on the Farmington Officers' failure to announce their presence prior to their forced entry is hereby DENIED as to the Farmington Officers and is hereby GRANTED as to the City of Farmington;

2.      The Farmington Defendants' motion for summary judgment as to Plaintiff Torrez's unlawful entry claim in Count 1 based on the Farmington Officers' night time execution of the search warrant is hereby GRANTED as to both the Farmington Officers and the City of Farmington;

3.      The Farmington Defendants' motion for summary judgment as to Plaintiff Torrez's excessive force claim as to the collision between Defendant Maestas and Plaintiff Torrez in Count 1

43

is hereby GRANTED as to both the Farmington Officers and the City of Farmington.  However, the Farmington Defendants' motion for summary judgment as to Plaintiff Torrez's excessive force claim as to the Farmington Officers' drawing their guns on Plaintiff Torrez during their execution of the search warrant is hereby DENIED as to the Farmington Officers and is hereby GRANTED as to the City of Farmington;

4.    The Farmington Defendants' motion for summary judgment on Plaintiff Torrez's unlawful search and seizure and unlawful arrest claims in Counts 1 and 2 is GRANTED as to both the Farmington Officers and the City of Farmington;

5.    The Farmington Defendants' motion for summary judgment on Plaintiff Torrez's state law claim for malicious abuse of process and constitutional claim for malicious prosecution in Count 2 is hereby GRANTED as to both the Farmington Officers and the City of Farmington; and

6.    The Farmington Defendants' motion for summary judgment as to Count 6 (interference with prospective business advantage), Count 8 (false light invasion of privacy), and Count 9 (intentional infliction of emotional distress) is hereby GRANTED as to both the Farmington Officers and the City of Farmington.

Dated this 22nd day of February, 2006.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE