**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DAVID TORREZ,
    Plaintiff,

vs.      Civ. No. 02-1381 MV/RHS

CITY OF FARMINGTON, VINCENT MITCHELL, in his official and individual capacities, GERALD MAESTAS, in his official and individual capacities, DUSTY DOWNS, in his official and individual capacities, JASON HENSLEY, in his official and individual capacities, JOHN AHLM, in his official and individual capacities, SAN JUAN COUNTY for acts of its SHERIFF'S DEPARTMENT, a governmental entity, JASON WAYBOURN, in his official and individual capacities, SAN JUAN DISTRICT MAGISTRATE COURT, LINDA B. EATON, in her official and individual capacities, AZTEC MUNICIPAL COURT, BARBARA R. ALDAZ, in her official and individual capacities, ELEVENTH JUDICIAL DISTRICT COURT, GREGORY T. IRELAND, in his official and individual capacities, and OTHER JOHN DOE DEFENDANTS, in their official and individual capacities,
    Defendants,

and

JULES LESLIE GODWIN,
    Plaintiff,

vs.      Civ. No. 02-1382 MV/RHS

CITY OF FARMINGTON, VINCENT MITCHELL, in his official and individual capacities, GERALD MAESTAS, in his official and individual capacities, DUSTY DOWNS, in his official and individual capacities, JASON HENSLEY, in his official and individual capacities, JOHN AHLM, in his official and individual capacities, SAN JUAN COUNTY for acts of its SHERIFF'S DEPARTMENT, a governmental entity, JASON WAYBOURN, in his official and individual capacities, SAN JUAN DISTRICT MAGISTRATE COURT, LINDA B. EATON, in her official and individual capacities, AZTEC MUNICIPAL COURT, BARBARA R. ALDAZ, in her official and individual capacities, ELEVENTH JUDICIAL DISTRICT COURT, GREGORY T. IRELAND, in his official and individual capacities, and OTHER JOHN DOE DEFENDANTS, in their official and individual capacities,
    Defendants.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Waybourn's Motion for Summary Judgment on Plaintiff' Godwin's remaining claims against him, filed June 27, 2005 **[Doc. No. 129]**. The Court, having considered the motion, briefs, and relevant law and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED**.

### **BACKGROUND**

On March 22, 2002, Plaintiff Jules Leslie Godwin ("Plaintiff Godwin") filed an action in New Mexico state court asserting state constitutional and tort causes of action arising out of a series of arrests and prosecutions of Plaintiff Torrez. The complaint named various defendants, including municipal, state, and judicial actors, as well as law enforcement officers and other "John Doe" defendants in their individual and official capacities. Plaintiff Godwin did not name Defendant Jason Waybourn ("Defendant Waybourn") as a party to the state suit.

On October 8, 2002, Plaintiff Godwin filed a motion to amend his complaint and attached thereto a proposed amended complaint adding a federal due process claim under 42 U.S.C. § 1983 and joining Defendant Waybourn as a party. On November 1, 2002, the case was removed to this Court.[1]

On February 25, 2003, Plaintiff Godwin filed an amended complaint against various

---

[1] On March 22, 2002, Plaintiff Torrez filed an action in state court asserting state constitutional and common law causes of action arising out of the same arrests and prosecutions that form the basis of Plaintiff Godwin's lawsuit. When Plaintiff Torrez filed a motion to amend his complaint to add federal constitutional claims, the action was removed to this Court and consolidated with Godwin's action. The Court only addresses herein Defendant Waybourn's motion for summary judgment on Godwin's remaining claims in the amended complaint.

defendants, including the San Juan County Sheriff's Department and Jason Waybourn (collectively, "the San Juan County Defendants"). The amended complaint contains federal and state due process claims (Count I) and state tort claims for interference with prospective business advantage (Count II), defamation (Count III), false light invasion of privacy (Count IV), and intentional infliction of emotional distress (Count V). The amended complaint did not allege that the San Juan County Defendants were responsible for the federal or state due process violations.

Plaintiff Godwin alleged the following facts in his amended complaint in support of his claims against the San Juan County Defendants.[2] Plaintiff Godwin alleged that he was an independent solicitor licensed by the State of New Mexico and that, in 1996, Plaintiff Godwin began working as a bail bondsman with Torrez Bail Company ("Torrez Bonds"), a business owned and operated by Plaintiff Torrez. Am. Compl. at 3-4. Plaintiff Godwin alleged that on February 25, 1998, Defendants Vincent Mitchell, Gerald Maestas, Dusty Downs, Jason Hensley, and John Ahlm, law enforcement officers with the City of Farmington Police Department, and Defendant Jason Waybourn, a law enforcement officer with the San Juan County Sheriff's Department, wrongfully arrested Plaintiff Torrez on unspecified charges. *Id.* at 2-3, 10-11. Plaintiff Godwin also claimed that on July 21, 1998, a directed verdict on those charges was ordered in Plaintiff Torrez's favor. *Id.* at 11. Plaintiff further contended that on October 4, 1999, Plaintiff Torrez was arrested again, and thereafter, Defendant Mitchell filed a criminal complaint against Plaintiff Torrez charging him with Possession with Intent to Distribute

---

[2]The Court includes the allegations in Plaintiff Godwin's amended complaint solely for the purpose of providing background information and context. The Court recognizes that allegations in a complaint are not competent evidence for purposes of deciding a summary judgment motion and will not use them as such.

Methamphetamines; Possession/Receiving Stolen Property (Firearm); Possession of Drug Paraphernalia; and Possession of a Controlled Substance (Marijuana less than 1 oz.).[3]  *See id.* at 14-15 & attachment (Criminal Complaint).  Plaintiff Godwin asserted in his amended complaint that, since Plaintiff Torrez's unlawful arrest on February 25, 1998, and continuing through the present, all the Defendants have engaged in a course of conduct that has defamed him personally and professionally by publishing communications that Plaintiff Godwin was not fit or able to perform his work as a bail bondsman, that Plaintiff was not able to conduct bonding business, and that he worked and associated with criminals, including Plaintiff Torrez.  *Id.* at 13-15.  Plaintiff also claimed in his complaint that the Defendant law enforcement officers published statements to the media unfavorably disparaging and defaming him, including publishing false information obtained from James Cooper, a source known by the Farmington Officers to be unreliable.  *Id.* at 16.  Plaintiff Godwin alleged that, in addition to defaming him, the Defendant law enforcement officers subjected him to ongoing investigation, increased surveillance, scrutiny, harassment, and intimidation since Plaintiff Torrez's arrest on October 4, 1999.  *Id.* at 14.  Plaintiff asserted in his complaint that the officers engaged in this conduct with the intent to harm him and his ability to conduct business.  *Id.* at 14.

On March 13, 2003, the San Juan County Defendants filed a motion to dismiss, asking the Court to dismiss all of Plaintiff Godwin's claims in his amended complaint against them.  On September 8, 2004, the Court entered an Order granting in part and denying in part the San Juan County Defendants' motion **[Doc. 79]**.  The Court dismissed the state and federal due process

---

[3]The criminal complaint filed by Defendant Mitchell against Plaintiff Torrez does not refer to Plaintiff Godwin or any person other than Plaintiff Torrez.

4

claims (Count I) and the claim for defamation (Count III) against the San Juan County Defendants.  *See* Memorandum Opinion and Order **[Doc. No. 79]** at 24.  The issues resolved in the September 8, 2004 Memorandum Opinion and Order were entirely dispositive as to Defendant San Juan County Sheriff's Department.  As for the state tort claims for Interference with Prospective Business Advantage (Count II), False Light Invasion of Privacy (Count IV) and Intentional Infliction of Emotional Distress (Count V), the Court noted that those tort claims do not fall within the enumerated torts for which immunity has been waived under the New Mexico Tort Claims Act ("NMTCA").  *See* Memorandum Opinion and Order  **[Doc. No. 79]**  at 20-21; *see also* NMSA 1978, § 41-4-12.  However, because the Court could not conclude beyond a doubt whether Defendant Waybourn was acting within the scope of his official duties when he allegedly engaged in publishing communications to the media and third parties unrelated to the judicial proceedings against Plaintiff Torrez, the Court denied the San Juan County Defendants' motion to dismiss these claims.

On June 27, 2005, Defendant Waybourn filed a Motion for Summary Judgment on Plaintiff Godwin's Claims against Jason Waybourn.  **[Doc. No. 129]**.  On August 2, 2005, Plaintiff Godwin filed a joint response with Plaintiff Torrez in opposition to Defendant Waybourn's Motion for Summary Judgment.  **[Doc. No. 161]**.  Plaintiff Godwin filed an appendix of exhibits in support of the Joint Response separately.  **[Doc. No. 163]**.  On August 29, 2005, Defendant Waybourn filed a reply.  **[Doc. No. 177]**.

In the appendix in support of his Joint Response, Plaintiff Godwin attached the Affidavit of Boyd Elaine Godwin, in which Boyd Godwin averred that in the 1990's, when in the process of booking arrested persons, "law enforcement officials would say that David Torrez was a criminal

when he came to bond out clients." Ex. 2 at 2. Boyd Godwin also stated that "law enforcement officers and other jailers" told Boyd Godwin that "David Torrez was 'the biggest drug dealer' in San Juan County." *Id.*

In the Joint Response, Plaintiff Godwin did not specifically link any of his factual allegations to the remaining legal claims he asserted against Defendant Waybourn. Moreover, Plaintiffs' Joint Response discusses only Plaintiff Torrez' claims at issue in a Motion for Summary Judgment on Plaintiff Torrez' Claims filed by Defendant Waybourn **[Doc. No. 132]**. Thus, virtually the only "facts" available to the Court for purposes of Defendant Waybourn's Motion for Summary Judgment against Plaintiff Godwin were the allegations presented in Plaintiff Godwin's amended complaint, which are not competent evidence for purposes of a summary judgment motion **[Doc. No. 11]**. The Court is herein therefore limited to an undeveloped record with respect to Plaintiff Godwin.

## STANDARD

Summary judgment is appropriate only if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted). Under Rule 56(c), the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, only disputes of facts that might affect the

outcome of the case will properly preclude the entry of summary judgment. *Id.* at 248.

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.*; *Kaus v. Standard Ins. Co.*, 985 F.Supp. 1277, 1281 (D. Kan. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. The Court will consider the Farmington Defendants' motion in light of these standards.

## DISCUSSION

<u>Is There Evidence In The Record Upon Which A Jury Could Properly Rely In Returning A Verdict For Plaintiff Godwin, The Nonmoving Party?</u>

The following analysis of the three claims at issue in Defendant Waybourn's Motion for Summary Judgment focuses on acts Defendant Waybourn may have committed outside the scope of his official duties and only to the extent that Defendant Waybourn's conduct involved publishing false information about Plaintiff Godwin to third parties and the media following the arrest of Plaintiff Torrez.[4] The Court will discuss each of Plaintiff Godwin's remaining claims

---

[4]In support of his three remaining claims against Defendant Waybourn, Plaintiff Godwin alleges in his amended complaint that "Defendants" published false communications regarding him and that, after they arrested Plaintiff Torrez, "Defendant law enforcement officers" subjected him to "on-going investigations, increased surveillance, scrutiny, harassment, and intimidation." *See* Amended Complaint, ¶¶ 51, 52 and 72. The Court has already found that surveillance and investigation are within the scope of duties of a law enforcement officer. *See* Memorandum

7

against Defendant Waybourn in turn.

      A.      <u>Interference with Prospective Business Advantage</u>

"To establish a claim for tortious interference with prospective business relations, a plaintiff must show intentional and improper interference preventing the formation of a contract." *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995) (citations omitted). "The defendant can interfere either by inducing or causing a third party not to enter into or continue relations, or by preventing the plaintiff from acquiring or continuing the relations." *Id.* "It is not necessary to prove an underlying contract." *Id.* (citing *Wasalco, Inc. v. El Paso County*, 689 P.2d 730, 732 (Colo. Ct. App. 1984). "However, a protected relationship exists only if there is a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope." *Id.* (citing *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 898 (3rd Cir. 1981), *cert denied*, 454 U.S. 893, 102 S. Ct. 390, 70 L.Ed.2d 208 (1981); *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466, 471 (Penn. 1979); *cf. Plaza Esteban v. La Casa Nino, Inc.*, 738 P.2d 410, 412 (Colo. Ct. App. 1987) (requiring a "firm offer"), *rev'd on other grounds*, 762 P.2d 669 (Colo. 1988)).

New Mexico recognizes this tort in the same context. "In discussions of the type of situation involved in this case, terms such as 'economic expectancies' and 'prospective advantage' have been used." *M & M Rental Tools v. Milchem, Inc.*, 94 N.M. 449, 452, 612 P.2d 241, 244 (Ct. App. 1980) (citations omitted). This case does not involve existing contractual relations.[5]

---

Opinion and Order **[Doc. No. 77]** at 41-43. Therefore, the remaining claims are analyzed only to the extent that Defendant Waybourn published false communications regarding Plaintiff Godwin.

    [5]Although Plaintiff Godwin alleges in his amended complaint that "he entered into contracts to post bail bonds" (*see* amended complaint, ¶ 49), he has failed to submit evidence of

Rather, this case involves general interference with existing and prospective business relationships and any advantage resulting therefrom. "A claim for tortious interference with contractual relations that does not induce the breach of an existing contract is in the nature of a claim for interference with prospective business advantage, and it requires a plaintiff to prove that the defendant used improper means or acted with an improper motive intended solely to harm the plaintiff." *Silverman* v. *Progressive Broad, Inc.,* 1998-NMCA-107, ¶ 28, 125 N.M. 500, 964 P.2d 61 (citing *Kelly v. St. Vincent Hosp.*, 102 N.M. 201, 207, 692 P.2d 1350, 1356 (Ct. App. 1984)).

"American courts are not as willing to protect interests in prospective contractual relations as they are to protect interests in existing contracts." *Fikes v. Furst*, 2003-NMSC-33, ¶ 22, 134 N.M. 602, 81 P.3d 545 (citing *Anderson v. Dairyland Ins. Co.*, 97 N.M. 155, 158, 637 P.2d 837, 840 (1981) (quoting James A. Henderson, Jr. & Richard N. Pearson, The Torts Process 1166 (2d ed. 1981)). "Where the defendant is accused of interfering with the plaintiff's opportunity to enter into contracts with third persons, a strong showing must be made that the defendant acted not from a profit motive but from some other motive, such as personal vengeance or spite." *Id*. Therefore, if the facts demonstrate that Defendant Waybourn was involved in publishing false information to the media and to third parties regarding Plaintiff Godwin, his motive in doing so must be proven to have been solely to harm Plaintiff Godwin. *See id.*; *Clough v. Adventist*

---

such contracts into the record. If Plaintiff Godwin had intended to litigate the effect of Defendant Waybourn's alleged conduct on his existing contracts, he was obligated to provide Defendant Waybourn with a copy of such contracts with his initial complaint. *See* Rule 1-009(I) NMRA 2005 (applicable to the original complaint filed in state district court). Defendant Waybourn has not addressed such contracts in his Motion and the Court is aware of no such contracts having been made available to Defendant Waybourn.

*Health Sys., Inc.*, 108 N.M. 801, 806, 780 P.2d 627, 632 (1989).

In this case, Plaintiff Godwin has failed to identify any salient facts specifically identifying Defendant Waybourn as one of the "Defendants" involved in publishing false information concerning Plaintiff Godwin's fitness to perform business activities or his alleged association with criminal activities. Plaintiff Godwin has presented this claim by making only a general reference to "all Defendants herein." Amended complaint, ¶ 51. Plaintiff Godwin claims that these Defendants engaged in a course of conduct, including publishing communications that Plaintiff Godwin was not fit to perform work as a bail bondsman; that Plaintiff Godwin was not able to conduct bonding business; and that Plaintiff Godwin worked and associated with criminals. *Id.* Plaintiff Godwin further claims that as a result of "Defendants'" conduct, his personal and professional relationship with others was disrupted. *Id.* However, Plaintiff Godwin presents no facts that would support an allegation that Defendant Waybourn published false communications regarding Plaintiff Godwin, and more importantly, fails to present any evidence that Waybourn acted "solely with intent to harm" Plaintiff Godwin in doing so. *See Fikes v. Furst*, 2003-NMSC at ¶ 22.

Defendant Waybourn points out that Plaintiff Godwin's amended complaint was factually deficient with respect to specific allegations against Defendant Waybourn. *See* Def. Waybourn's Memo in Support, Material Fact No. 1. More significantly, Defendant refers the Court to admissions Plaintiff Godwin made during his deposition. *See* Def. Waybourn's Memo in Support, Material Fact No. 4. When Plaintiff Godwin was deposed, he was asked whether he knew of anything that Defendant Waybourn had done to him personally to affect his ability to operate as a bondsman with Torrez Bonds. *See* Def. Exhibit A, 49:20-23. Plaintiff Godwin responded that he

10

did not know of anything that Mr. Waybourn did that affected him, Torrez Bonds or Plaintiff Torrez.[6] *Id*. at 49:24-25;50:1-6. Defendant Waybourn further argues that "Defendant Waybourn is not alleged to have made any of the publications" that form the basis of Plaintiff Godwin's claim. *See* Def. Waybourn's Memo in Support, p. 3.

The Court observes that Plaintiff Godwin failed to present facts in his amended complaint specifically against Defendant Waybourn; failed to dispute any material fact presented by Defendant Waybourn, or brief this issue in his Response; and failed to present any evidence on the record such that Defendant Waybourn published false communications, used improper means, or acted with an improper motive intended solely to harm him. Plaintiff Godwin failed to allege facts that would support even an allegation against Defendant Waybourn that he published false information. The record is so lacking in this regard that the Court is unable to draw any reasonable inferences in favor of Plaintiff Godwin.

Plaintiff Godwin has failed to establish a *prima facie* case for tortious interference with prospective business advantage against Defendant Waybourn. Accordingly, Defendant Waybourn's Motion for Summary Judgment on Plaintiff Godwin's Count II, Interference with Prospective Business Advantage is granted.

B.     False Light Invasion of Privacy

New Mexico recognizes the tort of invasion of privacy. *See Andrews v. Stallings,* 119 N.M. 478, 492, 892 P.2d 611, 625 (Ct. App. 1995); *McNutt v. New Mexico State Tribune Co*., 88 N.M. 162, 165, 538 P.2d 804, 807 (Ct. App.), *cert. denied*, 88 N.M. 318, 540 P.2d 248 (1975).

---

[6] Plaintiff Godwin's admission that he did not know of anything that Defendant Waybourn had done to affect Torrez Bonds or Plaintiff Godwin is relevant to the Court's analysis of all three remaining claims.

"The tort is generally broken down into four categories: false light, intrusion, publication of private facts, and appropriation." *Id.* (citing *Moore v. Sun Publishing Corp.*, 118 N.M. 375, 383, 881 P.2d 735, 743(Ct. App.), *cert. denied*, 118 N.M. 375, 881 P.2d 735, (1994)).  In this case, Plaintiff Godwin claims that Defendant Waybourn placed him in a "false light."

"False light" invasion of privacy is "a close cousin of defamation." *Andrews*, 119 N.M. at 492, 892 P.2d at 625 (citing *Moore*, 118 N.M. at 383, 881 P.2d at 743 (quoting Rodney A. Smolla, Law of Defamation § 10.01[2], at 10-3 (1994)).  "It is not, however, necessary to the action for invasion of privacy that the plaintiff be defamed." *Moore* at 383, 743 (citing Restatement (Second) of Torts, § 652E cmt. b, at 395).  "It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." *Id*.  "In the absence of proof of a specific false statement of fact, "unfairness, improper tone, or unfounded implication or innuendo, even though they might sound as though they fit the phrase 'false light,' will no sooner support a recovery for false-light invasion of privacy than for defamation." *Andrews* at 625-26, 492-93 (quoting Robert D. Sack & Sandra S. Baron, Libel, Slander, and Related Problems, 565 (2d ed. 1994)).

Plaintiff Godwin alleges that "Defendant police officers named herein, individually . . . published and communicated statements of fact regarding Plaintiff . . . that Plaintiff worked with and associated with persons who had committed criminal offenses . . . that Plaintiff could not and was not fit to post property bonds . . . and implied that Plaintiff was not fit to perform work posting bonds," and that these statements were false and placed him in a "false position" in the public's eye.  *See* amended complaint, ¶¶ 72-73.  If Plaintiff Godwin is able to substantiate his

12

contentions against Defendant Waybourn, the Court will agree that he has shown facts from which a jury could conclude that he was placed in a "false light." *See Moore* at 384, 744 (quoting Restatement (Second) of Torts § 652E(a)).

However, the Court's review of Plaintiff Godwin's amended complaint (the only source of facts, however vague, conceivably supporting Plaintiff Godwin's claims against Defendant Waybourn) discloses no obvious factual basis for a legally cognizable claim of false light invasion of privacy specifically against Defendant Waybourn. The factual contentions set forth in Plaintiff Godwin's amended complaint do nothing to elucidate this claim with respect to Defendant Waybourn, but again refer only to "Defendant police officers." Furthermore, Plaintiff Godwin failed to respond to Defendant's argument that Plaintiff Godwin made only general allegations against "police officers" in support of "his false light" claim. *See* Def. Waybourn's Memo in Support, Material Fact No. 2. Inasmuch as Plaintiff Godwin was required to rebut Defendant Waybourn's statement of material facts with proof of a "specific false statement of fact," specifically against Defendant Waybourn and failed, the Court agrees with Defendant Waybourn. Plaintiff Godwin has failed to develop the record to support his allegations and in turn, has failed to establish a *prima facie* case of false light invasion of privacy. Defendant Waybourn's Motion for Summary Judgment on Plaintiff Godwin's Count IV, False Light Invasion of Privacy is granted.

      C.      <u>Intentional Infliction of Emotional Distress</u>

With respect to the tort of intentional infliction of emotional distress, New Mexico courts have adopted the approach taken by the RESTATEMENT (SECOND) OF TORTS § 46 (1965). *See Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMSC- 004, ¶ 25, 131 N.M. 607, 41 P.3d

333. To establish such a claim, a plaintiff must show that "1) the conduct in question was extreme and outrageous; 2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; 3) the plaintiff's mental distress was extreme and severe; and 4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Id.*  (quoting *Hakkila v. Hakkila*, 112 N.M. 172, 182, 812 P.2d 1320, 1330 (Ct. App. 1991); *see also Andrews v. Stallings,* 119 N.M. 478, 491, 892 P.2d 611, 624 (Ct. App. 1995) (A claim for intentional infliction of emotional distress requires a plaintiff to show that defendants engaged in extreme and outrageous conduct which was done recklessly or with the intent to cause severe emotional distress.); and UJI 13-1628 NMRA 2005.  "To recover emotional distress damages, those damages must be 'severe.'"  *See Jaynes v. Strong-Thorne Mortuary, Inc.*, 1998-NMSC-4, ¶ 20, 124 N.M. 613, 954 P.2d 45 and UJI 13-1628 NMRA 2005; *see also Flores v. Baca*, 117 N.M. 306, 313, 871 P.2d 962, 969 (1994).

"By 'severe' we intend that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances.'" *Id.*  (quoting *Folz v. State*, 110 N.M. 457, 469, 797 P.2d 246, 254 (1990) *rev'd on other grounds,* 115 N.M. 639, 857 P.2d 39 (1993), *cert denied*, 115 N.M. 602, 856 P.2d 250 (1993); *see also* UJI 13-1628 NMRA 2005).  "Extreme and outrageous conduct is described as conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Silverman v. Progressive Broad, Inc.,* 1998-NMCA-107, ¶ 32, 125 N.M. 500, 964 P.2d 61 (quoting *Phifer v. Herbert*, 115 N.M. 135, 139, 848 P.2d 5, 9 (Ct. App. 1993) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)) *overruled on other grounds by Spectron Dev. Lab. v. American Hollow Boring Co.*, 1997

NMCA 25, ¶¶ 31-32, 123 N.M. 170, 936 P.2d 852).  Mere insults do not exceed the bounds of decency.  *Andrews* at 491, 624 (citing *Koch v. Goldway*, 817 F.2d 507, 510 (9th Cir. 1987)).

"Initially, the court determines as a matter of law whether conduct reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress."  *Padwa v. Hadley,* 1999-NMCA-67, ¶ 9, 127 N.M. 416, 981 P.2d 1234, *cert. denied*, 127 N.M. 389, 981 P.2d 1207 (1999) (citing *Trujillo v. Puro*, 101 N.M. 408, 414, 683 P.2d 963, 969 (Ct. App. 1984) and Restatement (Second) of Torts § 46 cmt. h (1965)).  "When reasonable persons may differ on that question, it is for the jury to decide, subject to the oversight of the court."  *Id.* (citing Restatement, *supra*).

In this case, it appears that Plaintiff Godwin's claim of intentional infliction of emotional distress arises from Defendant Waybourn's alleged publishing false communications to the media and to third parties regarding his fitness to perform work and his association with criminal activity.  *See* amended complaint, ¶ 81.[7]  Although Defendant Waybourn argues that Plaintiff Godwin fails to specify what conduct supports his Intentional Infliction of Emotional distress claim (*see* Def. Memo in Support, Fact No. 3), the Court will infer that Plaintiff Godwin is referring to "Defendant police officers'" publishing false communications against him. Notwithstanding, this inference is not enough to sustain Plaintiff Godwin's claim for intentional infliction of emotional distress as against Defendant Waybourn.

---

[7]In his amended complaint, Plaintiff Godwin merely states that "Defendants' conduct was extreme and outrageous under the above described circumstances and violated notions of common decency in a civilized society."  Amended complaint, ¶ 81.  The Court will make the inference that the "above described circumstances" to which Plaintiff Godwin refers, pertain to the "Defendant police officers,'" who allegedly published false communications to the media and to third parties regarding Plaintiff Godwin.

Plaintiff Godwin has come forward with no facts in support of his claims against Defendant Waybourn; has not disputed Defendant Waybourn's Statement of Material Facts; and failed to address any of the factual issues at hand in his response brief.[8, 9]  There is no specific evidence in the record that would allow the Court to make the requisite threshold ruling as to whether the conduct alleged rises to the applicable standard, *i.e.,* "extreme and outrageous" conduct, such that it will permit recovery against Defendant Waybourn.

Even if Plaintiff Godwin had sustained his burden to rebut Defendant Waybourn's statement of material facts, it is doubtful whether the type of conduct alleged against "Defendant law enforcement officers" would rise to the requisite level.  "Improper treatment does not constitute severe emotional distress as contemplated under the tort."  *Silverman* at ¶ 33 (citations omitted); *see also Hakkila v. Hakkila*, 112 N.M. 172, 176, 812 P.2d 1320, 1324 (Ct. App. 1991) ("There is still, in this country, such a thing as liberty to express an unflattering opinion of another, however wounding it may be to his feelings . . . ." Prosser, Insult and Outrage, 44 Cal. L. Rev. 40, 44 (1956)); *see also, Padwa v. Hadley*, 1999-NMCA-67, ¶ 11, 127 N.M. 416, 981 P.2d

---

[8]The Court has determined that as a matter of law, the conduct alleged does not rise to the level that would sustain Plaintiff Godwin's claim against Defendant Waybourn for intentional infliction of emotional distress.  Therefore, the Court does not reach the factual inquiry of whether the Boyd Elaine Godwin Affidavit (*see* Plaintiff Torrez' and Godwin's Exhibit No. 2) could be construed as containing inferences against Defendant Waybourn such that he participated in publishing false communications against Plaintiff Godwin.

[9]Although Defendant Waybourn is mentioned several times in Plaintiffs' joint response, it is consistently in the context of his conduct toward Plaintiff Torrez.  Plaintiff Godwin does not have standing to bring claims against Defendant Waybourn based on his alleged misconduct in connection with Torrez.  *See Glover River Organization v. U.S. Dept. of Interior*, 675 F.2d 251, 254 (10th Cir. 1982) ("It is clear that abstract injury is not enough to confer standing: (t)he injury or threat of injury must be both real and immediate, not conjectural or hypothetical.") (quotations omitted) (citations omitted).

1234 ("The mere fact that an actor knows that his conduct is insulting, or will deeply hurt another's feelings is insufficient to establish liability."); and *Sanders v. Lutz*, 109 N.M. 193, 196, 784 P.2d 12, 15 (1989) ("Mere provocation, without more, is inadequate, no matter how unjustified."). "The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Silverman* at ¶ 33 (quoting *Phifer*, 115 N.M. at 139-40, 848 P.2d at 9-10) (quoting Restatement, supra, § 46 cmt. j)).

The facts of this case do not support a finding of intentional infliction of emotional distress based on this objective standard. Because Plaintiff Godwin has failed to show that he suffered severe emotional distress as a direct and proximate result of Defendant Waybourn's conduct, summary judgment on Plaintiff Godwin's claim of intentional infliction of emotional distress (Count V) is proper as against Defendant Waybourn.

## CONCLUSION

For the reasons stated above, **IT IS THEREFORE ORDERED** that Jason Waybourn's Motion for Summary Judgment **[Doc. No. 129]** is hereby **GRANTED**.

Dated this 22nd day of February, 2006.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE


Attorney for Plaintiff Godwin:
    Gilbert J. Vigil, Esq.

Attorneys for Jason Waybourn:
    Ronald J. Childress, Esq.
    Elaine R. Dailey, Esq.

<u>Attorneys for Farmington Defendants</u>:
Sean Olivas, Esq.
Melanie Frassanito, Esq.